# Exhibit A

**MANNING CURTIS BRADSHAW
& BEDNAR PLLC**
Alan C. Bradshaw (#4801)
Carson M. Fuller (#17571)
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678
abradshaw@mc2b.com
cfuller@mc2b.com

> **If you do not respond to this document
> within applicable time limits, judgment
> could be entered against you as
> requested.**

*Coverage Attorneys for White Cloud Adventures LLC and Benjamin White*

IN THE THIRD DISTRICT COURT

IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| BENJAMIN WHITE, an individual; and WHITE CLOUD ADVENTURES LLC, at Utah Limited Liability Company,<br><br>        Plaintiffs,<br><br>v.<br><br>RECREATION RISK RETENTION GROUP, INC., a Vermont Corporation; and JARED POTTER, an individual,<br><br>        Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br>Civil No: |

Plaintiffs Benjamin White ("Mr. White") and White Cloud Adventures LLC ("White Cloud") (together, "Plaintiffs"), by and through counsel, complain against Recreation Risk Retention Group, Inc. ("Recreation") and Jared Potter ("Mr. Potter") as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Mr. White is a natural person who at all relevant times resided in and was and is a citizen of the state of Utah.

1

2.      White Cloud is a Utah limited liability company with its principal place of business in Utah.

3.      Mr. White is the sole member of White Cloud.

4.      Recreation is a Vermont corporation organized under the Liability Risk Retention Act, 15 U.S.C. §3901 et seq., and is engaged in the business of providing insurance, including in the State of Utah, to risk retention group members and policyholders like Mr. White and White Cloud.

5.      Mr. Potter is a natural person who at all relevant times resided in and was and is a citizen of the state of Utah.

6.      This Court has jurisdiction over the subject matter of this case pursuant to Utah Code Ann. § 78A-5-102 and 78B-6-401.

7.      Venue is proper in this Court pursuant to Utah Code Ann. § 78B-3a-201 and/or 78B-3a-205.

8.      Pursuant to Utah R. Civ. P. 26(c), this is a Tier 3 case as Plaintiffs seek damages exceeding $300,000.

## FACTUAL BACKGROUND

### *The White Cloud Policy*

9.      Recreation is, and at all relevant times was, a risk retention group engaged in the business of selling insurance.

10.     Recreation and White Cloud entered into a contract of insurance, Policy No. CMFS000350001-R4 (the "White Cloud Policy"), for the policy period of July 04, 2023 through July 4, 2024. *See* White Cloud Policy, attached as Exhibit A., at 1.

11.     Coverage D of the White Cloud Policy provides coverage for "**HANG GLIDING, PARAGLIDING, OR POWERED PARAGLIDING PARTICIPANT INJURY LIABILITY.**" White Cloud Policy, Ex. A, at 21 (bold in original).[1]

12.     The "**Insuring Agreement Under Coverage D**" includes the following provisions:

> 1.    **Insuring Agreement Under Coverage D**
>
>     a.    **We** will pay those sums in excess of any applicable "**self-insured retention**" that the **Insured** becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to any "**participant**" to which this insurance applies.
>
>     . . .
>
>     d.    This insurance under **Coverage D** applies to "**bodily injury**" and "**property damage**" only if:
>
>         (1)    The "**bodily injury**" or "**property damage**" is caused by an "**occurrence**" that takes place in the "**coverage territory**"; and
>
>         (2)    The "**bodily injury**" or "**property damage**" occurs during the "**policy period**"; and
>
>         . . .
>
>         (4)    The "**bodily injury**" or "**property damage**" arises out of the "**covered activities**" of the **Insured**; and
>
>         (5)    The "**bodily injury**" or "**property damage**" is to a "**participant**"; and
>
>         (6)    In the case that the "**bodily injury**" or "**property damage**" results from an "**occurrence**" while the "**participant**" is "**participating in the sports of hang gliding, or paragliding**":
>
>             (i)    In the case that the "**participant**" is a "student":
>
>                 (A)    In the case of "**bodily injury**", prior to the time of the "**occurrence**", the injured "**participant**" had signed (and, in the cases where the "**participant**" is under the age of 18 years, the "**participant's**" parent or legal guardian had also signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and
>
>             . . .
>
>     . . .

White Cloud Policy, Ex. A, at 21-22, §1.

---

[1] Unless otherwise indicated, bolded words contained herein from citations to the insurance policies at issue are bolded in the original policies themselves.

13.    The definition of "Insured" under the White Cloud Policy includes White Cloud as the "**Named Insured**" designated in the "**Declarations**" section of the White Cloud Policy, and further states that

> In addition to the first **Named Insured**, the following are also **Insureds** under **This Insurance Policy.**
>
> **1.**    Except as set forth in paragraph 2, below, if **You** are designated in the **Declarations** as:
>
> . . .
>
>     **c.**    A limited liability company, **You** are an **Insured**. **Your** members are also **Insureds** . . . with respect to the conduct of **Your** business. . . .

*Id.* Ex. A, at 39, §1.c. Accordingly, in addition to White Cloud, Mr. White is also an "Insured" under the White Cloud Policy because White Cloud is a limited liability company, Mr. White is a member of White Cloud, and this claim arises in the context of White Cloud's business.

14.    The Insuring Agreement under Coverage D of the White Cloud Policy includes a duty to defend, which states in relevant part: "**We** will have the right and duty to defend the **Insured** against any **"suit"** seeking **"damages"** because of **"bodily injury"** or **"property damage"** to any **"participant"** to which this insurance applies." *Id.* at 21, §1.b.

15.    The Insuring Agreement under Coverage D of the White Cloud Policy purports to include for Recreation "the right, but not the duty, to settle any covered **"claim"** or **"suit"** where the proposed settlement amount to be paid as **"damages"** does not exceed" applicalbe limits of the White Cloud Policy. *Id.*

16.    Coverage E of the White Cloud Policy provides coverage for "**PROFESSIONAL LIABILITY OF NAMED INSURED.**" *Id.*, at 25.

17.    The "**Insuring Agreement Under Coverage E**" includes the following provisions:

4

.    **Insuring Agreement Under Coverage E**

**a.**    **We** will pay those sums in excess of any applicable "**self-insured retention**" that the **Insured** becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to any "**student**" of the first **Named Insured** to which this insurance applies.

. . .

**d.**    This insurance under **Coverage E** applies to "**bodily injury**" and "**property damage**" only if:

(1)    The "**bodily injury**" or "**property damage**" is caused by an "**occurrence**" that takes place in the "**coverage territory**"; and

(2)    The "**bodily injury**" or "**property damage**" occurs during the "**policy period**"; and

(3)    Prior to the "**policy period**", no **Insured** listed under Paragraph 1. of **Section V - Who Is An Insured** and no "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**", knew that the "**bodily injury**" or "**property damage**" had occurred, in whole or in part. If such a listed **Insured** or authorized "**employee**" knew, prior to the "**policy period**", that the "**bodily injury**" or "**property damage**" occurred, then any continuation, change or resumption of such "**bodily injury**" or "**property damage**" during or after the "**policy period**" will be deemed to have been known prior to the "**policy period**"; and

(4)    The "**bodily injury**" or "**property damage**" arises out of the "**covered activities**" of the **Insured**; and

(5)    The "**bodily injury**" or "**property damage**" is to a "**student**" of the first **Named Insured**; and

(6)    The "**bodily injury**" or "**property damage**" results from an "**occurrence**" while the "**student**" is "**participating in the sports of hang gliding, paragliding, or powered paragliding**"; and

(7)    The "**bodily injury**" or "**property damage**" arises out of the "**hang gliding, paragliding, or powered paragliding professional liability hazard**"; and

(8)    In the case of "**bodily injury**", prior to the time of the "**occurrence**", the injured "**student**" had signed (and, in the cases where the "**student**" is under the age of 18 years, the "**student's**" parent or legal guardian had also signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

. . .

*Id.* at 25-26 (bold in original).

18.    The Insuring Agreement under Coverage E also includes a duty to defend, which states in relevant part: "**We** will have the right and duty to defend the **Insured** against any **"suit"** seeking **"damages"** because of **"bodily injury"** or **"property damage"** to any **"student"** of the first **Named Insured** to which this insurance applies." *Id.* at 25, §1.b.

19.    The Insuring Agreement under Coverage E purports to include for Recreation "the right, but not the duty, to settle any covered **"claim"** or **"suit"** where the proposed

settlement amount to be paid as **"damages"** does not exceed" applicalbe limits of the White

Cloud Policy. *Id.*

20.    Certain terms are defined in the White Cloud Policy, including **"Participant,"**

**"Participating in the sports of hand gliding or paragliding,"** and **"Student"** as follows:

> 38.    "Participant" means any person while that person is actively "**participating in the sports of hang gliding, paragliding, or powered paragliding**".
>
> 39.    "**Participating in the sports of hang gliding or paragliding**" means attempted and/or successful acts of launching (or assisting another in launching), flying (whether as pilot in command or otherwise) or landing (including, but not limited to, crashing) a "**hang glider**", or "**paraglider**", including all steps connected to such acts, such as assembly, rigging, inspection, and disassembly of the glider, as well as kiting and other ground handling of the glider.
>
> 62.    "Student" means a person who has enrolled with the first **Named Insured** to take a pre-defined course of instruction in sport of "**hang gliding**", "**paragliding**", and/or "**powered paragliding**" and has, at the time of the "**occurrence**" giving rise to a "**claim**", begun receiving instruction from one of the "**Named Insured's authorized instructors**".

*Id.* at 31-34.

21.    The term **"Participant"** as defined in the White Cloud Policy contains no

requirement for membership in any organization.

22.    The term **"Student"** as defined in the White Cloud Policy contains no

requirement for membership in any organization.

23.    Coverage D contains the following exclusionary provision:

> 2.    **Exclusions Under Coverage D**
>
> This insurance does not apply to, and **We** have no obligation to defend any **Insured** against or pay "damages" on behalf of any **Insured** under **Coverage D** for any of the following:
>
> b.    **Selected Coverage A Exclusions**
>
> "Bodily injury" or "property damage" that is excluded under any of the following **Coverage A** Exclusions:
>
> (8)    j. Aircraft, Auto Or Watercraft;

*Id.* at 24.

24.    Coverage E contains an identical exclusion:

6

**2.    Exclusions Under Coverage E**

This insurance does not apply to, and **We** have no obligation to defend any **Insured** against or pay "**damages**" on behalf of any **Insured** under Coverage E for any of the following:

**a.    Selected Coverage A Exclusions**

"**Bodily injury**" or "**property damage**" that is excluded under any of the following Coverage A Exclusions:

(8)    j. Aircraft, Auto Or Watercraft;

*Id.* at 27.

25.    The Coverage A exclusion for Aircraft, Auto Or Watercraft, which is referred to in Coverage D and Coverage E, states:

**j.**     **Aircraft, Auto Or Watercraft**

"**Bodily injury**" or "**property damage**" "**arising out of**" the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any "**aircraft**", "**auto**" or watercraft.

This exclusion applies even if the "**claims**" against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the "**occurrence**" which caused the "**bodily injury**" or "**property damage**" involved the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any "**aircraft**", "**auto**" or watercraft.

This exclusion does not apply to:

**(1)**     An unpowered Ultralight Vehicle (as defined by Federal Aviation Regulations, Part 103, Section 103.1(a)-(d) or exempted from compliance from one or more of subsections (a), (b), (c), or (d) of Section 103.1 by one or more exemptions granted to "**USHPA**" by the Federal Aviation Administration), provided that:

. . .

    **(viii)**     At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the unpowered Ultralight Vehicle:

        **(A)**     Is a current member of "**USHPA**" who:

            . . .; or

        **(B)**     Is a current member of "**USHPA**" who:

            . . .; or

        **(C)**     Is a current member of "**USHPA**" who:

            . . . ; or

        **(D)**     Is a current member of "**USHPA**" who:

            . . .; or

        **(E)**     Is a current member of "**USHPA**" who:

            . . .; or

        **(F)**     Is a current member of "**USHPA**" who:

            . . .; or

        **(G)**     Is a current member of "**USHPA**" who:

            . . .;

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all unpowered Ultralight Vehicles in all other circumstances.

*Id.* at 4-9.

26.     "**USHPA**" is defined in the White Cloud Policy as "the United States Hang Gliding and Paragliding Association, Inc." *Id.* at 36.

27.     The term "current member" is not defined anywhere in the White Cloud Policy.

28.     The White Cloud Policy provides no instruction or information on what constitutes a "current member" of the USHPA, who qualifies as a "current member" of the

USHPA, how one becomes a "current member" of the USHPA, or whether or how Plaintiffs were to verify the membership status of any "participant" or "student."

### *The USHPA Professional Liability Policy*

29.    Recreation and USHPA entered into a contract of insurance, Policy No. MAPL000001002-R-7, for the policy period of March 1, 2023 to March 1, 2024 (the "Professional Policy"). *See* Professional Policy, attached as Exhibit B.

30.    The Professional Policy provides certain coverage in addition to the coverage provided by the White Cloud Policy, including Professional Liability coverage up to $250,000, in excess of the $250,000 limits of the White Cloud Policy. *See* White Cloud Policy, Ex. A, at 2; *see* Professional Policy, Ex. B, at 1 (RRG-8201 (0223008)).

31.    More specifically, Coverage B of the Professional Policy is entitled "**PROFESSIONAL LIABILITY FOR "FOR HIRE PROFESSIONALS"**", and the Insuring Agreement for Coverage B states in relevant part:

> a.    "We" will pay those sums in excess of any applicable "self-insured retention" that the "USHPA Ultralight Vehicle Professional" "Insured" becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies.

*Id.* at 5, §2.a.

32.    The Professional Policy defines a "For Hire Professional" as, among other things, "an individual (or any person or entity for whom the individual works, whether as an **"employee"** . . . or other agent) . . . [who] is engaged in performance of **"Professional Services"** relating to **"hang gliding"** and/or **"paragliding"** . . . for any profit . . . ." *Id.* at 29, §25.

33.    Mr. White is a "For Hire Professional" as defined by the Professional Policy. *Id.*

34.    Mr. White is a "USHPA Ultralight Vehicle Professional" "Insured" as defined in the Professional Policy. *Id.* at 37, §81.

9

35.     White Cloud is also a "For Hire Professional" because it is an entity for whom Mr. White works and is an agent of that is engaged in performing "Professional Services" related to "hang gliding" and/or "paragliding" for profit. *Id.* at 29, §25. White Cloud and Mr. White are both "Insureds" under the Professional Policy.

36.     The Insuring Agreement under Coverage B includes a duty to defend, which states in relevant part: "**We** will have the right and duty to defend the **USHPA Ultralight Vehicle Professional" "Insured**" against any **"suit"** seeking "**damages**" because of **"bodily injury"** or **"property damage"** to which this insurance applies." *Id.* at 5, §2.b.

37.     The Professional Policy purports to include for Recreation "the right, but not the duty, to settle any covered **"claim"** or **"suit"** where the proposed settlement amount to be paid as **"damages"** does not exceed" applicalbe limits of the Professional Policy. *Id.*

38.     Coverage B of the Professional Policy states that "insurance under **Coverage B** applies to **"bodily injury"** and **"property damage"** only if . . . the **"bodily injury"** or **"property damage"** is to a **"USHPA Member** . . . ." *Id.* at 6, §2.d.(5).

39.     The Professional Policy attempts to define **"USHPA Member"** by incorporating by reference the USHPA bylaws. Specifically, the Professional Policy defines **"USHPA Member"** in relevant part as "Pilot Members, Rogallo Members, Limited Life Members, and Temporary Affiliate/Student Members of the [USHPA], as those terms are defined in the bylaws of [USHPA] in effect as of the date of inception of **"This Insurance Policy."** *Id.* at 37, §79. The Professional Policy does not define any of these capitalized terms, and consequently, there is no actual definition of "USHPA Member" anywhere in the Professional Policy.

40.     The Professional Policy states that "**Coverage B** applies to **"bodily injury"** and **"property damage"** only if:

. . .

    **(7)**    In the case of **"bodily injury"**, prior to the time of the **"occurrence"**, the injured "**USHPA Member**" had signed . . . the form of pre-injury release, waiver and assumption of risk approved by **"Your risk retention group"** for use by the **"First Named Insured"** in connection with the **"covered activities"** and the same was still in effect at the time of the **"occurrence"**

**. . .**

*Id.* at 7-8, §2.d.(7).

### *The Underlying Incident and Pre-Injury Release*

41.    On or about October 31, 2024, Jared Potter ("Mr. Potter") filed suit against Mr. White and White Cloud in the Third District Court in and for Salt Lake County, Utah, captioned *Jared Potter v. Benjamin White and White Cloud Adventures LLC*, Civil No. 240908832 (the "Underlying Lawsuit"). The complaint in the lawsuit is attached hereto as Exhibit C (the "Underlying Complaint").

42.    In the Underlying Complaint, Mr. Potter alleges that he hired Mr. White and White Cloud to introduce him to paragliding. Ex. C, at ¶5.

43.    Mr. Potter alleges that Mr. White was his instructor, and that Mr. Potter was Mr. White's student. *Id.* ¶¶9-10.

44.    Mr. Potter alleges that he became a temporary member of USHPA in 2021. *Id.* ¶11.

45.    In the process of becoming a USHPA member, on October 1, 2021, Mr. Potter filled out and executed a document entitled "30 Day Student/Affiliate Membership Application" ("Membership Application"). *See* Application, attached as Exhibit D.

46.    Also on October 1, 2021, Mr. Potter executed a "Release, Waiver and Assumption of Risk Agreement" on October 1, 2021 ("Release"). *See* Release, attached as Exhibit E.

47.     The Release is the document referenced in the Policies. *See* White Cloud Policy, Ex. A, at 21-22, §1.d.(6)(i); Professional Policy, Ex. B, at 7-8, §2.d.(7).

48.     The Release contains no time-limiting language, whether express or implied. *See generally*, Ex. E.

49.     To the contrary, by executing the Release according to its plain terms, Mr. Potter

**"FOREVER RELEASE[D] AND DISCHARGE[D] THE *RELEASED PARTIES* FROM ANY AND ALL LIABILITIES, CLAIMS DEMANDS, OR CAUSES OF ACTION THAT [HE] MAY HEREAFTER HAVE FOR [HIS] *SPORTS INJURIES*, HOWEVER CAUSED, EVEN IF CAUSED IN WHOLE OR IN PART BY THE ACTION, INACTION, OR NEGLIGENCE (WHETHER ACTIVE OR PASSIVE) OF ANY OF THE *RELEASED PARTIES,* TO THE FULLEST EXTENT ALLOWED BY LAW.**

Release, Ex. E.[2]

50.     By executing the Release, Mr. Potter agreed that he "**WILL <u>NOT</u> SUE OR MAKE A CLAIM** against any of the *RELEASED PARTIES* for loss or damage on account of [his] *SPORTS INJURIES*." *Id.*

51.     The fact that the release is devoid of any time constraints is made clear by the statement in paragraph J of the Release, which states that "This *Agreement* shall apply to any and all *SPORTS INJURIES* to [Potter] occurring at any time after the execution of this *Agreement* by [Potter]." *Id.*

52.     The Release goes on to state that Potter "**VOLUNTARILY ASSUMES ALL RISKS, KNOWN AND UNKNOWN, OF *SPORTS INJURIES* TO [POTTER], HOWEVER CAUSED, EVEN IF CAUSED IN WHOLE OR IN PART BY THE ACTION, INACTION,**

---

[2] Both White Cloud and Mr. White are clearly "Released Parties" as the term is defined in the Release. *See* Release, Ex. E, at ¶C(3)(b), (c), (d), (g).

OR NEGLIGENCE (WHETHER PASSIVE OR ACTIVE) OF THE *RELEASED PARTIES*, TO THE FULLEST EXTENT ALLOWED BY LAW." *Id.*

53.     The Release does not limit the released claims to those occurring within a temporary membership, but instead "forever" releases Plaintiffs from any claims for injuries occurring "at any time after the execution" of the Release . *See generally, id.*

54.     By plain terms, the Release remained effective as of October 5, 2023, the date of Mr. Potter's alleged incident that is the subject of the Underlying Lawsuit. *Id.*

55.     Mr. Potter alleges that he recommenced instruction with Mr. White in approximately 2023. *See* Underlying Complaint, Ex. C, ¶12.

56.     Mr. Potter alleges that from July 2023 through October 5, 2023, he participated in approximately 20 flights on the south side of the point of the mountain (in Draper, Utah), and one tandem flight on the north side of the mountain in 2021. *Id.* ¶15.

57.     Mr. Potter alleges that on October 5, 2023, while conducting a solo flight with radio instruction and communication from Mr. White, Mr. Potter crashed into a hill and allegedly fractured his left femur, dislodged his L1 vertebrae, and sustained a T12-L1 spinal cord injury which allegedly resulted in permanent disability of legs, bowel, bladder, sexual function, and neuropathic pain. *See id.* at ¶¶6, 34.

58.     Mr. Potter alleges that that his injuries were caused by the negligence or gross negligence of the Plaintiffs (Mr. White and White Cloud). *See generally*, *id.*

### Recreation's Bad Faith Claim Handling

59.     Mr. White timely reported Mr. Potter's incident to Recreation.

60.     By letter dated October 31, 2023, Recreation agreed to defend White Cloud and Mr. White against Mr. Potters claim, subject to a reservation of rights. *See* Reservation of Rights, attached as Exhibit F.

61.     Recreation took the position that the Release was not effective on the date of the accident in order to avoid coverage. *Id.*

62.     By arguing against the enforceability of the Release, Recreation took a position directly contrary to White Cloud's and Mr. White's interests, contrary to Recreation's fiduciary duty owed to White Cloud and Mr. White.

63.     Recreation took a position contrary to White Cloud's and Mr. White's best interests despite the fact that the Release contains no language limiting the time or scope of the Release.

64.     Mr. Potter demanded that Recreation tender the $250,000 policy limits of the White Cloud Policy.

65.     Despite the alleged seriousness of Mr. Potter's injuries, Recreation rejected the policy limits offer, but offered to settle the claim for $100,000—a full $150,000 short of the White Cloud Policy limits and without disclosing the existence of the Professional Policy.

66.     Recreation's inconsistent messaging and responses left White Cloud and Mr. White in limbo. Recreation had rejected Mr. Potter's policy limits offer, asserted there may be no coverage, but immediately contradicted its "no coverage" position by offering $100,000 to settle the claims, but then inexplicably refused to increase that offer to the $250,000 policy limits or disclose the existence of a second policy even though the allegations include spinal injures that have apparently rendered Mr. Potter paraplegic, the damages for which will likely exceed $250,000.

67.    Recreation had an opportunity to settle the claim for policy limits and refused to do so.

68.    By rejecting Mr. Potter's policy limits offer, Recreation intentionally and in bad faith failed to take into account White Cloud's and Mr. White's interests in hopes of escaping responsibility under the White Cloud Policy and the Professional Policy. Plaintiffs' interests clearly favor a limits settlement. By rejecting that offer, Recreation has exposed itself to liability for any judgment against the Plaintiffs in excess of the limits of the Professional Policy.

69.    Moreover, in its settlement communications with Mr. Potter's counsel and in communications with Mr. White and White Cloud's coverage counsel, Recreation never mentioned the existence of a second policy. Consequently, Mr. White has been forced to endure the emotional distress associated with a possible judgment against himself as an individual and the exposure of his personal assets and livelihood.

70.    Recreation also sought to avoid coverage by arguing that no coverage exists because Mr. Potter was not a "current member" of the USHPA at the time of the accident.

71.    The White Cloud Policy does not define "current member" and provides no other instruction or information on what constitutes a "current member" of the USHPA, who qualifies as a "current member" of the USHPA, how one becomes a "current member" of the USHPA, or whether or how Plaintiffs were to verify the membership status of any "participant" or "student." And although the Professional Policy purports to define "USHPA Member," it does so by referencing documents and terms outside the Policy that are not part of the Policy and that are contrary to the Utah Insurance Code § 31A-21-106(1)(a) (no incorporation by reference in an insurance policy).

*Recreation's Arbitration Demand*

72.     After Mr. Potter filed the Underlying Lawsuit in Utah state court seeking damages

for his personal injuries, on or around January 7, 2025, Recreation demanded arbitration through

JAMS seeking a declaration that Recreation is not obligated to defend or indemnify White Cloud

or Mr. White in the Underlying Lawsuit (the "Arbitration Demand"). Recreation amended its

arbitration demand disclosing to JAMS but not its policyholders or Mr. Potter that a second

liability insurance policy exists.

73.     It was not until this date, January 7, 2025, that Recreation finally revealed to

JAMS that the Professional Policy exists.

74.     Through the Arbitration Demand, Recreation seeks to hale Plaintiffs and Mr.

Potter across the country to a Vermont venue, subject Plaintiffs to Vermont law, and preclude

Plaintiffs from filing this action in Utah state court, even though Plaintiffs are domiciled in Utah

and all relevant events associated with the Underlying Claim occurred in Utah.

75.     The White Cloud Policy contains an "Arbitration Clause" which is not a

"permissible arbitration provision" under Utah law, and those provisions violate Utah law in

various respects by, among other things:

     a.   Requiring "the policy to be construed according to the laws of another

         jurisdiction." *See* Utah Admin Code. R590-122-3(4)(b).

     b.   Delegating questions of arbitrability to the arbitrator, when the Utah Uniform

         Arbitration Act states that "the court shall decide whether an agreement to

         arbitrate exists or a controversy is subject to an agreement to arbitrate." Utah

         Code Ann. § 78B-11-107(2).

    c.  "Prescrib[ing] in what court an action may be brought on the policy." *See* Utah Code Ann. § 31A-21-313.

    d.  Requiring the arbitration to "be held at a place further from the residence of the insured than the nearest location of a [Utah] State Court of General Jurisdiction." Utah Admin Code R590-122-4(9).

    e.  Preventing, or attempting to prevent, Utah courts from having jurisdiction over an action against the insurer. *See* Utah Admin Code R590-122-3(4)(c).

    f.  Omitting the required prominent statement in the policy that warns policyholders of the prospect of possible mandatory arbitration. *See* Utah Admin Code R590-122-4(5).

    g.  Requiring the policyholders and Mr. Potter to pay unreasonable arbitration and arbitrator fees to resolve coverage disputes.

76.    The Utah Administrative Code provision cited above for "Permissible Arbitration Provisions" requires that the arbitration provision comply with, the Utah Uniform Arbitration Act. *See* Utah Admin Code. R590-122-4(7).

77.    The above-cited Utah statutory and regulatory provisions are not preempted by federal law because they do not regulate the "formation and operation" of Recreation as a risk retention group.

78.    The Utah Risk Retention Group Act further states that the Utah Insurance Commissioner "is authorized to . . . enforce the laws of this state not specifically preempted by the [federal Liability Risk Retention Act] . . . ." Utah Code Ann. § 31A-15-211(1).

79.    It would work manifest injustice for Recreation to be permitted to issue insurance to insureds located and doing business in Utah, mishandle in bad faith the claims made against

its insureds, breach its fiduciary duties by refusing to settle within policy limits, then force the insureds to expend much time and money to arbitrate coverage in Vermont under an Arbitration Clause that violates Utah law.

80.    Recreation has failed to fulfill its obligations of good faith and fair dealing and it has breached its fiduciary duty owed to the Plaintiffs in connection with Mr. Potter's claims.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

81.    Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1-80 above.

82.    The White Cloud Policy and Professional Policy are contracts of insurance.

83.    The White Cloud Policy requires Recreation to "pay those sums in excess of any applicable **"self-insured retention"** that the **Insured** becomes legally obligated to pay as **"damages"** because of **"bodily injury"** . . . to any **"participant"** to which this insurance applies." *See* White Cloud Policy, Ex. A, at 21-22, §1.a.

84.    Plaintiffs have demanded that Recreation pay damages that Mr. Potter, a "participant" as defined by the White Cloud Policy, has alleged to have incurred because of bodily injury.

85.    The Professional Policy requires Recreation to "pay those sums in excess of any applicable **"self-insured retention"** that [Mr. White and/or White Cloud] become[] legally obligated to pay as **"damages"** because of **"bodily injury"** or **"property damage"** to which [the Professional Policy] applies." Professional Policy, Ex. B, at 5, § 2.a.

86.    Recreation has breached its obligations set forth in the White Cloud Policy and the Professional Policy by its failure, refusal, and disclaimer described above, including its failure to pay the Policy limit damages sought by Mr. Potter.

87.    As a direct and proximate result of the breaches of contract, which are continuing to at least the date of this Complaint, Recreation has deprived Plaintiffs of the benefit of insurance coverage for which Plaintiffs have paid premiums, and Plaintiffs have been damaged as a result of Recreation's breach of contract in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
**(Declaratory Judgment)**

88.    Recreation repeats and incorporates by reference the allegations of paragraphs 1-87 above.

89.    Recreation has taken the position that there is no coverage because Mr. Potter was not a "current" member of USHPA at the time of the incident.

90.    In taking this position, Recreation fails to acknowledge that the White Cloud Policy does not define "current member of USPHA," provides no other instruction or information on what constitutes a "current member" of the USHPA, who qualifies as a "current member" of the USHPA, how one becomes a "current member" of the USHPA, or whether or how Plaintiffs were to verify the membership status of any "participant" or "student." The Professional Policy does not define "USHPA Member," and it references documents and terms outside the Professional Policy.

91.    Under Utah law, "an insurance policy is a classic example of an adhesion contract" and "should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purpose of insurance." *Fire Ins. Exch. v. Oltmanns*, 2012 UT App. 230, ¶6, 285 P.3d 802. Further, language that purports to cut back coverage (regardless of whether designated as an "exclusion") will be "strictly construed" and only "explicit language will serve to limit coverage. *See United States Fidelity & Guar. Co. v. Sandt*, 854 P.2d 519, 524 (Utah 1993). Where language functions as a limitation, exception or condition to coverage, then

it "must be made and established by the insurer to escape liability thereunder." *LDS Hosp. v. Intermountain Health Care*, 765 P.2d 857, 859 (Utah 1988). When an insurance company "uses a 'slippery' word to mark out and designate [coverage], it is not the function of a Court to sprinkle sand upon the ice by strict construction of the term. All who may, by any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection. *Gov. Employees Ins. Co. v. Dennis*, 645 P.2d 672, 675 (Utah 1982). "If, in the application of this principle of construction . . . the company falls into a coverage somewhat more extensive than it contemplated, the fault lies in its own selection of the words [used]." *Id.* Finally, if language in an insurance contract has two or more reasonable interpretations, the interpretation favoring greater coverage will be adopted.

92.    Moreover, the Utah Insurance Code expressly prohibits Recreation's attempt to incorporate by reference the undefined terms and definitions of the terms referenced in the definition of "USHPA Member" in the Professional Policy. Utah Code Ann. § 31A-21-106(1)(a) ("[A]n insurance policy may not contain any agreement or incorporate any provision not fully set forth in the policy or in an application or other document attached to and made a part of the policy at the time of its delivery . . . .").

93.    Under the principles and statutes described in the two preceding paragraphs, Recreation cannot legally limit or deny coverage based on an undefined, ambiguous, and slippery term "current member of USHPA" in the White Cloud Policy. Nor may Recreation limit or deny coverage where it fails to define "USHPA Member" in the Professional Policy and impermissibly incorporates by reference other terms and their definitions which are not included in the Professional Policy.

94.    Recreation has also taken the position that there is no coverage because the Release signed by Mr. Potter was not effective at the time of the underlying incident.

95.    As described above, the Release, by its plain terms, was not limited in time and was fully effective at the time of the incident.

96.    As a result of the positions asserted by Recreation under the relevant policies, an actual controversy exists regarding the meaning of the policy provisions mentioned herein and the alleged forfeiture of benefits for which premiums have been paid. Plaintiffs seek a determination, pursuant to Utah Code Ann. §76B-6-401 et seq., that Recreation is obligated under the White Cloud and Professional Policies to pay all damages associated with Mr. Potter's claims, up to the applicable policy limits, and that the policy provisions cited herein do not defeat coverage under the facts of this case.

### THIRD CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

97.    Recreation repeats and incorporates by reference the allegations of paragraphs 1-96 above.

98.    The White Cloud and Professional Policies each contain an implied covenant of good faith and fair dealing.

99.    Recreation has breached its obligation of good faith and fair dealing as a result of the conduct described above, including that Recreation has failed to fairly evaluate and settle Mr. Potter's claims, failed to act promptly and reasonably in providing insurance benefits to Plaintiffs, failed to disclose the Professional Policy during settlement negotiations, exposed Plaintiffs' assets including Mr. White's personal assets and livelihood to potential judgments, asserted positions contrary to the interests of its insureds including its positions related to the Release, sought to hale Plaintiffs to a Vermont venue to fight coverage pursuant to an Arbitration

Clause that violates Utah law, and engaged in other actions that have injured Plaintiffs' ability to obtain the benefits of the White Cloud and Professional Policies.

100.    As a direct and proximate cause of Recreation's breach of the covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be proven at trial. These damages include, but are not limited to, attorney's fees, costs, and expenses of this suit.

**FOURTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

101.    Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1-100 above.

102.    In Utah, third-party liability insurers owe a fiduciary duty whereby "the insurer incurs a fiduciary duty to its insured to protect the insured's interests as zealously as it would its own; consequently, a tort cause of action is recognized to remedy a violation of that duty." *Beck v. Farmers Ins. Exchange*, 701 P.2d 795, 799 (Utah 1985).

103.    "The duty to defend is a continuing duty that is triggered when the insured tenders the defense of an action against it which is potentially within the policy coverage." *Summerhaze Co., L.C. v. FDIC*, 2014 UT 28, ¶36, 332 P.3d 908. Indeed, if the "underlying complaint alleges *any facts* or claims that might fall within the ambit of the policy the insurer must offer a defense. *Id.* (emphasis in original). The insurer "may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage." *Id.* ¶38.

104.    As Plaintiffs' liability insurer, Recreation has a fiduciary duty to defend Plaintiffs against claims made by Mr. Potter, and to protect Plaintiffs' interests as zealously as it would its own. That duty was triggered by Plaintiffs' tender of the defense to Recreation because the

22

demand and lawsuit allege facts that are potentially within the scope of the White Cloud and Professional Policies' coverage, as described above.

105.    As Plaintiffs' liability insurer, Recreation also has a fiduciary duty to reasonably pursue settlement of claims within policy limits. *UMIA Ins., Inc. v. Saltz*, 2022 UT 21, ¶¶47-48, 515 P.3d 406.

106.    Recreation has breached its fiduciary duty by, but not limited to:

a.    Failing to protect Plaintiffs' interests as zealously as it would its own;

b.    Asserting positions that are expressly contrary to the policyholders' best interests;

c.    Failing to reasonably pursue settlement of Mr. Potter's claims;

d.    Failing to notify Plaintiffs of the existence of the Professional Policy and the protections it provides settlement discussions;

e.    Seeking to hale Plaintiffs across the country to a Vermont venue to fight coverage in an arbitration that is contrary to Utah law, and at great expense and detriment to Plaintiffs.

107.    As a direct and proximate result of the breach of fiduciary duty, Plaintiffs have suffered damages in an amount to be proven at trial. These damages include, but are not limited to, attorney's fees, costs, and expenses of this suit.

108.    Recreations' acts or omissions in breaching its fiduciary duty are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.

WHEREFORE, Geneva requests judgments as follows:

1.    On the First Cause of Action:

    a.  For damages according to proof at trial;

    b.  For pre-and post-judgment interest according to law; and

    c.  For such other and further relief as this Court deems just and proper.

2.      On the Second Cause of Action:

    a.  That the Court find that Recreation is obligated under the White Cloud and Professional Policies to pay all damages associated with Mr. Potter's claims for bodily injury and that no provision in these policies applies to defeat coverage under the facts of this case.

3.      On the Third Cause of Action:

    a.  For damages according to proof at trial;

    b.  For pre- and post-judgment interest according to law;

    c.  For Plaintiffs' reasonable attorney fees, costs, and expenses of this action, and those expended in the arbitration that Recreation filed in Vermont;

    d.  For such other and further relief as this Court deems just and proper.

4.      On the Fourth Cause of Action:

    a.  For damages according to proof at trial;

    b.  For pre- and post-judgment interest according to law;

    c.  For Plaintiffs' reasonable attorney fees, costs, and expenses of this action and those expended in the arbitration that Recreation filed in Vermont;

    d.  For punitive damages; and

    e.  For such other and further relief as the Court deems proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims and issues triable.

DATED this 20th day of February, 2025.

**MANNING CURTIS BRADSHAW & BEDNAR, PLLC**

/s/ Alan C. Bradshaw
Alan C. Bradshaw
Carson M. Fuller
*Attorneys for Plaintiffs*

4922-7509-2250, v. 1

# Exhibit A

**The White Cloud Policy**

**rrg**

**RECREATION RISK RETENTION**
— GROUP — ™

27 MAIN ST., FIRST FLOOR
BURLINGTON, VT 05401
802-383-1541
memberservice@recreationrrg.com

**NOTICE**

**This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.**

# Flight School/Park Commercial General Liability and Professional Liability Insurance

## POLICY DECLARATIONS CERTIFICATE (PAGE 1 of 3)

| | | | |
|---|---|---|---|
| **NAMED INSURED/MEMBER:** | White Cloud Adventures, LLC | **POLICY NUMBER:** | CMFS000350001-R4 |
| **ADDRESS:** | 15263 S Steep Mountain Drive | | |
| **CITY, STATE, ZIP:** | Draper, UT 84020 | **POLICY TYPE:** | RENEWAL |
| **BUSINESS FORM:** | Limited Liability Company | | |

| | | | | |
|---|---|---|---|---|
| **POLICY PERIOD:** | **From Effective Date:** | 07/04/2023 | **To Expiration Date:** | 07/04/2024 |
| | *All dates are at12:01 AM Standard Time at Named Insured's address shown above* | | | |

| **DESCRIPTION OF OPERATIONS TO WHICH THIS CERTIFICATE APPLIES:** | Operation of a Paragliding Flight School by Member in accordance with the representations made in the Named Insured's "application" for insurance at the Insured Location(s) scheduled on the Covered Activities Endorsement. |
|---|---|

| | | |
|---|---|---|
| **Net Advance Premium*:** | $3,439.00 | **Minimum Earned Premium** $3,439.00 |
| **Underwriting Fees:** | $00.00 | |
| **Inspection Fees:** | $00.00 | 25% Minimum Earned Premium at Inception; 100% of Premium Earned upon the earlier of an occurrence of any one "claim" or 180 days |
| **Administration Fees:** | $00.00 | |
| **Terrorism Premium:** | $00.00 | |
| **State Taxes:** | $77.38 | *This Premium Is Subject to Audit and Adjustment* |
| **Total Cover Charge:** | $3,516.38 | |

| **Description of Coverage:** | Flight School General Commercial Liability and Professional Liability; Excludes Products & Completed Operations; Excludes Watercraft Liability; Excludes Auto Liability |
|---|---|

| LIMITS OF LIABILITY | | Self Insured Retention |
| --- | --- | --- |

| LIMIT TYPE | LIMIT AMOUNT |
| --- | --- |
| General Aggregate: | $250,000 |
| Each Occurrence: | $250,000 |
| Products-Completed Operations: | EXCLUDED |
| Personal and Advertising Injury: | $250,000 |
| Damage to Premises Rented To You: | $50,000 |
| Medical Payment (Expense) Per Person: | $1,000 |
| Propeller Injury | EXCLUDED |
| Power Line | $50,000 |
| Wildfire | $50,000 |
| Watercraft Liability: | EXCLUDED |
| Automobile Liability: | EXCLUDED |

$5,000 Per Occurrence

The amount of the Self Insured Retention is included in the Limits of Liability

Defense costs and fees are included within the Limits of Liability - The payment of defense costs and fees reduces the amount of the Limits of Liability available to pay damages and Supplementary Payments. Supplementary Payments are included within the Limits of Liability - The payment of Supplementary Payments reduces the amount of the Limits of Liability available to pay damages, defense costs and fees.

**Schedule of Policy Forms and Endorsements:**

| | |
| --- | --- |
| RRRG 8500 (0722015) | Flight School Policy Form |
| RRRG 8501 (0722028) | Declarations |
| RRRG 8502 (0223004) | Covered Activities |
| RRRG 8503 (0223004) | Insured Contracts |
| RRRG 8504 (0223006) | Excluded Operations |
| RRRG 8504-A (0223004) | Additional Excluded Operations |
| RRRG 8505 (0223003) | Personal Guaranty |
| RRRG 8506 (0223004) | Excluded Locations |
| RRRG 8510 (0223014) | Additional Insured - Designated Flying Site Landowner |
| RRRG 8514 (0223004) | Additional Insured - Designated Flying Site USHPA Chapter |
| RRRG 8530 (0223002) | Approved Pre-Injury Release Form |
| RRRG 8530-A-UV (0821003) | Full Release Form |
| RRRG 8530-B-UV (0223008) | Affirmation Of USHPA Release |
| RRRG 8560 (0223002) | Exclusion - Propeller Injury |
| RRRG 9001 (0223002) | Exclusion – Asbestos, Lead Or Silica |
| RRRG 9002 (0223002) | Exclusion – Biological Or Chemical Materials |
| RRRG 9003 (0223002) | Exclusion – Terrorism |
| RRRG 9005 (0223002) | Accelerated Minimum Earned Premium Endorsement (180 Days) |
| RRRG 9010 (0223002) | Policy Change Cancellation Endorsement |
| RRRG 9020 (0223002) | Exclusion And Limitation - Exposure To Sanctions |
| RRRG 9025 (0223002) | Exclusion - Nuclear Incident Liability |
| RRRG 9026 (0223002) | Exclusion - Communicable Disease |
| RRRG 9101 (0223002) | U. S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Notice To Policyholders |
| RRRG 9102 (0223003) | U.S. Terrorism Risk Insurance Act Of 2002 As Amended Not Purchased Clause |

| RRRG 9110 (0120003) | Policyholder Disclosure - Notice Of Terrorism Insurance Coverage |
| RRRG 9130 (0716001) | FAA Regulations Part 103 |
| RRRG 5000-R (0722015) | Flight School Renewal Application |

**AS A CONDITION OF COVERAGE, ALL OPERATIONS MUST ADHERE TO THE MINIMUM ELIGIBILITY REQUIREMENTS APPLICABLE TO THE INSURED**

**THIS INSURANCE POLICY DOES NOT AUTOMATICALLY RENEW**

**Issue Date:** 07/12/2023

**Authorized Representative:**



NOTICE

**This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.**

# Flight School/Park Commercial General Liability and Professional Liability Insurance

The terms of this Flight School/Park Commercial General Liability and Professional Liability Insurance policy (**This Insurance Policy**) are specially negotiated and crafted terms assembled by **Your risk retention group** (**Recreation Risk Retention Group, Inc.**) to serve the unique insurance needs of its members involved in the sports of **"hang gliding"**, **"paragliding", and "powered paragliding"**. This kind of insurance policy is commonly known as a manuscript policy. Many of its terms are different from the standard insurance form terms found in most commercial general liability and professional liability insurance policies offered by other insurance companies in order to allow targeted coverage of the risks involved in the sports of **"hang gliding"**, **"paragliding", and "powered paragliding"**.

The terms of **This Insurance Policy** are contractual and not mere recitals.

**IMPORTANT:** The first **Named Insured**'s **"application"** form(s), and the documentation submitted by the first **Named Insured** to obtain **This Insurance Policy** are a part of **This Insurance Policy** and serve as a warranty to **Your risk retention group** that the factual representations made in those forms and documentation are true and correct, and that the first **Named Insured**'s operations are as stated in those forms and documentation.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished by the first **Named Insured** to **Your risk retention group**, including all statements and representations made in the **"application"** form(s) and its attachments and material incorporated therein and made a part thereof, **Your risk retention group** agrees as follows:

Throughout **This Insurance Policy** the words "**You**" and "**Your**" refer ONLY to the first **Named Insured** shown in the **Declarations**. The words "**We**", "**Us**", "**Our**", "**Company**", "**Underwriters**" and "**Your risk retention group**" refer to **Recreation Risk Retention Group, Inc.**, the company providing **This Insurance Policy**.

The word "**Insured**" means any person or organization qualifying as such under **Section V – Who is An Insured**.

Other words and phrases that appear in bold and/or quotation marks have special meaning which **You** can look up in **Section II – Definitions**. Endorsements to **This Insurance Policy** may have additional words and phrases that appear in bold and/or quotation marks within those "**endorsements**" and have special meaning defined within those "**endorsements**".

The coverage provided by **This Insurance Policy** is strictly limited to those activities and operations taking place at those locations and using that equipment specifically listed and scheduled in the **Declarations** and in "**endorsements**" to **This Insurance Policy**. There are a number of different provisions in **This Insurance Policy** that limit and restrict coverage. **You** should read the entire insurance policy, including the **Declarations** and all "**endorsements**" carefully to understand what is and is not covered and to understand **Your** rights and obligations.

**Your risk retention group**'s obligation to cover any "**claims**" or "**suit**" is conditioned on **You** first paying the "**self-insured retention**" set forth in the **Declarations**. Any payment of the "**self-insured retention**" and any payment by **Your risk retention group** of "**defense costs**" or SUPPLEMENTARY PAYMENTS counts towards the limits of liability stated in the **Declarations** and reduces the amount of those limits available for the payment of any "**claim**" against **You** or any other **Insureds**.

## SECTION I - INSURING AGREEMENTS

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    **Insuring Agreement Under Coverage A**

      **a.**    **We** will pay those sums in excess of any applicable "**self-insured retention**" that the **Insured** becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to which this insurance applies.

      **b.**    **We** will have the right and duty to defend the **Insured** against any "**suit**" seeking "**damages**" because of "**bodily injury**" or "**property damage**" to which this insurance applies. However, **We** will have no duty to defend the **Insured** against any "**suit**" seeking "**damages**" for "**bodily injury**" or "**property damage**" to

which this insurance does not apply. **We** may, at **Our** discretion, investigate any "**occurrence**" and settle any "**claim**" or "**suit**" that may result. **We** have the right, but not the duty, to settle any covered "**claim**" or "**suit**" where the proposed settlement amount to be paid as "**damages**" does not exceed the applicable limits as described in **Section IV – Limits Of Insurance**. Any such settlement will be binding on the **Insured** and will not require the **Insured's** consent or ratification. But:

**(1)** The amount **We** pay for "**defense costs**", **SUPPLEMENTARY PAYMENTS**, and/or "**damages**" is limited as describe in **Section IV – Limits Of Insurance**; and

**(2)** **Our** right and duty to defend end when:

   **(i)** **We** have used up the applicable limit of insurance in the payment of "**defense costs**", **SUPPLEMENTARY PAYMENTS**, judgments and/or settlements under **Coverage A, B, D** or **E** or medical expenses under **Coverage C**; or

   **(ii)** **We** discover that first **Named Insured's** "**application**" form(s), and documentation submitted by the first **Named Insured** to obtain this insurance contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements. It does not matter whether the misrepresentation originated from the first **Named Insured**, the first **Named Insured's** broker, the first **Named Insured's** agent, or any other **Insured**. It further, does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

   **(iii)** **You** fail or refuse to fulfill **Your** obligation under any applicable "**self-insured retention**" in a timely manner; or

   **(iv)** **You** or any other **Insured** violate some other condition of coverage that is set out in **This Insurance Policy**.

**We** have the exclusive right to designate and appoint legal counsel to represent the **Insureds** and to control the defense.

**c.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION I – INSURING AGREEMENTS, SUPPLEMENTARY PAYMENTS – COVERAGES A, B, D and E.**

**d.** This insurance applies to "**bodily injury**" and "**property damage**" only if:

**(1)** The "**bodily injury**" or "**property damage**" is caused by an "**occurrence**" that takes place in the "**coverage territory**"; and

**(2)** The "**bodily injury**" or "**property damage**" occurs during the "**policy period**"; and

**(3)** Prior to the "**policy period**", no **Insured** listed under Paragraph 1. of **Section V - Who Is An Insured** and no "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**", knew that the "**bodily injury**" or "**property damage**" had occurred, in whole or in part. If such a listed **Insured** or authorized "**employee**" knew, prior to the "**policy period**", that the "**bodily injury**" or "**property damage**" occurred, then any continuation, change or resumption of such "**bodily injury**" or "**property damage**" during or after the "**policy period**" will be deemed to have been known prior to the "**policy period**"; and

**(4)** The "**bodily injury**" or "**property damage**" arises out of the "**covered activities**" of the **Insured**; and

**(5)** Any applicable "**self-insured retention**" has been timely paid.

**e.** "**Bodily injury**" or "**property damage**" which occurs during the "**policy period**" and was not, prior to the "**policy period**", known to have occurred by any **Insured** listed under Paragraph 1 of **Section V - Who Is An Insured** or any "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**", includes any continuation, change or resumption of that "**bodily injury**" or "**property damage**" after the end of the "**policy period**".

**f.** "**Bodily injury**" or "**property damage**" will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under Paragraph 1. of **Section V - Who Is An Insured** or any "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**":

**(1)** Reports all, or any part, of the "**bodily injury**" or "**property damage**" to **Us** or any other insurer;

**(2)** Receives a written or verbal demand or "**claim**" for "**damages**" because of the "**bodily injury**" or "**property damage**"; or

**(3)** Becomes aware by any other means that "**bodily injury**" or "**property damage**" has occurred or has begun to occur.

**g.** "**Damages**" because of "**bodily injury**" include "**damages**" claimed by any person or organization for care, loss of services or death resulting at any time from the "**bodily injury**".

**2.    Exclusions Under Coverage A**

This insurance does not apply to, and **We** have no obligation to defend any **Insured** against or pay "**damages**" on behalf of any **Insured** under **Coverage A** for any of the following:

**a.    Injury to Participant**

"**Bodily injury**" or "**property damage**", sustained by a "**participant**" as a result of an "**occurrence**" while "**participating in the sports of hang gliding, paragliding or powered paragliding**".

**b.    Injury as a Consequence of Injury to Participant**

"**Bodily injury**" to the spouse, domestic partner, child, parent, brother, sister or other relative of a "**participant**" as a consequence of "**bodily injury**" to that "**participant**" as a result of an "**occurrence**" while the "**participant**" was "**participating in the sports of hang gliding, paragliding or powered paragliding**".

**c.    Expected Or Intended Injury**

"**Bodily injury**" or "**property damage**" expected or intended from the standpoint of the **Insured**. This exclusion does not apply to "**bodily injury**" resulting from the use of reasonable force to protect persons or property.  This exclusion does apply to "**Bodily injury**" or "**property damage**" which a reasonable person would conclude or should conclude is highly probable to result from the **Insured**'s intentional act, even if the act was not done with the intention of causing any harm.

**d.    Contractual Liability**

"**Bodily injury**" or "**property damage**" for which the **Insured** is obligated to pay "**damages**" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "**damages**":

**(1)**    That the **Insured** would have in the absence of the contract or agreement; or

**(2)**    Assumed in a contract or agreement that is an "**insured contract**", provided the "**bodily injury**" or "**property damage**" occurs subsequent to the execution of the contract or agreement and is not otherwise excluded under any other applicable exclusion. Solely for the purposes of liability assumed in an "**insured contract**", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be "**damages**" because of "**bodily injury**" or "**property damage**", provided:

**(i)**    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "**insured contract**"; and

**(ii)**    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which "**damages**" to which this insurance applies are alleged.

**e.    Liquor Liability**

"**Bodily injury**" or "**property damage**" for which any **Insured** may be held liable by reason of:

**(1)**    Causing or contributing to the intoxication of any person by alcohol; or

**(2)**    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)**    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages; or

**(4)**    The use of alcohol by anyone, including, but not limited to, any "**student**", "**Named Insured's authorized instructor**", "**employee**", "**volunteer worker**", independent contractor, or agent of any **Insured**..

**f.    Marijuana, "Controlled Substance", or "Over-the-Counter Medication" Liability**

"**Bodily injury**" or "**property damage**" for which any **Insured** may be held liable by reason of:

**(1)**    Causing or contributing to the intoxication of any person by Marijuana, a "**Controlled Substance**" or an "**Over-the-Counter Medication**"; or

**(2)**    The furnishing of Marijuana, a "**Controlled Substance**" or an "**Over-the-Counter Medication**" to persons under the legal age of consumption or under the influence of such Marijuana, "**Controlled Substance**" or "**Over-the-Counter Medication**"; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of Marijuana , "**Controlled Substance**" or "**Over-the-Counter Medication**".

**(4)** The use of Marijuana, any "**Controlled Substance**" or any "**Over-the-Counter Medication**" by anyone, including, but not limited to, any "**student**", "**Named Insured's authorized instructor**", "**employee**", "**volunteer worker**", independent contractor, or agent of any **Insured**.

**g.    Workers' Compensation and Similar Laws**

Any obligation of any **Insured** under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

This exclusion applies:

**(1)** Whether the **Insured** may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay an obligation under a workers' compensation, disability benefits or unemployment compensation law or any similar law, including damages awarded for contribution or indemnity; and

**(3)** To liability assumed by any **Insured** under an "**insured contract**" for the payment of any obligation under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**h.    Employer's Liability**

"**Bodily injury**" to:

**(1)** An "**employee**" of any **Insured** "**arising out of**" and in the course of:

    **(i)** Employment by any **Insured**; or

    **(ii)** Performing duties related to the conduct of any **Insured**'s business; or

**(2)** Any "**volunteer worker**", "**temporary worker**", or "**Named Insured's authorized instructor**" of any **Insured** "**arising out of**" or in the course of the rendering or performing services of any kind or nature whatsoever by such "**volunteer worker**", "**temporary worker**", or "**Named Insured's authorized instructor**" for which any **Insured**s may become liable in any capacity; or

**(3)** Any spouse, domestic partner, child, parent, brother, sister or other relative of any "**employee**" of any insured, or of any "**volunteer worker**", "**temporary worker**", or "**Named Insured's authorized instructor**", as a consequence of any injury to any person as set forth in paragraphs (1) or (2) of this exclusion.

This exclusion applies:

**(A)** Whether the **Insured** may be liable as an employer or in any other capacity; and

**(B)** To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

**(C)** To liability assumed by the **Insured** under an "**insured contract**".

**i.    Pollution**

**(1)** "**Bodily injury**" or "**property damage**" or "**personal and advertising injury**" which would not have occurred in whole or part but for the actual, alleged, or threatened handling, storage, disposal, processing, treatment, exposure to, discharge, dispersal, seepage, migration, release, or escape of "**pollutants**" at any time.

**(2)** Any loss, cost or expense "**arising out of**" any:

    **(i)** Request, demand or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "**pollutants**"; or

    **(ii)** Claim or "**suit**" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "**pollutants**".

"**Pollutant**" cleanup costs incurred by any **Insured** do not constitute "**property damages**".

**j.    Aircraft, Auto Or Watercraft**

"**Bodily injury**" or "**property damage**" "**arising out of**" the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any "**aircraft**", "**auto**" or watercraft.

This exclusion applies even if the "**claims**" against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the "**occurrence**" which caused the "**bodily injury**" or "**property damage**" involved the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any "**aircraft**", "**auto**" or watercraft.

This exclusion does not apply to:

**(1)**    An unpowered Ultralight Vehicle (as defined by Federal Aviation Regulations, Part 103, Section 103.1(a)-(d) or exempted from compliance from one or more of subsections (a), (b), (c), or (d) of Section 103.1 by one or more exemptions granted to "**USHPA**" by the Federal Aviation Administration), provided that:

    **(i)**    At the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**", the unpowered Ultralight Vehicle was being operated in compliance with the Daylight Operations restriction set forth in Federal Aviation Regulations, Part 103, Section 103.11, or under an exemption to such Daylight Operations restriction granted to "**USHPA**" by the Federal Aviation Administration; and

    **(ii)**    At the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**", the unpowered Ultralight Vehicle was being operated in compliance with the airspace restrictions set forth in Federal Aviation Regulations, Part 103, Section 103.15, Section 103.17, 103.19, 103.20, 103.21, and 103.23, or under an exemption to such airspace restrictions granted to "**USHPA**" by the Federal Aviation Administration; and

    **(iii)**    If at the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**", the flight was conducted pursuant to one or more exemptions granted to "**USHPA**" by the Federal Aviation Administration:

        (A)    the flight was conducted in full compliance with all requirements of the exemption; and

        (B)    the flight was conducted in full compliance with all requirements of of "**USHPA**" for the operation of flights made by authorization of "**USHPA**" under its exemption; and

        (C)    any flight conducted under an exemption to Part 103, Section 1.03.1(a) (the single occupant restriction) is conducted on a "**tandem paraglider**" or a "**hang glider**"; and

    **(iv)**    At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the unpowered Ultralight Vehicle was not utilizing a "**Propulsion Device**".; and

    **(v)**    At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the unpowered Ultralight Vehicle was not engaged in any "**aerobatic maneuver**"; and

    **(vi)**    At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the Unpowered Ultralight Vehicle was operating an Unpowered Ultralight Vehicle designated by the manufacturer of that Vehicle to be suitable for operation by a pilot with the skill level equal to that required for the Flight Proficiency Rating possessed by the Pilot; and

    **(vii)**    At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the Unpowered Ultralight Vehicle was not operating at a location designated by the location's managing "**USHPA**" Chapter and/or landowner as requiring a minimum pilot Flight Proficiency Rating greater than the possessed by the pilot in command, unless the pilot in command is conducting operations under the direct and continuous supervision of an instructor certified by "**USHPA**" for the wing type, special skill, and manner of flight (i.e. solo/tandem) and the managing "**USHPA**" Chapter and/or landowner has authorized such supervised operations; and

    **(viii)**    At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the unpowered Ultralight Vehicle:

        **(A)**    Is a current member of "**USHPA**" who:

            **1)**    does not possess any current, unexpired, un-revoked, un-suspended Flight Proficiency Rating issued by "**USHPA**" for the wing type being operated ("**full size paraglider**", "**mini wing**", "**speed wing**" or "**hang glider**"); and

**2)**  is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Basic Instructor or Advanced Instructor Rating in the wing type being taught ("**full size paraglider**", "**mini wing**", "**speed wing**" or "**hang glider**") and any required special skill endorsement(s) issued by "**USHPA**", which rating has been issued or renewed within 36 months of the "**occurrence**"; and

**3)**  is operating within the operational limitations for unrated student pilots and for the instruction of such pilots, as established by "**USHPA**"; or

**(B)**  Is a current member of "**USHPA**" who:

**1)**  Either:

**a)**  if operating a "**full size paraglider**", possesses a current, unexpired, un-revoked, un-suspended P1, M1 or S1 Flight Proficiency Rating issued by "**USHPA**"; or

**b)**  if operating a "**mini wing**",

**i)**  operates the "**mini wing**" with a "**wing loading**" of less than 4.99; and

**ii)**  possesses a current, unexpired, un-revoked, un-suspended M1 or S1 Flight Proficiency Rating issued by "**USHPA**"; or

**d)**  if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H1 Flight Proficiency Rating issued by "**USHPA**"; and

**2)**  is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Basic Instructor or Advanced Instructor Rating in the wing type being taught ("**full size paraglider**", "**mini wing**", "**speed wing**" or "**hang glider**") and any required special skill endorsement(s) issued by "**USHPA**", which rating has been issued or renewed within 36 months of the "**occurrence**"; and

**3)**  is operating within the recommended operational limitations applicable to the flight proficiency rating and special skill endorsement(s) of the pilot and for the instruction of such pilots, as established by "**USHPA**"; or

**(C)**  Is a current member of "**USHPA**" who:

**1)**  Either:

**a)**  if operating a "**full size paraglider**", possesses a current, unexpired, un-revoked, un-suspended P2, M2 or S2 Flight Proficiency Rating issued by "**USHPA**"; or

**b)**  if operating a "**mini wing**",

**i)**  operates the "**mini wing**" with a "wing loading" of less 6.80; and

**ii)**  possesses a current, unexpired, un-revoked, un-suspended M2 or S2 Flight Proficiency Rating issued by "**USHPA**"; or

**c)**  if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H2 Flight Proficiency Rating issued by "**USHPA**"; and

**2)**  Either:

**a)**

**i)**  is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Basic Instructor

or Advanced Instructor Rating in the wing type being taught ("**full size paraglider**", "**mini wing**", "**speed wing**" or "**hang glider**") and any required special skill endorsement(s) issued by "**USHPA**", which rating has been issued or renewed within 36 months of the "**occurrence**"; and

    **ii)**    is operating within the recommended operational limitations applicable to such training flights conducted under the direct supervision of an instructor, as established by "**USHPA**"; OR

  **b)**    is operating within the recommended operational limitations applicable to the flight proficiency rating and special skill endorsement(s) of the pilot, as established by "**USHPA**"; or

**(D)**    Is a current member of "**USHPA**" who:

  **1)**    Either:

    **a)**    if operating a "**full size paraglider**", possesses a current, unexpired, un-revoked, un-suspended P3, P4, P5, S3, or S4 Flight Proficiency Rating issued by "**USHPA**"; or

    **b)**    if operating a "**speed wing**", possesses a current, unexpired, un-revoked, un-suspended S3 or S4 Flight Proficiency Rating issued by "**USHPA**"; or

    **c)**    if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H3, H4, or H5 Flight Proficiency Rating issued by "**USHPA**"; and

  **2)**    Either:

    **a)**

        **i)**    is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Advanced Instructor Rating in the wing type being taught ("**full size paraglider**", "**speed wing**" or "**hang glider**") and any required special skill endorsement(s) issued by "**USHPA**", which rating has been issued or renewed within 36 months of the "**occurrence**"; and

        **ii)**    is operating within the recommended operational limitations applicable to such training flights conducted under the direct supervision of an instructor, as established by "USHPA"; OR

    **b)**    is operating within the recommended operational limitations applicable to the flight proficiency rating and special skill endorsement(s) of the pilot, as established by "**USHPA**"; or

**(E)**    Is a current member of "**USHPA**" who:

  **1)**    Either:

    **a)**    if operating a "tandem **paraglider**", possesses a current, unexpired, un-revoked, un-suspended P4, or P5 Flight Proficiency Rating issued by "**USHPA**"; or

    **b)**    if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H4, or H5 Flight Proficiency Rating issued by "**USHPA**"; and

  **2)**    is operating as tandem pilot in training in the capacity of pilot in command of a two place (tandem) flight under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Tandem Administrator appointment issued by "**USHPA**" in the wing type being taught ("**full size paraglider**", or "**hang glider**") and for the launch type (Foot Launch, Platform Launch, Surface Tow Launch, or Aerotow Launch) being

utilized, and for the landing method (Foot Landings, and/or Landing Gear) being utilized, which appointment has been issued or renewed within 36 months of the **"occurrence"**; and

**3)**    is operating within the recommended operational limitations applicable to such training flights conducted under the direct supervision of a Tandem Administrator, as established by **"USHPA"**; and

**4)**    is utilizing tandem equipment that complies with the recommended tandem equipment requirements as established by **"USHPA"**; or

**(F)**    Is a current member of **"USHPA"** who:

    **1)**    Either:

        **a)**    if operating a "tandem **paraglider**", possesses a current, unexpired, un-revoked, un-suspended P4, or P5 Flight Proficiency Rating issued by **"USHPA"**; or

        **b)**    if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H4, or H5 Flight Proficiency Rating issued by **"USHPA"**; and

    **2)**    possess a current, unexpired, un-revoked, un-suspended Tandem 1 (T1) Rating issued by **"USHPA"** for the wing type being piloted ("**tandem paraglider**", or "**hang glider**") and for the launch type (Foot Launch, Platform Launch, Surface Tow Launch, or Aerotow Launch) being utilized, and for the landing method (Foot Landings, and/or Landing Gear) being utilized;

    **3)**    is operating as tandem pilot in training in the capacity of pilot in command of a two place (tandem) flight with a tandem passenger who has a current, unexpired, un-revoked, un-suspended Flight Proficiency Rating of H2, H3, H4, or H5 (if piloting a "**hang glider**") or M2, S3, S4, P2, P3, P4, or P5 (if piloting a "**tandem paraglider**") issued by **"USHPA"**;

    **4)**    is operating within the recommended operational limitations applicable to such Tandem 1 (T1) pilots for training flights conducted outside of the direct supervision of a Tandem Administrator, as established by **"USHPA"**; and

    **5)**    is utilizing tandem equipment that complies with the recommended tandem equipment requirements as established by **"USHPA"**; or

**(G)**    Is a current member of **"USHPA"** who:

    **1)**    Either:

        **a)**    if operating a "**tandem paraglider**", possesses a current, unexpired, un-revoked, un-suspended P4, or P5 Flight Proficiency Rating issued by **"USHPA"**; or

        **b)**    if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H4, or H5 Flight Proficiency Rating issued by **"USHPA"**; and

    **2)**    possess a current, unexpired, un-revoked, un-suspended Tandem Instructor Rating issued by **"USHPA"** for the wing type being piloted ("**tandem paraglider**", or "**hang glider**") and for the launch type (Foot Launch, Platform Launch, Surface Tow Launch, or Aerotow Launch) being utilized, and for the landing method (Foot Landings, and/or Landing Gear) being utilized;

    **3)**    is operating as Tandem Instructor in the capacity of pilot in command of a two place (tandem) flight with a tandem student passenger who has a current, unexpired, un-revoked, un-suspended Flight Proficiency Rating of H0, H1, H2, H3, H4, or H5 (if piloting a "**hang glider**") or P0, P1, P2, P3, P4, P5, M1, M2, S1, S2, S3 or S4 (if piloting a "**tandem paraglider**") issued by **"USHPA"**; and

    **4)**    is operating within the recommended operational restrictions and limitations applicable to Tandem Instructors in conducting tandem flights, as established by **"USHPA"**; and

**5)** is utilizing tandem equipment that complies with the recommended tandem equipment requirements as established by "**USHPA**";

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all unpowered Ultralight Vehicles in all other circumstances.

**(2)** A "**Scheduled Powered Ultralight Vehicle**", owned or used by or rented to the first **Named Insured**, but only:

**(i)** during the limited time that it is being used to tow launch an unpowered Ultralight Vehicle, exempted from exclusion under the conditions set forth in paragraph (1) above, and pursuant to specific authorization granted by the United States Hang Gliding and Paragliding Association, Inc. to the pilot of the powered Ultralight Vehicle under a current and valid exemption granted to the United States Hang Gliding and Paragliding Association, Inc. by the Federal Aviation Administration allowing the towing of unpowered Ultralight Vehicles by powered Ultralight Vehicles; and

**(ii)** during the limited time that it is operated in in full compliance with all requirements of the United States Hang Gliding and Paragliding Association, Inc. for the operation of flights made by authorization of the United States Hang Gliding and Paragliding Association, Inc. under its exemption; and

**(iii)** so long as the powered Ultralight Vehicle's flight is made for the sole and exclusive purpose of launching an unpowered Ultralight Vehicle and the flight does not extend beyond that purpose.

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all powered Ultralight Vehicles that are not "**Scheduled Powered Ultralight Vehicles**" and are not otherwise exempted from this Exclusion j. as a "**Powered Paraglider**" below.

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all powered Ultralight Vehicles, whether or not "**Scheduled Powered Ultralight Vehicles**", in all other circumstances, unless otherwise exempted from this Exclusion j. as a "**Powered Paraglider**" below.

**(3)** A "**Scheduled Light-Sport Aircraft**", owned or used by or rented to the first **Named Insured**, but only:

**(i)** during the limited time that it is being used to tow launch an unpowered Ultralight Vehicle, exempted from exclusion under the conditions set forth in paragraph (1) above; and

**(ii)** during the limited time that it is operated in in full compliance with all requirements of the United States Hang Gliding and Paragliding Association, Inc. related to tow launch of unpowered Ultralight Vehicles utilizing Light Sport Aircraft; and

**(iii)** so long as the Light Sport Aircraft's flight is made for the sole and exclusive purpose of launching an unpowered Ultralight Vehicle and the flight does not extend beyond that purpose.

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all Light Sport Aircraft that are not "**Scheduled Light-Sport Aircraft**".

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all Light Sport Aircraft, whether or not "**Scheduled Light-Sport Aircraft**", in all other circumstances.

**(4)** A watercraft while ashore on premises **You** own or rent;

**(5)** A "**Scheduled Watercraft**", owned or used by or rented to the first **Named Insured**, on which a "**Scheduled Tow Device**" is mounted, but only:

**(i)** during the limited time that the watercraft is being used, with its mounted tow device, to tow launch an unpowered Ultralight Vehicle, exempted from exclusion under the conditions set forth in paragraph (1) above; and

**(ii)** during the limited time that the watercraft and mounted tow device are operated in full compliance with all requirements of the United States Hang Gliding and Paragliding Association, Inc. related to tow launch of unpowered Ultralight Vehicles utilizing tow devices mounted on watercraft; and

**(iii)** so long as the watercraft's voyage is made for the sole and exclusive purpose of launching an unpowered Ultralight Vehicle and the voyage does not extend beyond that purpose; and

**(iv)** so long as there is other valid and collectible liability insurance issued and outstanding under which the Watercraft is insured as primary insurance with limits of at least $100,000 Per Person Per Occurrence.

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all watercraft that are not "**Scheduled Watercraft**".

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all watercraft, whether or not "**Scheduled Watercraft**", in all other circumstances.

**(6)** A "**Scheduled Auto**", owned or used by or rented to the first **Named Insured**, on which a "**Schedule Tow Device**" is mounted, but only:

**(i)** during the limited time that the "**Scheduled Auto**" is being used, with its mounted "**Scheduled Tow Device**", to tow launch an unpowered Ultralight Vehicle, exempted from exclusion under the conditions set forth in paragraph (1) above; and

**(ii)** during the limited time that the "**Scheduled Auto**" and mounted "**Scheduled Tow Device**" are operated in full compliance with all requirements of the United States Hang Gliding and Paragliding Association, Inc. related to tow launch of unpowered Ultralight Vehicles utilizing tow devices mounted on "**autos**"; and

**(iii)** so long as the "**Scheduled Auto's**" trip is made for the sole and exclusive purpose of launching an unpowered Ultralight Vehicle and the trip does not extend beyond that purpose; and

**(iv)** so long as there is other valid and collectible liability insurance issued and outstanding under which the "**Scheduled Auto**" is insured as primary insurance with limits of at least $100,000 Per Person Per Occurrence.

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all "**autos**" that are not "**Scheduled Autos**".

This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all "**autos**", whether or not "**Scheduled Autos**", in all other circumstances.

**(7)** Parking an "**auto**" on, or on the ways next to, premises that the first **Named Insured** owns or rents, provided the "**auto**" is not owned by or rented or loaned to the first **Named Insured** or any other **Insured**;

**(8)** A "**Powered Paraglider**" provided that:

**(i)** At the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**", the "**Powered Paraglider**" was being operated in compliance with the Daylight Operations restriction set forth in Federal Aviation Regulations, Part 103, Section 103.11; and

**(ii)** At the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**", the "**Powered Paraglider**" was being operated in compliance with the restrictions set forth in Federal Aviation Regulations, Part 103, Section 103.13, Section 103.15, Section 103.17, 103.19, 103.20, 103.21, and 103.23; and

**(iii)** If, at the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**", the flight was conducted pursuant to one or more exemptions granted to "**USPPA**" by the Federal Aviation Administration, then the flight was conducted in full compliance with all requirements of "**USPPA**" for the operation of flights made by authorization of "**USPPA**" under its exemption; and

**(iv)** At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the "**Powered Paraglider**" was not engaged in any "**aerobatic maneuver**"; and

**(v)** At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the "**Powered Paraglider**":

**(A)** Is a current member of "**USPPA**" who:

**1)** does not possess any current PPG Solo Rating issued by "**USPPA**"; and

**2)** is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended PPG Instructor Rating issued by "**USPPA**" for the launch type(s) utilized (i.e. foot launch or wheel launch), which rating has been issued or renewed within 36 months of the "**occurrence**"; and

**3)** is operating by way of training flights that strictly adhere to the Best Practices for Paramotor Training as established by "**USPPA**"; and

**4)** is operating within the operational limitations for unrated student pilots as established by "**USPPA**"; or

**(B)** Is a current member of "**USPPA**" who:

**1)** possesses a current PPG 1 Solo Rating issued by "**USPPA**" which has been issued or renewed within 36 months of the "**occurrence**"; and

**2)** is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended PPG Instructor Rating issued by "**USPPA**" for the launch type(s) utilized (i.e. foot launch or wheel launch), which rating has been issued or renewed within 36 months of the "**occurrence**"; and

**3)** is operating by way of training flights that strictly adhere to the Best Practices for Paramotor Training as established by "**USPPA**"; and

**4)** is operating within the operational limitations for PPG 1 Solo Rated pilots for the launch type(s) for which the pilot has been rated (i.e. foot launch or wheel launch), as established by the"**USPPA**"; or

**(C)** Is a current member of "**USPPA**" who:

**1)** who possesses a current PPG 2 Solo Rating issued by "**USPPA**" which has been issued or renewed within 36 months of the "**occurrence**"; and

**2)** Either:

**a)** is operating within the operational limitations for PPG 2 Solo Rated pilots for the launch type(s) for which the pilot has been rated (i.e. foot launch or wheel launch), as established by "**USPPA**"; or

**b)**

**i)** is operating within the operational limitations for PPG 2 Solo Rated pilots in training as established by "**USPPA**"; and

**ii)** is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended PPG Instructor Rating issued by "**USPPA**" for the launch type(s) utilized (i.e. foot launch or wheel launch), which rating has been issued or renewed within 36 months of the "**occurrence**"; and

**iii)** is operating by way of training flights that strictly adhere to the Best Practices for Paramotor Training as established by "**USPPA**";

**(D)** Is a current member of "**USPPA**" who:

**1)** possesses a current PPG 3 Solo Rating issued by "**USPPA**" which has been issued or renewed within 36 months of the "**occurrence**"; and

**2)** is operating within the operational limitations for PPG 3 Solo Rated pilots for the launch type(s) for which the pilot has been rated (i.e. foot launch or wheel launch), as established by "**USPPA**";

**3)** is not operating in wind conditions for which a "**USPPA**" High Wind Rating is applicable, or, alternatively, possesses a "**USPPA**" High Wind Rating;

**(E)** Is a current member of "**USPPA**" who:

**1)** possesses a current PPG 3 Solo Rating issued by "**USPPA**" which has been issued or renewed within 36 months of the "**occurrence**"; and

**2)** is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended PPG Instructor Administrator Rating issued by "**USPPA**" for

the launch type(s) utilized (i.e. foot launch or wheel launch), which rating has been issued or renewed within 36 months of the **"occurrence"**; and

**3)** is operating within the operational limitations for PPG 3 Solo Rated pilots in training to become instructors for the launch type(s) for which the pilot has been rated (i.e. foot launch or wheel launch),as established by **"USPPA"**;

**(F)** Is a current member of **"USPPA"** who:

**1)** possesses a current PPG 3 Solo Rating issued by **"USPPA"** which has been issued or renewed within 36 months of the **"occurrence"**; and

**2)** possesses a current PPG Instructor Rating issued by **"USPPA"** which has been issued or renewed within 36 months of the **"occurrence"**; and

**3)** is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended PPG Tandem Instructor or Tandem Administrator Rating issued by **"USPPA"** for the launch type(s) utilized (i.e. foot launch or wheel launch), which rating has been issued or renewed within 36 months of the **"occurrence"**; and

**4)** is operating within the operational limitations for PPG Instructor Rated pilots in training to become Tandem Instructors for the launch type(s) for which the pilot has been rated (i.e. foot launch or wheel launch),as established by **"USPPA"**;

**(G)** Is a current member of **"USPPA"** who:

**1)** possesses a current PPG 3 Solo Rating issued by **"USPPA"** which has been issued or renewed within 36 months of the **"occurrence"**; and

**2)** possesses a current PPG Instructor Rating issued by **"USPPA"** which has been issued or renewed within 36 months of the **"occurrence"**; and

**3)** possesses a current PPG Tandem Trainee Rating issued by **"USPPA"** which has been issued or renewed within the shorter of 30 tandem trainee flights, or 12 months before the **"occurrence"**; and

**4)** is operating within the operational limitations for PPG Tandem Trainee Rated pilots in training to become Tandem Instructors for the launch type(s) for which the pilot has been rated (i.e. foot launch or wheel launch),as established by **"USPPA"**;

**(H)** Is a current member of **"USPPA"** who:

**1)** possesses a current PPG 3 Solo Rating issued by **"USPPA"** which has been issued or renewed within 36 months of the **"occurrence"**; and

**2)** possesses a current PPG Instructor Rating issued by **"USPPA"** which has been issued or renewed within 36 months of the **"occurrence"**; and

**3)** possesses a current PPG Tandem Instructor Rating issued by **"USPPA"** which has been issued or renewed within 24 months before the **"occurrence"**; and

**4)** is operating within the operational limitations for PPG Tandem Instructor Rated pilots for the launch type(s) for which the pilot has been rated (i.e. foot launch or wheel launch),as established by **"USPPA"**;

This Exclusion j. of Exclusions Under Coverage A shall continue to apply to all **"Powered Paragliders"** in all other circumstances.

**k.    Mobile Equipment**

"**Bodily injury**" or "**property damage**" **"arising out of"** the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", or entrustment to others of any "**mobile equipment**".

This exclusion does not apply to:

**(1)** A "**Scheduled ATV Tow Device**" when utilized solely for the purpose of tow launching "**hang**

**gliders** or **paragliders**, so long as the operation of the "**scheduled ATV Tow Device**" is in compliance with the following first **Named Insured**'s documents on file with Us:

    **(i)**    ATV Operator Pre Flight Checklist;

    **(ii)**    Pilot's Pre Flight Checklist;

    **(iii)**    Flight School ATV Tow Device Standard Operating Procedure;

    **(iv)**    Flight School ATV Tow Device Training Syllabus;

    **(v)**    Flight School ATV Tow Device Insurance Application; and

    **(vi)**    Any restrictions set forth in the endorsement scheduling the ATV Tow Device.

**l.**    **War**

"**Bodily injury**" or "**property damage**" or "**personal and advertising injury**", however caused, arising, directly or indirectly, out of, happening through or in consequence of:

**(1)**    War, including undeclared or civil war, hostilities (whether war be declared or not);

**(2)**    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)**    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)**    Invasion, or acts of foreign enemies; or

**(5)**    Confiscation or national Confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority or government de jure or defacto; or

**(6)**    Martial law; or

**(7)**    Riots, strikes, or civil commotion.

**m.**    **Damage to Property**

"**Property damage**" to:

**(1)**    Property any **Insured** own, rents or occupies, including any costs or expenses incurred by any **Insured**, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

**(2)**    Premises any **Insured** sells, gives away or abandons, if the "**property damage**" arises out of any part of those premises;

**(3)**    Property loaned to any **Insured**;

**(4)**    Personal property in the care, custody or control of any **Insured**, except for hang gliders, paragliders and associated gear owned by customers of the first **Named Insured** that are being stored pursuant to glider and gear storage operations of the first **Named Insured** if such storage operations are listed on an "**endorsement**" to **This Insurance Policy** as "**covered activities**";

**(5)**    That particular part of real property on which any **Insured** or any contractors or subcontractors working directly or indirectly on the first **Named Insured's** behalf are performing operations, if the "**property damage**" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "**your work**" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "**property damage**" (other than damage by fire) to premises, including the contents of such premises, rented to **You** for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To **You** as described in Section III – Limits Of Insurance.

**n.**    **Damage To Your Product**

"**Property damage**" to "**your product**" "**arising out of**" it or any part of it.

**o.**    **Damage To Your Work**

"**Property damage**" to "**your work**" "**arising out of**" it or any part of it and included in the "**products-completed operations hazard**".

**p.**   **Damage To Impaired Property Or Property Not Physically Injured**

"**Property damage**" to "**impaired property**" or property that has not been physically injured, "**arising out of**":

**(1)**   A defect deficiency, inadequacy or dangerous condition in "**your product**" or "**your work**"; or

**(2)**   A delay or failure by **You** or anyone acting on **Your** behalf to perform a contract or agreement in accordance with its terms.

**q.**   **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by **You** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**   "**Your product**",

**(2)**   "**Your work**"; or

**(3)**   "**Impaired property**";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**r.**   **Personal And Advertising Injury**

"**Bodily injury**" "**arising out of**" "**personal and advertising injury**".

**s.**   **Data**

Damages "**arising out of**" the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate data.

As used in this exclusion, "**Data**" means:

**(1)**   Information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, Compact Discs, Digital Video Discs, tapes, drives, solid state devices, cell phones, biological cells, data processing devices or any other media which are used with electronically controlled equipment; and

**(2)**   Information, facts or programs stored as or on, created or used on, or transmitted to or from any non-electronic means, including, but not limited to, handwritten or printed data on paper.

**t.**   **Bodily Injury To Insured And Family Members**

"**Bodily injury**" to:

**(1)**   Any **Insured** "**arising out of**" the conduct of the first **Named Insured**'s business, whether or not the conduct of business constitutes "**covered activities**"; or

**(2)**   The spouse, domestic partner, child, parent, brother, sister or other relative of any **Insured** as a consequence of any "**bodily injury**" to that **Insured**; or

**(3)**   Any **Family Member of any Insured**", "**arising out of**" the conduct of the first **Named Insured**'s business, whether or not the conduct of business constitutes "**covered activities**"; or

**(4)**   The spouse, domestic partner, child, parent, brother, sister or other relative of any "**Family Member of any Insured**" as a consequence of any "**bodily injury**" to that "**Family Member of any Insured**".

This exclusion applies:

**(A)**   Whether an **Insured** may be liable as an employer or in any other capacity; and

**(B)**   To any obligation to share damages with or repay someone else who must pay damages because of the injury, including damages awarded for contribution or indemnity.

As used in this exclusion, the term "**Family Member of any Insured**" means the spouse, domestic partner, child, parent, brother, sister or other relative of any "**Insured**".

**u.**   **Firearms, Fireworks And Other Pyrotechnic Devices**

**(1)**   "**bodily injury**", "**property damage**", "**personal and advertising injury**" or medical expenses including damages for care and loss of services:

**(i)**   Arising from the ownership, maintenance, handling, igniting, operation, sponsorship, existence, storage, set-up or take-down or other use of:

**(A)**   Firearms, including handguns, revolvers, pistols, rifles, shotguns, air guns,

semi-automatic weapons and similar devices by any **Insured** or by any person for which any **Insured** may be held liable in any capacity; or

**(B)** Fireworks, including firecrackers, Roman Candles, flash powder, explosive compositions or combustible substances, pinwheels, skyrockets, ground displays, flares, smoke bombs, and similar devices that produce, when ignited or activated, sound, smoke, motion or a combination of these by any **Insured** or by any person for which any **Insured** may be held liable in any capacity; or

**(C)** Any material constituting an explosive, or intended for use as an explosive, or which has known explosive properties by any person for which any **Insured** may be held liable in any capacity.

**(2)** Any obligation of any **Insured** to indemnify, defend or contribute jointly or severally with another because of "**bodily injury**", "**property damage**", "**personal and advertising injury**" or medical expenses arising from any of the activities specified in paragraph (1) (i) of this exclusion.

**v.** **Mechanical Device Or Equipment**

"**Bodily injury**" or "**property damage**" "**arising out of**" the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision or entrustment to others of any type of mechanical device or equipment whether or not a person or persons ride upon such device or equipment, are suspended from such device or equipment or are attached in any way to such device or equipment.

This exclusion applies even if the "**claims**" against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the "**occurrence**" which caused the "**bodily injury**" or "**property damage**" involved the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision or entrustment to others of any type of mechanical device or equipment.

This exclusion does not apply to

**(1)** "**Scheduled Tow Devices**" while mounted on a "**Scheduled Auto**" or "**Scheduled Watercraft**" and being operated in payout mode; or

**(2)** "**Scheduled Tow Devices**" while stationary and being operated in pay-in mode.

**w.** **Products-Completed Operations Hazard**

"**Bodily injury**" or "**property damage**" included with the "**products-completed operations hazard**".

**x.** **Punitive or Exemplary Damages**

Any and all "**punitive or exemplary damages**", whether at common law or by statute, awarded against any **Insured**, regardless of whether they are demanded or awarded based upon the conduct of any **Insured** or upon the conduct of others for whose conduct the **Insured** may be deemed to be vicariously liable. However, if a "**suit**" is brought against an **Insured** "**arising out of**" a "**claim**" which alleges both compensatory and "**punitive or exemplary damages**", **We** will defend the entire "**suit**" with the understanding that **We** pay only the compensatory damages.

**y.** **Fungi Or Bacteria**

**(1)** "**Bodily injury**" or "**property damage**" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless or whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)** Any loss, cost or expenses "**arising out of**" the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by an **Insured** or by any other person or entity.

**z.** **Employment Practices**

"Bodily Injury" to:

**(1)** A person "**arising out of**" any:

**(i)** Refusal to employ that person; or

**(ii)** Termination of that person's employment; or

**(iii)** Employment-related practices, policies, acts or omissions, such as coercion, demotion,

evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(iv)** Employment benefit laws affecting an **Insured**; or

**(v)** Employment of any person by an **Insured** in violation of the applicable law limiting the age of employment, or if there is no such law limiting employment age, the employment of any person under the age of 14 by an **Insured**.

**(2)** The spouse, domestic partner, child, parent, brother, sister or other relative of that person as a consequence of "**bodily injury**" to that person at whom any of the employment related practices described in paragraphs (1)(i), (ii), (iii), (iv), or (v) of this exclusion is directed.

This exclusion applies:

**(A)** Whether the injury-causing event described in paragraphs (1)(i), (ii), (iii), (iv), or (v) of this exclusion occurs before employment, during employment or after employment of that person;

**(B)** Whether the **Insured** may be liable as an employer or in any other capacity; and

**(C)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**aa.** **Infringement, Misappropriation, Interference With Privacy And Unfair Competition**

"**Bodily injury**" or "**property damage**" arising directly or indirectly out of:

**(1)** Any infringement upon or dilution of copyright, trademark, patent, title, slogan, service mark, service name, trade name, trade dress, trade secret, or other intellectual property rights;

**(2)** Any invasion or infringement of or interference with the right of privacy or publicity including, but not limited to, intrusion, public disclosure of private facts, unwarranted or wrongful publicity, false light or the use of name or likeness for profit;

**(3)** Plagiarism or misappropriation of information, trade secrets, ideas or style of doing business;

**(4)** "**Unfair competition**" as defined by statute or common law, both state and federal, whether or not pertaining to and alleged in conjunction with a claim of plagiarism, misappropriation of information or ideas, "**piracy**", infringement or dilution of copyright, title, slogan, trademark, trade name, trade dress, trade secret, patent, service mark, service name, or other intellectual property rights;

**(5)** Any acts of the **Insured** pertaining to the Internet, web site(s), social media, apps, domain name(s), metatag(s), linking, framing, chatrooms, bulletin boards, forums, blogs, that the **Insured** hosts, owns or contributes to, or over which the **Insured** exercises any control, or through which the **Insured** performs any marketing.

**bb.** **Professional Liability Exclusion**

"**Bodily injury**", or "**property damage**", or "**personal and advertising injury**" that arises out of the rendering of or failure to render advice, instruction or direction in connection with a training program for either recreational or certification purposes, including, but not limited to instruction in the activity of "**hang gliding**", "**paragliding**", "**powered paragliding**" or any other recreational activities.

**cc.** **Abuse Or Molestation Exclusion**

"**Bodily injury**", or "**property damage**", or "**personal and advertising injury**" or any other injury "**arising out of**":

**(1)** The actual, alleged, or threatened abuse or molestation or harassment or licentious, immoral or sexual behavior whether or not intended to lead to, or culminating in any sexual act, of any person, whether caused by, or at the instigation of, or at the direction of, or omission by, any **Insured**, his "**employees**", "**volunteer workers**", "**temporary workers**", or "**Named Insured's authorized instructors**", agents, patrons, patients, guests or any other person; or

**(2)** The actual or alleged transmission of any communicable disease; or

**(3)** Charges or allegations of negligent hiring, entrustment, employment, placement, training, investigation, supervision, reporting to the proper authorities, or failure to so report, failure to provide adequate security, or retention of a person for whom any **Insured** is or ever was legally responsible and whose conduct would be excluded by paragraph (1) of this exclusion; or

**(4)** Charges of intentional, negligent or reckless conduct which facilitated or permitted the sexual activity to occur.

This exclusion applies whether or not the "**bodily injury**", "**property damage**", "**personal and**

advertising injury" or any other injury sustained by any person as a result of such activity was expected or intended by the person who engaged in the activity.

Abuse includes, but is not limited to, negligent or intentional infliction of physical, emotional or psychological injury/harm.

**dd.** **Willful Violation Of Penal Statute**

"**bodily injury**" or "**property damage**" "**arising out of**" the willful violation of a penal statute or ordinance by any **Insured**.

**ee.** **Conduct Out Of Course And Scope Of Duties**

**(1)** "**bodily injury**" or "**property damage**" "**arising out of**" the acts of an **Insured**'s "**employees**" where those acts are outside the course and scope of employment; and

**(2)** "**bodily injury**" or "**property damage**" "**arising out of**" the acts of an **Insured**'s "**volunteer workers**", "**temporary workers**", or "**Named Insured's authorized instructors**" where those acts are outside the scope of the duties of the "**volunteer workers**", "**temporary workers**", or "**Named Insured's authorized instructors**".

**ff.** **Assault and Battery**

"**Bodily injury**", or "**property damage**", or "**personal and advertising injury**" or any other injury "**arising out of**":

**(1)** The actual, alleged, or threatened assault and/or battery, whether caused by, or at the instigation of, or at the direction of, or omission by, any **Insured**, his "**employees**", "**volunteer workers**", "**temporary workers**", or "**Named Insured's authorized instructors**", agents, patrons, patients, guests or any other person; or

**(2)** Charges or allegations of negligent hiring, entrustment, employment, placement, training, investigation, supervision, reporting to the proper authorities, or failure to so report, failure to provide adequate security, or retention of a person for whom any **Insured** is or ever was legally responsible and whose conduct would be excluded by paragraph (1) of this exclusion.

This exclusion applies whether or not the "**bodily injury**", "**property damage**", "**personal and advertising injury**" or any other injury sustained by any person as a result of such activity was expected or intended by the person who engaged in the activity.

**gg.** **Liability arising out of ownership of land**

"**Bodily injury**" or "**property damage**" for which the **Insured** may be held liable solely due to the **Insured**'s interest as an owner, lessor, lessee, licensee, landlord and/or tenant in real property (including the **Insured**'s status as an owner, proprietor, administrator, "**employee**," "**leased worker**," "**temporary worker**," manager, supervisor, agent, member, partner, officer, stockholder, or member of the board of directors, trustees or governors of any school, store, shop, business, association, joint venture or other enterprises whose liability is premised on the condition of real property for which it is an owner, lessor, lessee, licensee, landlord and/or tenant.)

**hh.** **Liability arising out of the sale of food or beverage**

"**Bodily injury**" or "**property damage**" "**arising out of**" or in any way related to the sale of any food or beverage, whether in a cafeteria, or otherwise.

**ii.** **Liability arising out of Communicable Disease**

"**Bodily injury**", "**property damage**", "**personal and advertising injury**", or any other injury "**arising out of**" the transmission of or alleged transmission of any communicable disease.

**jj.** **Liability arising out of Mold, Bacteria, Virus or other Organic Pathogen**

"**Bodily injury**", "**property damage**", "**personal and advertising injury**", or any other injury "**arising out of**" actual, alleged or threatened existence, exposure to, discharge, dispersal, release or escape of "**organic pathogens**", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

This exclusion applies also:

**(1)** to any alleged damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space;

**(2)** to any loss, cost or expense, including but not limited to fines, penalties and attorney fees, "**arising out of**" any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens", or

**(3)** to any litigation or administration procedure in which an **Insured** may be involved as a party.

In addition, this insurance does not apply to any "**Bodily injury**", "**property damage**", "**personal and advertising injury**", or any other injury, loss, cost or expense including but not limited to fines, penalties and attorney fees, "**arising out of**" or related to any form of "**organic pathogens**", whether or not such actual, alleged or threatened existence, exposure to, discharge, dispersal, release or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any **Insured** is alleged to be direct or vicarious. This exclusion also applies whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of any **Insured**.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1.    Insuring Agreement Under Coverage B**

**a.**    **We** will pay those sums in excess of any applicable "**self-insured retention**" that the **Insured** becomes legally obligated to pay as "**damages**" because of "**personal and advertising injury**" to which this insurance applies.

**b.**    **We** will have the right and duty to defend the **Insured** against any "**suit**" seeking "**damages**" because of "**personal and advertising injury**" to which this insurance applies. However, **We** will have no duty to defend the **Insured** against any "**suit**" seeking "**damages**" for "**personal and advertising injury**" to which this insurance does not apply. **We** may, at **Our** discretion, investigate any "**occurrence**" and settle any "**claim**" or "**suit**" that may result. **We** have the right, but not the duty, to settle any covered "**claim**" or "**suit**" where the proposed settlement amount to be paid as "**damages**" does not exceed the applicable limits as described in **Section IV – Limits Of Insurance**.  Any such settlement will be binding on the **Insured** and will not require the **Insured**'s consent or ratification.  But:

**(1)**    The amount **We** pay for "**defense costs**", **SUPPLEMENTARY PAYMENTS**, and/or "**damages**" is limited as describe in **Section IV – Limits Of Insurance**; and

**(2)**    **Our** right and duty to defend end when:

**(i)**    **We** have used up the applicable limit of insurance in the payment of "**defense costs**", **SUPPLEMENTARY PAYMENTS**, judgments and/or settlements under **Coverage A, B, D** or **E** or medical expenses under **Coverage C**; or

**(ii)**    **We** discover that first **Named Insured**'s "**application**" form(s), and documentation submitted by the first **Named Insured** to obtain this insurance contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements.  It does not matter whether the misrepresentation originated from the first **Named Insured**, the first **Named Insured**'s broker, the first **Named Insured**'s agent, or any other **Insured**.    It further, does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

**(iii)**    **You** fail or refuse to fulfill **Your** obligation under any applicable "**self-insured retention**" in a timely manner; or

**(iv)**    **You** or any other **Insured** violate some other condition of coverage that is set out in **This Insurance Policy**.

**We** have the exclusive right to designate and appoint legal counsel to represent the **Insureds** and to control the defense.

**c.**    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION I - INSURING AGREEMENTS, SUPPLEMENTARY PAYMENTS – COVERAGES A, B, D and E**.

**d.**    This insurance under **Coverage B** applies to "**personal and advertising injury**" only if:

**(1)**    The "**personal and advertising injury**" is caused by an offense "**arising out of**" **Your** "**covered activities**"; and

**(2)**    The offense was committed in the "**coverage territory**"; and

**(3)**    The offense was committed during the "**policy period**"; and

**(4)**    Any applicable "**self-insured retention**" has been timely paid.

**2.    Exclusions Under Coverage B**

This insurance does not apply to, and **We** have no obligation to defend any **Insured** against or pay "**damages**" on

behalf of any **Insured** under Coverage B for any of the following:

**a.**     **Knowing Violation Of Rights Of Another**

"**Personal and advertising injury**" caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict "**personal and advertising injury**";

**b.**     **Material Published With Knowledge Of Falsity**

"**Personal and advertising injury**" "**arising out of**" oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

**c.**     **Material Published Prior To Policy Period**

"**Personal and advertising injury**" rising out of oral or written publication of material whose first publication took place before the beginning of the "**policy period**";

**d.**     **Criminal Acts**

"**Personal and advertising injury**" "**arising out of**" a criminal act committed by or at the direction of any **Insured**;

**e.**     **Contractual Liability**

"**Personal and advertising injury**" for which the **Insured** has assumed liability in a contract or agreement, provided the "**personal and advertising injury**" occurs subsequent to the execution of the contract or agreement and is not otherwise excluded under any other applicable exclusion.

This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

**f.**     **Breach of Contract**

"**Personal and advertising injury**" "**arising out of**" a breach of contract, except an implied contract to use another's advertising idea in **Your** "**advertisement**";

**g.**     **Quality of Performance Of Goods – Failure to Conform To Statements**

"**Personal and advertising injury**" "**arising out of**" the failure of goods, products or services to conform with any statement of quality or performance made in **Your** "**advertisement**";

**h.**     **Wrong Description Of Prices**

"**Personal and advertising injury**" "**arising out of**" the wrong description of the price of goods, products or services stated in **Your** "**advertisement**";

**i.**     **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"**Personal and advertising injury**" "**arising out of**" the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

**j.**     **Insureds In Media And Internet Type Businesses**

"**Personal and advertising injury**" committed by an **Insured** whose business is:

**(1)**     Advertising, broadcasting, publishing or telecasting; or

**(2)**     Designing or determining content of websites for others; or

**(3)**     An Internet search, access, content or service provider.

For the purpose of this exclusion, the placing of frames, borders or links, or advertising, for **You** or others anywhere on the internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.**     **Electronic Chatrooms, Bulletin Boards, Forums, Blogs Or Social Media**

"**Personal and advertising injury**" "**arising out of**":

**(1)**     Any Internet distribution channel, including, but not limited to any electronic chatroom, bulletin board, forum, blog, or social media platform that the **Insured** hosts, owns, or over which the **Insured** exercises direct or indirect control; or

**(2)**     Any comments, articles, statements, media (software files, electronic documents, photos, graphics, videos, and audio), and any other materials authored, published, disseminated, or otherwise posted on the Internet by, or at the instigation of, or at the direction of, or on behalf of, any **Insured**, his "**employees**", "**volunteer workers**", "**temporary workers**", "**Named Insured's authorized instructors**", agents, patrons, patients, or guests.

**l.**     **Unauthorized Use Of Another's Name Or Product**

"**Personal and advertising injury**" "**arising out of**" the unauthorized use of another's name or product in **Your** email address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.    Fungi Or Bacteria**

**(1)**    "**Personal and advertising injury**" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**(2)**    Any loss, cost or expenses "**arising out of**" the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by an **Insured** or by any other person or entity.

**n.    Employment Related Practices**

"**Personal and advertising injury**" to:

**(1)**    A person "**arising out of**" any:

**(i)**    Refusal to employ that person;

**(ii)**    Termination of that person's employment; or

**(iii)**    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)**    The spouse, domestic partner, child, parent, brother, sister or other relative of that person as a consequence of "**personal and advertising injury**" to that person at whom any of the employment-related practices described in Paragraphs (1)(i), (ii), or (iii) of this exclusion is directed.

This exclusion applies:

**(A)**    Whether the injury-causing event described in Paragraphs (1)(i), (ii), or (iii) of this exclusion occurs before employment, during employment or after employment of that person;

**(B)**    Whether the **Insured** may be liable as an employer or in any other capacity; and

**(C)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**o.    Infringement, Misappropriation, Interference With Privacy And Unfair Competition**

"**Personal and advertising injury**" arising directly or indirectly out of:

**(1)**    Any invasion or infringement of or interference with the right of privacy or publicity including, but not limited to, intrusion, public disclosure of private facts, unwarranted or wrongful publicity, false light or the use of name or likeness for profit;

**(2)**    Plagiarism or misappropriation of information, trade secrets, ideas or style of doing business;

**(3)**    "**Unfair competition**" as defined by statute or common law, both state and federal, whether or not pertaining to and alleged in conjunction with a claim of plagiarism, misappropriation of information or ideas, "**piracy**", infringement or dilution of copyright, title, slogan, trademark, trade name, trade dress, trade secret, patent, service mark, service name, or other intellectual property rights;

**(4)**    Any acts of the **Insured** pertaining to the Internet, web site(s), social media, apps, domain name(s), metatag(s), linking, framing, chatrooms, bulletin boards, forums, blogs, that the **Insured** hosts, owns or contributes to, or over which the **Insured** exercises any control, or through which the **Insured** performs any marketing.

**p.    Selected Coverage A Exclusions**

"**Personal and advertising injury**" that is excluded under any of the following Coverage A Exclusions:

**(1)**    i. Pollution;

**(2)**    l. War;

**(3)**    s. Data;

**(4)**    u. Firearms, Fireworks And Other Pyrotechnic Devices;

**(5)**    x. Punitive or Exemplary Damages;

**(6)**    bb. Professional Liability Exclusion;

**(7)**    cc. Abuse Or Molestation Exclusion;

**(8)**    ff. Assault and Battery;

**(9)**    ii. Liability arising out of Communicable Disease; or

**(10)**    jj. Liability arising out of Mold, Bacteria, Virus or other Organic Pathogen;

## COVERAGE C - MEDICAL PAYMENTS

**1.**    **Insuring Agreement Under Coverage C**

    **a.**    **We** will pay medical expenses as described below for "**bodily injury**" caused by an "**accident**":

        **(1)**    On premises **You** own or rent;

        **(2)**    On ways next to premises **You** own or rent; or

        **(3)**    Because of **Your** "**covered activities**";

        provided that:

        **(1)**    The "**accident**" takes place in the "**coverage territory**" and during the "**policy period**";

        **(2)**    The expenses are incurred and reported to **Us** within one year of the date of the "**accident**"; and

        **(3)**    The injured person submits to examination, at **Our** expense, by physicians of **Our** choice as often as **We** reasonably require.

    **b.**    **We** will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. **We** will pay reasonable expenses for:

        **(1)**    First aid administered at the time of an "**accident**";

        **(2)**    Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

        **(3)**    Necessary ambulance, hospital, professional nursing and funeral services.

**2.**    **Exclusions Under Coverage C**

    This insurance does not apply to, and **We** will not pay any expenses under **Coverage C** for "**bodily injury**":

    **a.**    **Any Insured**

        To any **Insured**.

    **b.**    **Hired Person**

        To a person hired to do work for or on behalf of any **Insured** or a tenant of any **Insured**.

    **c.**    **Injury On Normally Occupied Premises**

        To a person injured on that part of premises **You** own or rent that the person normally occupies.

    **d.**    **Workers Compensation And Similar Laws**

        To a person, whether or not an "**employee**" of any **Insured**, if benefits for the "**bodily injury**" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

    **e.**    **Athletics Activities**

        To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests (including the participation in the sports of "**hang gliding**", "**paragliding**", or "**powered paragliding**").

    **f.**    **Products-Completed Operations Hazard**

        Included within the "**products-completed operations hazard**".

    **g.**    **Coverage A Exclusions**

        Excluded under any of the **Coverage A Exclusions**.

## COVERAGE D - HANG GLIDING, PARAGLIDING, OR POWERED PARAGLIDING PARTICIPANT INJURY LIABILITY

**1.**    **Insuring Agreement Under Coverage D**

**a.** **We** will pay those sums in excess of any applicable "**self-insured retention**" that the **Insured** becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to any "**participant**" to which this insurance applies.

**b.** **We** will have the right and duty to defend the **Insured** against any "**suit**" seeking "**damages**" because of "**bodily injury**" or "**property damage**" to any "**participant**" to which this insurance applies. However, **We** will have no duty to defend the **Insured** against any "**suit**" seeking "**damages**" for "**bodily injury**" or "**property damage**" to any "**participant**" to which this insurance does not apply. **We** may, at **Our** discretion, investigate any "**occurrence**" and settle any "**claim**" or "**suit**" that may result. **We** have the right, but not the duty, to settle any covered "**claim**" or "**suit**" where the proposed settlement amount to be paid as "**damages**" does not exceed the applicable limits as described in **Section IV – Limits Of Insurance**. Any such settlement will be binding on the **Insured** and will not require the **Insured**'s consent or ratification. But:

    **(1)** The amount **We** pay for "**defense costs**", SUPPLEMENTARY PAYMENTS, and/or "**damages**" is limited as describe in **Section IV – Limits Of Insurance**; and

    **(2)** **Our** right and duty to defend end when:

        **(i)** **We** have used up the applicable limit of insurance in the payment of "**defense costs**", SUPPLEMENTARY PAYMENTS, judgments and/or settlements under **Coverage A, B, D or E** or medical expenses under **Coverage C**; or

        **(ii)** **We** discover that first **Named Insured**'s "**application**" form(s), and documentation submitted by the first **Named Insured** to obtain this insurance contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements. It does not matter whether the misrepresentation originated from the first **Named Insured**, the first **Named Insured**'s broker, the first **Named Insured**'s agent, or from any other **Insured**. It further, does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

        **(iii)** **You** fail or refuse to fulfill **Your** obligation under any applicable "**self-insured retention**" in a timely manner; or

        **(iv)** **You** or any other **Insured** violate some other condition of coverage that is set out in **This Insurance Policy**.

    **We** have the exclusive right to designate and appoint legal counsel to represent the **Insureds** and to control the defense.

**c.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION I - INSURING AGREEMENTS, SUPPLEMENTARY PAYMENTS – COVERAGES A, B, D and E**.

**d.** This insurance under **Coverage D** applies to "**bodily injury**" and "**property damage**" only if:

    **(1)** The "**bodily injury**" or "**property damage**" is caused by an "**occurrence**" that takes place in the "**coverage territory**"; and

    **(2)** The "**bodily injury**" or "**property damage**" occurs during the "**policy period**"; and

    **(3)** Prior to the "**policy period**", no **Insured** listed under Paragraph 1. Of **Section V - Who Is An Insured** and no "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**", knew that the "**bodily injury**" or "**property damage**" had occurred, in whole or in part.

    If such a listed **Insured** or authorized "**employee**" knew, prior to the "**policy period**", that the "**bodily injury**" or "**property damage**" occurred, then any continuation, change or resumption of such "**bodily injury**" or "**property damage**" during or after the "**policy period**" will be deemed to have been known prior to the "**policy period**"; and

    **(4)** The "**bodily injury**" or "**property damage**" arises out of the "**covered activities**" of the **Insured**; and

    **(5)** The "**bodily injury**" or "**property damage**" is to a "**participant**"; and

    **(6)** In the case that the "**bodily injury**" or "**property damage**" results from an "**occurrence**" while the "**participant**" is "**participating in the sports of hang gliding, or paragliding**":

        **(i)** In the case that the "**participant**" is a "**student**":

            **(A)** In the case of "**bodily injury**", prior to the time of the "**occurrence**", the injured "**participant**" had signed (and, in the cases where the "**participant**" is under the age of 18 years, the "**participant**'s" parent or legal guardian had also

signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

**(B)** In the case of "**property damage**", prior to the time of the "**occurrence**", the owner and the person in possession of the damaged property had both signed (and, in cases where either of them is under the age of 18 years, the minor's parent or legal guardian had also signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

**(ii)** In the case that the "**participant**" is not a "**student**":

**(A)** At the time of the "**occurrence**", the injured "**participant**" is a current, unexpired, un-revoked, un-suspended member of "**USHPA**"; and

**(B)** The **Insured** is a released party under the terms of a pre-injury release, waiver and assumption of risk signed by the "**participant**", that is in effect at the time of the "**occurrence**" and is in a form approved by **Your risk retention group**; and

**(7)** In the case that the "**bodily injury**" or "**property damage**" results from an "**occurrence**" while the "**participant**" is "**participating in the sport of powered paragliding**":

**(i)** In the case that the "**participant**" is a "**student**":

**(A)** In the case of "**bodily injury**", prior to the time of the "**occurrence**", the injured "**participant**" had signed (and, in the cases where the "**participant**" is under the age of 18 years, the "**participant's**" parent or legal guardian had also signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

**(B)** In the case of "**property damage**", prior to the time of the "**occurrence**", the owner and the person in possession of the damaged property had both signed (and, in cases where either of them is under the age of 18 years, the minor's parent or legal guardian had also signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

**(ii)** In the case that the "**participant**" is not a "**student**":

**(A)** At the time of the "**occurrence**", the injured "**participant**" is a current, unexpired, un-revoked, un-suspended member of "**USPPA**"; and

**(B)** The **Insured** is a released party under the terms of a pre-injury release, waiver and assumption of risk signed by the "**participant**", that is in effect at the time of the "**occurrence**" and is in a form approved by **Your risk retention group**; and

**(8)** Any applicable "**self-insured retention**" has been timely paid.

**e.** "**Bodily injury**" or "**property damage**" which occurs during the "**policy period**" and was not, prior to the "**policy period**", known to have occurred by any **Insured** listed under Paragraph 1. of **Section V - Who is An Insured** or any "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**", includes any continuation, change or resumption of that "**bodily injury**" or "**property damage**" after the end of the "**policy period**".

**f.** "**Bodily injury**" or "**property damage**" will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under Paragraph 1. of **Section V – Who is An Insured** or any "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**":

**(1)** Reports all, or any part, of the "**bodily injury**" or "**property damage**" to **Us** or any other insurer;

**(2)** Receives a written or verbal demand or "**claim**" for damages because of the "**bodily injury**" or "**property damage**"; or

**(3)** Becomes aware by any other means that "**bodily injury**" or "**property damage**" has occurred or has begun to occur.

f.   **Damages** because of "**bodily injury**" include "**damages**" claimed by any person or organization for care, loss of services or death resulting at any time from the "**bodily injury**".

**2.    Exclusions Under Coverage D**

This insurance does not apply to, and **We** have no obligation to defend any **Insured** against or pay "**damages**" on behalf of any **Insured** under **Coverage D** for any of the following:

**a.    Liability for injuries to Certain Minors**

**(1)**   "**Bodily Injury**" to a "**Minor Student**" as a consequence of "**bodily injury**" to that "**Minor Student**" as a result of an "**Occurrence**" while the "**Minor Student**" was "**participating in the sports of hang gliding, paragliding, or powered paragliding**", where the "**Minor Student**" did not, prior to "**participating in the sports of hang gliding, paragliding, or powered paragliding**", have sufficient knowledge and maturity to both:

**(i)**   Assess the dangers involved in "**participating in the sports of hang gliding, paragliding, or powered paragliding**" with the "**Insured**"**; and**

**(ii)**   Make a decision to assume personal responsibility for the "**Minor Student's**" own safety when "**participating in the sports of hang gliding, paragliding, or powered paragliding**" with the "**Insured**".

**(2)**   "**Bodily Injury**" to a "**Minor Student**" as a consequence of "**bodily injury**" to that "**Minor Student**" as a result of an "**Occurrence**" while the "**Minor Student**" was "**participating in the sports of hang gliding, paragliding, or powered paragliding**", where the "**Minor Student**" did not, prior to "**participating in the sports of hang gliding , paragliding, or powered paragliding**" both:

**(i)**   Assess the dangers involved in "**participating in the sports of hang gliding, or powered paragliding**" with the "**Insured**"; and

**(ii)**   Assume personal responsibility for the "**Minor Student's**" own safety when "**participating in the sports of hang gliding, paragliding, or powered paragliding**" with the "**Insured**".

**(3)**   "**Bodily injury**" to the spouse, domestic partner, child, parent, brother, sister or other relative of a "**Minor Student**" as a consequence of "**bodily injury**" to that "**Minor Student**" as a result of an "**Occurrence**" while the "**Minor Student**" was "**participating in the sports of hang gliding, paragliding, or powered paragliding**", where the "**Minor Student**" did not, prior to "**participating in the sports of hang gliding, paragliding, or powered paragliding**" both:

**(i)**   Assess the dangers involved in "**participating in the sports of hang gliding, paragliding, or powered paragliding**" with the "**Insured**"; and

**(ii)**   Assume personal responsibility for the "**Minor Student's**" own safety when "**participating in the sports of hang gliding, paragliding, or powered paragliding**" with the "**Insured**".

**b.    Selected Coverage A Exclusions**

"**Bodily injury**" or "**property damage**" that is excluded under any of the following **Coverage A Exclusions**:

**(1)**   c.   Expected Or Intended Injury;

**(2)**   d.   Contractual Liability;

**(3)**   e.   Liquor Liability;

**(4)**   f.   Marijuana, "**Controlled Substance**", or "**Over-the-Counter Medication**" Liability;

**(5)**   g.   Workers' Compensation and Similar Laws;

**(6)**   h.   Employer's Liability;

**(7)**   i.   Pollution;

**(8)**   j.   Aircraft, Auto Or Watercraft;

**(9)**   k.   Mobile Equipment;

**(10)**  l.   War;

**(11)**  m.   Damage to Property;

**(12)**  n.   Damage To Your Product;

**(13)** o.   Damage To Your Work;

**(14)** p.   Damage To Impaired Property Or Property Not Physically Injured;

**(15)** q.   Recall Of Products, Work Or Impaired Property;

**(16)** r.   Personal And Advertising Injury;

**(17)** s.   Data;

**(18)** t.   Bodily Injury To Insured;

**(19)** u.   Firearms, Fireworks And Other Pyrotechnic Devices;

**(20)** v.   Mechanical Device Or Equipment;

**(21)** w.   Products-Completed Operations Hazard;

**(22)** x.   Punitive or Exemplary Damages;

**(23)** y.   Fungi Or Bacteria;

**(24)** z.   Employment Practices;

**(25)** aa.   Infringement, Misappropriation, Interference With Privacy And Unfair Competition;

**(26)** bb.   Professional Liability Exclusion;

**(27)** cc.   Abuse Or Molestation Exclusion;

**(28)** dd.   Willful Violation Of Penal Statute;

**(29)** ee.   Conduct Out Of Course And Scope Of Duties;

**(30)** ff.   Assault and Battery;

**(31)** gg.   Liability arising out of ownership of land;

**(32)** hh.   Liability arising out of the sale of food or beverage;

**(33)** ii.   Liability arising out of Communicable Disease; or

**(34)** jj.   Liability arising out of Mold, Bacteria, Virus or other Organic Pathogen;

## COVERAGE E - PROFESSIONAL LIABILITY OF NAMED INSURED

1.   **Insuring Agreement Under Coverage E**

a.   **We** will pay those sums in excess of any applicable "**self-insured retention**" that the **Insured** becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to any "**student**" of the first **Named Insured** to which this insurance applies.

b.   **We** will have the right and duty to defend the **Insured** against any "**suit**" seeking "**damages**" because of "**bodily injury**" or "**property damage**" to any "**student**" of the first **Named Insured** to which this insurance applies. However, **We** will have no duty to defend the **Insured** against any "**suit**" seeking "**damages**" for "**bodily injury**" or "**property damage**" to which this insurance does not apply. **We** may, at **Our** discretion, investigate any "**occurrence**" and settle any "**claim**" or "**suit**" that may result. **We** have the right, but not the duty, to settle any covered "**claim**" or "**suit**" where the proposed settlement amount to be paid as "**damages**" does not exceed the applicable limits as described in **Section IV - Limits Of Insurance**. Any such settlement will be binding on the **Insured** and will not require the **Insured**'s consent or ratification. But:

(1)   The amount **We** pay for "**defense costs**", **SUPPLEMENTARY PAYMENTS**, and/or "**damages**" is limited as describe in **Section IV - Limits Of Insurance**; and

(2)   **Our** right and duty to defend end when:

(i)   **We** have used up the applicable limit of insurance in the payment of "**defense costs**", **SUPPLEMENTARY PAYMENTS**, judgments and/or settlements under **Coverage A, B, D** or **E** or medical expenses under **Coverage C**; or

(ii)   **We** discover that **Named Insured**'s "**application**" form(s), and documentation submitted by the first **Named Insured** to obtain this insurance contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements. It does not matter whether the misrepresentation originated from the first **Named Insured**, the first **Named Insured**'s broker or the first **Named Insured**'s agent. It further, does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

       **(iii)** **You** fail or refuse to fulfill **Your** obligation under any applicable "**self-insured retention**" in a timely manner; or

       **(iv)** **You** violate some other condition of coverage that is set out in **This Insurance Policy**.

**We** have the exclusive right to designate and appoint legal counsel to represent the **Insureds** and to control the defense.

**c.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION I – INSURING AGREEMENTS, SUPPLEMENTARY PAYMENTS – COVERAGES A, B, D and E.**

**d.** This insurance under **Coverage E** applies to "**bodily injury**" and "**property damage**" only if:

    **(1)** The "**bodily injury**" or "**property damage**" is caused by an "**occurrence**" that takes place in the "**coverage territory**"; and

    **(2)** The "**bodily injury**" or "**property damage**" occurs during the "**policy period**"; and

    **(3)** Prior to the "**policy period**", no **Insured** listed under Paragraph 1. of **Section V - Who Is An Insured** and no "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**", knew that the "**bodily injury**" or "**property damage**" had occurred, in whole or in part. If such a listed **Insured** or authorized "**employee**" knew, prior to the "**policy period**", that the "**bodily injury**" or "**property damage**" occurred, then any continuation, change or resumption of such "**bodily injury**" or "**property damage**" during or after the "**policy period**" will be deemed to have been known prior to the "**policy period**"; and

    **(4)** The "**bodily injury**" or "**property damage**" arises out of the "**covered activities**" of the **Insured**; and

    **(5)** The "**bodily injury**" or "**property damage**" is to a "**student**" of the first **Named Insured**; and

    **(6)** The "**bodily injury**" or "**property damage**" results from an "**occurrence**" while the "**student**" is "**participating in the sports of hang gliding, paragliding, or powered paragliding**"; and

    **(7)** The "**bodily injury**" or "**property damage**" arises out of the "**hang gliding, paragliding, or powered paragliding professional liability hazard**"; and

    **(8)** In the case of "**bodily injury**", prior to the time of the "**occurrence**", the injured "**student**" had signed (and, in the cases where the "**student**" is under the age of 18 years, the "**student's**" parent or legal guardian had also signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

    **(9)** In the case of "**property damage**", prior to the time of the "**occurrence**", the owner and the person in possession of the damaged property had both signed (and, in cases where either of them is under the age of 18 years, the minor's parent or legal guardian had also signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

    **(10)** Any applicable "**self-insured retention**" has been timely paid.

**e.** "**Bodily injury**" or "**property damage**" which occurs during the "**policy period**" and was not, prior to the "**policy period**", known to have occurred by any **Insured** listed under Paragraph 1 of **Section V - Who is An Insured** or any "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**", includes any continuation, change or resumption of that "**bodily injury**" or "**property damage**" after the end of the "**policy period**".

**f.** "**Bodily injury**" or "**property damage**" will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under Paragraph 1. of **Section V – Who is An Insured** or any "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**":

    **(1)** Reports all, or any part, of the "**bodily injury**" or "**property damage**" to **Us** or any other insurer;

    **(2)** Receives a written or verbal demand or "**claim**" for damages because of the "**bodily injury**" or "**property damage**"; or

    **(3)** Becomes aware by any other means that "**bodily injury**" or "**property damage**" has occurred or has begun to occur.

**g.** "**Damages**" because of "**bodily injury**" include "**damages**" claimed by any person or organization for care, loss of services or death resulting at any time from the "**bodily injury**".

**2.    Exclusions Under Coverage E**

This insurance does not apply to, and **We** have no obligation to defend any **Insured** against or pay "**damages**" on behalf of any **Insured** under Coverage E for any of the following:

a.    **Selected Coverage A Exclusions**

"**Bodily injury**" or "**property damage**" that is excluded under any of the following **Coverage A Exclusions**:

| | | |
|---|---|---|
| **(1)** | c. | Expected Or Intended Injury; |
| **(2)** | d. | Contractual Liability; |
| **(3)** | e. | Liquor Liability; |
| **(4)** | f. | Marijuana, **Controlled Substance**", or "**Over-the-Counter Medication**" Liability; |
| **(5)** | g. | Workers' Compensation and Similar Laws; |
| **(6)** | h. | Employer's Liability; |
| **(7)** | i. | Pollution; |
| **(8)** | j. | Aircraft, Auto Or Watercraft; |
| **(9)** | k. | Mobile Equipment; |
| **(10)** | l. | War; |
| **(11)** | m. | Damage to Property; |
| **(12)** | n. | Damage To Your Product; |
| **(13)** | o. | Damage To Your Work; |
| **(14)** | p. | Damage To Impaired Property Or Property Not Physically Injured; |
| **(15)** | q. | Recall Of Products, Work Or Impaired Property; |
| **(16)** | r. | Personal And Advertising Injury; |
| **(17)** | s. | Data; |
| **(18)** | t. | Bodily Injury To Insured; |
| **(19)** | u. | Firearms, Fireworks And Other Pyrotechnic Devices; |
| **(20)** | v. | Mechanical Device Or Equipment; |
| **(21)** | w. | Products-Completed Operations Hazard; |
| **(22)** | x. | Punitive or Exemplary Damages; |
| **(23)** | y. | Fungi Or Bacteria; |
| **(24)** | z. | Employment Practices; |
| **(25)** | aa. | Infringement, Misappropriation, Interference With Privacy And Unfair Competition; |
| **(26)** | cc. | Abuse Or Molestation Exclusion; |
| **(27)** | dd. | Willful Violation Of Penal Statute; |
| **(28)** | ee. | Conduct Out Of Course And Scope Of Duties; |
| **(29)** | ff. | Assault and Battery; |
| **(30)** | gg. | Liability arising out of ownership of land; |
| **(31)** | hh. | Liability arising out of the sale of food or beverage; |
| **(32)** | ii. | Liability arising out of Communicable Disease; or |
| **(33)** | jj. | Liability arising out of Mold, Bacteria, Virus or other Organic Pathogen; |

b.    **Selected Coverage D Exclusions**

"**Bodily injury**" or "**property damage**" that is excluded under any of the following **Coverage D Exclusions**:

| | | |
|---|---|---|
| **(1)** | a. | Liability for injuries to Certain Minors; |

**SUPPLEMENTARY PAYMENTS – COVERAGES A, B, D and E**

**1.**    **We** will pay, with respect to any "**claim**" **We** investigate or settle, or any "**suit**" against an **Insured We** defend:

**a.** All expenses **We** incur, except for "**defense costs**".

**b.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. **We** do not have to furnish these bonds.

**c.** All reasonable expenses incurred by the **Insured** at **Our** request to assist **Us** in the investigation or defense of the "**claim**" or "**suit**", including actual loss of earnings up to $250 a day because of time off from work.

**d.** All costs taxed against the **Insured** in the "**suit**".

**e.** Prejudgment interest awarded against the **Insured** on that part of the judgment for "**damages**" that **We** pay. If **We** make an offer to pay the applicable limit of insurance, **We** will not pay any prejudgment interest based on that period of time after the offer.

**f.** All interest paid on the full amount awarded for "**damages**" in any judgment that accrues after entry of the judgment and before **We** have paid, offered to pay, or deposited in court the part of the judgment for "**damages**" that is within the applicable limit of insurance.

These **SUPPLEMENTARY PAYMENTS** are included within both the Each Occurrence and General Aggregate Limits of Insurance and will reduce both the Each Occurrence and the General Aggregate Limits of Insurance. "Defense costs" are likewise included within both the Each Occurrence and General Aggregate Limits of Insurance and will reduce both the Each Occurrence and the General Aggregate Limits of Insurance.

**2.** If **We** defend an **Insured** against a "**suit**" and an indemnitee of the **Insured** is also named as a party to the "**suit**", **We** will defend that indemnitee if all of the following conditions are met:

**a.** The "**suit**" against the indemnitee seeks damages for which the **Insured** has assumed the liability of the indemnitee in a contract or agreement that is an "**insured contract**";

**b.** This insurance applies to such liability assumed by the **Insured**;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the **Insured** in the same "**insured contract**";

**d.** The allegations in the "**suit**" and the information **We** know about the "**occurrence**" are such that no conflict appears to exist between the interests of the **Insured** and the interests of the indemnitee; and

**e.** The indemnitee and the **Insured** ask **Us** to conduct and control the defense of that indemnitee against such "**suit**" and agree that **We** can assign the same counsel to defend the **Insured** and the indemnitee; and

**f.** The indemnitee:

    **(1)** Agrees in writing to:

        **(i)** Cooperate with **Us** in the investigation, settlement or defense of the "**suit**";

        **(ii)** Immediately send **Us** copies of any demands, notices, summonses or legal papers received in connection with the "**suit**";

        **(iii)** Notify any other insurer whose coverage is available to the indemnitee; and

        **(iv)** Cooperate with **Us** with respect to coordinating other applicable insurance available to the indemnitee; and

    **(2)** Provides **Us** with written authorization to:

        **(i)** Obtain records and other information related to the "**suit**"; and

        **(ii)** Conduct and control the defense of the indemnitees in such "**suit**".

So long as the above conditions are met, attorneys' fees incurred by **Us** in the defense of that indemnitee, necessary litigation expenses incurred by **Us** and necessary litigation expenses incurred by the indemnitee at **Our** request will be paid pursuant to the applicable Limits of Insurance, and said payments shall reduce the applicable Limits of Insurance. Notwithstanding the provisions of **Section I – Coverage A – Bodily Injury And Property Damage Liability, 2. Exclusions Under Coverage A, d. Contractual Liability subparagraph (2)**, such payments will not be deemed to be "**damages**" for "**bodily injury**" and "**property damage**"

**Our** obligation to defend an **Insured**'s indemnitee and to pay for attorney's fees and necessary litigation expenses as Supplementary Payments ends when:

**A.** **We** have used up the applicable limit of insurance in the payment of "**defense costs**", **SUPPLEMENTARY PAYMENTS**, judgments or settlements; or

**B.** The conditions set forth above, or the terms of the agreement described in **SUPPLEMENTARY PAYMENTS – COVERAGES A, B, D and E,** Paragraph 2., subparagraph f.(1) above, are no longer met.

**SECTION II - DEFINITIONS**

1. **"Accident"** means an incident, event, or circumstance which is unexpected and unintended from the standpoint of any **Insured**.

2. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about **Your** goods, products or services for the purpose of attracting customers or supporters.

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about **Your** goods, products or services for the purpose of attracting customers or supporters is considered an **"advertisement"**.

3. **"Aerobatic Maneuver"** means an intentional maneuver involving an abrupt change in an aircraft's attitude, an abnormal attitude, or abnormal acceleration, not necessary for normal flight. Maneuvers intentionally performed by the pilot that involve bank angles in excess of 60 degrees or pitch angles in excess of 30 degrees are always abnormal attitudes. Maneuvers intentionally performed by the pilot that involve abrupt changes of direction, angles of bank, angles of pitch, or speed always constitute Aerobatic Maneuvers. Aerobatic Maneuvers also include, but are not limited to intentionally initiated: Symmetric deflation, Asymmetric deflation, Stall, Spin, Cravatte, B-line Stall, Nose down or Aggressive Spiral, Nose down or Aggressive Wing-overs, Loop, Roll, Barrel roll, D-bagging, a steep dive and pullout, an accelerated pass close to the ground, and any maneuvers defined in the FAI Sporting Code Section 7B as an aerobatic maneuver.

4. **"Aircraft"** means a device that is used or intended to be used for flight in the air.

5. **"Application"** means the original application for insurance form, all renewal application for insurance coverage form(s), any related supplemental application form(s), any request form(s) for the addition of any person and/or entity as an additional **Insured**, including any information provided in those form(s), and documents, photos, videos and other materials provided pursuant to the directions in those form(s) by or for or on behalf of the first **Named Insured** requesting the insurance coverage or the additional insured **"endorsement"**(s) from **Your risk retention group**.

6. **"Arising out of"** means arising directly, indirectly, or in concurrence or in any sequence out of.

7. **"Auto"** means

   a. A land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "**auto**" does not include "**mobile equipment**".

8. **"Bodily injury"** means **bodily injury**, sickness or disease sustained by a person, including death resulting from any of these at any time.

9. **"Claim"** means any demand for compensation made against an **Insured** for monetary damages the **Insured** is or may reasonably become legally obligated to pay as a result of any one **"occurrence"**, including such demands made by way of a writing, a civil lawsuit, an arbitration proceeding, or any agreed upon alternative dispute resolution proceeding.

   a. A "**claim**" does not include demands for:

      (1) fines;

      (2) penalties;

      (3) sanctions;

      (4) treble damages;

      (5) punitive damages;

      (6) exemplary damages;

      (7) damages arrived at by some multiple of a portion of compensatory damages;

      (8) restitution or return of property;

      (9) restitution or return of legal fees;

      (10) restitution or return of expenses;

      (11) injunctive relief of any kind; or

      (12) criminal fines or penalties of any kind.

     **b.**    A "**claim**" does not include:

        **(1)**    Criminal investigations, proceedings or prosecutions;

        **(2)**    Administrative investigations, proceedings or prosecutions;

        **(3)**    Regulatory investigations, proceedings or prosecutions; or

        **(4)**    Investigations, proceedings or prosecutions conducted by "**USHPA**", "**USPPA**", or any other organizations with whom any **Insured** holds, or has ever held, a membership, or from whom any **Insured** has ever received a pilot proficiency rating, a certification, an appointment, an official position, or other designation.

**10.**    "**Controlled Substance**" means any substance listed on Schedules I through V of 21 CFR Section 1308, as may be revised from time to time by publication in the Federal Register.

**11.**    "**Coverage territory**" means:

     **a.**    The United States of America (including its territories and possessions), Puerto Rico and Canada;

     **b.**    International waters or airspace, provided the injury or damage occurs in the course of travel or transportation to or from any places included in a. above; or

     **c.**    All parts of the world if the injury or damage arises out of:

        **(1)**    The activities of a person whose home is in the territory described in a. above, but is away for a short time, no longer than 10 days, on **Your** business, or

        **(2)**    The activities of a person whose home is in the territory described in a. above, but is away participating as a "**student**" of the first **Named Insured** in a "**Covered Activity**" of the first **Named Insured**, or

        **(3)**    "**Personal and advertising injury**" offenses that take place through the Internet or similar electronic means of communication

        Provided the **Insured**'s responsibility to pay "**damages**" is determined in a "**suit**" on the merits, in the territory described in a. above or in a settlement **We** agree to.

     However, "**Coverage territory**" does not include any "**Excluded Location**".

**12.**    "**Covered activities**" means the activities of the **Insureds** designated in the "**endorsement**" entitled "**Covered Activities**" which is attached hereto.

**13.**    "**Damages**" means monetary compensation that an **Insured** is or may reasonably become legally obligated to pay as a result of an "**occurrence**" to which this insurance applies. "**Damages**" do not include any non-monetary compensation nor do "**damages**" include any of the following:

     **a.**    fines;

     **b.**    penalties;

     **c.**    sanctions;

     **d.**    treble damages;

     **e.**    punitive damages;

     **f.**    exemplary damages;

     **g.**    damages arrived at by some multiple of a portion of compensatory damages;

     **h.**    restitution or return of property;

     **i.**    restitution or return of legal fees;

     **j.**    restitution or return of expenses;

     **k.**    injunctive relief of any kind; or

     **l.**    criminal fines or penalties of any kind.

**14.**    "**Defense costs**" means all costs and expenses incurred by **Us**, or at **Our** direction, in connection with the investigation of any "**occurrence**", the adjustment of any "**claim**", or the defense and appeal of any "**suit**", including all attorneys' fees and third-party expenses. "**Defense Costs**" shall include **Our** own internal costs, fees and expenses, such as personnel expense and general overhead as reasonably determined by **Us**.

**15.**    "**Employee**" includes a "**leased worker**". "**Employee**" does not include a "**temporary worker**".

**16.**    "**Endorsement**" means any schedule, statement of additional coverage, or statement of additional limitations of coverage that is contained in any attachment, appendix or addendum to **This Insurance Policy**. Each "**endorsement**" is an integral part of **This Insurance Policy** and must be read and interpreted taking full

consideration of each and every "**endorsement**". In the event of a conflict between the language of the instant insurance policy form and any "**endorsement**", the terms of the "**endorsement**" prevail.

17. "**Excluded Location**" means any location for which "**Your risk retention group**" determines that "**hang gliding**", "**paragliding**", and/or "**powered paragliding**" operations at that location are ineligible to be covered and issues an "**endorsement**" to "**This Insurance Policy**" excluding operations at such location from the coverages of "**This Insurance Policy**". "**Your risk retention group**" may, at any time during the term of "**This Insurance Policy**" issue such an "**endorsement**", excluding operations at a particular location from coverage(s) on "**This Insurance Policy**" for occurrences that take place after the issuance of such "**endorsement**".

18. "**Executive officer**" means a person holding any of the officer positions created by **Your** charter, constitution, bylaws, membership agreement or any other similar governing document. Each manager of a limited liability company is an "**executive officer**".

19. "**Full size paraglider**" means a "**paraglider**" with traditional paraglider characteristics not labeled by its manufacturer as a "**mini wing**" or "**speed wing**" while being operated with a "**wing loading**" of less than 4.99.

20. "**Fungi**" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by products produced or released by fungi.

21 "**Hang glider**" means an unpowered Ultralight Vehicle (as defined by Federal Aviation Regulations, Part 103, Section 103.1) capable of being carried, foot launched and landed solely by the use of the pilot's legs, having a rigid primary structure.

22. "**Hang gliding**" means any and all facets of engaging in flight utilizing a hang glider.

23. "**Hang gliding, paragliding, and powered paragliding professional liability hazard**" means "**bodily injury**", or "**property damage**" that arises out of the rendering of or failure to render advice, instruction or direction in connection with any formal "**hang gliding**", "**paragliding**", or "**powered paragliding**" training program conducted by the first **Named Insured** utilizing a "**Named Insured's authorized instructor**".

24. "**Hostile fire**" means one which becomes uncontrollable or breaks out from where it was intended to be.

25. "**Impaired property**" means tangible property, other than "**your product**" or "**your work**", that cannot be used or is less useful because:

   a. It incorporates "**your product**" or "**your work**" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. **You** have failed to fulfill the terms of a contract or agreement;

   If such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "**your product**" or "**your work**"; or

   b. **You** fulfilling the terms of the contract or agreement.

26. "**Insured contract**" means a contract or agreement specifically approved by **Us** by "**endorsement**" to **This Insurance Policy**, identifying the contract as an "**insured contract**".

27. "**Leased worker**" means a person leased to **You** by a labor firm under an agreement between **You** and the labor leasing firm, to perform duties related to the conduct of **Your** business. "**Leased worker**" does not include a "**temporary worker**".

28. "**Loading or unloading**" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an "**aircraft**", watercraft or "**auto**";

   b. While it is in or on an "**aircraft**", watercraft or "**auto**"; or

   c. While it is being moved from an "**aircraft**", watercraft or "**auto**" to the place where it is finally delivered, but "**loading or unloading**" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the "**aircraft**", watercraft or "**auto**".

29. "**Mini Wing**" means a "**Paraglider**" that is generally smaller than a "**full size paraglider**", but generally larger than a "**speed wing**" having the ability to achieve soaring flight yet also to fly in stronger winds than a "**full size paraglider**", and labeled by manufacturers as mini wing, miniwing, mini-wing, mini-paraglider, or similar terms. Any "**paraglider**" while being operated with a "**wing loading**" of any amount equal to or greater than 4.99 and less than 6.80 is a "**Mini Wing**" regardless of manufacturer labeling.

30. "**Minor Student**" means a "**Student**" who is, at the time of the "**Occurrence**" that gives rise to any claimed "**Bodily Injury**", under the age of majority.

31. "**Mobile equipment**" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts, all-terrain vehicles (ATV), golf carts, dirt bikes, and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises **You** own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "**mobile equipment**" but will be considered "**autos**":

    **(1)** Equipment designed primarily for:

        **(i)** Snow Removal;

        **(ii)** Road maintenance, but not construction or resurfacing; or

        **(iii)** Street cleaning

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "**mobile equipment**" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicles insurance law are considered "**autos**".

**32.** "**Named Insured's authorized instructor**" means an "**employee**", "**temporary worker**", "**volunteer worker**", or independent contractor of the first **Named Insured**, designated and authorized by the first **Named Insured** to provide a particular pre-defined course of instruction in the sport of "**hang gliding**", "**paragliding**", and/or "**powered paragliding**" to the first **Named Insured**'s "**students**", and who:

**a.** In the case of "**hang gliding**" or "**paragliding**" instruction, either:

    **(1)** holds a current, valid, unsuspended, unrevoked, active, unexpired instructor rating issued by "**USHPA**" for the wing type(s), launch method(s), and skill(s) to be taught in the pre-defined course of instruction, which rating has been issued or renewed within 36 months of the "**occurrence**"; or

    **(2)** holds a current, valid, unsuspended, unrevoked, active, unexpired apprentice instructor rating issued by the Professional Air Sports Association, Inc. for the wing type(s), launch method(s), and skill(s) to be taught in the pre-defined course of instruction, and is at all times working under the supervision of an instructor who holds a current, valid, unsuspended, unrevoked, active, unexpired instructor rating issued by "**USHPA**" for the wing type(s), launch method(s), and skill(s) to be taught in the pre-defined course of instruction, which rating has been issued or renewed within 36 months of the "**occurrence**";

**b.** In the case of "**powered paragliding**" instruction, holds a current, unexpired, un-revoked, un-suspended PPG Instructor Rating issued by "**USPPA**", for the launch method(s), and skill(s) to be taught in the pre-defined course of instruction, which rating has been issued or renewed within 36 months of the "**occurrence**"

**33.** "**Occurrence**" means an "**accident**", including continuous or repeated exposure to substantially the same general harmful conditions.

**34.** "**Organic pathogen**" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, or biogenic aerosol.

35.    "**Over-the-Counter Medication**" means any substance that is available without a prescription, that can adversely effect alertness, judgment, coordination, or cognitive function.

36.    "**Paraglider**" means an unpowered Ultralight Vehicle (as defined by Federal Aviation Regulations, Part 103, Section 103.1) capable of being carried, foot launched and landed solely by the use of the pilot's legs, having no rigid primary structure.

37.    "**Paragliding**" means any and all facets of engaging in flight utilizing a paraglider.

38.    "**Participant**" means any person while that person is actively "**participating in the sports of hang gliding, paragliding, or powered paragliding**".

39.    "**Participating in the sports of hang gliding or paragliding**" means attempted and/or successful acts of launching (or assisting another in launching), flying (whether as pilot in command or otherwise) or landing (including, but not limited to, crashing) a "**hang glider**", or "**paraglider**", including all steps connected to such acts, such as assembly, rigging, inspection, and disassembly of the glider, as well as kiting and other ground handling of the glider.

40.    "**Participating in the sports of hang gliding, paragliding or powered paragliding**" means "**Participating in the sports of hang gliding or paragliding**" or "**Participating in the sport of powered paragliding**".

41.    "**Participating in the sport of powered paragliding**" means attempted and/or successful acts of launching (or assisting another in launching), flying (whether as pilot in command or otherwise) or landing (including, but not limited to, crashing) a "**powered paraglider**", including all steps connected to such acts, such as assembly, rigging, inspection, and disassembly of the "**Powered Paraglider**", as well as kiting and other ground handling of the "**Powered Paraglider**", and any interaction with the motor and/or propeller of the "**Powered Paraglider.**"

42.    "**PASA Certified Flight School**" means a "**hang gliding**" and/or "**paragliding**" flight school that is a current, valid, un-revoked, unsuspended, active and unexpired member of the Professional Air Sports Association, Inc. and holds a current, valid, un-revoked, unsuspended, active and unexpired, certification from the Professional Air Sports Association, Inc. as a certified flight school.

43.    "**Personal and advertising injury**" means injury, including consequential "**bodily injury**", "**arising out of**" one or more of the following offenses:

   a.    False arrest, detention or imprisonment;

   b.    Malicious prosecution;

   c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f.    The use of another's advertising idea in **Your** "**advertisement**"; or

   g.    Infringing upon another's copyright, trade dress or slogan in **Your** "**advertisement**".

44.    "**Policy Period**" means the Policy Period indicated on the **Declarations Page** of **This Insurance Policy.**

45.    "**Power Line Injury**" means "**bodily injury**" or "**property damage**" that results from a "**hang glider**", "**paraglider**" or "**powered paraglider**" making contact with power transmission lines, power primary distribution lines, power secondary distribution lines, power service wires, communication cables, communication fibers, communication wires, or cell phone transmission towers, antenna, or equipment.

46.    "**Powered Paraglider**" means an Ultralight Vehicle (as defined by Federal Aviation Regulations, Part 103, Section 103.1) capable of being carried, foot launched and landed solely by the use of the pilot's legs, having no rigid primary structure where the pilot's harness both attaches to the wing and also incorporates a rear facing power unit that is able to supply thrust. A wheeled cart for purpose of launch and/or landing may also be attached to the vehicle, but the cart must not be integral to the use of the vehicle. A Powered Parachute, as described in FAA-H-8083-29 Powered Parachute Flying Handbook, is not a "**Powered Paraglider.**"

47.    "**Powered Paragliding Participant**" means any person while that person is actively engaged in any attempted and/or successful acts of launching (or assisting another in launching), flying (whether as pilot in command or otherwise) or landing (including, but not limited to, crashing) a "**Powered Paraglider**", including all steps connected to such acts, such as assembly, rigging, inspection, and disassembly of the "**Powered Paraglider**", as well as kiting and other ground handling of the "**Powered Paraglider**", and any interaction with the motor and/or propeller of the "**Powered Paraglider.**"

**48.** "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid alkalis, chemicals, nuclear materials, radioactive materials, toxic materials, explosive materials, and waste, including any by-products thereof. Waste includes material to be recycled, reconditioned or reclaimed. "Pollutants" also means disease agents, including, but not limited to, bacteria and virus.

**49.** "Products-completed operations hazard":

    **a.** Includes all "**bodily injury**" and "**property damage**" that arises out of "**your products**" if the "**bodily injury**" or "**property damage**" occurs after **You** have relinquished possession of those products.

    **b.** Includes all "**bodily injury**" and "**property damage**" that arises out of "**your work**" if the "**bodily injury**" or "**property damage**" occurs after **You** have completed or abandoned "**your work**".

        **(1)** "**Your work**" will be deemed completed at the earliest of the following times:

            **(i)** When all of the work called for in **Your** contract has been completed.

            **(ii)** When all of the work to be done at the job site has been completed if **Your** contract calls for work at more than one job site.

            **(iii)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**50.** "Propeller Injury" means "**bodily injury**" or "**property damage**" that results from a "**powered paragliding**" propeller, making contact with any person or with any tangible property.

**51.** "**Property damage**" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "**occurrence**" that caused it

For the purposes of this definition, "**Data**" is not tangible property.

As used in this definition, "**Data**" means:

    **a.** Information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, Compact Discs, Digital Video Discs, tapes, drives, solid state devices, cell phones, biological cells, data processing devices or any other media which are used with electronically controlled equipment; and

    **b.** Information, facts or programs stored as or on, created or used on, or transmitted to or from any non-electronic means, including, but not limited to, handwritten or printed data on paper.

**52.** "**Propulsion Device**" means a self-contained device that attaches to either a non-motorized Ultralight vehicle or to the pilot of such vehicle in order to provide propulsion of the vehicle through the air.

**53.** "**Punitive or exemplary damages**" means damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any other purpose other than as compensatory damages for "**bodily injury**" or "**property damage**". "**Punitive or exemplary damages**" include fines, statutory penalties, sanctions, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award of damages, as well as the return or restitution of legal fees, costs, and expenses.

**54.** "**Scheduled Auto**" means an "**auto**" that is, as of the time of the "**occurrence**" giving rise to the"**bodily injury**" or "**property damage**":

    **a.** scheduled on an "**endorsement**" to **This Insurance Policy** for usage by the first **Named Insured** in tow launching "**hang gliders**" and/or "**paragliders**"; and

    **b.** being operated by a person authorized to operate the "**auto**" under such "**endorsement**"; and

    **c.** being operated within all of the restrictions on its operation under such "**endorsement**".

**55.** "**Scheduled Light-Sport Aircraft**" means a Light-Sport Aircraft (as defined by Federal Aviation Regulations Part 1, Sec. 1.1), that is, as of the time of the "**occurrence**" giving rise to the"**bodily injury**" or "**property damage**":

    **a.** scheduled on an "**endorsement**" to **This Insurance Policy** for usage by the first **Named Insured** in tow launching "**hang gliders**" and/or "**paragliders**"; and

    **b.** being operated by a person authorized to operate the Light-Sport Aircraft under such "**endorsement**"; and

**c.**   being operated within all of the restrictions on its operation under such "**endorsement**".

**56.**   "**Scheduled Powered Ultralight Vehicle**" means a powered ultralight vehicle as defined by Federal Aviation Regulations, Part 103, Section 103.1(a)-(e), that is, at the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**":

**a.**   scheduled on an "**endorsement**" to **This Insurance Policy** for usage by the first **Named Insured** in tow launching "**hang gliders**" and/or "**paragliders**"; and

**b.**   being operated by a person authorized to operate the powered ultralight vehicle under such "**endorsement**"; and

**c.**   being operated within all of the restrictions on its operation under such "**endorsement**".

**57.**   "**Scheduled ATV Tow Device**" means an ATV Vehicle configured to be utilized to tow launch a "**hang glider**" and/or "**paraglider**" that is, as of the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**":

**a.**   scheduled on an "**endorsement**" to **This Insurance Policy** for usage by the first **Named Insured** in tow launching "**hang gliders**" and/or "**paragliders**"; and

**b.**   being operated by a person authorized to operate the ATV tow device under such "**endorsement**"; and

**c.**   being operated within all of the restrictions on its operation under such "**endorsement**".

**58.**   "**Scheduled Tow Device**" means a device utilized to tow launch a hang glider and/or paraglider that is, as of the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**":

**a.**   scheduled on an "**endorsement**" to **This Insurance Policy** for usage by the first **Named Insured** in tow launching "**hang gliders**" and/or "**paragliders**"; and

**b.**   being operated by a person authorized to operate the tow device under such "**endorsement**"; and

**c.**   being operated within all of the restrictions on its operation under such "**endorsement**".

**59.**   "**Scheduled Watercraft**" means a watercraft that is, as of the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**":

**a.**   scheduled on an "**endorsement**" to **This Insurance Policy** for usage by the first **Named Insured** in tow launching "**hang gliders**" and/or "**paragliders**"; and

**b.**   being operated by a person authorized to operate the watercraft under such "**endorsement**"; and

**c.**   being operated within all of the restrictions on its operation under such "**endorsement**".

**60.**   "**Self-insured retention**" means the amount set forth in the **Declarations** that the first **Named Insured** is required to pay with respect to each and every "**occurrence**" as "**damages**" and/or "**defense costs**" that would otherwise be covered under **This Insurance Policy**.  **Your risk retention group**'s obligation to pay any portion of "**damages**" and/or "**defense costs**" does not arise, and no payment by **Us** is due, unless and until the first **Named Insured** pays 100% of the "**self-insured retention**".

**61.**   "**Speed wing**" means a small, high performance "**paraglider**", specifically designed to fly fast hill descents, labeled by the manufacturer as suitable for speed flying, speed gliding, ski gliding, speed riding or similar terms.  Any "**paraglider**" while being operated with a "**wing loading**" of any amount equal to or greater than 6.80 is a "**speed wing**" regardless of manufacturer labeling.

**62.**   "**Student**" means a person who has enrolled with the first **Named Insured** to take a pre-defined course of instruction in sport of "**hang gliding**", "**paragliding**", and/or "**powered paragliding**" and has, at the time of the "**occurrence**" giving rise to a "**claim**", begun receiving instruction from one of the "**Named Insured's authorized instructors**".

**63.**   "**Suit**" means a civil proceeding in which damages because of "**bodily injury**", "**property damage**" or "**personal and advertising injury**" to which this insurance applies are alleged.

**a.**   "**Suit**" includes:

  **(1)**   An arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with **Our** consent; or

  **(2)**   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with **Our** consent.

**b.**   "**Suit**" does not include:

  **(1)**   Criminal investigations, proceedings or prosecutions;

  **(2)**   Regulatory investigations, proceedings or prosecutions;

  **(3)**   Administrative investigations, proceedings or prosecutions;

**(4)** Investigations, proceedings or prosecutions conducted by "**USHPA**", "**USPPA**", or any other organizations with whom any **Insured** holds, or has ever held, a membership, or from whom any **Insured** has ever received a pilot proficiency rating, a certification, an appointment, an official position, or other designation.

64. "**Tandem Paraglider**" means a "**paraglider**" with traditional paragliding characteristics, labeled by its manufacturer as suitable for tandem operations, while being operated with a "**wing loading**" of less than 5.5. "**Tandem Paraglider**" does not include any "**paraglider**" labeled by its manufacturer as a mini wing, miniwing, mini-wing, mini-paraglider, or similar terms, or labeled by its manufacturer as suitable for speed flying, speed gliding, ski gliding, speed riding or similar terms.

65. "**Temporary worker**" means a person who is furnished to **You** to substitute for a permanent "**employee**" on leave or to meet seasonal or short-term workload conditions.

66. "**USHPA**" means the United States Hang Gliding and Paragliding Association, Inc.

67. "**USPPA**" means the United States Powered Paragliding Association.

68. "**Volunteer worker**" means a person who is not **Your** "**employee**", and who donates his or her work and acts at the direction of and within the scope of duties determined by **You**, and is not paid a fee, salary or other compensation by **You** or anyone else for their work performed for **You**.

69. "**Wildfire**" is defined as an uncontrollable fire, forest fire, brush fire, grass fire, firestorm or any other series of fires, regardless of origin, which is predominately fuelled by trees, grasslands, timber, scrub, brush or any other naturally occurring, native grown or landscaped vegetation. The term "w**ildfire**" also includes a fire or fire event declared as a wildfire by a governmental authority.

   Such "wildfire "shall be deemed to be a single "occurrence" within the meaning of This Insurance Policy.

70. "**Wing loading**" for a "**paraglider**" means the in-flight weight of the occupant(s) (including their clothing, harness, reserve, gear, ballast, and anything else connected to the occupant(s)), and anything else connected to the "**paraglider**" (measured in kilograms) divided by the Flat Area of the "**paraglider**" (measured in square meters).

71. "**Your product**"

   **a.** means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(i)** **You**;

   **(ii)** Others trading under **Your** name, or

   **(iii)** A person or organization whose business or assets **You** have acquired; and

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such good or products.

   **b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "**your product**"; and

   **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

72. "**Your work**"

   **a.** Means:

   **(1)** Work or operations performed by **You** or on **Your** behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "**your work**"; and

   **(2)** The providing of or failure to provide warnings or instructions; and

   **(3)** claims of faulty, incomplete or deficient workmanship, regardless of whether such damage occurs or is discovered after that work has been completed.

**SECTION III - SELF-INSURED RETENTION**

1.  This **Insurance Policy** has a "**self-insured retention**". The amount of Self-insured Retention is stated on the **Declarations**.

2.  The "**self-insured retention**" applies only once for each "**occurrence**", no matter how many "**claims**" might be made for injuries arising from that one "**occurrence**".

3.  The **Insureds** must pay "**defense costs**" and/or "**damages**" in an amount equal to 100% of the "**self-insured retention**" before **We** have any duty to pay any "**defense costs**" and/or "**damages**".

4.  **We** have the absolute right, but not the duty, to assume the investigation, negotiation, defense, and/or settlement of any "**occurrence**", "**claim**", or "**suit**" even before the "**self-insured retention**" has been paid. **Our** assumption of the investigation, negotiation, defense and/or settlement does not relieve the first **Named Insured** of the obligation to timely pay the "**self-insured retention**".

5.  **We** have the absolute right, in **Our** sole and exclusive discretion, and without the consent of any **Insured**, to agree to pay all or a portion of "**defense costs**" and/or "**damages**", by payment of the "**self-insured retention**" in whole or in part by **You**.

6.  **We** have the absolute right, in **Our** sole and exclusive discretion, and without the consent of any **Insured**, to agree to settle a "**claim**" or "**suit**" by payment of any amount within the policy limits applicable to the "**claim**" or "**suit**". All **Insureds** are bound by such a settlement whether or not they consent to such settlement.

    a.  **We** may withdraw from and cancel such a settlement agreement if the first **Named Insured**, for any reason, fails to timely pay the "**self-insured retention**".

    b.  If such a settlement is not concluded because the first **Named Insured** failed, for whatever reason, to pay the "**self-insured retention**" in a timely manner, then the total amount **We** are liable to pay in "**defense costs**" and "**damages**" in connection with such a "**claim**" or "**suit**" from that point forward is the amount of the failed settlement, less the amount of the "**self-insured retention**" that the first **Named Insured** failed to pay.

7.  **We** have the absolute right to select the investigators, defense counsel, experts, and all other personnel and service providers to be retained to investigate any "**occurrence**", adjust any "**claim**", and defend (including the appeal) of any "**suit**" (the "**defense personnel**"). The **Insured** will pay the fees and billings of the "**defense personnel**" that **We** select in satisfaction of the "**self-insured retention**". Unless and until the **Insured** actually pays the "**self-insured retention**" amount to **Us** or directly to **Our** selected "**defense personnel**", **We** have no duty to continue the investigation, negotiation, defense, and/or settlement of the "**occurrence**", "**claim**", or "**suit**" nor to incur or pay any "**defense costs**" and/or "**damages**".

    a.  **We** may, but are not required, to advance the payment of costs and fees of **Our** selected "**defense personnel**" on behalf of the **Insureds** to the extent of the "**self-insured retention**". If **We** choose to make such an advance, the first **Named Insured** will reimburse **Our** advance payment within 15 calendar days of **Our** written request for reimbursement, and the reimbursement, when received by **Us**, shall constitute a payment by the **Insured** of the portion of the "**self-insured retention**" in the amount of the reimbursement received by **Us**. Unless and until the first **Named Insured** fully reimburses **Us** for the advance, **We** have no duty to continue the investigation, negotiation, defense, and/or settlement of the "**occurrence**", "**claim**", or "**suit**" nor to pay for "**defense costs**" and/or "**damages**".

    b.  In the event that the first **Named Insured** fails to reimburse **Us** for the advanced payment of costs and fees of **Our** selected "**defense personnel**" within the required 15 days, **We** may recover from the first **Named Insured**, not only the amount of the advance payment, but also **Our** collection costs, reasonable attorneys fees, court costs and interest at the legal rate applicable to judgments in the jurisdiction where the first **Named Insured** has his/her principal residence, to the fullest extent allowed by law.

8.  The failure of the first **Named Insured** to timely pay any "**self-insured retention**" in whole or in part, shall be treated the same as a failure to pay any policy premium when due and **We** will have the same remedies as **We** would have in the event of a failure to pay premium when due, including cancellation of the insurance policy.

9.  Any cancellation of the insurance policy shall not relieve the first **Named Insured** of its duty and obligation to pay the "**self-insured retention**" amount.

10. This insurance shall not apply to any liability "**arising out of**" an "**occurrence**" that takes place while the first **Named Insured** is in default on its obligation to pay any "**self-insured retention**".

## SECTION IV – LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the **Declarations** and the rules below fix the most **We** will pay regardless of the number of:

    **a.**    **Insureds;**

    **b.**    "**Claims**" made or "**suits**" brought; or

    **c.**    Persons or organizations making "**claims**" or bringing "**suits**".

**2.**    As stated above, "**defense costs**" and **SUPPLEMENTARY PAYMENTS** both reduce the Limits of Insurance shown in the **Declarations**. We will not pay any further "**defense costs**" or **SUPPLEMENTARY PAYMENTS** once:

    **a.**    the applicable Limit of Insurance (as reduced by the payment of "**defense costs**" and **SUPPLEMENTARY PAYMENTS**) has been been paid under the rules fixed below; or

    **b.**    the applicable Limit of Insurance has been reduced to Zero ($0) by the payment of "defense costs" and/or **SUPPLEMENTARY PAYMENTS**.

**3.**    The **General Aggregate Limit** is the most **We** will pay for the sum of:

    **a.**    Medical expenses under **Coverage C**;

    **b.**    "**Damages**" under **Coverage A**, except damages because of "**bodily injury**" or "**property damage**" included in the "**products-completed operations hazard**";

    **c.**    "**Damages**" under **Coverage B**;

    **d.**    "**Damages**" under **Coverage D**; and

    **e.**    "**Damages**" under **Coverage E**.

**4.**    The **Products-Completed Operations Hazard** is EXCLUDED and **We** will pay nothing under any Coverages for "**damages**" because of "**bodily injury**" or "**property damage**" included in the "**products-completed operations hazard**".

**5.**    Subject to **3.** and **4.** above, the **Personal and Advertising Injury Limit** is the most **We** will pay under **Coverage B** for the sum of all "**damages**" because of all "**personal and advertising injury**" sustained by any one person or organization.

The **Personal and Advertising Injury Limit** is a part of and not in addition to the **General Aggregate Limit**.

**6.**    Subject to **3.** and **4.** above, the **Each Occurrence Limit** is the most **We** will pay for the sum of:

    **a.**    "**Damages**" under **Coverage A**;

    **b.**    Medical expenses under **Coverage C**;

    **c.**    "**Damages**" under **Coverage D**; and

    **d.**    "**Damages**" under **Coverage E**

because of all "**bodily injury**" and "**property damage**" "**arising out of**" any one "**occurrence**".

The **Each Occurrence Limit** is a part of and not in addition to the **General Aggregate Limit**.

**7.**    Subject to **6.** above, the **Damage to Premises Rented To You Limit** is the most **We** will pay under **Coverage A** for damages because of "**property damage**" to any one premises, while rented to **You**, or in the case of damage by fire, while rented to **You** or temporarily occupied by **You** with permission of the owner.

The **Damage to Premises Rented To You Limit** is a part of and not in addition to the **General Aggregate Limit**.

**8.**    Subject to **6.** above, the **Medical Payment (Expense) Per Person Limit** is the most **We** will pay under **Coverage C** for all medical expenses because of "**bodily injury**" sustained by any one person.

The **Medical Payment (Expense) Per Person Limit** is a part of and not in addition to the **Each Occurrence Limit**.

**9.**    Subject to **6.** above, the **Propeller Injury Limit** is the most **We** will pay for the sum of:

    **a.**    "**Damages**" under **Coverage A**;

    **b.**    Medical expenses under **Coverage C**;

    **c.**    "**Damages**" under **Coverage D**; and

    **d.**    "**Damages**" under **Coverage E**

because of all "**bodily injury**" and "**property damage**" "**arising out of**" any one "**propeller injury**" "**occurrence**".

The **Propeller Injury Limit** is a part of and not in addition to the **Each Occurrence Limit**.

**10.**    Subject to **6.** above, the **Power Line Limit** is the most **We** will pay for the sum of:

    **a.**    "**Damages**" under **Coverage A**;

    **b.**    Medical expenses under **Coverage C**;

    **c.**    "**Damages**" under **Coverage D**; and

    **d.**    "**Damages**" under **Coverage E**

because of all "**bodily injury**" and "**property damage**" "**arising out of**" any one "**power line injury**" "**occurrence**".

The **Power Line Limit** is a part of and not in addition to the **Each Occurrence Limit**.

**11.**    Subject to **6.** above, the **Wildfire Limit** is the most **We** will pay for the sum of:

    **a.**    "**Damages**" under **Coverage A**;

    **b.**    Medical expenses under **Coverage C**;

    **c.**    "**Damages**" under **Coverage D**; and

    **d.**    "**Damages**" under **Coverage E**

because of all "**bodily injury**" and "**property damage**" "**arising out of**" any one "**wildfire**" "**occurrence**".

The **Wildfire Limit** is a part of and not in addition to the **Each Occurrence Limit**.

**12.**    The Limits of Insurance apply separately to each consecutive annual period falling within the term of the "**policy period**" and to any remaining period of less than 12 months, starting with the beginning of the "**policy period**" shown in the **Declarations**, unless the "**policy period**" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**13.**    **Our** liability to provide payments of "**defense costs**", "**damages**" and/or **SUPPLEMENTARY PAYMENTS** under **Coverage A**, **Coverage B**, **Coverage D**, and **Coverage E** for any "**claim**" or "**suit**", arises only after an **Insured** has first paid "**defense costs**", "**damages**" and/or **SUPPLEMENTARY PAYMENTS** in a total amount equal to the "**self-insured retention**" listed on the **Declarations** for all "**claims**" and "**suits**" related to the "**occurrence**" giving rise to the "**claim**" or "**suit**".

**14.**    Order of Payments

    **We** will pay "**defense costs**", "**damages**", and **SUPPLEMENTARY PAYMENTS** in the order in which **Our** liability for such payments are incurred. **Our** liability for "**defense costs**" are incurred on the date that **We** incur the liability to pay them to **Our** selected "**defense personnel**". **Our** liability for "**damages**" are incurred on the date that the "**damages**" are required, either by settlement agreement or by operation of law (following entry of final judgment after (a) trial (and only after the exhaustion of all appeals taken) on the merits; or (b) binding arbitration; or (c) any other agreed upon dispute resolution proceeding) to be paid.  **Our** liability for **SUPPLEMENTARY PAYMENTS** are incurred on the date that the **SUPPLEMENTARY PAYMENTS** are required, either by settlement agreement or by operation of law (following entry of final judgment after (a) trial (and only after the exhaustion of all appeals taken) on the merits; or (b) binding arbitration; or (c) any other agreed upon dispute resolution proceeding) to be paid. **We** do not incur liability for any payments upon the establishment of a reserve in relation to any "**occurrence**", "**claim**" or "**suit**". This prioritization of payments is not subject to modification based upon the financial impairment of any **Insured**.

## SECTION V – WHO IS AN INSURED

The first **Named Insured** is designated in the **Declarations**.  In addition to the first **Named Insured**, the following are also **Insureds** under **This Insurance Policy**.

**1.**    Except as set forth in paragraph 2, below, if **You** are designated in the **Declarations** as:

    **a.**    An individual, **You** and **Your** spouse are **Insureds**, but only with respect to the conduct of a business of which **You** are the sole owner.

    **b.**    A partnership or joint venture, **You** are an **Insured**. **Your** members, **Your** partners, and their spouses are also **Insureds**, but only with respect to the conduct of **Your** business.

    **c.**    A limited liability company, **You** are an **Insured**. **Your** members are also **Insureds**, but only with respect to the conduct of **Your** business. **Your** managers are **Insureds**, but only with respect to their duties as **Your** managers.

    **d.**    An organization other than a partnership, joint venture or limited liability company, **You** are an **Insured**. **Your** "**executive officers**" and directors are **Insureds**, but only with respect to their duties as **Your** officers or directors. **Your** stockholders are also **Insureds**, but only with respect to their liability as stockholders.

    **e.**    A trust, **You** are an **Insured**. **Your** trustees are also **Insured**, but only with respect to their duties as trustees.

2.    However, none of the individuals, members, partners, spouses, managers, **executive officers**, directors, stockholders, or trustees mentioned in paragraph 1, subsections a., b., c., d., or e. ("**owner representatives**") are **Insured** for "**Bodily Injury**", "**personal and advertising injury**", or "**property damage**" arising in whole or in part out of instruction in the sports of "**hang gliding**", "**paragliding**", or "**powered paragliding**", unless:

    **a.**    The injury or damage arose out of instruction by that "**owner representative**" and at the time of the "**occurrence**" giving rise to the "**Bodily Injury**" "**claim**" or "**suit**", the "**owner representative**" qualified as a "**Named Insured's authorized instructor**"; or

    **b.**    The injury or damage arose out of instruction by an "**employee**", "**volunteer worker**", or independent contractor of the first **Named Insured** and at the time of the "**occurrence**" giving rise to the "**Bodily Injury**" "**claim**" or "**suit**", the "**employee**", "**volunteer worker**", or independent contractor qualified as a "**Named Insured's authorized instructor**"

3.    Each of the following is also an **Insured**:

    **a.**    **Your** "**volunteer worker**s" only while performing duties related to the conduct of **Your** business;  **Your** "**employees**", other than either **Your** "**executive officers**" (if **You** are an organization other than a partnership, joint venture or limited liability company) or **Your** managers (if **You** are a limited liability company);  Any of the **Named Insured's authorized instructors,** but only for acts within the scope of their employment by **You** or while performing duties related to the conduct of **Your** business. However, none of these "**employees**" or "**volunteer workers**" or **Named Insured's authorized instructors** is an **Insured** for:

        **(1)**   "**Bodily injury**" or "**personal and advertising injury**":

            **(i)**   To **You**, to **Your** partners or members (if **You** are a partnership or joint venture), to **Your** members (if **You** are a limited liability company), or to a co-"**employee**" while that co-"**employee**" is either in the course of his or her employment or performing duties related to the conduct of **Your** business, or to **Your** other "**volunteer workers**" while performing duties related to the conduct of **Your** business, or to any other **Named Insured's authorized instructor** while performing duties related to the conduct of **Your** business; or

            **(ii)**   To the spouse, domestic partner, child, parent, brother, sister or other relative of that person as a consequence of Paragraph 3. a. (1) (i) above; or

            **(iii)**   For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury descried in Paragraphs 3. a. (1)(i) or (ii) above; or

            **(iv)**   "**arising out of**" his or her providing or failing to provide professional health care services.

        **(2)**   "**Property damage**" to property:

            **(i)**   Owned, occupied or used by,

            **(ii)**   Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by **You**, any of **Your** "**employees**", any of **Your** "**volunteer workers**", any **Named Insured's authorized instructor,** any partner or member (if **You** are a partnership or joint venture), or any member (if **You** are a limited liability company), except for hang gliders, paragliders, powered paragliders and associated gear owned by customers of the first **Named Insured** that are being stored pursuant to glider and gear storage operations of the first **Named Insured** if such storage operations are listed on an "**endorsement**" to **This Insurance Policy** as "**covered activities**".

        **(3)**   "**Bodily Injury**", "**personal and advertising injury**", or "**property damage**" arising in whole or in part out of instruction by the "**employee**" or "**volunteer worker**" or independent contractor in the sports of "**hang gliding**", "**paragliding**", or "**powered paragliding**" unless, at the time of the "**occurrence**" giving rise to the "**Bodily Injury**" "**claim**" or "**suit**", the "**employee**" or "**volunteer worker**" or independent contractor qualified as a "**Named Insured's authorized instructor**".

    **b.**    Any person (other than **Your** "**employee**" or "**volunteer workers**"), or any organization while acting as **Your** real estate manager.

    **c.**    Any person or organization having proper temporary custody of **Your** property if **You** die, but only:

        **(1)**   With respect to liability "**arising out of**" the maintenance or use of that property; and

        **(2)**   Until **Your** legal representative has been appointed.

d.    **Your** legal representative if **You** die, but only with respect to duties as such. That representative will have all **Your** rights and duties under **This Insurance Policy**.

4.    Persons or organizations designated as additional insureds in **"endorsements"** to **This Insurance Policy**.

## SECTION VI – CONDITIONS

**1.    Bankruptcy or Insolvency**

Bankruptcy or insolvency of the **Insured** or of the **Insured**'s estate will not relieve **Us** of **Our** obligations under **This Insurance Policy**.

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a.    As a condition precedent to coverage under **This Insurance Policy**, **You** must see to it that **We** are notified in writing as soon as practicable of an **"occurrence"** or an offense which may result in a **"claim"**. To the extent possible, notice should include:

    **(1)**    How, when and where the **"occurrence"** or offense took place;

    **(2)**    The names and addresses of any injured persons and witnesses; and

    **(3)**    The nature and location of any injury or damage **"arising out of"** the **"occurrence"** or offense.

b.    If a **"claim"** is made or **"suit"** is brought against any **Insured**, as a condition precedent to coverage under **This Insurance Policy You** must:

    **(1)**    Immediately record the specifics of the **"claim"** or **"suit"** and the date received; and

    **(2)**    Notify **Us** in writing as soon as practicable within ten (10) days of being made aware of the **"claim"** or **"suit"**.

**You** must see to it that **We** receive written notice of the **"claim"** or **"suit"** as soon as practicable.

c.    **You** and any other involved **Insured** must:

    **(1)**    Immediately send **Us** copies of any demands, notices, summonses or legal papers received in connection with the **"claim"** or **"suit"**;

    **(2)**    Authorize **Us** to obtain records and other information;

    **(3)**    Cooperate with **Us** in all aspects of **Our** investigation, defense and settlement of any **"claim"** or **"suit"**, submit to examination or questioning, provide written statements regarding the **"claim"**, provide sworn statements regarding the **"claim"**, attend hearings, depositions and trial, provide documents and information, provide sworn responses to discovery, and assist in obtaining evidence and the attendance of witnesses. If **You** or any other involved **Insured** do not cooperate with **Us**, **We** will have no obligation to indemnify **You** or any other involved **Insured** for any damages awarded; and

    **(4)**    Assist **Us**, upon **Our** request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

d.    No **Insured** will, except at that **Insured**'s own cost:

    **(1)**    voluntarily make a payment,

    **(2)**    assume any obligation, or

    **(3)**    incur any expense, other than for first aid,

without **Our** consent in excess of **Your** **"self-insured retention"** without first obtaining **Our** written consent.

e.    Notifications under this clause shall be made as follows:

    **(1)**    An oral notice may be made within minutes of the **"occurrence"** by contacting **Us** at **Our** Incident Hotline: 802-383-1541

    **(2)**    Written notice must be delivered by personal delivery, US Mail, Overnight Carrier, or email to:
        **Recreation Risk Retention Group, Inc.**
        Attn: Incident And Claims Dept.
        27 Main Street, First Floor
        Burlington, VT  05401
        Phone: 802-383-1541
        Email: incidentreports@recreationrrg.com

**NOTE: Because the notice is a condition precedent to coverage, failure to provide notices as set forth above will be considered a failure of a condition to coverage and may at Our option render This Insurance Policy null and void in relationship to any "accident" or "occurrence" not properly and promptly set forth in notices as called for herein.**

**3.     Legal Action Against Us**

No person or organization has a right under **This Insurance Policy** to:

**a.**     Join **Recreation Risk Retention Group, Inc.** as a party or otherwise bring it into a "**suit**" seeking "**damages**" from an **Insured**; or

**b.**     Sue **Recreation Risk Retention Group, Inc.** All disputes, claims or controversies involving **Recreation Risk Retention Group, Inc.** shall be resolved by binding arbitration, pursuant to the arbitration clause found at **SECTION VI – CONDITIONS, 4. Arbitration Clause**, of **This Insurance Policy**.

**Recreation Risk Retention Group, Inc.** shall not be liable for the defense or payment of any amounts (whether or not included in "**defense costs**", "**damages**" or **SUPPLEMENTARY PAYMENTS**) that are not payable under the terms and conditions of **This Insurance Policy**. **Recreation Risk Retention Group, Inc.** shall not be liable for "**defense costs**", "**damages**" or **SUPPLEMENTARY PAYMENTS** that are below the "**self-insured retention**" of **This Insurance Policy**. Nor shall **Recreation Risk Retention Group, Inc.** be liable for the defense or payment of any amounts (whether or not included in "**defense costs**", "**damages**" or **SUPPLEMENTARY PAYMENTS**) that are in excess of the applicable Limits of Liability available to the **Insured** under **This Insurance Policy**.

Additionally, as conditions precedent to any liability of **Recreation Risk Retention Group, Inc.** for the payment of any "**damages**":

**a.**     There shall have been full compliance with all of the provisions of **This Insurance Policy**; and

**b.**     the amount of the **Insured's** obligation to pay shall have been determined either by final judgment against the **Insured** after an actual contested arbitration or trial (and only after the exhaustion of all appeals taken) on the merits, or by written agreement of the **Insured**, the claimant, and **Recreation Risk Retention Group, Inc.**

**Recreation Risk Retention Group, Inc.** shall not be liable for the defense or payment of any amount that the Insured is not required by law to pay to the claimant. For example, and not by way of limitation, if the Insured and a Claimant have entered into an agreement not to execute against the non-insurance assets of the Insured, Recreation Risk Retention Group, Inc., shall likewise not be subject to payment of any amount.

**4.     Arbitration Clause.**

**a.     All Disputes, Claims and Controversies Involving Us Must Be Arbitrated.**

**(1)**     Any and all disputes, claims or controversies involving **Recreation Risk Retention Group, Inc.** shall be resolved by binding arbitration, whether such disputes, claims or controversies arise between the parties to **This Insurance Policy**, or between **Recreation Risk Retention Group, Inc.** and any person or entity who is not a party to **This Insurance Policy** but is claiming right either under **This Insurance Policy** or against **Recreation Risk Retention Group, Inc.** This Arbitration Clause is made pursuant to the authority of the Liability Risk Retention Act of 1986 (15 USC 3901 et. seq.) which exempts risk retention groups from most State laws, rules, regulations or orders that would attempt to make unlawful or regulate, directly or indirectly, the operation of a risk retention group.

**(2)**     The scope of this Arbitration Clause is intended to, and shall, encompass the widest possible scope of disputes or claims, including any issues

**(i)**     with respect to any of the terms or provisions of this Policy, or

**(ii)**     with respect to the performance of any of the parties to the Policy, or

**(iii)**     with respect to any other issue or matter, whether in contract or tort, or in law or equity.

**(3)**     All procedures, methods, and rights with respect to the right to compel arbitration pursuant to this Article shall be governed by the Federal Arbitration Act.

**(4)**     Any person or entity asserting such dispute or claim (the "Claimant") must submit the matter to binding arbitration with JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules, by a single arbitrator in good standing. In the event of a conflict between the JAMS rules and this Arbitration Clause, the provisions of this Arbitration Clause shall prevail and govern.

**(5)**     If the Claimant refuses to arbitrate, then any other party may, by notice as herein provided, require that the dispute be submitted to arbitration within fifteen (15) days.

**(6)** Neither the Claimant nor any other party shall have the right to participate as a member of any class of claimants, and there shall be no authority for any dispute to be decided on a class action basis. In addition, an arbitration can only decide a dispute between the Claimant and the Company, and may not consolidate or join the claims of other persons who have similar claims.

**(7)** All procedures, methods, and rights with respect to the right to compel arbitration pursuant to this Article shall be governed by the Federal Arbitration Act.

**(8)** The arbitration shall be held in Burlington, Vermont.

**(9)** The laws of the State of Vermont shall apply to any substantive, evidentiary or discovery issues.

**(10)** Any questions as to arbitrability of any dispute or claim shall be decided by the arbitrator.

**(11)** If any party seeks a court order compelling arbitration under this provision, the prevailing party in such motion, petition or other proceeding to compel arbitration shall recover all reasonable legal fees and costs incurred thereby and in any subsequent appeal, and in any action to collect the fees and costs.

**(12)** A judgment shall be entered upon the arbitration award in the U.S. District Court, District of Vermont, or if that court lacks jurisdiction, then in the Superior Court of Vermont, County of Chittenden.

**5.    Other Insurance**

If other valid and collectible insurance is available to the **Insured** for a loss **We** cover under **Coverages A, B, D** or **E** of **This Insurance Policy**, **Our** obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, **Our** obligations are not affected unless any of the other insurance is also primary. Then, **We** will share with all that other insurance by the method described in c. below.

**b.    Excess insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk of similar coverage for "**your work**";

    **(ii)** That is Fire insurance for premises rented to **You** or temporarily occupied by **You** with permission of the owner;

    **(iii)** That is insurance purchased by **You** to cover **Your** liability as a tenant for "**property damage**" to premises rented to **You** or temporarily occupied by **You** with permission of the owner;

    **(iv)** That is insurance not issued by **Us**, and covers liability "**arising out of**" the ownership, maintenance, use, or entrustment to others of any "**aircraft**", "**auto**" or watercraft; or

    **(v)** That is insurance not issued by **Us**, and covers liability "**arising out of**" any of the "**covered activities**".

**(2)** Any other primary insurance available to **You** covering liability for damages "**arising out of**" the premises or operations, or the products and completed operations, for which **You** have been added as an additional insured by attachment of an "**endorsement**".

When this insurance is excess, **We** will have no duty under **Coverages A, B, D** or **E** to defend the **Insured** against any "**suit**". If no other insurer defends, **We** will undertake to do so, but **We** will be entitled to the **Insured**'s rights against all those other insurers.

When this insurance is excess over other insurance, **We** will pay only **Our** share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

**We** will share the remaining loss, if any, with any other valid and collectible insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the **Declarations** of **This Insurance Policy**.

**c.** **Method Of Sharing**

**(1)** If all of the other valid and collectible insurance permits contribution by equal shares, **We** will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. Once any insurer has contributed its limit of insurance, the contribution shall be adjusted to be equal shares of the remaining insurers.

**(2)** If any of the other valid and collectible insurance does not permit contribution by equal shares, **We** will contribute by per occurrence limits. Under this method, each insurer's share is based on the ratio of its applicable per occurrence limit of insurance (without regard to any per person sublimits) to the total applicable limits of valid and collectible insurance of all insurers.

**d.** **Pyramiding of Limits**

**(1)** **General Rule: Non-Pyramiding of Limits**

Except as specifically set forth in subsection (2) below, in the event that **This Insurance Policy** and any other insurance policy(ies) issued by **Recreation Risk Retention Group, Inc.** apply to the same "**occurrence**", the total applicable Limit of Liability shall never exceed the single largest Limit of Liability under any one of those insurance policies. The "**self-insured retention**" for each applicable insurance policy issued by **Recreation Risk Retention Group, Inc.** shall be applied to the portion of any "**claim**" or "**suit**" "**arising out of**" the same "**occurrence**" that is allocated to the respective **Insured**.

**(2)** **Exception Rule: Pyramiding of Limits with USHPA PL Policy to Maximum of $500,000**

Where both **This Insurance Policy** and a Master Professional Liability Policy issued by **Recreation Risk Retention Group, Inc.** to the United States Hang Gliding and Paragliding Association, Inc. ("**USHPA PL Policy**") apply to "**claims**" or "**suits**" against one or more of the same USHPA Certified Instructor **Insured**(s) as a result of the same "**occurrence**":

**(i)** This insurance is primary and the **USHPA PL Policy** is excess only insofar as the "**claims**" or "**suits**" are against the USHPA Certified Instructor **Insured**(s);

**(ii)** The maximum Limit of Liability of the **USHPA PL Policy** for all "**claims**" or "**suits**" against the same USHPA Certified Instructor **Insured**(s) as a result of the same "**occurrence**" will be as follows:

**(A)** ZERO ($0), if the Limit of Liability under **This Insurance Policy** as set forth in **SECTION IV - LIMITS OF INSURANCE**, above is greater than or equal to $500,000; or

**(B)** The lesser of:

**1)** The Limit of Liability applicable to the "**claim**" or "**suit**" under the **USHPA PL Policy**; or

**2)** The difference between $500,000 and the Limit of Liability under **This Insurance Policy** as set forth in **SECTION IV – LIMITS OF INSURANCE**.

**(iii)** The "**self-insured retention**" designated in the **Declarations** of **This Insurance Policy** must be met before **We** have any duty to defend or indemnify under **This Insurance Policy** as the primary policy. Additionally, any self-insured retention designated in the declarations of the **USHPA PL Policy** must be separately met before **We** have any duty to defend or indemnify under the **USHPA PL Policy** as the excess policy.

**6.** **Premium and Premium Audit**

**a.** **We** will compute all premiums for **This Insurance Policy** in accordance with **Our** rules and rates in effect at the time **This Insurance Policy** is issued to **You**.

**b.** The first **Named Insured** shown in the **Declarations**:

**(1)** Is responsible for the payment of all premiums; and

**(2)** Will be the payee for any return premiums **We** pay.

**c.** Premium shown in **This Insurance Policy** as Net Advance Premium is a deposit premium only. At the close of each audit period **We** will compute the Final Earned Premium for that period and send notice to the first **Named Insured**.

The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and any interim premiums paid for the "**policy period**" is greater than the Final Earned Premium, **We** will, at **Our** option, either return the excess to the first **Named Insured,** or credit

the excess to the first **Named Insured**'s deposit premium on any renewal policy that we may, in our discretion, choose to offer to the first **Named Insured**..

**d.** The first **Named Insured** must keep accurate records of the information **We** need for premium computation, and send **Us** copies at such times as **We** may request. The first **Named Insured** must maintain the following internal accounting records pertaining to all of the business activities of the first **Named Insured** for a minimum of three years after the expiration of **This Insurance Policy**:

   **(1)** Originals of all pre-injury releases signed by your students;

   **(2)** A log of all lessons taught which logs shall include the date of the lesson, the names of the students and the instructors, and whether or not the lesson resulted in an accident involving "**bodily Injury**" or "**property damage**";

   **(3)** A complete and reconcilable accounting system that includes the following items:

      **(i)** customer cash receipt deposit ledger or statements. These include the deposit transactions with continuous sum totals;

      **(ii)** bank statements/ledgers, or the deposit slip ledger receipts

   **(4)** A record of all receipts or compensation, including, but not limited to, payments, gratuities, donations, gifts, bartering, discounts, etc..., received from any source during the policy term;

   **(5)** W-2 records or a similar record of employment for all employees;

   **(6)** 1099 records or a similar record of retention of all contractors;

   **(7)** A record of all financial relationships with booking agents or advertisers;

**e.** **We** may examine and audit **Your** books and records as they relate to this policy at any time during the "**policy period**" and up to three years afterward. If, as a result of the physical examination and audit of **Your** books and records, **Your** audit premium computation is increased more than 5% from the premium computed based upon **Your** "**application**" and/or the records **You** sent to **Us**, **You** will pay for **Our** costs incurred in connection with the audit in addition to the recomputed audit premium.

**f.** **You** grant permission for **Us** to obtain from the United States Hang Gliding and Paragliding Association, Inc., the Professional Air Sports Association, Inc., and the United States Powered Paragliding Association, any and all information they have and maintain about **Your** operations, for **Our** use in setting **Your** advance premium, auditing **Your** premium and calculating **Your** earned premium.

**g.** Should **You** fail to fulfill any of **Your** obligation under this paragraph (**6. Premium and Premium Audit**) to pay premium, provide information and documentation, allow access to records for audit purposes, or pay any audit premium or recomputed audit premium, and **We** incur costs, expenses, attorneys fees, or arbitration/arbitrator fees to enforce those obligations, the first **Named Insured** will pay **Our** costs of enforcement, including, but not limited to arbitration fees, arbitrator fees, reasonable attorneys fees, and all other costs and expenses.

**h.** Upon the happening of any "**claim**" or the filing of any "**suit**" to which **This Insurance Policy** applies, the Minimum Earned Premium shall be the greater of 100% of the Net Advance Premium or 100% of the Net Advance Premium plus all interim and audit premiums, calculated as of the date of the happening of the "**claim**" or the filing of the "**suit**", and will not be subject to any pro-rata or short-rate adjustment, and the Final Audit Premium will not be less than the Minimum Earned Premium as calculated pursuant to this subparagraph (**6. Premium and Premium Audit, h.**).

**7.** **Inspections, Briefings and Surveys**

**a.** **We** have the right to:

   **(1)** Make inspections and surveys at any time;

   **(2)** Give **You** reports on the conditions **We** find;

   **(3)** Provide informational safety briefings related to the sports of "**hang gliding**", "**paragliding**", "**powered paragliding**" and **Your** operations;

   **(4)** Survey **Your** customers, clients and vendors;

   **(5)** Review any pre-injury releases in use by **You** at **Your** operations; and

   **(6)** Recommend changes.

**b.** **We** are not obligated to make any inspections, surveys, briefing, reports or recommendations and any such actions **We** do undertake relate only to insurability and the premiums to be charged. **We** do not make safety inspections. **We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And **We** do not warrant that conditions:

**(1)** Are safe or healthful; or

**(2)** Comply with laws, regulations, codes or standards.

**c.** Paragraphs a. and b. of this condition apply not only to **Us**, but also to any rating, advisory, rate service, or similar organization, or individual which makes insurance inspections, surveys, reports, or recommendations.

**8. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any right or duties specifically assigned in **This Insurance Policy** to the first **Named Insured**, this insurance applies:

**a.** As if each **Named Insured** were the only **Named Insured**; and

**b.** Separately to each **Insured** against which "**claim**" is made or "**suit**" is brought.

**9. Transfer Of Rights Of Recovery Against Others To Us**

If the **Insured** has rights to recover all or part of any payment **We** have made under **This Insurance Policy**, those rights are transferred to **Us**. The **Insured** must do nothing after loss to impair them. At **Our** request, the **Insured** will bring "**suit**" or transfer those rights to **Us** and help **Us** enforce them. **We** reserve the right to make counter-claims and to bring suit against persons making frivolous claims against any **Insured**. The first **Named Insured** hereby grants that right to **Us** and acknowledges that any award resulting from such counter-claim or suit shall be the property of **Recreation Risk Retention Group, Inc.**

**10. Insurance Policy Not Subject To Renewal.**

**a.** **We** have no obligation to renew **This Insurance Policy**.

**b.** **We** have no obligation to offer **You** insurance coverage in the future.

**c.** **We** have no obligation to provide **You** any notice of the expiration of **This Insurance Policy**.

**d.** Upon the expiration of **This Insurance Policy**, **We** may at **Our** option, but are not obligated to, offer **You** terms for a new subsequent insurance policy.

**11. Cancellation**

**a.** **Cancellation by The First Named Insured.**

**(1)** The first **Named Insured** shown in the **Declarations** may cancel **This Insurance Policy** at any time by mailing to **Us** by first class mail or personally delivering to **Us** at the business address listed on **This Insurance Policy**, or listed on any after issued "**endorsement**", advance written notice of cancellation.

**(2)** The only **Insured** that may cancel **This Insurance Policy** is the first **Named Insured** shown in the **Declarations**. No other **Insureds** may cancel **This Insurance Policy**.

However, if the First **Named Insured** finances the payment of its premium, the premium finance company shall have the authority, acting on behalf of the first **Named Insured**, to cancel **This Insurance Policy** upon the default of the first **Named Insured** on its obligations under the premium finance contract with the premium finance company.

**b.** **Cancellation by Us.**

**(1)** **We** may cancel **This Insurance Policy** for one or more of the following reasons:

**(i)** The failure of the first **Named Insured** to pay when due any insurance premium or portion thereof;

**(ii)** The failure of the first **Named Insured** to pay when due any "**self-insured retention**" or any portion thereof;

**(iii)** The failure of the first **Named Insured** to pay when due any reimbursement of advances of "**self-insured retention**" amounts as required by **This Insurance Policy**, or any portion of the reimbursement thereof;

**(iv)** The failure of the first **Named Insured** to pay when due the purchase price for its shares of **Your risk retention group**, or any portion of the purchase price thereof;

**(v)** The material breach by the first **Named Insured** of any agreement or contract between the first **Named Insured** and **Your risk retention group**;

**(vi)** The determination by the Board of Directors of **Your risk retention group** that information contained in the first **Named Insured**'s "**application**" or representations made by the first **Named Insured** in connection with its purchase of shares in **Your risk retention group**, was false or misleading;

**(vii)** The failure of the first **Named Insured** to maintain a current, valid Flight School Certification from the Professional Air Sports Association, Inc.;

**(viii)** The failure of the first **Named Insured** to pay, in whole or in part, any other amount owed to **Us** when due;

**(ix)** The failure of the first **Named Insured** to continue to meet any subscriber eligibility requirement as set by the Board of Directors of **Your risk retention group**;

**(x)** The determination by the Board of Directors of **Your risk retention group** that continuation of **Your** membership in the risk retention group would adversely affect the business or operations of **Your risk retention group**.

**(2)** **We** may cancel **This Insurance Policy** by personally delivering to the first **Named Insured** or by mailing by first class mail to the first **Named Insured** or by emailing to the first **Named Insured**, written notice of cancellation at least:

**(i)** Zero (0) days before the effective date of cancellation if **We** cancel for any of the reasons set forth in sub-paragraphs b. (1) (i), (vi), (vii), or (x) of this paragraph (**11. Cancellation**);

**(ii)** Ten (10) days before the effective date of cancellation if We cancel for any of the reasons set forth in sub paragraph b. (1) (v) or (ix) of this paragraph (**11. Cancellation**);

**(iii)** Twenty (20) days before the effective date of cancellation if **We** cancel for any of the reasons set forth in sub-paragraph b. (1) (ii), (iii) or (iv) of this paragraph (**11. Cancellation**); or

**(iv)** Thirty (30) days before the effective date of cancellation if **We** cancel for any other reason.

**(3)** If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

**(4)** **We** will mail, deliver, or email **Our** notice to the first **Named Insured**'s last mailing address or email address known to **Us**.

**c.** **Effective Date Of Cancellation Notice.**

A Notice of cancellation will state the effective date of the cancellation. The **"policy period"** will end at 12:01 AM Standard Time in the time zone of the first **Named Insured** as shown on the **Declarations** on that date.

**d.** **Premium Refunds.**

**(1)** If this policy is cancelled, **We** will send the first **Named Insured** any premium refund due.

**(2)** **Minimum Earned Premium on Cancellation**

**(i)** Upon cancellation by either the first **Named Insured** or by **Us**, the minimum earned premium due to **Us** by the first **Named Insured** shall be as follows:

**(A)** If, at any time prior to the deposit in the mail or personal delivery of the notice of cancellation, any "**claim**" has been made on the Insurance Policy, the minimum earned premium shall be as set forth in SECTION VI – CONDITIONS, 6. Premium and Premium Audit, Subsection h ;

**(B)** Otherwise, if no "**claims**" have been made prior to the time that the cancellation notice is deposited in the mail or personally delivery, the minimum earned premium shall be the greater of:

**1)** The Initial Minimum Earned Premium shown in the **Declarations**; or

**2)** The minimum premium calculated pursuant to any Accelerated Minimum Earned Premium Endorsement that may be attached and made a part of **This Insurance Policy**;

**(ii)** Upon cancellation by either the first **Named Insured** or by **Us**, the Final Earned Premium due to **Us** by the first **Named Insured** shall be the greater of:

**(A)** The Minimum Earned Premium as calculated pursuant to Subsection (2)(i) of this Section d. Premium Refunds; or

**(B)** The sum of the Initial Minimum Earned Premium shown in the **Declarations** and

any interim premiums and audit premium calculated as of the effective date of the cancellation.

**e.** Payment or tender of any unearned premium by **Us** shall not be a condition precedent to the effectiveness of any Cancellation but such payment shall be made as soon as practicable.

**f.** If notice is mailed by first class mail, proof of mailing will be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

**12. Changes**

**This Insurance Policy** contains all the agreements between **You** and **Us** concerning the insurance afforded. **This Insurance Policy's** terms can be amended or waived only by "**endorsement**" issued by **Us** and made a part of **This Insurance Policy**. **This Insurance Policy** cannot be amended or waived by any broker or agent. Any "**endorsement**" adding additional insureds, adding or modifying any coverages, scheduling additional tow devices, or making any other material change to **This Insurance Policy** will require the payment of a premium at **Our** then current rates applicable to **You**. There is no guarantee of any rates that might apply upon the future "**endorsement**" of **This Insurance Policy** in any manner.

**13. Transfer Of Rights And Duties Under This Policy**

**a.** **This Insurance Policy** is issued to the first **Named Insured** with the ownership and management disclosed in **Your** "**application**". **This Insurance Policy** does not transfer, and is deemed cancelled by the first **Named Insured**, upon a change in ownership of the first **Named Insured**, unless **We** provide **Our** prior written agreement to such transfer. **We** have the absolute right, in **Our** sole and exclusive discretion, to refuse to agree to any such transfer.

**b.** No **Insured's** interest, coverage, rights, and/or duties under this policy (whether arising out of contract or tort, and whether in law or in equity) may be transferred or assigned to anyone without **Our** prior written consent, which **We** can refuse in **Our** sole and exclusive discretion, except in the case of death of an individual first **Named Insured**. In the event of the death of an individual first **Named Insured**:

**(1)** **This Insurance Policy** is deemed cancelled by the first **Named Insured** as of the date of the first **Named Insured's** death;

**(2)** **Your** rights and duties will be transferred to **Your** legal representatives but only while acting within the scope of duties as **Your** legal representative. Until **Your** legal representative is appointed, anyone having proper temporary custody of **Your** property will have **Your** rights and duties but only with respect to that property.

**14. Representations**

By accepting this policy, the first **Named Insured** agrees, represents and warrants that:

**a.** The statements in the **Declarations** are accurate and complete;

**b.** Each and every representation and all information contained in **Your** "**application**" for **This Insurance Policy** and contained all supplemental information and documents provided in conjunction with **Your** "**application**" were when made and are today true, complete and accurate, that there have been no omissions, suppressions or misstatements of facts, and that **Your** "**application**" is not misleading in any way;

**c.** **You** understand that **We** have relied upon the information, documents and answers **You** supplied in **Your** "**application**" in deciding to issue **This Insurance Policy** to **You** and that **Your** "**application**" and all information and documents supplied by **You** in connection with that "**application**" form a part of **This Insurance Policy**;

**d.** **You** understand and agree that if any of the representations made by **You** are false, or if **You** have omitted or suppressed or misstated facts in **Your** "**application**", all coverages under **This Insurance Policy** shall be considered VOID from the starting effective date as if it were never issued at all, however **You** will still be obligated to pay the minimum earned premium;

**e.** **You** understand that **This Insurance Policy** is not a standard form policy and that **You** have had an opportunity to consult with legal counsel of **Your** own choosing in deciding to purchase **This Insurance Policy** from **Your risk retention group**;

**f.** **You** understand that "This policy is issued by **Your risk retention group**. **Your risk retention group** may not be subject to all of the insurance laws and regulations of **Your** state. State insurance insolvency guaranty funds are not available for **Your risk retention group**."; and

**g.** **You** understand that under the Liability Risk Retention Act of 1986 (15 USC 3901 et. seq.), only members of **Recreation Risk Retention Group, Inc.** may be policy holders of insurance policies issued by **Recreation Risk Retention Group, Inc.** and all first **Named Insureds** of policies issued by

Recreation Risk Retention Group, Inc. must be shareholders of Recreation Risk Retention Group, Inc.

15.  **Obligation and Covenant to Adhere to Mandatory Requirements**

As a condition precedent to coverage under **This Insurance Policy**, **You** must adhere to each of the mandatory requirements for both obtaining and maintaining insurance coverage as set forth and initialed by **You** in **Your** **"application"**, a copy of which is made a part of **This Insurance Policy**.

**Your** willful failure to adhere to each and every one of the mandatory requirements with respect to ALL of **Your** operations will VOID coverage of any and all of **Your** operations under **This Insurance Policy** from the date of such willful failure, and will be treated as a request by **You** for cancellation of the policy effective as of the moment just prior to the first such willful failure.

16.  **False or Fraudulent Claims Void Policy**

Any person that knowingly and with intent to defraud any insurance company or other person files a **"claim"** containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, may be guilty of a crime and may be subject to civil penalties, fines, and/or imprisonment.

If the first **Named Insured** under **This Insurance Policy** knowingly and with intent to defraud files a "**claim**" or submits information to **Us** in connection with a "**claim**" that contains any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, **This Insurance Policy** shall become VOID and all coverages under this policy shall be forfeited from the starting effective date as if it were never issued at all, however **You** will still be obligated to pay the minimum earned premium.

17.  **Reimbursement for Costs of Defending Uncovered Claims**

Should **Recreation Risk Retention Group, Inc.** provide any **Insured** with a defense under **This Insurance Policy**, and should it be determined at any time that one or more "**claims**" defended against were not covered under **This Insurance Policy**, **Recreation Risk Retention Group, Inc.** reserves its rights, to the full extent allowed by law, to seek and obtain reimbursement of the **"defense costs"**, including attorneys fees, paid by **Recreation Risk Retention Group, Inc.**, solely for the defense of the uncovered "**claims**".

18.  **Validity and Severability**

The invalidity or unenforceability of any provision of **This Insurance Policy** shall in no way affect the validity or enforceability of any other provision.  Moreover, if any provision of **This Insurance Policy** is deemed to be invalid or unenforceable or prohibited by applicable law, then such provision shall be deemed severable from the balance of **This Insurance Policy** and the validity of the remaining provisions shall be enforced to the fullest extent allowed by law.

Policy No: CMFS00035001-R4                    Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERED ACTIVITIES

The only activities of the **Insureds** that are "**covered activities**" under this insurance policy are the following **Insured Operations** taking place at the following **Insured Locations** only:

**Insured Operations:**

        **Paragliding – Instruction - Solo (P1, P2 Training)**

        **Paragliding – Instruction - Solo Advanced (P3, P4 Training)**

        **Paragliding – Instruction - Tandem Discovery (P0 Training)**

        **Paragliding – Instruction - Tandem (P1, P2 Training)**

        **Paragliding – Instruction - Tandem Advanced (P3, P4 Training)**

        **Paragliding – Equipment Sales**

**Insured Locations:**

| Operations Site Name | Address or GPS | City | State |
|---|---|---|---|
| | | | |
| Point of the Mountain - North Side Flight Park - North Side Launch | 40.473746, -111.8927 | Draper | UT |
| Point of the Mountain - North Side Flight Park - North Side LZ | 40.476055, -111.89487 | Draper | UT |
| Point of the Mountain -South Side Flight Park - South Side Launch | 40.453708, -111.9089 | Lehi | UT |
| Point of the Mountain -South Side Flight Park - South Side LZ | 40.454042, -111.900118 | Lehi | UT |
| SuperFly Offices for Ground School Only | 8683 Sandy Parkway | Sandy | UT |
| | | | |

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## INSURED CONTRACTS

It is agreed that:

**SCHEDULE:**

| Contracts Schedule: | |
| --- | --- |
| **Contract Title or Description** | **Contract Date** |
| NONE | |

**A.** The following definitions apply:

**1.** "**Subject Insured**" means the first **Named Insured**;

**2.** "**Subject Contract**" means a written agreement to which the **Subject Insured** is a party and  is listed in the above **Contracts Schedule**;

**3.** "**Subject Indemnitee**" is a person or organization whose liability the **Subject Insured** has been assumed in a written agreement listed in the above **Contracts Schedule**;

**4.** A "**Covered Indemnity Obligation**" means an indemnity obligation where:

**a.** The indemnity obligation is an obligation of the **Subject Insured** to indemnify, defend and/or hold harmless a **Subject Indemnitee** for those sums that the **Subject Indemnitee** is legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" that arise out of the "**hang gliding**", "**paragliding**" and/or "**powered paragliding**" activities of the **Subject Insured**; and

**b.** Where the "**bodily injury**" or "**property damage**" that is the subject of the indemnity obligation is suffered by a non "**participant**", this insurance would apply under **Coverage A - Bodily Injury and Property Damage Liability** to sums that the **Subject Insured** becomes legally obligated to pay as damages for that same "**bodily injury**" or "**property damage**", in the absence of any "**Insured Contract**"; and

**c.** Where the "**bodily injury**" or "**property damage**" that is the subject of the indemnity obligation is suffered by a "**participant**", then either:

**(i)** This insurance would apply under **Coverage D - Hang Gliding, Paragliding, or Powered Paragliding Participant Injury Liability** to sums that the **Subject Insured** becomes legally obligated to pay as damages for that same "**bodily injury**" or "**property damage**", in the absence of any "**Insured Contract**"; or

**(ii)** This insurance would apply under **Coverage E - Professional Liability of Named Insured** to sums that the **Subject Insured** becomes legally obligated to pay as damages for that same "**bodily injury**" or "**property damage**", in the absence of any "**Insured Contract**".

**B.** To the limited extent that any provision in a **Subject Contract** provides for the **Subject Insured** to indemnify, defend and/or hold harmless a **Subject Indemnitee** for a **Covered Indemnity Obligation**, such provision constitutes an "**insured contract**".

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUDED OPERATIONS ENDORSEMENT

This insurance does not apply to any "**bodily injury**", "**property damage**", "**personal and advertising injury**", medical expenses, or any other "**damages**" "**arising out of**" any of the following excluded operations, whether or not such operations were disclosed in the first **Named Insured's** "**application**", unless explicitly stated otherwise in the "**Covered Activities**" "**endorsement**" or an "**endorsement**" specifically allowing for coverage of such operations:

- Manufacture of any products, including, but not limited to "**hang gliders**", "**paragliders**", "**powered paragliders**" "**hang gliding**" gear, "**paragliding**" gear, and/or "**powered paragliding**" gear;

- Repair of any products, including, but not limited to "**hang gliders**", "**paragliders**", "**powered paragliders**" "**hang gliding**" gear, "**paragliding**" gear, and/or "**powered paragliding**" gear;

- Parachute packing and/or re-packing;

- Shuttle Services for "**hang glider**" pilots, "**paraglider**" pilots, "**powered paraglider**" pilots, "**hang gliders**", "**paragliders**", "**powered paragliders**", "**hang gliding**" gear, "**paragliding**" gear, and/or "**powered paragliding**" gear;

- Sales of Products and/or Services Unrelated to "**hang gliding**", "**paragliding**" or "**powered paragliding**";

- Food Sales;

- Drink Sales;

- Cafe and/or Restaurant Operations;

- Operations involving Remote Control Model Planes and Gliders;

- Operations involving Drones;

- Hotel, Motel, Room Rental, Camping, or any other lodging operations;

- Sales of "**hang gliders**", "**paragliders**", "**powered paragliders**", "**hang gliding**" gear, "**paragliding**" gear, and/or "**powered paragliding**" gear;

- Brokerage operations;

- Booking operations;

- Operation of any tow launch device not separately scheduled on a "**Tow Devices**" "**endorsement**";

- Operations at locations not specifically scheduled as "**Insured Locations**" on the "**Covered Activities**" "**endorsement**";

- Any other operations not specifically scheduled as "**Insured Operations**" on the "**Covered Activities**" "**endorsement**"; and

- Operations at any location listed on the Excluded Locations "**endorsement**" to **This Insurance Policy**.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL EXCLUDED OPERATIONS ENDORSEMENT

It is agreed that:

**SCHEDULE**:

| Additional Excluded Operations: |
| --- |
| Any operation with students under the age of 18;<br>Mini-wing and Speed Wing Instruction and equipment sales;<br>Powered Paragliding instruction and equipment sales; |

**A.**     Notwithstanding any other provision of **This Insurance Policy**, "**Covered Activities**," whenever and wherever defined in this **This Insurance Policy**, do not include, and **This Insurance Policy** does not apply to, any "**bodily injury**", "**property damage**", "**personal and advertising injury**", medical expenses or any other "**damages**" "**arising out of**" any of the  "**Additional Excluded Operations**" shown in the above **SCHEDULE**, or on any other schedule of "**Additional Excluded Operations**" attached to **This Insurance Policy**, whether or not such operations were disclosed in the first **Named Insured's** "**application**" or in any "**application**" whereby any **Additional Insured** was added, unless explicitly stated otherwise in an "**endorsement**" specifically allowing for coverage of such operation(s), notwithstanding the operation being listed as an **Additional Excluded Operation** here.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUDED LOCATIONS ENDORSEMENT

It is agreed that:

**SCHEDULE:**

| Excluded Locations: |
| --- |
| Any location listed by the United State's State Department as *Travel Advisory Level 4 - 'Do Not Travel To'* as of the date of the "**occurrence**" |
| All Launches and Landing Zones other than the ones scheduled as Insured Locations on Form 8502 |

**A.**     Notwithstanding any other provision of **This Insurance Policy**, "**Covered Activities**," whenever and wherever defined in this **This Insurance Policy**, do not include, and **This Insurance Policy** does not apply to, any "**bodily injury**", "**property damage**", "**personal and advertising injury**", medical expenses, or any other "**damages**" occurring as a result of an "**occurrence**" at any of the  "**Excluded Locations**" shown in the above **SCHEDULE**, or on any other schedule of "**Excluded Locations**" attached to **This Insurance Policy**.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: CMFS00035001-R4                                    Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED - DESIGNATED FLYING SITE LANDOWNER ENDORSEMENT

In consideration for an additional premium, it is agreed:

SCHEDULE:

| Additional Insured Designated Flying Site Landowner: | | |
|---|---|---|
| **Name:** | City of Draper, Parks, Trails & Recreation | |
| **Mailing Address:** | 1020 E Pioneer Rd. Bottom Fl. <br> Draper, UT 84020 | |
| **Designated Flying Site(s):** | | |
| **Designated Flying Site(s) Name & Location** | **Applicable Limits** | |
| | **Per Occurrence** | **General Aggregate** |
| Point of the Mountain - North Side Flight Park - North Side LZ: <br> 40.476055, -111.89487,  Draper, UT | $1,000,000 | $2,000,000 |

**A.**   **SECTION V – WHO IS AN INSURED** is amended to include as an **Insured** under **Coverage A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Coverage C - MEDICAL PAYMENTS** and **Coverage D - HANG GLIDING, PARAGLIDING, OR POWERED PARAGLIDING PARTICIPANT INJURY LIABILITY** only, the person or organization shown in the above **SCHEDULE** as an **Additional Insured Designated Flying Site Landowner**, but only with respect to liability "**arising out of**" "**covered activities**" conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**.  In addition, it is agreed that **Coverage A Exclusion "gg. Liability arising out of ownership of land**", does not apply to the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** with respect to "**occurrences**" at the **Designated Flying Site** premises shown in the above **SCHEDULE**.

However:

**1.**   The insurance afforded to such **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** only applies to the extent permitted by law; and

**2.**   If coverage provided to the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** is required by a contract or agreement, the insurance afforded to such **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** will not be broader than that which **You** are required by the contract or agreement to provide for such additional insured.

**B.**   The limits available to pay "**damages**" that the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** becomes legally obligated to pay shall be as set forth in the above schedule of Applicable Limits.  "**Defense costs**" for defending such additional insured(s) against "**claims**" made and "**suits**" filed against such additional insured(s) pursuant to this "**endorsement**" and **Supplementary Payments** made in connection with any occurrence both reduce the Applicable Limits of Insurance shown on the above **SCHEDULE**.  We will not pay any further "**defense costs**" or **Supplementary Payments** once:

a.   the Applicable Limit of Insurance (as reduced by the payment of "**defense costs**" and **Supplementary Payments**) has been paid under the rules fixed in the policy and in this

Policy No: CMFS00035001-R4                                    Named Insured: White Cloud Adventures, LLC

endorsement; or

b.    the Applicable Limit of Insurance has been reduced to Zero ($0) by the payment of "**defense costs**" and/or **Supplementary Payments**.

All other limits applicable to all other **Insureds** and all other "**claims**" and "**suits**" remain unchanged.

This "**endorsement**" does not change the Limits of Insurance available to any **Insured** other than the **Designated Flying Site Landowner(s)** shown in the above **SCHEDULE**. The Limits of Insurance specified in this "**endorsement**" apply only with respect to "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**.

In applying the **Limits** set forth in this "**endorsement**":

**1.**    The **General Aggregate Limit** set forth in the **Declarations** is a part of and not in addition to the **General Aggregate Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**; and

**2.**    Each **General Aggregate Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** is a part of and not in addition to any other **General Aggregate** Limit, whether set forth in the **Declarations**, or in this or any other "**endorsement**", applicable to any **Insured** under **This Insurance Policy**; and

**3.**    The **Per Occurrence Limit** set forth in the **Declarations** is a part of and not in addition to the **Per Occurrence Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** ; and

**4.**    Each **Per Occurrence Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** is a part of and not in addition to any other **Per Occurrence Limit**, whether set forth in the **Declarations**, or in this or any other "**endorsement**", applicable to any **Insured** under **This Insurance Policy.**

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: CMFS00035001-R4                                    Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED - DESIGNATED FLYING SITE LANDOWNER ENDORSEMENT

In consideration for an additional premium, it is agreed:

**SCHEDULE**:

| Additional Insured Designated Flying Site Landowner: | | |
|---|---|---|
| **Name:** | Metro Water Company | |
| **Mailing Address:** | 235 Marion Vista Dr<br>Draper, UT 84020 | |
| **Designated Flying Site(s):** | | |
| **Designated Flying Site(s) Name & Location** | **Applicable Limits** | |
| | **Per Occurrence** | **General Aggregate** |
| Point of the Mountain - North Side Flight Park - North Side LZ:<br>40.476055, -111.89487,  Draper, UT | $1,000,000 | $2,000,000 |

**A.**   **SECTION V – WHO IS AN INSURED** is amended to include as an **Insured** under **Coverage A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Coverage C - MEDICAL PAYMENTS** and **Coverage D - HANG GLIDING, PARAGLIDING, OR POWERED PARAGLIDING PARTICIPANT INJURY LIABILITY** only, the person or organization shown in the above **SCHEDULE** as an **Additional Insured Designated Flying Site Landowner**, but only with respect to liability "**arising out of**" "**covered activities**" conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**.  In addition, it is agreed that **Coverage A Exclusion** "**gg. Liability arising out of ownership of land**", does not apply to the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** with respect to "**occurrences**" at the **Designated Flying Site** premises shown in the above **SCHEDULE**.

However:

**1.**   The insurance afforded to such **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** only applies to the extent permitted by law; and

**2.**   If coverage provided to the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** is required by a contract or agreement, the insurance afforded to such **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** will not be broader than that which **You** are required by the contract or agreement to provide for such additional insured.

**B.**   The limits available to pay "**damages**" that the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** becomes legally obligated to pay shall be as set forth in the above schedule of Applicable Limits. "**Defense costs**" for defending such additional insured(s) against "**claims**" made and "**suits**" filed against such additional insured(s) pursuant to this "**endorsement**" and **Supplementary Payments** made in connection with any occurrence both reduce the Applicable Limits of Insurance shown on the above **SCHEDULE**.  We will not pay any further "**defense costs**" or **Supplementary Payments** once:

a.   the Applicable Limit of Insurance (as reduced by the payment of "**defense costs**" and **Supplementary Payments**) has been paid under the rules fixed in the policy and in this

Policy No: CMFS00035001-R4        Named Insured: White Cloud Adventures, LLC

       endorsement; or

b.     the Applicable Limit of Insurance has been reduced to Zero ($0) by the payment of "**defense costs**" and/or **Supplementary Payments**.

All other limits applicable to all other **Insureds** and all other "**claims**" and "**suits**" remain unchanged.

This "**endorsement**" does not change the Limits of Insurance available to any **Insured** other than the **Designated Flying Site Landowner(s)** shown in the above **SCHEDULE**. The Limits of Insurance specified in this "**endorsement**" apply only with respect to "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**.

In applying the **Limits** set forth in this "**endorsement**":

1.     The **General Aggregate Limit** set forth in the **Declarations** is a part of and not in addition to the **General Aggregate Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**; and

2.     Each **General Aggregate Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** is a part of and not in addition to any other **General Aggregate** Limit, whether set forth in the **Declarations**, or in this or any other "**endorsement**", applicable to any **Insured** under **This Insurance Policy**; and

3.     The **Per Occurrence Limit** set forth in the **Declarations** is a part of and not in addition to the **Per Occurrence Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** ; and

4.     Each **Per Occurrence Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** is a part of and not in addition to any other **Per Occurrence Limit**, whether set forth in the **Declarations**, or in this or any other "**endorsement**", applicable to any **Insured** under **This Insurance Policy**.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: CMFS00035001-R4                                    Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ADDITIONAL INSURED - DESIGNATED FLYING SITE LANDOWNER ENDORSEMENT

In consideration for an additional premium, it is agreed:

**SCHEDULE:**

| Additional Insured Designated Flying Site Landowner: | | |
|---|---|---|
| **Name:** | SMG Corp. and Salt Lake County and their respective members, officers, directors, agents and employees | |
| **Mailing Address:** | SLC Govt. Center<br>2001 S State St. S4400<br>Salt Lake City, UT 84190-3050 | |
| **Designated Flying Site(s):** | | |

| Designated Flying Site(s) Name & Location | Applicable Limits | |
|---|---|---|
| | **Per Occurrence** | **General Aggregate** |
| Point of the Mountain - North Side Flight Park - North Side Launch:<br>40.473746, -111.8927,  Draper, UT | $1,000,000 | $2,000,000 |

**A.**    **SECTION V – WHO IS AN INSURED** is amended to include as an **Insured** under **Coverage A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Coverage C - MEDICAL PAYMENTS** and **Coverage D - HANG GLIDING, PARAGLIDING, OR POWERED PARAGLIDING PARTICIPANT INJURY LIABILITY** only, the person or organization shown in the above **SCHEDULE** as an **Additional Insured Designated Flying Site Landowner**, but only with respect to liability "**arising out of**" "**covered activities**" conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**.  In addition, it is agreed that **Coverage A Exclusion** "**gg. Liability arising out of ownership of land**", does not apply to the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** with respect to "**occurrences**" at the **Designated Flying Site** premises shown in the above **SCHEDULE**.

However:

**1.**    The insurance afforded to such **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** only applies to the extent permitted by law; and

**2.**    If coverage provided to the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** is required by a contract or agreement, the insurance afforded to such **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** will not be broader than that which **You** are required by the contract or agreement to provide for such additional insured.

**B.**    The limits available to pay "**damages**" that the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** becomes legally obligated to pay shall be as set forth in the above schedule of Applicable Limits.  "**Defense costs**" for defending such additional insured(s) against "**claims**" made and "**suits**" filed against such additional insured(s) pursuant to this "**endorsement**" and **Supplementary Payments** made in connection with any occurrence both reduce the Applicable Limits of Insurance shown on the above **SCHEDULE**.  We will not pay any further "**defense costs**" or **Supplementary Payments** once:

Policy No: CMFS00035001-R4                    Named Insured: White Cloud Adventures, LLC

a.  the Applicable Limit of Insurance (as reduced by the payment of "**defense costs**" and **Supplementary Payments**) has been paid under the rules fixed in the policy and in this endorsement; or

b.  the Applicable Limit of Insurance has been reduced to Zero ($0) by the payment of "**defense costs**" and/or **Supplementary Payments**.

All other limits applicable to all other **Insureds** and all other "**claims**" and "**suits**" remain unchanged.

This "**endorsement**" does not change the Limits of Insurance available to any **Insured** other than the **Designated Flying Site Landowner(s)** shown in the above **SCHEDULE**. The Limits of Insurance specified in this "**endorsement**" apply only with respect to "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**.

In applying the **Limits** set forth in this "**endorsement**":

1.  The **General Aggregate Limit** set forth in the **Declarations** is a part of and not in addition to the **General Aggregate Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**; and

2.  Each **General Aggregate Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** is a part of and not in addition to any other **General Aggregate** Limit, whether set forth in the **Declarations**, or in this or any other "**endorsement**", applicable to any **Insured** under **This Insurance Policy**; and

3.  The **Per Occurrence Limit** set forth in the **Declarations** is a part of and not in addition to the **Per Occurrence Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** ; and

4.  Each **Per Occurrence Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** is a part of and not in addition to any other **Per Occurrence Limit**, whether set forth in the **Declarations**, or in this or any other "**endorsement**", applicable to any **Insured** under **This Insurance Policy.**

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: CMFS00035001-R4      Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED - DESIGNATED FLYING SITE LANDOWNER ENDORSEMENT

In consideration for an additional premium, it is agreed:

SCHEDULE:

| Additional Insured Designated Flying Site Landowner: | | |
|---|---|---|
| **Name:** | Division of Utah State Parks | |
| **Mailing Address:** | PO Box 146001 <br> Salt Lake City, UT 84114 | |
| **Designated Flying Site(s):** | | |
| **Designated Flying Site(s) Name & Location** | **Applicable Limits** | |
| | **Per Occurrence** | **General Aggregate** |
| Point of the Mountain -South Side Flight Park - South Side Launch: <br> 40.453708, -111.9089,  Lehi, UT <br><br> Point of the Mountain -South Side Flight Park - South Side LZ: <br> 40.454042, -111.900118,  Lehi, UT | $1,000,000 | $3,000,000 |

**A.**     **SECTION V – WHO IS AN INSURED** is amended to include as an **Insured** under **Coverage A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **Coverage C - MEDICAL PAYMENTS** and **Coverage D – HANG GLIDING, PARAGLIDING, OR POWERED PARAGLIDING PARTICIPANT INJURY LIABILITY** only, the person or organization shown in the above **SCHEDULE** as an **Additional Insured Designated Flying Site Landowner**, but only with respect to liability "**arising out of**" "**covered activities**" conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**.  In addition, it is agreed that **Coverage A Exclusion "gg. Liability arising out of ownership of land**", does not apply to the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** with respect to "**occurrences**" at the **Designated Flying Site** premises shown in the above **SCHEDULE**.

However:

**1.**     The insurance afforded to such **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** only applies to the extent permitted by law; and

**2.**     If coverage provided to the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** is required by a contract or agreement, the insurance afforded to such **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** will not be broader than that which **You** are required by the contract or agreement to provide for such additional insured.

**B.**     The limits available to pay "**damages**" that the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** becomes legally obligated to pay shall be as set forth in the above schedule of Applicable Limits.  "**Defense costs**" for defending such additional insured(s) against "**claims**" made and "**suits**" filed against such additional insured(s) pursuant to this "**endorsement**" and **Supplementary Payments** made in connection with any occurrence both reduce the Applicable Limits of Insurance shown on the above **SCHEDULE**.  We will not pay any further "**defense costs**" or

Policy No: CMFS00035001-R4                                    Named Insured: White Cloud Adventures, LLC

**Supplementary Payments** once:

a.  the Applicable Limit of Insurance (as reduced by the payment of "**defense costs**" and **Supplementary Payments**) has been paid under the rules fixed in the policy and in this endorsement; or

b.  the Applicable Limit of Insurance has been reduced to Zero ($0) by the payment of "**defense costs**" and/or **Supplementary Payments**.

All other limits applicable to all other **Insureds** and all other "**claims**" and "**suits**" remain unchanged.

This "**endorsement**" does not change the Limits of Insurance available to any **Insured** other than the **Designated Flying Site Landowner(s)** shown in the above **SCHEDULE**. The Limits of Insurance specified in this "**endorsement**" apply only with respect to "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**.

In applying the **Limits** set forth in this "**endorsement**":

1.  The **General Aggregate Limit** set forth in the **Declarations** is a part of and not in addition to the **General Aggregate Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE**; and

2.  Each **General Aggregate Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** is a part of and not in addition to any other **General Aggregate** Limit, whether set forth in the **Declarations**, or in this or any other "**endorsement**", applicable to any **Insured** under **This Insurance Policy**; and

3.  The **Per Occurrence Limit** set forth in the **Declarations** is a part of and not in addition to the **Per Occurrence Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** ; and

4.  Each **Per Occurrence Limit** applicable pursuant to this "**endorsement**" to a **Designated Flying Site Landowner** for "**covered activities**" of the first **Named Insured** conducted on the **Designated Flying Site** premises shown in the above **SCHEDULE** is a part of and not in addition to any other **Per Occurrence Limit**, whether set forth in the **Declarations**, or in this or any other "**endorsement**", applicable to any **Insured** under **This Insurance Policy**.

C.  The insurance provided by this "**endorsement**" shall not be canceled, whether or not requested by the first **Named Insured**, except upon the **Insurer** giving at least thirty (30) days prior written notice thereof (ten (10) days in the case of nonpayment of premium) to the **Additional Insured Designated Flying Site Landowner** shown in the above **SCHEDULE** and to any of its mortgagees or other person in interest who has requested notice of the **Insurer**.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED - DESIGNATED FLYING SITE USHPA CHAPTER ENDORSEMENT

It is agreed that:

SCHEDULE:

| Additional Insured Designated Flying Site USHPA Chapter: | |
|---|---|
| **Chapter No. & Name:** | USHPA Chapter # 48 <br> Utah Hang Gliding/Paragliding Association |
| **Mailing Address:** | 15263 Steep Mountain Drive <br> Draper, UT 84020 |

| Designated Flying Site(s): | |
|---|---|
| **Flying Site Name** | **Flying Site Location** *(address/GPS/map)* |
| Point of the Mountain - North Side Flight Park - North Side Launch: | 40.473746, -111.8927,  Draper, UT |
| Point of the Mountain - North Side Flight Park - North Side LZ: | 40.476055, -111.89487,  Draper, UT |
| Point of the Mountain -South Side Flight Park - South Side Launch: | 40.453708, -111.9089,  Lehi, UT |
| Point of the Mountain South Side Flight Park - South Side LZ: | 40.454042, -111.900118,  Lehi, UT |

A.  **SECTION V – WHO IS AN INSURED** is amended to include as an **Insured** under **Coverage A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Coverage C - MEDICAL PAYMENTS** and **Coverage D - HANG GLIDING, PARAGLIDING, OR POWERED PARAGLIDING PARTICIPANT INJURY LIABILITY** only, the person or organization shown on the above **SCHEDULE** as an **Additional Insured Designated Flying Site USHPA Chapter**, but only with respect to the first **Named Insured**'s "**covered activities**" conducted at the **Designated Flying Site(s)** (as shown on the above **SCHEDULE**) premises for liability arising out of the use, occupancy or maintenance of the **Designated Flying Site(s)** by the first **Named Insured**.  In addition, it is agreed that **Coverage A Exclusion** "**gg. Liability arising out of ownership of land**", does not apply to this **Additional Insured Designated Flying Site USHPA Chapter** for liability arising out of the use, occupancy or maintenance of the **Designated Flying Site(s)** by the first **Named Insured**.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Named Insured: White Cloud Ventures, LLC

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### APPROVED PRE-INJURY RELEASE FORM

The attached form of Pre-Injury Release, Waiver and Assumption of Risk form has been approved for use by the **Named Insured** under **COVERAGE D - HANG GLIDING AND PARAGLIDING PARTICIPANT INJURY LIABILITY** of **This Insurance Policy.**

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

**RELEASE, WAIVER AND ASSUMPTION OF RISK AGREEMENT**

In consideration of being allowed to use the facilities and participate in the sport of ultralight vehicles and other activities provided by White Cloud Adventures, LLC (the "Flight School"), the undersigned pilot (*Pilot*) (and the parent or legal guardian of *Pilot* if *Pilot* is a minor), for themselves, their personal representatives, heirs, executors, next of kin, spouses, minor children and assigns, do agree as follows:

**A.** I have read Part 103 of the Federal Aviation Administration rules (and FAA Advisory Circular 103-7) which authorizes me to participate in ultralight vehicle flight (for example: powered and unpowered hang gliders and paragliders (including mini-wings & speed-wings), and I understand that the FAA authorization is premised upon me assessing the dangers involved and my assumption of all responsibility for my personal safety.

**B.** I represent that I have fulfilled my obligation under Part 103 - that I have personally assessed the dangers involved in my participation in ultralight vehicle flight, and I knowingly assume all responsibility for my personal safety.

**C. DEFINITIONS -** The following definitions apply to terms used in this *Agreement*:

1. "*PARTICIPATION IN THE SPORT*" means launching/kiting (and/or assisting another in launching/kiting), flying (whether as pilot in command or otherwise) and/or landing (including, but not limited to, crashing) an ultralight vehicle.

2. "*SPORTS INJURIES*" means *personal injury, bodily injury, death, property damage* and/or *any other personal or financial injury* sustained by *Pilot* as a result of *Pilot's PARTICIPATION IN THE SPORT* and/or as a result of the administration of any USHPA programs (for example: the Pilot Proficiency System), and, If *Pilot* is under 18 years of age, "*SPORTS INJURIES*" also includes the *personal injury, bodily injury, death, property damage* and/or *any other personal or financial injury* sustained by *Pilot's* parents and legal guardians, as a result of *Pilot's PARTICIPATION IN THE SPORT* and/or as a result of the administration of any USHPA programs.

3. "*RELEASED PARTIES*" means the following, including their owners, officers, directors, managers, agents, spouses, employees, officials (elected or otherwise), members, independent contractors, sub-contractors, lessors and lessees:

   **a)** The Flight School;
   b) The United States Hang Gliding and Paragliding Association, a California Non-profit Corporation (USHPA);
   c) The Professional Air Sports Association, a North Carolina Non-profit Corporation (PASA);
   **d)** Each USHPA Certified Instructor, Mentor, Observer, Examiner, TECH or Administrator that has ever been involved in *Pilot's* flying activities;
   **e)** Each of the person(s) sponsoring and/or participating in the administration of *Pilot's* proficiency rating(s);
   **f)** Each of the hang gliding and/or paragliding organizations that are chapters of USHPA;
   **g)** The United States Of America and each of the city(ies), town(s), county(ies), State(s) and/or other political subdivisions or governmental agencies within whose jurisdictions *Pilot* launches, flies and/or lands;
   **h)** Each of the property owners on or over whose property *Pilot* may launch, fly and/or land; and
   **i)** All persons involved, in any manner, in the sports of hang gliding and/or paragliding at the location(s) where *Pilot PARTICIPATES IN THE SPORT*, except for ultralight vehicle pilots who are not members of USHPA. "All persons involved" includes, but is not limited to, spectators, other ultralight vehicle pilots, assistants, drivers, tow equipment operators and owners, instructors, schools, observers, examiners, mentors, administrators, owners of ultralight vehicle equipment.

**D.** I FOREVER RELEASE AND DISCHARGE the *RELEASED PARTIES* FROM ANY AND ALL LIABILITIES, CLAIMS, DEMANDS, OR CAUSES OF ACTION THAT I MAY HEREAFTER HAVE FOR *SPORTS INJURIES*, HOWEVER CAUSED, EVEN IF CAUSED IN WHOLE OR IN PART BY THE ACTION, INACTION OR NEGLIGENCE (WHETHER ACTIVE OR PASSIVE) OF ANY OF THE *RELEASED PARTIES*, TO THE FULLEST EXTENT ALLOWED BY LAW.

**E.** I WILL NOT SUE OR MAKE A CLAIM against any of the *RELEASED PARTIES* for loss or damage on account of *SPORTS INJURIES*. If I violate this agreement by filing such a suit or making such a claim, I will pay all attorneys' fees and costs of the *RELEASED PARTIES*.

**F.** I agree that this Agreement shall be governed by and construed in accordance with the laws of the State of California. All disputes and matters whatsoever concerning *SPORTS INJURIES* or otherwise arising under, in connection with or incident to this Agreement shall be litigated, if at all, in and before a Court located in the State of California, U.S.A. to the exclusion of the Courts of any other State or Country, and I consent to the Personal Jurisdiction of Courts located in the State of California, U.S.A. in connection with all such disputes and matters.

**G.** Any lawsuit, or other proceeding, concerning *SPORTS INJURIES* or otherwise arising under, in connection with or incident to this Agreement must be filed, if at all, either 1) within twelve (12) months of the accrual of such cause of action, or 2) within the shortest limit of time permitted by law.

**H.** Each of the *RELEASED PARTIES*, whether or not parties to this Agreement, are intended beneficiaries of this Agreement and each of them may enforce each and every provision of this Agreement as though they were parties to this Agreement.

**I.** If any part, article, paragraph, sentence or clause of this Agreement is not enforceable, the affected provision shall be curtailed and limited only to the limited extent necessary to bring it within the requirements of the law, and the remainder of the Agreement shall continue in full force and effect.

**J.** This Agreement shall apply to any and all *SPORTS INJURIES* occurring at any time after the execution of this Agreement. This Agreement is in addition to and is not intended to replace any other agreements related to liability for *SPORTS INJURIES* that *Pilot* (or *Pilot's* parents or legal guardians) may have signed, either in the past or in the future. To the extent that there is any conflict between any part, article, paragraph, sentence or clause of such agreements, *Pilot* (and *Pilot's* parents or legal guardians) intends to be subject to the parts, articles, paragraphs, sentences, and clauses of each agreement that provide the most expansive release of claims and assumption of risk allowed by law.

**K.** I REPRESENT THAT *Pilot* is at least 18 years of age, or, that I am the parent or legal guardian of *Pilot* and am making this Agreement on behalf of myself and *Pilot*. If I am the parent or legal guardian of *Pilot*, I AGREE TO INDEMNIFY AND REIMBURSE the *RELEASED PARTIES* for their defense and indemnity from any claim or liability in the event that *Pilot* suffers *SPORTS INJURIES* as a result of *Pilot's PARTICIPATION IN THE SPORT*, even if caused in whole or in part by the action, inaction or negligence (whether active or passive) of any of the *RELEASED PARTIES*, to the fullest extent allowed by law.

**L. I VOLUNTARILY ASSUME ALL RISKS, KNOWN AND UNKNOWN, OF *SPORTS INJURIES*, HOWEVER CAUSED, EVEN IF CAUSED IN WHOLE OR IN PART BY THE ACTION, INACTION, OR NEGLIGENCE (WHETHER PASSIVE OR ACTIVE) OF THE *RELEASED PARTIES*, TO THE FULLEST EXTENT ALLOWED BY LAW.**

I ACKNOWLEDGE THAT I HAVE READ THIS AGREEMENT, FULLY UNDERSTAND THE POTENTIAL DANGERS OF ENGAGING IN ULTRALIGHT VEHICLE OPERATIONS AND THAT ACTION, INACTION OR NEGLIGENCE OF OTHERS CAN INCREASE THOSE DANGERS. I UNDERSTAND AND AGREE THAT THIS DOCUMENT IS LEGALLY BINDING AND WILL PREVENT ME FROM RECOVERING MONETARY DAMAGES FROM THE ABOVE LISTED ENTITIES AND/OR INDIVIDUALS, WHETHER SPECIFICALLY NAMED OR NOT, FOR PERSONAL INJURY, BODILY INJURY, PROPERTY DAMAGE, WRONGFUL DEATH, OR ANY OTHER PERSONAL OR FINANCIAL INJURY SUSTAINED BY PILOT IN CONNECTION WITH ULTRALIGHT VEHICLES.

**WARNING: BY SIGNING, YOU ARE WAIVING SIGNIFICANT LEGAL RIGHTS. DO NOT SIGN WITHOUT READING!**

| | | |
|---|---|---|
| _____ | _____/_____/_____ | _____ |
| *Student Pilot's Signature* | Date | *Print Student Pilot's Name* |
| | _____/_____/_____ | |
| _____ | | _____ |
| *Signature of Student Pilot's Parent or Legal Guardian if Pilot under 18 years of age* | Date | *Student Pilot's USHPA Number* |

RRRG8530-A-UV (0821003)

White Cloud Adventures, LLC

# FAA REGULATIONS - PART 103

"Part 103 is based on the assumption that any individual who elects to fly an ultralight vehicle has assessed the dangers involved and assumes personal responsibility for his/her safety"    FAA Advisory Circular 103-7

## §103.1    Applicability.

This part prescribes rules governing the operation of ultralight vehicles in the United States. For the purposes of this part, an ultralight vehicle is a vehicle that:

(a) Is used or intended to be used for manned operation in the air by a single occupant;

(b) Is used or intended to be used for recreation or sport purposes only;

(c) Does not have any U.S. or foreign airworthiness certificate; and

(d) If unpowered, weighs less than 155 pounds; or

(e) If powered:

(1) Weighs less than 254 pounds empty weight, excluding floats and safety devices which are intended for deployment in a potentially catastrophic situation;

(2) Has a fuel capacity not exceeding 5 U.S. gallons;

(3) Is not capable of more than 55 knots calibrated airspeed at full power in level flight; and

(4) Has a power-off stall speed which does not exceed 24 knots calibrated airspeed.

## §103.3    Inspection requirements.

(a) Any person operating an ultralight vehicle under this part shall, upon request, allow the Administrator, or his designee, to inspect the vehicle to determine the applicability of this part.

(b) The pilot or operator of an ultralight vehicle must, upon request of the Administrator, furnish satisfactory evidence that the vehicle is subject only to the provisions of this part.

## §103.5    Waivers.

No person may conduct operations that require a deviation from this part except under a written waiver issued by the Administrator.

## §103.7    Certification and registration.

(a) Notwithstanding any other section pertaining to certification of aircraft or their parts or equipment, ultralight vehicles and their component parts and equipment are not required to meet the airworthiness certification standards specified for aircraft or to have certificates of airworthiness.

(b) Notwithstanding any other section pertaining to airman certification, operators of ultralight vehicles are not required to meet any aeronautical knowledge, age, or experience requirements to operate those vehicles or to have airman or medical certificates.

(c) Notwithstanding any other section pertaining to registration and marking of aircraft, ultralight vehicles are not required to be registered or to bear markings of any type.

## §103.9    Hazardous operations.

(a) No person may operate any ultralight vehicle in a manner that creates a hazard to other persons or property.

(b) No person may allow an object to be dropped from an ultralight vehicle if such action creates a hazard to other persons or property.

## §103.11    Daylight operations.

(a) No person may operate an ultralight vehicle except between the hours of sunrise and sunset.

(b) Notwithstanding paragraph (a) of this section, ultralight vehicles may be operated during the twilight periods 30 minutes before official sunrise and 30 minutes after official sunset or, in Alaska, during the period of civil twilight as defined in the Air Almanac, if:

(1) The vehicle is equipped with an operating anticollision light visible for at least 3 statute miles; and

(2) All operations are conducted in uncontrolled airspace.

## §103.13    Operation near aircraft; right-of-way rules.

(a) Each person operating an ultralight vehicle shall maintain vigilance so as to see and avoid aircraft and shall yield the right-of-way to all aircraft.

(b) No person may operate an ultralight vehicle in a manner that creates a collision hazard with respect to any aircraft.

(c) Powered ultralights shall yield the right-of-way to unpowered ultralights.

## §103.15    Operations over congested areas.

No person may operate an ultralight vehicle over any congested area of a city, town, or settlement, or over any open air assembly of persons.

## §103.17    Operations in certain airspace.

No person may operate an ultralight vehicle within Class A, Class B, Class C, or Class D airspace or within the lateral boundaries of the surface area of Class E airspace designated for an airport unless that person has prior authorization from the ATC facility having jurisdiction over that airspace.

## §103.19    Operations in prohibited or restricted areas.

No person may operate an ultralight vehicle in prohibited or restricted areas unless that person has permission from the using or controlling agency, as appropriate.

## §103.20    Flight restrictions in the proximity of certain areas designated by notice to airmen.

No person may operate an ultralight vehicle in areas designated in a Notice to Airmen under §91.137, §91.138, §91.141, §91.143 or §91.145 of this chapter, unless authorized by:

(a) Air Traffic Control (ATC); or

(b) A Flight Standards Certificate of Waiver or Authorization issued for the demonstration or event.

## §103.21    Visual reference with the surface.

No person may operate an ultralight vehicle except by visual reference with the surface.

## §103.23    Flight visibility and cloud clearance requirements.

No person may operate an ultralight vehicle when the flight visibility or distance from clouds is less than that in the table found below. All operations in Class A, Class B, Class C, and Class D airspace or Class E airspace designated for an airport must receive prior ATC authorization as required in §103.17 of this part.

| Airspace | Flight visibility | Distance from clouds |
|---|---|---|
| Class A | Not applicable | Not Applicable. |
| Class B | 3 statute miles | Clear of Clouds. |
| Class C | 3 statute miles | 500 feet below. 1,000 feet above. 2,000 feet horizontal. |
| Class D | 3 statute miles | 500 feet below. 1,000 feet above. 2,000 feet horizontal. |
| Class E: | | |
| Less than 10,000 feet MSL | 3 statute miles | 500 feet below. 1,000 feet above. 2,000 feet horizontal. |
| At or above 10,000 feet MSL | 5 statute miles | 1,000 feet below. 1,000 feet above. 1 statute mile horizontal. |
| Class G: | | |
| 1,200 feet or less above the surface (regardless of MSL altitude) | 1 statute mile | Clear of clouds. |
| More than 1,200 feet above the surface but less than 10,000 feet MSL | 1 statute mile | 500 feet below. 1,000 feet above. 2,000 feet horizontal. |
| More than 1,200 feet above the surface and at or above 10,000 feet MSL | 5 statute miles | 1,000 feet below. 1,000 feet above. 1 statute mile horizontal. |

Policy No: CMFS00035001-R4                          Named Insured: White Cloud Adventures, LLC

## AFFIRMATION OF UNITED STATES HANG GLIDING AND PARAGLIDING ASSOCIATION RELEASE, WAIVER AND ASSUMPTION OF RISK AGREEMENT

*Flight Under FAA Regulation "Part 103 is based on the assumption that any individual who elects to fly an ultralight vehicle has assessed the dangers involved and assumes personal responsibility for his/her safety". FAA AC-103-7*

In consideration of being allowed to use the facilities and participate in the sport of "*ultralight vehicles*" and other activities (collectively the "*Activities*") provided by White Cloud Adventures, LLC (the "*School*"), I hereby reaffirm the United States Hang Gliding And Paragliding Association ("USHPA") Release, Waiver and Assumption of Risk Agreement (the "*USHPA Release*") previously signed by me and acknowledge that it is applicable to my participation in any and all *Activities* provided by the *School*.  Each of the terms, including the definitions, of the *USHPA Release* are hereby incorporated by reference as though fully set forth in this affirmation.

I specifically acknowledge that the following persons, including their owners, officers, directors, managers, agents, spouses, employees, officials (elected or otherwise), members, independent contractors, sub-contractors, lessors and lessees, are also *RELEASED PARTIES* as that term is used in the *USHPA Release*:

White Cloud Adventures, LLC;

SMG Corp. and Salt Lake County and their respective members, officers, directors, agents and employees;

Metro Water Company;

City of Draper, Parks, Trails & Recreation;

Division of Utah State Parks;

The Professional Air Sports Association, a North Carolina Non-Profit Corporation;


This specification of certain *RELEASED PARTIES* is not meant to be an all-inclusive list or to limit in any way the scope of persons included within the definition of *RELEASED PARTIES* in the **USHPA Release**.  It is made to give assurance to those listed that they are included within the scope of the definition of *RELEASED PARTIES* in the *USHPA Release*.

**"Ultralight Vehicles"** includes powered and unpowered hang gliders and paragliders.  Mini-wings and speed-wings are types of paragliders.

This affirmation in no way limits, restricts or narrows the terms or scope of the USHPA Release previously signed by me.

| | | |
|---|---|---|
| _____ | ____/____/____ | _____ |
| *Student Pilot's Signature* | *Date* | *Print Student Pilot's Name* |
| _____ | ____/____/____ | _____ |
| *Signature of Student Pilot's Parent or Legal Guardian if Student under 18 years of age* | *Date* | *Student Pilot's USHPA No.* |

# FAA REGULATIONS - PART 103

"Part 103 is based on the assumption that any individual who elects to fly an ultralight vehicle has assessed the dangers involved and assumes personal responsibility for his/her safety"        FAA Advisory Circular 103-7

## §103.1    Applicability.

This part prescribes rules governing the operation of ultralight vehicles in the United States. For the purposes of this part, an ultralight vehicle is a vehicle that:

(a) Is used or intended to be used for manned operation in the air by a single occupant;

(b) Is used or intended to be used for recreation or sport purposes only;

(c) Does not have any U.S. or foreign airworthiness certificate; and

(d) If unpowered, weighs less than 155 pounds; or

(e) If powered:

(1) Weighs less than 254 pounds empty weight, excluding floats and safety devices which are intended for deployment in a potentially catastrophic situation;

(2) Has a fuel capacity not exceeding 5 U.S. gallons;

(3) Is not capable of more than 55 knots calibrated airspeed at full power in level flight; and

(4) Has a power-off stall speed which does not exceed 24 knots calibrated airspeed.

## §103.3    Inspection requirements.

(a) Any person operating an ultralight vehicle under this part shall, upon request, allow the Administrator, or his designee, to inspect the vehicle to determine the applicability of this part.

(b) The pilot or operator of an ultralight vehicle must, upon request of the Administrator, furnish satisfactory evidence that the vehicle is subject only to the provisions of this part.

## §103.5    Waivers.

No person may conduct operations that require a deviation from this part except under a written waiver issued by the Administrator.

## §103.7    Certification and registration.

(a) Notwithstanding any other section pertaining to certification of aircraft or their parts or equipment, ultralight vehicles and their component parts and equipment are not required to meet the airworthiness certification standards specified for aircraft or to have certificates of airworthiness.

(b) Notwithstanding any other section pertaining to airman certification, operators of ultralight vehicles are not required to meet any aeronautical knowledge, age, or experience requirements to operate those vehicles or to have airman or medical certificates.

(c) Notwithstanding any other section pertaining to registration and marking of aircraft, ultralight vehicles are not required to be registered or to bear markings of any type.

## §103.9    Hazardous operations.

(a) No person may operate any ultralight vehicle in a manner that creates a hazard to other persons or property.

(b) No person may allow an object to be dropped from an ultralight vehicle if such action creates a hazard to other persons or property.

## §103.11    Daylight operations.

(a) No person may operate an ultralight vehicle except between the hours of sunrise and sunset.

(b) Notwithstanding paragraph (a) of this section, ultralight vehicles may be operated during the twilight periods 30 minutes before official sunrise and 30 minutes after official sunset or, in Alaska, during the period of civil twilight as defined in the Air Almanac, if:

(1) The vehicle is equipped with an operating anticollision light visible for at least 3 statute miles; and

(2) All operations are conducted in uncontrolled airspace.

## §103.13    Operation near aircraft; right-of-way rules.

(a) Each person operating an ultralight vehicle shall maintain vigilance so as to see and avoid aircraft and shall yield the right-of-way to all aircraft.

(b) No person may operate an ultralight vehicle in a manner that creates a collision hazard with respect to any aircraft.

(c) Powered ultralights shall yield the right-of-way to unpowered ultralights.

## §103.15    Operations over congested areas.

No person may operate an ultralight vehicle over any congested area of a city, town, or settlement, or over any open air assembly of persons.

## §103.17    Operations in certain airspace.

No person may operate an ultralight vehicle within Class A, Class B, Class C, or Class D airspace or within the lateral boundaries of the surface area of Class E airspace designated for an airport unless that person has prior authorization from the ATC facility having jurisdiction over that airspace.

## §103.19    Operations in prohibited or restricted areas.

No person may operate an ultralight vehicle in prohibited or restricted areas unless that person has permission from the using or controlling agency, as appropriate.

## §103.20    Flight restrictions in the proximity of certain areas designated by notice to airmen.

No person may operate an ultralight vehicle in areas designated in a Notice to Airmen under §91.137, §91.138, §91.141, §91.143 or §91.145 of this chapter, unless authorized by:

(a) Air Traffic Control (ATC); or

(b) A Flight Standards Certificate of Waiver or Authorization issued for the demonstration or event.

## §103.21    Visual reference with the surface.

No person may operate an ultralight vehicle except by visual reference with the surface.

## §103.23    Flight visibility and cloud clearance requirements.

No person may operate an ultralight vehicle when the flight visibility or distance from clouds is less than that in the table found below. All operations in Class A, Class B, Class C, and Class D airspace or Class E airspace designated for an airport must receive prior ATC authorization as required in §103.17 of this part.

| Airspace | Flight visibility | Distance from clouds |
|---|---|---|
| Class A | Not applicable | Not Applicable. |
| Class B | 3 statute miles | Clear of Clouds. |
| Class C | 3 statute miles | 500 feet below. 1,000 feet above. 2,000 feet horizontal. |
| Class D | 3 statute miles | 500 feet below. 1,000 feet above. 2,000 feet horizontal. |
| Class E: | | |
| Less than 10,000 feet MSL | 3 statute miles | 500 feet below. 1,000 feet above. 2,000 feet horizontal. |
| At or above 10,000 feet MSL | 5 statute miles | 1,000 feet below. 1,000 feet above. 1 statute mile horizontal. |
| Class G: | | |
| 1,200 feet or less above the surface (regardless of MSL altitude) | 1 statute mile | Clear of clouds. |
| More than 1,200 feet above the surface but less than 10,000 feet MSL | 1 statute mile | 500 feet below. 1,000 feet above. 2,000 feet horizontal. |
| More than 1,200 feet above the surface and at or above 10,000 feet MSL | 5 statute miles | 1,000 feet below. 1,000 feet above. 1 statute mile horizontal. |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### POWERED PARAGLIDING OPERATIONS - PROPELLER INJURY EXCLUSION

This insurance does not apply to, and **We** have no obligation to defend any **Insured** against, pay **"damages"** on behalf of any **Insured**, or make any medical payment under any of the **Coverages** of **This Insurance Policy** for "**bodily injury**", or "**property damage**" which would not have occurred but for the contact by a "**powered paraglider**" power unit's propeller (or any part thereof) with any person or tangible property

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: CMFS00035001-R4                    Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION – ASBESTOS, LEAD OR SILICA

The insurance policy is hereby amended to include the following additional exclusion:

**ASBESTOS, LEAD OR SILICA EXCLUSION**

This insurance does not apply to any liability arising out of:

a.      The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of :

        (1)      asbestos, as bestos fibers, any other form  of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos ;

        (2)      lead , or any products or materials containing lead; or

        (3)      silica, silica dust, or any products or materials containing silica or silica dust,

regardless of whether any other cause, event, material or product contributed concurrently or in any

sequence to any injury or damage;

b.      Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of:

        (1)      asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

        (2)      lead, or any products or materials containing lead; or

        (3)      silica, silica dust, or any products or materials containing silica or silica dust, by any insured or by any other person or entity;

c.      Any supervision, instructions, recommendations, warnings, or advice given or which should  have been given in connection with a. and b. above;

d.      Any obligation to share damages with or repay someone else who must pay damages because of:

        (1)      asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

        (2)      lead, or any products or materials containing lead; or

        (3)      silica, silica dust, or any products or materials containing silica or silica dust;

e.      Any injury or damage arising out of the loss of use of, or other unavailability of, any product or material actually, potentially, or allegedly  containing asbestos, asbestos  fibers,  any  other  form  of asbestos, lead , silica or silica dust; or

f.      Any injury or  damage arising out of the loss of use of, or other unavailability of, "your product" or "your work", arising out of  the loss  of use  of, or  other  unavailability  of, any product  or  material actually, potentially, or allegedly containing asbestos,  asbestos fibers, any other form  of  asbestos, lead, silica or silica dust.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: CMFS00035001-R4                              Named Insured: White Cloud Adventures, LLC

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION – BIOLOGICAL OR CHEMICAL MATERIALS

The insurance policy is hereby amended to include the following additional exclusion:

**BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION**

This insurance does not apply to any liability arising out of:

The actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: CMFS00035001-R4                    Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION – TERRORISM

The insurance policy is hereby amended to include the following additional exclusion:

**TERRORISM EXCLUSION**

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or governments(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If your risk retention group alleges that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Named Insured: White Cloud Adventures, LLC                    Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ACCELERATED MINIMUM EARNED PREMIUM ENDORSEMENT
### (180 DAYS)

The minimum earned premium will be determined by the following earned premium schedule should the insurance policy be canceled before the happening of any "claim".  Should the premium be financed through a premium finance company, the minimum earned premium will be pro-rata instead of pursuant to this schedule.

| Days in Force | Unearned Premium Factor | Days in Force | Unearned Premium Factor | Days in Force | Unearned Premium Factor | Days in Force | Unearned Premium Factor | Days in Force | Unearned Premium Factor |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 0.746 | 37 | 0.596 | 73 | 0.446 | 109 | 0.296 | 145 | 0.146 |
| 2 | 0.742 | 38 | 0.592 | 74 | 0.442 | 110 | 0.292 | 146 | 0.142 |
| 3 | 0.738 | 39 | 0.588 | 75 | 0.438 | 111 | 0.288 | 147 | 0.138 |
| 4 | 0.734 | 40 | 0.584 | 76 | 0.434 | 112 | 0.284 | 148 | 0.134 |
| 5 | 0.729 | 41 | 0.579 | 77 | 0.429 | 113 | 0.279 | 149 | 0.129 |
| 6 | 0.725 | 42 | 0.575 | 78 | 0.425 | 114 | 0.275 | 150 | 0.123 |
| 7 | 0.721 | 43 | 0.571 | 79 | 0.421 | 115 | 0.271 | 151 | 0.121 |
| 8 | 0.717 | 44 | 0.567 | 80 | 0.417 | 116 | 0.267 | 152 | 0.117 |
| 9 | 0.713 | 45 | 0.563 | 81 | 0.413 | 117 | 0.263 | 153 | 0.113 |
| 10 | 0.709 | 46 | 0.559 | 82 | 0.409 | 118 | 0.259 | 154 | 0.109 |
| 11 | 0.704 | 47 | 0.554 | 83 | 0.404 | 119 | 0.254 | 155 | 0.104 |
| 12 | 0.700 | 48 | 0.550 | 84 | 0.400 | 120 | 0.250 | 156 | 0.100 |
| 13 | 0.696 | 49 | 0.546 | 85 | 0.396 | 121 | 0.246 | 157 | 0.096 |
| 14 | 0.692 | 50 | 0.542 | 86 | 0.392 | 122 | 0.242 | 158 | 0.092 |
| 15 | 0.688 | 51 | 0.538 | 87 | 0.388 | 123 | 0.238 | 159 | 0.088 |
| 16 | 0.684 | 52 | 0.543 | 88 | 0.384 | 124 | 0.234 | 160 | 0.084 |
| 17 | 0.679 | 53 | 0.529 | 89 | 0.379 | 125 | 0.229 | 161 | 0.079 |
| 18 | 0.675 | 54 | 0.525 | 90 | 0.375 | 126 | 0.225 | 162 | 0.075 |
| 19 | 0.671 | 55 | 0.521 | 91 | 0.371 | 127 | 0.221 | 163 | 0.071 |
| 20 | 0.667 | 56 | 0.517 | 92 | 0.367 | 128 | 0.217 | 164 | 0.067 |
| 21 | 0.663 | 57 | 0.513 | 93 | 0.363 | 129 | 0.213 | 165 | 0.063 |
| 22 | 0.659 | 58 | 0.509 | 94 | 0.359 | 130 | 0.209 | 166 | 0.059 |
| 23 | 0.654 | 59 | 0.504 | 95 | 0.354 | 131 | 0.204 | 167 | 0.054 |
| 24 | 0.650 | 60 | 0.500 | 96 | 0.350 | 132 | 0.200 | 168 | 0.050 |
| 25 | 0.646 | 61 | 0.496 | 97 | 0.346 | 133 | 0.196 | 169 | 0.046 |
| 26 | 0.642 | 62 | 0.492 | 98 | 0.342 | 134 | 0.192 | 170 | 0.042 |
| 27 | 0.638 | 63 | 0.488 | 99 | 0.338 | 135 | 0.188 | 171 | 0.038 |
| 28 | 0.634 | 64 | 0.484 | 100 | 0.334 | 136 | 0.184 | 172 | 0.034 |
| 29 | 0.629 | 65 | 0.479 | 101 | 0.329 | 137 | 0.179 | 173 | 0.029 |
| 30 | 0.625 | 66 | 0.475 | 102 | 0.325 | 138 | 0.175 | 174 | 0.025 |
| 31 | 0.621 | 67 | 0.471 | 103 | 0.321 | 139 | 0.171 | 175 | 0.021 |

Named Insured: White Cloud Adventures, LLC

Named Insured: White Cloud Adventures, LLC

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 32 | 0.617 | 68 | 0.467 | 104 | 0.317 | 140 | 0.167 | 176 | 0.017 |
| 33 | 0.613 | 69 | 0.463 | 105 | 0.313 | 141 | 0.163 | 177 | 0.013 |
| 34 | 0.609 | 70 | 0.459 | 106 | 0.309 | 142 | 0.159 | 178 | 0.009 |
| 35 | 0.604 | 71 | 0.454 | 107 | 0.304 | 143 | 0.154 | 179 | 0.004 |
| 36 | 0.600 | 72 | 0.450 | 108 | 0.300 | 144 | 0.150 | 180 | 0.000 |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: CMFS00035001-R4                          Named Insured: White Cloud Adventures, LLC

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### POLICY CHANGE CANCELLATION ENDORSEMENT

The insurance policy is hereby amended to include the following condition:

All policy changes will be cancelled flat, automatically, if payment is not received by the due date listed on the invoice related to the policy change.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: CMFS00035001-R4                          Named Insured: White Cloud Adventures, LLC

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION AND LIMITATION CLAUSE – EXPOSURE TO SANCTIONS

The insurance policy is hereby amended to include the following additional exclusion:

**EXPOSURE TO SANCTIONS EXCLUSION**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: CMFS00035001-R4                          Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION CLAUSE – NUCLEAR INCIDENT LIABILITY

The insurance policy is hereby amended to include the following additional exclusion:

**NUCLEAR INCIDENT LIABILITY EXCLUSION**

This insurance does not apply:

A.  Under any Liability Coverage, to injury, sickness, disease, death or destruction:

   i.      with respect to which an Insured under This Insurance Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   ii.     resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or(2) the Insured is, or had **This Insurance Policy** not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

   i.      the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

   ii.     the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   iii.    the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

D.  As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material, "special nuclear material", and "by-product material" have the

RRRG 9025 (0223002)                                                     Page 1 of 2
Effective 07/04/2023

Policy No: CMFS00035001-R4                    Named Insured: White Cloud Adventures, LLC

meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (i) or (ii) thereof; "nuclear facility" means:

i.     any nuclear reactor,

ii.     any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

iii.     any equipment or device used for the processing, fabrication or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

iv.     any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of **This Insurance Policy** to which it is attached.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: CMFS00035001-R4                                Named Insured: White Cloud Adventures, LLC

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION CLAUSE – COMMUNICABLE DISEASE

The insurance policy is hereby amended to include the following additional exclusion:

**COMMUNICABLE DISEASE EXCLUSION**

Notwithstanding any provision to the contrary within **This Insurance Policy**, **This insurance Policy** excludes, and **We** will not pay, any actual or alleged loss, liability, damage, compensation, injury, sickness, disease, death, medical payment, defense cost, cost, expense or any other amount

a.    incurred by or accruing to any **Insured**, directly or indirectly; or

b.    for which any **Insured** is or becomes legally obligated to pay; or

c.    which is or would otherwise be payable to anyone as a medical expense,

and regardless of any other cause contributing concurrently or in any sequence, originating from, caused by, arising out of, contributed to by, resulting from, or otherwise in connection with a Communicable Disease or the fear or threat (whether actual or perceived) of a Communicable Disease.

For the limited purpose of this **Endorsement**, as used in this **Endorsement**, a Communicable Disease means any disease which can be transmitted by means of any substance or agent from any organism to another organism where:

a.    the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not, and

b.    the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between organisms, and

c.    the disease, substance or agent can cause or threaten bodily injury, illness, emotional distress or damage to human health, human welfare or property damage.

# ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: CMFS00035001-R4                    Named Insured: White Cloud Adventures, LLC

# THIS POLICYHOLDER NOTICE DOES NOT MODIFY THE POLICY

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

Foreign agents;

Front organizations;

Terrorists;

Terrorist organizations; and

Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: CMFS00035001-R4                    Named Insured: White Cloud Adventures, LLC

# THIS POLICYHOLDER NOTICE DOES NOT MODIFY THE POLICY

## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
## NOT PURCHASED CLAUSE

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Policy No: CMFS00035001-R4                              Named Insured: White Cloud Adventures, LLC.

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM INSURANCE COVERAGE
# (TRIA FORM)

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, **as defined in Section 102(1) of the Act, as amended:** The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Any coverage you purchase for "acts of terrorism" shall expire at 12:00 midnight December 31, 2027, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020; OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A USD100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS USD100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED USD100 BILLION, YOUR COVERAGE MAY BE REDUCED.

THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

| | |
|---|---|
| | I **ELECT** to **PURCHASE** terrorism coverage.  I understand that my premium for terrorism coverage will be **25% of premium quoted.** |
| ✔ | I **DECLINE** the offer of terrorism coverage.  I understand that acts of terrorism will **NOT** be covered by my policy. |

**Check ONE box (not both)**

X  _Ben White_
*Policyholder/Applicant's Signature*

X  06 / 19 / 2023
*Date*

X  Benjamin White
*Print Name*

RRRG 9110 (0223004)                                                                          Page 1 of 1
Effective 07/04/2023

Doc ID: 6e3bf857cecdc999de052d833bbc9ca02d9f5fd3

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PERSONAL GUARANTEE ENDORSEMENT

As a material inducement for the issuance of this insurance policy by Recreation Risk Retention Group, Inc. to the first Named Insured, the undersigned guarantor, agrees as follows:

The undersigned ("Guarantor") personally and unconditionally guarantees to Recreation Risk Retention Group, Inc., the prompt payment in full when due of 1) all premiums falling due under this insurance policy; 2) all "self-insured retention" amounts; 3) all reimbursements of advances of "self-insured retention" amounts; 4) any other amounts due and owing from the first Named Insured to Recreation Risk Retention Group, Inc. pursuant to this insurance policy (the "Guaranteed Amounts").

Guarantor understands and agrees that even if the first Named Insured goes bankrupt, becomes insolvent, goes out of business, sells its business, has a change of ownership, combines with another business or dissolves, Guarantor will still be liable for and will still pay the Guaranteed Amounts.

Guarantor promises to pay Recreation Risk Retention Group, Inc. the Guaranteed Amounts within twenty (20) days of receipt of a written request for payment from Recreation Risk Retention Group, Inc. delivered by US Mail, personal delivery, commercial overnight carrier, or email at the notice address listed below Guarantor's signature.  Guarantor promises to give Recreation Risk Retention Group, Inc. notice of any change in Guarantor's physical address or email address by sending an email to personalguarantees@recreationrrg.com with the updated contact information.

Guarantor further agrees to pay all costs and fees, including reasonable attorneys fees, incurred by Recreation Risk Retention Group, Inc. in collection of any the Guaranteed Amounts.

This guarantee is subject to the arbitration clause of the insurance policy.

First Named Insured:    White Cloud Adventures, LLC.

Guarantor:  _Ben White_                                  Date: ___06 / 19 / 2023___

Print Name:   Benjamin White

**Address and Email for Notices**
Street Address:
             15263 S. Steep Mountain Drive
             Draper, Utah  84020


Email:
             benwhiteskis@gmail.com


## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED



**RECREATION RISK RETENTION**
— GROUP —    ™

27 MAIN ST, FIRST FLOOR
BURLINGTON, VT 05401
802-383-1541

### NOTICE TO ALL APPLICANTS
By applying for this insurance, the applicant is also applying for membership in Recreation Risk Retention Group, Inc., a risk retention group formed and operating pursuant to the Liability Risk Retention Act of 1986 (15 USC 3901 et. Seq.).
### NOTICE
**This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.**

---

Hang Gliding  and/or  Paragliding  Flight  School/Park RENEWAL   Insurance   Application

---

PLEASE READ EACH QUESTION CAREFULLY AND PROVIDE COMPLETE, TRUTHFUL AND ACCURATE RESPONSES. THE INFORMATION REQUESTED IN THIS APPLICATION IS IMPORTANT TO THE UNDERWRITING PROCESS. ANY MATERIAL MISREPRESENTATION MAY AFFECT THE INSURANCE POLICY ISSUED BASED ON THIS APPLICATION.

### 1. CONTACT INFORMATION

| Is your contact info the same? | Yes ☐   No ☑ |
|---|---|
| (STRIKE OUT ANY INCORRECT INFORMATION) | (INSERT CORRECTED INFORMATION HERE) |

(STRIKE OUT ANY INCORRECT INFORMATION)

Name:          White Cloud Adventures, LLC
Address:       187 E. Steep Mountain Drive
               Draper, UT 84020
Phone:         978-778-8286
Email:         benwhiteskis@gmail.com
Contact:       Ben White
Website:       www.whitecloudadventures.com

(INSERT CORRECTED INFORMATION HERE)

White Cloud Adventures, LLC
15263 S Steep Mountain Drive
Draper, UT 84020
9787788286
benwhiteskis@gmail.com
Ben White
www.whitecloudadventures.com

### 2. OPERATIONS INFORMATION

| Are your operations the same? | Yes ☑   No ☐ |
|---|---|

(STRIKE OUT ANY INCORRECT INFORMATION)
Paragliding - Instruction - Solo (P1, P2 Training)

Paragliding - Instruction - Solo Advanced (P3, P4 Training)

Paragliding - Instruction - Tandem Discovery (P0 Training)

Paragliding - Instruction - Tandem (P1, P2 Training)

Paragliding - Instruction - Tandem Advanced    (P3, P4 Training)

Paragliding - Equipment Sales

(INSERT CORRECTED INFORMATION HERE)

| 2.1 Do you offer Powered Paragliding training | Yes ☐ No ☑ |
|---|---|

| 2.2 Do you sell Powered Paragliding equipment | Yes ☐ No ☑ |
|---|---|

**3. INSURANCE LIMITS INFORMATION**

**Do you require the same limits of liability for your school?**     Yes ☑     No ☐
**Note: Limits of Liability for Additional Insured Landowners are covered separately below**

| (STRIKE OUT ANY INCORRECT INFORMATION)<br>$250,000 Occurrence<br>$250,000 Aggregate | (INSERT CORRECTED INFORMATION HERE) |
|---|---|

**4. INSURED CONTRACTS**

**Do you still have these insured contracts?**     Yes ☑     No ☐

| (STRIKE OUT ANY INCORRECT INFORMATION)<br>NONE | (INSERT CORRECTED INFORMATION HERE) |
|---|---|

Doc ID: fefeadefa13923d327d316b52849576012d4d8d7

## 5. LOCATIONS WHERE YOU OPERATE

List of ALL locations:
  A  Where the Your School provided ANY instruction in the last 12 months; AND
  B  Where the Your School will provide ANY instruction in the next 12 months
  C  Include locations in the USA as well as those out of the country
  D  Include the location where the school performs its office/administrative functions
  E  Include the locations of guided tours and recreational towing

IMPORTANT: THIS LIST DOES NOT DEPEND ON WHETHER OR NOT THE LANDOWNER REQUIRES INSURANCE

| Site Name, Address/GPS | % of Operations At Site | Location Type | | | | When Used | | Updated RMP | REMOVE |
|---|---|---|---|---|---|---|---|---|---|
| | | Office | Launch | Fly Over | Landing Zone | Last 12 Mo. | Next 12 Mo. | | |
| Point of the Mountain - South Side Launch<br>40.453708, -111.9089<br>Lehi, UT | 30 % | ☐ | ☑ | ☑ | ☑ | ☑ | ☑ | ☐ | ☐ |
| Point of the Mountain - South Side LZ<br>40.454042, -111.900118<br>Lehi, UT | 30 % | ☐ | ☑ | ☑ | ☑ | ☑ | ☑ | ☐ | ☐ |
| Point of the Mtn - North Side Launch<br>40.473746, -111.892700<br>Draper, UT | 20 % | ☐ | ☑ | ☑ | ☑ | ☑ | ☑ | ☐ | ☐ |
| Point of the Mtn - North Side - Landing Zone<br>40.476055, -111.89487<br>Draper, UT | 20 % | ☐ | ☑ | ☑ | ☑ | ☑ | ☑ | ☐ | ☐ |
| SuperFly Offices for Ground School Only<br>8683 Sandy Parkway<br>Sandy, UT | % | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | % | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | % | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | % | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | % | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | % | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | % | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | % | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | % | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **TOTAL PERCENTAGES MUST EQUAL 100%** | | | | | | | | | |

1  Provide copy(ies) of any permits, licenses, agreements, leases, or other documentation of any arrangement giving the FLIGHT SCHOOL access to the Site for operating;

2  Provide a copy OF FLIGHT SCHOOL's updated risk management assessment and risk management plan for each location where FLIGHT SCHOOL conducts Operations;

3  For all NEW locations where the landowner(s) require insurance, provide an "Additional Insured Flying Site Supplement" application form

| 6. EXCLUDED LOCATIONS | Not Applicable | ☐ |
|---|---|---|

All Launches and Landing Zones other than the ones scheduled as Insured Locations on Form 8502

**6.1 EXCLUDED OPERATIONS**

Any operation with students under the age of 18;
Mini-wing Instruction and equipment sales
Powered Paragliding instruction and equipment sales

**7. Do you have a Ski Resort landowner insured by AIG that requires insurance with limits greater than $1,000,000?**

☐ Yes  ☑ No

**(IMPORTANT NOTE: ANY COVERAGE OF LANDOWNERS IN EXCESS OF $1M WILL BE ON A CLAIMS MADE AND REPORTED BASIS AND ONLY FOR INCIDENTS THAT OCCUR DURING THE EXCESS POLICY PERIOD, AND WILL NOT ON A POLICY OCCURRENCE BASIS)**

**8. ADDITIONAL INSUREDS**

| Are your Additional Insureds & their required limits the same? | ☑ Yes | ☐ No |
|---|---|---|

| # | Occ/Agg | Landowner Excess Occ/Agg | Name & Address | Flying Site Name | REMOVE |
|---|---|---|---|---|---|
| 1 | $1,000,000/ $2,000,000 | | SMG Corp. and Salt Lake County and their respective members, officers, directors, agents and employees  SLC Govt. Center 2001 S State St. S4400 Salt Lake City, UT 84190-3050 | Point of the Mtn - North Side Launch 40.473746, -111.892700  Draper, UT | ☐ |
| 2 | $1,000,000/ $2,000,000 | | Metro Water Company 235 Marion Vista Dr Draper, UT 84020 | Point of the Mtn - North Side - Landing Zone 40.476055, -111.89487  Draper, UT | ☐ |
| 3 | $1,000,000/ $2,000,000 | | City of Draper, Parks, Trails & Recreation 1020 E Pioneer Rd. Bottom Fl.  Draper, UT 84020 | Point of the Mtn - North Side - Landing Zone 40.476055, -111.89487  Draper, UT | ☐ |
| 4 | $1,000,000/ $3,000,000 | | Division of Utah State Parks PO Box 146001 Salt Lake City, UT 84114 | Point of the Mountain - South Side Launch 40.453708, -111.9089 Lehi, UT  Point of the Mountain - South Side LZ 40.454042, -111.900118 Lehi, UT | ☐ |

*a. SELECT REMOVE FOR ANY NO LONGER APPLICABLE*
*b. ATTACH SUPPLEMENT WITH ADDITIONAL INSURED LANDOWNER INFORMATION FOR ANY NEW ONES*
*c. LIST ANY CHANGES FOR A LANDOWNER BELOW, REFERENCING LINE ITEM #*

**8.1 Changes to Additional Insured Information**

**9. DESIGNATED ADDITIONAL INSURED CHAPTER**

Are your additional Insured chapters the same?    ☑ Yes    ☐ No

| # | Chapter #, Name and Address | Flying Site Name & Location | REMOVE |
|---|---|---|---|
| 1 | Utah Hang Gliding/Paragliding Association<br>PO Box 711133<br>Salt Lake City, UT 84171 | Point of the Mountain - North Side Flight Park - North Side Launch:<br>40.473746, -111.8927,  Draper, UT<br><br>Point of the Mountain - North Side Flight Park - North Side LZ:<br>40.476055, -111.89487,  Draper, UT<br><br>Point of the Mountain -South Side Flight Park - South Side Launch:<br>40.453708, -111.9089,  Lehi, UT<br><br>Point of the Mountain -South Side Flight Park - South Side LZ:<br>40.454042, -111.900118,  Lehi, UT | ☐ |

a.  *SELECT REMOVE FOR ANY NO LONGER APPLICABLE*

b.  *ATTACH SUPPLEMENT WITH CHAPTER INFORMATION FOR ANY NEW CHAPTERS OR CHAPTER SITES*

c.  *LIST ANY CHANGES FOR A CHAPTER BELOW, REFERENCING LINE ITEM #*

**9.1 CHANGES TO CHAPTER INFORMATION:**

**10. TOW DEVICES**

Are your tow devices the same?    Yes ☑    No ☐

| NONE |
|---|
| *ATTACH NEW SUPPLEMENT FOR ANY NEW TOW DEVICES* |

## 11. TOW VEHICLES - AUTOS, TRUCKS, TRAILERS, BOATS

**Are your tow vehicles the same?**　　　　　　　Yes ☑　　No ☐

List all autos, trucks, trailers and boats on which tow winches are mounted (or used to tow trailers on which tow winches are mounted) - You MUST carry separate liability insurance on each such vehicle

NONE

| # | MAKE/MODEL | YR | VEH SN# | INS CARRIER | POLICY NO. | EXP DATE | Remove |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  | ☐ |
|  |  |  |  |  |  |  | ☐ |
|  |  |  |  |  |  |  | ☐ |
|  |  |  |  |  |  |  | ☐ |
|  |  |  |  |  |  |  | ☐ |

**\* Provide copies of current vehicle registrations and proof of insurance**

## 12. SOLO STUDENTS

How many Solo students have you taught in the last 12 months?　　50

Have you logged all of your Solo student's lessons to the RRRG Lesson Logging Application?　　Yes ☑　　No ☐

## 13. TANDEM STUDENTS

How many Tandem students have you taught in the last 12 months? 50

Have you logged all of your Tandem student's lessons to the RRRG Lesson Logging Application?　　Yes ☑　　No ☐

## 14. USHPA 30 Day Membership Forms

| 14.1 | Have you returned the original of every USHPA 30 Day Membership form issued to your school's students in the last 12 months? | Yes ☑　　No ☐ |
|---|---|---|
| 14.2 | Do you have any unused USHPA 30 Day Membership forms with a revision date earlier than 02/2019? | Yes ☐　　No ☑ |

## 15. MINORS

| **15.1** How many students have your taught in the last 12 months that were under 18 yrs? | 0 |
|---|---|
| **15.2** What is the youngest student that you taught in the last 12 months? | 0 |
| **15.3** Do you understand that any policy offered to you based on this application will not provide coverage for incidents involving students under the age of 14? | Yes ☑　　No ☐ |
| **15.4** Do you understand that any policy offered to you based on this application will not provide coverage for incidents involving students under the age of 18 who have not assessed the dangers involved in the sport and who have not assumed all responsibility for their own personal safety? | Yes ☑　　No ☐ |

## 16. ACCIDENT REPORTING

Do you report ALL INCIDENTS, regardless of severity to your insurance company immediately?　　Yes ☑　　No ☐

| 17. ACCIDENTS AND INCIDENTS NOT ALREADY REPORTED | |
|---|---|
| For purposes of answering this question:<br><br>An INCIDENT means any adverse student experience short of an injury requiring professional medical attention. Examples would include hitting something during the flight, such as a tree, bush, car, etc. . . ; an unintended spin, stall, collapse, or aerobatic maneuver; a reserve deployment; a situation that requires a reserve deployment; a whack on landing; a blown launch; a blown attempted launch; a blown landing; something that requires a band aid; anything that scared the student.<br><br>An ACCIDENT means any adverse student experience that results in an injury requiring professional medical attention. Examples would include anything where the student went to the doctor, hospital, or medical clinic; a fatality; a spinal injury; a broken bone; a sprained ankle; a concussion; etc . . . | |
| **A.** How many INCIDENTS occurred during your lessons in the last 12 months that have **not previously been logged**? | 0 |
| **B.** How many ACCIDENTS occurred during your lessons in the last 12 months that have **not previously been logged**? | 0 |

| 18. INSTRUCTORS | | |
|---|---|---|
| **18.1** Have you provided PASA with a Complete list of all of the instructors currently working for your school? | Yes ☑ | No ☐ |
| **18.2** Have you cross checked all of your employees and contractors on the National Sex Offender Registry? | Yes ☑ | No ☐ |
| **18.3** Have you implemented a drug and alcohol-free workplace program that complies with the recommendations of the Substance Abuse and Mental Health Services Administration Drug Free Workplace program guidelines and the laws of your state? | Yes ☑ | No ☐ |
| **18.4** Have you or any of your staff had their driver's license either revoked or suspended in the past 3 yrs? | Yes ☐ | No ☑ |

**19. LESSON PRICING - List Your Current Lesson Prices**

**19.1. Solo Lesson Packages and Prices**

| Lesson Name | Lesson Description | Lesson Price | Quantity In Last 12 Months | |
|---|---|---|---|---|
| | | | # Lessons Sold | # Lessons At No Cost |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**18.2. Tandem Lesson Packages and Prices**

| Lesson Name | Lesson Description | Lesson Price | Quantity In Last 12 Months | |
|---|---|---|---|---|
| | | | # Lessons Sold | # Lessons At No Cost |
| Intro Tandem | Discovery flight | $1 | 50 | 50 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**19.3. Powered Paragliding Lesson Packages and Prices**

| Lesson Name | Lesson Description | Lesson Price | Quantity In Last 12 Months | |
|---|---|---|---|---|
| | | | # Lessons Sold | # Lessons At No Cost |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## 19.4. REVENUE BREAKDOWN FOR ALL ACTIVITIES/OPERATIONS

| Receipts ($) | Actual Revenue 06/01/2022 to 05/31/2023 | Estimated Revenue 06/01/2023 to 05/31/2024 |
|---|---|---|
| Instructional - Solo - USA | $ $25000 | $ $25000 |
| Instructional - Solo - Outside USA | $ 0 | $ 0 |
| Instructional - Tandem - USA | $ 100 | $ 100 |
| Instructional - Tandem - Outside USA | $ 0 | $ 0 |
| Instructional - Certification Clinics | $ 0 | $ 0 |
| Instructional - SIV | $ 0 | $ 0 |
| Instructional - Powered Paragliding | $ 0 | $ 0 |
| Instructional - Other Powered Ultralight or Light Sport Aircraft | $ 0 | $ 0 |
| Guided Tours/Trips - USA | $ 0 | $ 0 |
| Guided Tours/Trips - Outside USA | $ 0 | $ 0 |
| Rental of HG/PG equipment and gear | $ 0 | $ 0 |
| Rental of powered PG equipment and gear | $ 0 | $ 0 |
| Flight Park Fees | $ 0 | $ 0 |
| Repair Shop Fees | $ 0 | $ 0 |
| Tow Fees | $ 0 | $ 0 |
| Flight/Lesson Videos and/or Photos | $ 0 | $ 0 |
| International Operations (not listed above - please describe) | $ 0 | $ 0 |
| Broker/Bookings for other operators | $ 0 | $ 0 |
| Equipment Sales | $ 20000 | $ 20000 |
| Other Receipts (describe below) | $ 0 | $ 0 |
| TOTAL: | $ 45000 | $ 45000 |

| Explain Other Receipts: | |
|---|---|
| | |

## 20. ATTACH COPIES OF THE FOLLOWING:

*Copies may be uploaded to: https://www.dropbox.com/request/5OiFsr4x6sk5b9NNIJl0

| | |
|---|---|
| 20.1 | Copy(ies) of all UPDATED permits, licenses, agreements, leases, or other documentation of any arrangement between Applicant and Site Landowners, if any.  If none have changed and you have already provided the current version to us, you do not need to provide us another copy. |
| 20.2 | Copy(ies) of Applicant's UPDATED risk management assessment and risk management plan(s) for each location where Applicant conducts Operations, if any.  If none have changed and you have already provided the current version to us, you do not need to provide us another copy. |
| 20.3 | Copies of all equipment maintenance logs for the past 12 months |
| 20.4 | Tow Vehicle Registrations for NEW tow vehicles only |
| 20.5 | Tow Vehicle Proof of insurance |
| 20.6 | Tow Device Supplemental Applications for each Tow Device |
| 20.7 | Copy of your written drug and alcohol-free workplace program |

Doc ID: fefeadefa13923d327d316b52849576012d4d8d7

**21.    MINIMUM ELIGIBILITY REQUIREMENTS - \*\*\* PLEASE READ EACH AND EVERY REQUIREMENT CAREFULLY \*\*\***

    A)  **BY AFFIXING MY INITIALS, APPLICANT AGREES TO ADHERE TO EACH OF THE FOLLOWING MANDATORY REQUIREMENTS FOR BOTH OBTAINING AND MAINTAINING INSURANCE COVERAGE.**

    B)  **ADHERENCE TO THESE REQUIREMENTS IS MATERIAL TO THE ISSUANCE OF INSURANCE COVERAGE. NO OPERATIONS OF APPLICANT WILL BE COVERED UNDER ANY INSURANCE POLICY ISSUED IN RESPONSE TO THIS APPLICATION UNLESS SUCH OPERATIONS ARE CONDUCTED IN FULL COMPLIANCE WITH ALL OF THE BELOW REQUIREMENTS.**

| | ALL OPERATIONS - ALL APPLICANTS MUST INITIAL STATEMENTS 1 TO 11 | |
|---|---|---|
| **No** | **INITIAL** | **MANDATORY REQUIREMENT** |
| 1 | BW | Applicant's operations WILL comply, at all times, with the Professional Air Sports Association, Inc.'s (PASA's) Standards for the operation of a PASA Certified School |
| 2 | BW | Each participant WILL wear each of the pieces of safety equipment required by USHPA regulations and PASA regulations for the participant's flight, whether or not required by State or local law. |
| 3 | BW | All equipment used by Applicant in its Operations WILL be inspected daily by Applicant, prior to the commencement of activities. Equipment which a reasonable and prudent person would consider damaged and worn, so as to create a potential hazard to life or health, will NEVER be used in the Applicant's operations. |
| 4 | BW | Before Applicant's customers, clients or other participants in Applicant's operations, pay any nonrefundable tuition, receive any instruction or participate in any activities, each of them WILL FIRST sign a pre-injury release of liability, waiver of claims, assumption of risks and indemnity agreement in the form approved for use by the Insurer's risk management department (hereinafter a "Release"). If a participant is less than 18 years of age, both the participant and his or her parent of (adult) legal guardian WILL sign the Release. The originals of all signed releases WILL be maintained for a minimum of five (5) years, or longer if specifically requested by the Insurer. |
| 5 | BW | Before Applicant allows anyone to participate in Applicant's operations, Applicant must first determine that the person is of sufficient age and maturity to assess the dangers involved in the sports of hang gliding and/or paragliding and assume all responsibility for his/her own personal safety. Applicant shall document that determination with respect to any participant that is less than eighteen (18) years of age. |
| 6 | BW | Before Applicant allows anyone to participate in Applicant's operations, Applicant WILL provide a pre-activity safety briefing to each and every participant, sufficient to appraise a reasonable person of 1) Part 103 of the FAA regulations and its premise that all individuals who elect to fly hang gliders and paragliders have assessed the dangers involved and assume all responsibility for their personal safety; 2) the risks involved in the activity; 3) the reasonably safe use and operation of the equipment; and 4) Federal, State and local laws impacting participation in the activity at the Applicant's place(s) of operation. |
| 7 | BW | When the participant in the activities of Applicant's operation is a foreigner, Applicant WILL ensure that items 4 and 6 are translated verbally by someone who speaks both English and the foreign participant's native language. If more than five percent (5%) of the Applicant's business is conducted with foreigners who speak the same language, Applicant WILL obtain and use a form of the approved Release translated into that language. |
| 8 | BW | Applicant WILL strictly prohibit and prevent any individual(s) that Applicant knows, suspects or believes is or may be under the influence of alcohol, marijuana, DEA Schedule 1 controlled substances, intoxicants, mood altering drugs or drugs that adversely impact performance, from participating in the activities of Applicant's operations. |
| 9 | BW | Except for Applicant's students, who have not yet received a United States Hang Gliding and Paragliding Association ("USHPA") Flight Proficiency Rating, but are under the direct, continuous, visual supervision of Applicant's instructors, all persons participating in the activities of Applicant's Operations WILL be current members of USHPA with a Flight Proficiency Rating appropriate for the flying site and conditions under which that participant is flying. |
| 10 | BW | Applicant WILL acquire and maintain a current certificate of insurance with a minimum limit of $1,000,000 with Applicant named as Additional Insured from each vendor or subcontractor for which Applicant books trips, tours, site introductions, training, or instruction or acts as a broker for other activities. |
| 11 | BW | Applicant WILL log each and every Student Lesson within 1 week of each lesson, using the electronic web form and/or app provided by Insurer for such purpose. |

*A policy cannot be issued unless this application is properly signed and dated.*

### NOTICE TO ALL APPLICANTS

By applying for this insurance, the Applicant is also applying for membership in Recreation Risk Retention Group, Inc., a risk retention group formed and operating pursuant to the Liability Risk Retention Act of 1986 (15 USC 3901 et. Seq.). Policies of insurance issued pursuant to this Application will be issued by Recreation Risk Retention Group, Inc. Recreation Risk Retention Group, Inc. may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for Recreation Risk Retention Group, Inc.

Applicant is the party to be named as the NAMED INSURED in any contract of insurance issued pursuant to this Application. Applicant understands that the submission of this Application to Recreation Risk Retention Group, Inc. (the "Insurer"), either by electronic means or as a physical document, constitutes an Application for insurance. The person completing this Application is an authorized representative of Applicant with the authority to make this Application on behalf of Applicant. Applicant represents, warrants and affirmatively states that all representations and information contained in this Application and contained all supplemental information and documents provided in conjunction with this Application are true, complete and accurate, that there have been no omissions, suppressions or misstatements of facts, and that this Application is not misleading in any way.

Applicant understands that this document is merely an APPLICATION for insurance and that NO INSURANCE IS BOUND OR IN FORCE AS A RESULT OF THIS APPLICATION. Applicant understands and agrees that the submission of this Application does not obligate the Insurer to quote, bind or provide any coverage to Applicant.

Applicant understands and acknowledges that Recreation Risk Retention Group, Inc. and each of its representatives are not Brokers or Attorneys and that no Broker/Client or Attorney/Client relationship is established or exists between Recreation Risk Retention Group, Inc. (or any of its representatives) and Applicant. In order for Applicant to determine the coverages that Applicant desires or that are required by any contractual relationship of Applicant, Applicant will consult Applicant's legal counsel and will not rely upon any information received from Recreation Risk Retention Group, Inc., or any of its representatives. Applicant acknowledges and agrees that Applicant will not rely upon Recreation Risk Retention Group, Inc., or any of its representatives, to advise or recommend to Applicant coverages to be purchased by Applicant. No communications with Recreation Risk Retention Group, Inc. or its representatives constitute legal advice or legal opinions. Applicant agrees that for any legal advice or legal opinions, Applicant will consult Applicant's legal counsel and will not rely upon any information received from Recreation Risk Retention Group, Inc. or its representatives.

Applicant understands and acknowledges that any descriptions of the insurance coverages available and/or issued are subject to the terms, conditions, exclusions, and other provisions of the actual policies and any applicable regulations, rating rules, or plans.

Applicant understands and agrees that the Insurer's underwriters can and will rely upon the answers that Applicant has provided in this Application and in all supplemental information and documents provided by Applicant in connection with Application, as well as any other relevant information, including, but not limited to the information provided by Applicant to PASA in connection with Applicant's certification as a PASA Certified Flight School, to assess the Applicant's request for insurance and to quote and potentially bind, price and provide coverage.

Applicant specifically authorizes PASA to provide to the Insurer any and all information provided by Applicant to PASA in connection with Applicant's certification as a PASA Certified Flight School, as well as the results of any investigation undertaken by PASA during that certification process.

Applicant specifically authorizes USHPA to provide to the Insurer any and all information known to USHPA related to Applicant and any of Applicant's staff members.

Applicant further understands and Agrees that the Insurer and its agents shall be permitted but not obligated to inspect Applicant's property and operations for underwriting purposes at any time. Neither the right to make an underwriting inspection nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any insured, or other, to determine or warrant that such property or operations are safe or healthful, or in compliance with any standards, rules or regulations. Underwriting inspections when conducted are for

the sole purpose of determining and/or improving the insurability of certain property and operations and not safety. Applicant also understands that Applicant is solely responsible for the safety of its facilities and operations and shall not rely upon any underwriting inspections to determine the safety of its facilities or operations and shall not diminish or forego its own safety practices and procedures.

Applicant understands and agrees that this Application and in all supplemental information and documents provided by Applicant in connection with this Application, and each of the representations contained therein shall be the basis of any insurance contract or agreement which may be made. As such, in the event that a policy is issued by Insurer based on the representations contained in this Application, and any or all of these representations are subsequently found to be false or that there are any omissions or any suppressions or misstatements of facts, then any policy issued by Insurer relying upon such false or misstated fact(s) shall be considered VOID and to have never provided coverage to any person or entity alleged to be an insured thereunder.

Applicant further agrees and authorizes the Insurer and its agents to gather any additional information that the Insurer deems necessary to process this Application for quoting, binding, pricing, and providing insurance coverage, including, but not limited to, gathering information from USHPA, PASA, Applicant's customers, vendors, creditors, financial institutions and credit reporting agencies as well as from the Federal and State regulatory authorities.

Applicant agrees further, that if any information supplied on this Application changes between the date of this Application and the effective date of any insurance written as a result of this Application, the undersigned will IMMEDIATELY notify the Insurer of such changes, and that the Insurer may withdraw or modify any outstanding quotation and/or authorization.

Applicant understands and acknowledges that Recreation Risk Retention Group, Inc. is domiciled in the State of Vermont and conducts its business, including, but not limited to, its membership services, applications, underwriting, policy issuance, corporate governance, claims, risk management and membership relations, within the state of Vermont. In making this Application, Applicant understands and acknowledges that Applicant is purposefully directing its actions to obtain membership in and insurance from Recreation Risk Retention Group, Inc. within the state of Vermont. Applicant understands and intends that by making this application for insurance, Applicant is intending to and expects that it will be deemed by any court of law or equity to be transacting business within the state of Vermont and hereby consents to the exercise of jurisdiction over Applicant by the courts located in the state of Vermont, for any issue arising out of this application, and any insurance that may be issued as result of this application.

**Notice To Applicants In All States Other Than Those Listed Below**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, may be guilty of a crime and may be subject to civil penalties, fines, and/or imprisonment.

**ALASKA**: A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**ALABAMA**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines, or confinement in prison, or any combination thereof.

**ARIZONA**: For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**ARKANSAS**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**CALIFORNIA**: For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**COLORADO**: It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance

company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**DELAWARE**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of Claim containing any false, incomplete or misleading information is guilty of a felony.

**INDIANA**: Any person who knowingly, and with intent to injure, defraud, or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**DISTRICT OF COLUMBIA**: WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**FLORIDA**: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**HAWAII**: For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

**IDAHO**: Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony.

**INDIANA**: Any person who knowingly, and with intent to defraud an insurer, files a statement of claim containing false, incomplete or misleading information commits a felony.

**KENTUCKY**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime..

**LOUISIANA**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**MAINE**: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purposes of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits

**MARYLAND**: Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**MINNESOTA**: A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime..

**NEW HAMPSHIRE**: Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud as provided in R.S.A. 638.20.

**NEW JERSEY**: Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**NEW MEXICO**: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY

BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

**NEW YORK**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**OHIO**: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**OKLAHOMA**: WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**OREGON**: Any person who makes an intentional misstatement, misrepresentation, omission or concealment that is material to the risk may be found guilty of insurance fraud by a court of law. The Insurer may deny claims on the basis of this application where the applicant makes a misstatement, misrepresentation, commission or concealment regarding a material matter that is relied upon by the insurer and the misinformation is either material to the risk or the misinformation was provided with an intent to knowingly defraud.

**PENNSYLVANIA**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**RHODE ISLAND**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**TENNESSEE**: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**VIRGINIA**: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**WASHINGTON**: It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

**WEST VIRGINIA**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

| SIGNATURE OF OWNER, PARTNER OR OFFICER OF APPLICANT | TITLE | DATE |
|---|---|---|
| *Ben White* | Owner | 06 / 01 / 2023 |
| PRINT NAME    Benjamin White | | |

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | White Cloud Adventures LLC renewal application |
| **File name** | Consent-To-...cuments.pdf and 1 other |
| **Document ID** | fefeadefa13923d327d316b52849576012d4d8d7 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

**05 / 16 / 2021**
E-SIGN DISCLOSURE ACCEPTED
17:51:57 UTC

Electronic record and signature disclosure accepted by Ben White (benwhiteskis@gmail.com)
IP: 73.63.105.192
GUID: 873dac3f88f4750ac479f74f7576e61de21f8fca

**05 / 16 / 2023**
SENT
17:12:06 UTC

Sent for signature to Benjamin White (benwhiteskis@gmail.com) from riskauditor@recreationrrg.com
IP: 71.192.15.62

**06 / 01 / 2023**
VIEWED
18:44:35 UTC

Viewed by Benjamin White (benwhiteskis@gmail.com)
IP: 73.228.83.213

**06 / 01 / 2023**
SIGNED
18:54:57 UTC

Signed by Benjamin White (benwhiteskis@gmail.com)
IP: 73.228.83.213

**06 / 01 / 2023**
COMPLETED
18:54:57 UTC

The document has been completed.

Powered by **Dropbox** Sign

# Exhibit B

**The USHPA Policy**



**RECREATION RISK RETENTION**
— GROUP — ™

27 MAIN ST., FIRST FLOOR
BURLINGTON, VT 05401
802-383-1541
memberservice@recreationrrg.com

## NOTICE

**This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.**

# Master Association Professional Liability Insurance

## POLICY DECLARATIONS CERTIFICATE (PAGE 1 of 2)

| | | | |
|---|---|---|---|
| **NAMED INSURED/MEMBER:** | United States Hang Gliding and Paragliding Association, Inc. | **POLICY NUMBER:** | MAPL00001002-R7 |
| **ADDRESS:** | PO Box 1330 | | |
| **CITY, STATE, ZIP:** | Colorado Springs, CO 80901 | **POLICY TYPE:** | Professional Liability |
| **BUSINESS FORM:** | Corporation | | |

| | | | | |
|---|---|---|---|---|
| **POLICY PERIOD:** | **From Effective Date:** | March 1, 2023 | **To Expiration Date:** | March 1, 2024 |
| ☐ **LAY UP PERIOD:** | **Lay Up Start Date:** | N/A | **Lay Up End Date:** | N/A |

*All dates are at 12:01 AM Standard Time at Named Insured's address shown above*

| | |
|---|---|
| **DESCRIPTION OF OPERATIONS TO WHICH THIS CERTIFICATE APPLIES:** | Non-Profit Free Flight Membership organization, supporting the mission of ensuring the future of free flight. All operations of the Named Insured to be in accordance with the representations made in the Named Insured's "application" for professional liability of certified instructors, and appointed administrators, observers, examiners, TECHS and mentors. |

| | | |
|---|---|---|
| **Net Advance Premium*:** | REDACTED | ***This Premium Is Subject to Audit and Adjustment** |
| **Terrorism Premium:** | DECLINED | |
| **State Taxes:** | REDACTED | |
| **Total Cover Charge:** | REDACTED | |

| | |
|---|---|
| **Description of Coverage:** | Non-Profit Free Flight Membership Organization Professional Liability |

| Coverage | LIMITS OF LIABILITY | | Self-Insured Retention |
|---|---|---|---|
| | **LIMIT TYPE** | **LIMIT AMOUNT** | |
| All Coverages: | General Aggregate: (Applicable cumulatively to all insureds and all Occurrences) | **$1,000,000** | |
| | Each Occurrence Aggregate: (Applicable cumulatively to all insureds) | **$500,000** | |
| Coverage A : | Professional Liability For "Recreational Professionals" Occurrence: | **$500,000** | $5,000 Per Occurrence |
| Coverage B: | Professional Liability For "For Hire Professionals" Occurrence: | **$250,000** | $250,000 Per Occurrence |
| Coverage C: | Association Professional Liability Occurrence: | **$500,000** | $5,000 Per Occurrence |

Defense Costs and Fees and Supplementary Payments are included within the Limits of Liability - The payment of Defense Costs and Fees and the payment of Supplementary Payments reduces the amount of the Limits of Liability available to pay damages.

Schedule of Policy Forms and Endorsements:

| | |
|---|---|
| RRRG 8200 (0223008) | Master Association Professional Liability Insurance |
| RRRG 8201 (0223008) | Declarations |
| RRRG 8205 (0919001) | Excluded Individuals Endorsement |
| RRRG 8206 (0223003) | Excluded Locations Endorsement |
| RRRG 9001 (0223002) | Exclusion – Asbestos, Lead or Silica |
| RRRG 9002 (0223002 | Exclusion - Biological Or Chemical Materials |
| RRRG 9003 (0223002) | Exclusion - Terrorism |
| RRRG 9010 (0223002) | Policy Change Cancellation Endorsement |
| RRRG 9020 (0223002) | Exclusion and Limitation - Exposure to Sanctions |
| RRRG 9025 (0223002) | Exclusion - Nuclear Incident Liability |
| RRRG 9026 (0223002) | Exclusion - Communicable Disease |
| RRRG 9101 (0223002) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Notice to Policyholders |
| RRRG 9102 (0223003) | U.S. Terrorism Risk Insurance Act of 2002 As Amended Not Purchased Clause |

AS A CONDITION OF COVERAGE, ALL OPERATIONS MUST ADHERE TO THE MINIMUM ELIGIBILITY REQUIREMENTS APPLICABLE TO THE INSURED

THIS INSURANCE POLICY DOES NOT AUTOMATICALLY RENEW

Issue Date: May 5, 2023

Authorized Representative:



**NOTICE**

**This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.**

# Master Association Professional Liability Insurance

The terms of this Master Association Professional Liability Insurance policy ("**This Insurance Policy**") are specially negotiated and crafted terms assembled by **Recreation Risk Retention Group, Inc.** ("**Your risk retention group**") to serve the unique insurance needs of its members involved in the sports of "**hang gliding**" and "**paragliding**". This kind of insurance policy is commonly known as a manuscript policy. Many of its terms are different from the standard insurance form terms found in most professional liability insurance policies offered by other insurance companies in order to allow targeted coverage of the risks involved in the sports of "**hang gliding**" and "**paragliding**" and to allow for the coverage of the operations of the United States Hang Gliding and Paragliding Association, Inc. (the "**First Named Insured**" also referred to as "**USHPA**") and certain of the "**First Named Insured's**" Appointed Administrators, Appointed Examiners, Appointed Observers, Appointed Mentors, Certified TECHS, and Certified Instructors as additional insureds under "**This Insurance Policy**".

The terms of "**This Insurance Policy**" are contractual and not mere recitals. The "**application**", requests for adding of additional insured(s), together with all documentation submitted in support of those "**applications**" and requests, are a part of "**This Insurance Policy**" and serve as a warranty to "**Your risk retention group**" that the factual representations made in those forms and documentation are true and correct, and that the "**First Named Insured's**" operations and the operations of those added as additional insureds are as stated in those "**applications**", requests and documentation.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished by the "**First Named Insured**" and all additional insureds to "**Your risk retention group**", including all statements and representations made in the "**application**" form(s), additional insured request form(s), and their attachments and material incorporated therein and made a part thereof, "**Your risk retention group**" agrees as follows:

Throughout "**This Insurance Policy**" the words "**You**" and "**Your**" refer ONLY to the "**First Named Insured**" shown in the "**Declarations**". The words "**We**", "**Us**", "**Our**", "**Company**", "**Underwriters**" and "**Your risk retention group**" refer to **Recreation Risk Retention Group, Inc.**, the company providing "**This Insurance Policy**". The word "**Insured**" means any person or organization qualifying as such under **Section V – Who is An Insured**. The phrase "**any Insured**" means any person or entity who qualifies as an "**Insured**" under at least one of the **Coverage(s)** of "**This Insurance Policy**", even if the person or entity does not qualify as an "**Insured**" under the Coverage Part where the phrase appears.

Other words and phrases that appear in bold and/or quotation marks have special meaning which "**You**" can look up in **Section II – Definitions**.

The coverage provided by "**This Insurance Policy**" to non-excluded and qualifying **USHPA Certified Instructors, USHPA Appointed Mentors, USHPA Appointed Observers, USHPA Appointed Examiners, USHPA Certified TECHs, and USHPA Appointed Administrators** that are "**USHPA Ultralight Vehicle Professional**" "**Insureds**" under "**This Insurance Policy**" varies depending upon whether the "**USHPA Ultralight Vehicle Professional**" "**Insured**" is a "**Recreational Professional**" or a "**For Hire Professional**" as those terms are defined in **Section II – Definitions.**

The "**Self-Insured Retention**" for "**Individual Insureds**" who are "**Recreational Professionals**" is different than the applicable "**Self-insured Retention**" for "**Individual Insureds**" who are "**For Hire Professionals**".

NO COVERAGE IS AFFORDED UNDER "**THIS INSURANCE POLICY**" TO ANY "**USHPA ULTRALIGHT VEHICLE PROFESSIONAL**" WHO IS A "**FOR HIRE PROFESSIONAL**" UNLESS AT THE TIME OF THE ACTIVITY GIVING RISE TO THE CLAIM THE "**USHPA ULTRALIGHT VEHICLE PROFESSIONAL**" IS AN "**EMPLOYEE**", "**TEMPORARY WORKER**", "**VOLUNTEER WORKER**", OR "**AGENT**" OF A "**PASA CERTIFIED FLIGHT SCHOOL**" AND IS PARTICIPATING AS DESIGNATED AND AUTHORIZED BY THE "**PASA CERTIFIED FLIGHT SCHOOL**" IN PROVIDING A PARTICULAR PRE-DEFINED COURSE OF INSTRUCTION, MENTORING, OBSERVATION, EXAMINATION, TECH, OR ADMINISTRATION IN THE SPORT OF "**HANG GLIDING**" AND/OR "**PARAGLIDING**" TO A CUSTOMER OF THAT "**PASA CERTIFIED FLIGHT SCHOOL**".

NO COVERAGE IS AFFORDED UNDER "**THIS INSURANCE POLICY**" TO ANY "**USHPA ULTRALIGHT VEHICLE PROFESSIONAL**" WHO IS AN "**EXCLUDED INDIVIDUAL**" AS THAT TERM IS DEFINED IN SECTION II - DEFINITIONS.

The coverage provided by "**This Insurance Policy**" is strictly limited to those activities and operations taking place at those locations, in compliance with the operating limitations, and using that equipment specifically listed and scheduled in the "**Declarations**" and in "**endorsements**" to "**This Insurance Policy**". There are a number of different

provisions in "**This Insurance Policy**" that limit and restrict coverage.  "**You**" and each "**Insured**" should read the entire insurance policy, including the "**Declarations**" and all "**endorsements**" carefully to understand what is and is not covered and to understand each "**Insureds'**" rights and obligations.

The "**Net Advance Premium**" for this policy, as set forth in the "**Declarations**" is 100% earned and is not subject to a refund, short-rate or pro-rata adjustment.

"**This Insurance Policy**" has a "**self-insured retention**" as set forth in the "**Declarations**".  The amount of the "**self-insured retention**" is not the same for all coverages.  "**Your risk retention group**'s" obligation to cover any "**claims**" or "**suits**" is conditioned on "**You**" and any other "**Insured(s)**" involved in the "**occurrence**" giving rise to the "**claim**" or "**suit**" first paying the applicable "**self-insured retention**" set forth in the "**Declarations**".  While "**You**" may agree with any "**Insured**" as to your respective obligations to each other for the sharing of that "**self-insured retention**", "**We**" have no obligation to cover any "**claims**" or "**suits**" unless and until that "**self-insured retention**" has first been paid.

Any payment of "**defense costs**", SUPPLEMENTARY PAYMENTS and/or "damages" by "**Your risk retention group**" counts towards the limits of liability stated in the "**Declarations**" and reduces the amount of those limits available for the payment of any "**claim**" against "**You**" and any other "**Insureds**".

## SECTION I - INSURING AGREEMENTS

1.   **COVERAGE A - PROFESSIONAL LIABILITY FOR "RECREATIONAL PROFESSIONALS"**

   a.   "**We**" will pay those sums in excess of any applicable "**self-insured retention**" that the "**USHPA Ultralight Vehicle Professional**" "**Insured**" becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to which this insurance applies.

   b.   "**We**" will have the right and duty to defend the "**USHPA Ultralight Vehicle Professional**" "**Insured**" against any "**suit**" seeking "**damages**" because of "**bodily injury**" or "**property damage**" to which this insurance applies.  However, "**We**" will have no duty to defend the "**USHPA Ultralight Vehicle Professional**" "**Insured**" against any "**suit**" seeking "**damages**" for "**bodily injury**" or "**property damage**" to which this insurance does not apply.  "**We**" may, at "**Our**" discretion, investigate any "**occurrence**" and settle any "**claim**" or "**suit**" that may result.  "**We**" have the right, but not the duty, to settle any covered "**claim**" or "**suit**" where the proposed settlement amount to be paid as "**damages**" does not exceed the applicable limits as described in **Section IV – Limits Of Insurance**.  Any such settlement will be binding on the "**Insured**" and will not require the "**Insured's**" consent or ratification.  But:

      (1)   The amount "**We**" pay for "**defense costs**", SUPPLEMENTARY PAYMENTS and/or "**damages**" is limited as describe in **Section IV – Limits Of Insurance**; and

      (2)   "**Our**" right and duty to defend end when:

         (i)   "**We**" have used up the applicable limit of insurance in the payment of "**defense costs**", SUPPLEMENTARY PAYMENTS, judgments and/or settlements under **Coverage A, B or C**; or

         (ii)   "**We**" discover that "**First Named Insured's**" "**application**" form(s), and documentation submitted by the "**First Named Insured**" to obtain this insurance contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements.  It does not matter whether the misrepresentation originated from the "**First Named Insured**", the "**First Named Insured's**" broker, the "**First Named Insured's**" agent, or any other "**Insured**".  It further does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

         (iii)   "**We**" discover that the request (including any documentation submitted in support of that request) for adding the "**USHPA Ultralight Vehicle Professional**" "**Insured**" against whom the "**damages**" are sought as an "**Insured**" contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements.  It does not matter whether the misrepresentation originated from the "**USHPA Ultralight Vehicle Professional**" "**Insured**" , the "**First Named Insured**", any "**Insured's**" broker, any "**Insured's**" agent, or any other "**Insured**".  It further does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

         (iv)   The "**USHPA Ultralight Vehicle Professional**" "**Insured**"  fails or refuses to fulfill the "**USHPA Ultralight Vehicle Professional**" "**Insured's**"  obligation under any applicable "**self-insured retention**" in a timely manner; or

         (v)   "**You**" or any other "**Insured**" violate some other condition of coverage that is set out in

**This Insurance Policy :**

**"We"** have the exclusive right to designate and appoint legal counsel to represent the **"Insureds"** and to control the defense.

**c.**   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION I - INSURING AGREEMENTS, SUPPLEMENTARY PAYMENTS - COVERAGES A, B and C.**

**d.**   This insurance under **Coverage A** applies to **"bodily injury"** and **"property damage"** only if:

**(1)**   The **"bodily injury"** or **"property damage"** is caused by a **"Hang Gliding and/or Paragliding Professional Incident"** that takes place in the **"coverage territory"**; and

**(2)**   The **"bodily injury"** or **"property damage"** occurs during the **"policy period"**; and

**(3)**   The **"bodily injury"** or **"property damage"** **"arises out of"** the **"USHPA Ultralight Vehicle Professional" "Insured's"**   performance of his or her **"USHPA Authorized Activities"** as a **"USHPA Certified Instructor"**, **"USHPA Appointed Mentor"**, **"USHPA Appointed Observer"**, **"USHPA Appointed Examiner"**, **"USHPA Certified TECH",** or **"USHPA Appointed Administrator";** and

**(4)**   The **"bodily injury"** or **"property damage"** is to a **"USHPA Member"** who is:

**(i)**   a **"Student"**, under active and direct instruction of the **"USHPA Ultralight Vehicle Professional" "Insured"** who is performing as a **"USHPA Certified Instructor", but only where:**

(a)   the **"USHPA Ultralight Vehicle Professional" "Insured"** is present at the time of the **"occurrence"**;

(b)   the **"USHPA Authorized Activity"** being conducted by the **"USHPA Ultralight Vehicle Professional" "Insured"** at the time of the **"occurrence"** is the instruction by the **"USHPA Ultralight Vehicle Professional" "Insured"** in the art of **"Hang Gliding"** and/or **"Paragliding"**; and

(c)   the **"bodily injury"** or **"property damage"** **"arises out of"** the instruction by the **"USHPA Ultralight Vehicle Professional" "Insured"** in the art of **"Hang Gliding"** and/or **"Paragliding";** or

**(ii)**   under the active and direct mentoring of the **"USHPA Ultralight Vehicle Professional" "Insured"** who is performing as a **"USHPA Appointed Mentor"**, but only where:

(a)   the **"USHPA Ultralight Vehicle Professional" "Insured"** is present at the time of the **"occurrence"**;

(b)   the **"USHPA Authorized Activity"** being conducted by the **"USHPA Ultralight Vehicle Professional" "Insured"** at the time of the **"occurrence"** is the performance by the **"USHPA Ultralight Vehicle Professional" "Insured"** of the duties of a Mentor as those duties are defined in **"USHPA Standard Operating Procedures"**; and

(c)   the **"bodily injury"** or **"property damage"** **"arises out of"** the performance by the **"USHPA Ultralight Vehicle Professional" "Insured"** of the duties of a Mentor as those duties are defined in **"USHPA Standard Operating Procedures";** or

**(iii)**   under the active and direct observation of the **"USHPA Ultralight Vehicle Professional" "Insured"** who is performing as a **"USHPA Appointed Observer"**, but only where:

**(a)**   the **""USHPA Ultralight Vehicle Professional" "Insured"** is present at the time of the **"occurrence"**;

(b)   the **"USHPA Authorized Activity"** being conducted by the **"USHPA Ultralight Vehicle Professional" "Insured"** at the time of the **"occurrence"** is the performance by the **"USHPA Ultralight Vehicle Professional" "Insured"** of the duties of an Observer as those duties are defined in **"USHPA Standard Operating Procedures"**; and

(c)   the **"bodily injury"** or **"property damage"** **"arises out of"** the performance by the **"USHPA Ultralight Vehicle Professional" "Insured"** of the duties of an Observer as those duties are defined in **"USHPA Standard Operating Procedures";** or

**(iv)**   under the active and direct examination by the **"USHPA Ultralight Vehicle**

**Professional**" "**Insured**" who is performing as a "**USHPA Appointed Examiner**", but only where:

    **(a)**   the "**USHPA Ultralight Vehicle Professional**" "**Insured**" is present at the time of the "**occurrence**";

    (b)   the "**USHPA Authorized Activity**" being conducted by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" at the time of the "**occurrence**" is the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Examiner as those duties are defined in "**USHPA Standard Operating Procedures**"; and

    (c)   the "**bodily injury**" or "**property damage**" "**arises out of**" the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Examiner as those duties are defined in "**USHPA Standard Operating Procedures**"; or

**(v)**   at the time of the "**occurrence**", being tow launched utilizing a tow system operated by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" who is performing as a "**USHPA Certified TECH**", but only where:

    (a)   the "**USHPA Ultralight Vehicle Professional**" "**Insured**" is present at the time of the "**occurrence**";

    (b)   the "**USHPA Authorized Activity**" being conducted by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" at the time of the "**occurrence**" is the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of a TECH as those duties are defined in "**USHPA Standard Operating Procedures**"; and

    (c)   the "**bodily injury**" or "**property damage**" "**arises out of**" the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of a TECH as those duties are defined in "**USHPA Standard Operating Procedures**"; or

**(vi)**  at the time of the "**occurrence**", being instructed by, apprenticing with, or being evaluated by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" who is performing as a "**USHPA Appointed Administrator**", but only where:

    (a)   the "**USHPA Ultralight Vehicle Professional**" "**Insured**" is present at the time of the "**occurrence**";

    (b)   the "**USHPA Authorized Activity**" being conducted by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" at the time of the "**occurrence**" is the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Administrator as those duties are defined in "**USHPA Standard Operating Procedures**"; and

    (c)   the "**bodily injury**" or "**property damage**" "**arises out of**" the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Administrator as those duties are defined in "**USHPA Standard Operating Procedures**"; and

**(5)**   The "**USHPA Ultralight Vehicle Professional**" "**Insured**" is a "**Recreational Professional**"; and

**(6)**   In the case of "**bodily injury**", prior to the time of the "**occurrence**", the injured "**USHPA Member**" had signed (or, in the cases where the "**USHPA Member**" is under the age of 18 years, the "**USHPA Member's**" parent or legal guardian had signed) the form of pre-injury release, waiver and assumption of risk approved by "**Your risk retention group**" for use by the "**First Named Insured**" in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

**(7)**   In the case of "**property damage**", prior to the time of the "**occurrence**", the owner and the person in possession of the damaged property had both signed (or, in cases where either of them is under the age of 18 years, the "**minor's**" parent or legal guardian had signed) the form of pre-injury release, waiver and assumption of risk approved by "**Your risk retention group**" for use by the "**First Named Insured**" in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

**(8)**   Prior to the "**policy period**", no "**Insured**" listed under Paragraph 1. of **Section V - Who Is An Insured** and no "**employee**" authorized by "**You**" to give or receive notice of an "**occurrence**" or "**claim**", knew that the "**bodily injury**" or "**property damage**" had occurred, in whole or in part.

if such a listed "**insured**" or authorized "**employee**" knew, prior to the "**policy period**", that the "**bodily injury**" or "**property damage**" occurred, then any continuation, change or resumption of such "**bodily injury**" or "**property damage**" during or after the "**policy period**" will be deemed to have been known prior to the "**policy period**"; and

**(9)** The "**bodily injury**" or "**property damage**" "**arises out of**" the "**covered activities**" of the "**USHPA Ultralight Vehicle Professional**" "**Insured**" ; and

**(10)** Any applicable "**self-insured retention**" has been timely paid.

**e.** "**Bodily injury**" or "**property damage**" which occurs during the "**policy period**" and was not, prior to the "**policy period**", known to have occurred by any "**Insured**" listed under Paragraph 1 of **Section V - Who Is An "Insured"** or any "**employee**" authorized by "**You**" or any "**USHPA Ultralight Vehicle Professional**" "**Insured**" to give or receive notice of an "**occurrence**" or "**claim**", includes any continuation, change or resumption of that "**bodily injury**" or "**property damage**" after the end of the "**policy period**".

**f.** "**Bodily injury**" or "**property damage**" will be deemed to have been known to have occurred at the earliest time when any "**Insured**" listed under Paragraph 1. of **Section V - Who Is An Insured** or any "**employee**" authorized by "**You**" or any "**USHPA Ultralight Vehicle Professional**" "**Insured**" to give or receive notice of an "**occurrence**" or "**claim**":

**(1)** Reports all, or any part, of the "**bodily injury**" or "**property damage**" to "**Us**" or any other insurer;

**(2)** Receives a written or verbal demand or "**claim**" for "**damages**" because of the "**bodily injury**" or "**property damage**"; or

**(3)** Becomes aware by any other means that "**bodily injury**" or "**property damage**" has occurred or has begun to occur.

**g.** "**Damages**" because of "**bodily injury**" include "**damages**" claimed by any person or organization for care, loss of services or death resulting at any time from the "**bodily injury**".

**2.** **COVERAGE B - PROFESSIONAL LIABILITY FOR "FOR HIRE PROFESSIONALS"**

**a.** "**We**" will pay those sums in excess of any applicable "**self-insured retention**" that the "**USHPA Ultralight Vehicle Professional**" "**Insured**" becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to which this insurance applies.

**b.** "**We**" will have the right and duty to defend the "**USHPA Ultralight Vehicle Professional**" "**Insured**" against any "**suit**" seeking "**damages**" because of "**bodily injury**" or "**property damage**" to which this insurance applies. However, "**We**" will have no duty to defend the "**USHPA Ultralight Vehicle Professional**" "**Insured**" against any "**suit**" seeking "**damages**" for "**bodily injury**" or "**property damage**" to which this insurance does not apply. "**We**" may, at "**Our**" discretion, investigate any "**occurrence**" and settle any "**claim**" or "**suit**" that may result. "**We**" have the right, but not the duty, to settle any covered "**claim**" or "**suit**" where the proposed settlement amount to be paid as "**damages**" does not exceed the applicable limits as described in **Section IV - Limits Of Insurance**. Any such settlement will be binding on the "**Insured**" and will not require the "**Insured's**" consent or ratification. But:

**(1)** The amount "**We**" pay for "**defense costs**", **SUPPLEMENTARY PAYMENTS**, and/or "**damages**" is limited as describe in **Section IV - Limits Of Insurance**; and

**(2)** "**Our**" right and duty to defend end when:

**(i)** "**We**" have used up the applicable limit of insurance in the payment of "**defense costs**", **SUPPLEMENTARY PAYMENTS**, judgments and/or settlements under **Coverage A, B or C**; or

**(ii)** "**We**" discover that "**First Named Insured's**" "**application**" form(s), and documentation submitted by the "**First Named Insured**" to obtain this insurance contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements. It does not matter whether the misrepresentation originated from the "**First Named Insured**", the "**First Named Insured's**" broker, the "**First Named Insured's**" agent, or any other "**Insured**". It further does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

**(iii)** "**We**" discover that the request (including any documentation submitted in support of that request) for adding the "**USHPA Ultralight Vehicle Professional**" "**Insured**" against whom the "**damages**" are sought as an "**Insured**" contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements. It does not matter whether the misrepresentation originated from the "**USHPA Ultralight Vehicle**

**Professional**" "**Insured**", the "**First Named Insured**", any "**Insured's**" broker, any "**Insured's**" agent, or any other "**Insured**".  It further does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

**(iv)** The "**USHPA Ultralight Vehicle Professional**" "**Insured**" fails or refuses to fulfill the "**USHPA Ultralight Vehicle Professional**" "**Insured's**" obligation under any applicable "**self-insured retention**" in a timely manner; or

**(v)** "**You**" or any other "**Insured**" violate some other condition of coverage that is set out in "**This Insurance Policy**".

"**We**" have the exclusive right to designate and appoint legal counsel to represent the "**Insureds**" and to control the defense.

**c.**    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION I – INSURING AGREEMENTS, SUPPLEMENTARY PAYMENTS – COVERAGES A, B and C.**

**d.**    This insurance under **Coverage B** applies to "**bodily injury**" and "**property damage**" only if:

**(1)** The "**bodily injury**" or "**property damage**" is caused by a "**Hang Gliding and/or Paragliding Professional Incident**" that takes place in the "**coverage territory**"; and

**(2)** The "**bodily injury**" or "**property damage**" occurs during the "**policy period**"; and

**(3)** The "**bodily injury**" or "**property damage**" "**arises out of**" the "**USHPA Ultralight Vehicle Professional**" "**Insured's**" performance of his or her "**USHPA Authorized Activities**" as a "**USHPA Certified Instructor**", "**USHPA Appointed Mentor**", "**USHPA Appointed Observer**", "**USHPA Appointed Examiner**", "**USHPA Certified TECH**", or "**USHPA Appointed Administrator**"; and

**(4)** At the time of the "**bodily injury**" or "**property damage**", the "**USHPA Ultralight Vehicle Professional**" "**Insured's**" is an "**employee**", "**temporary worker**", "**leased worker**", "**volunteer worker**", or other agent, of a "**PASA Certified Flight School**", and is participating as designated and authorized by that "**PASA Certified Flight School**" in providing a particular pre-defined course of instruction, mentoring, observation, examination, TECH towing, or administration in the sport of "**hang gliding**" and/or "**paragliding**" to a customer of that "**PASA Certified Flight School**"; and

**(5)** The "**bodily injury**" or "**property damage**" is to a "**USHPA Member**" who is:

**(i)** a "**Student**", under active and direct instruction of the "**USHPA Ultralight Vehicle Professional**" "**Insured**" who is performing as a "**USHPA Certified Instructor**"**, but only where:**

**(a)** the "**USHPA Ultralight Vehicle Professional**" "**Insured**" is present at the time of the "**occurrence**";

**(b)** the "**USHPA Authorized Activity**" being conducted by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" at the time of the "**occurrence**" is the instruction by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" in the art of "**Hang Gliding**" and/or "**Paragliding**"; and

**(c)** the "**bodily injury**" or "**property damage**" "**arises out of**" the instruction by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" in the art of "**Hang Gliding**" and/or "**Paragliding**"; or

**(ii)** under the active and direct mentoring of the "**USHPA Ultralight Vehicle Professional**" "**Insured**" who is performing as a "**USHPA Appointed Mentor**", but only where:

**(a)** the "**USHPA Ultralight Vehicle Professional**" "**Insured**" is present at the time of the "**occurrence**";

**(b)** the "**USHPA Authorized Activity**" being conducted by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" at the time of the "**occurrence**" is the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of a Mentor as those duties are defined in "**USHPA Standard Operating Procedures**"; and

**(c)** the "**bodily injury**" or "**property damage**" "**arises out of**" the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of a Mentor as those duties are defined in "**USHPA Standard Operating Procedures**"; or

**(iii)** under the active and direct observation of the "**USHPA Ultralight Vehicle Professional**"

"**Insured**" who is performing as a "**USHPA Appointed Observer**", but only where:

    (a)    the ""**USHPA Ultralight Vehicle Professional**" "**Insured**" is present at the time of the "**occurrence**";

    (b)    the "**USHPA Authorized Activity**" being conducted by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" at the time of the "**occurrence**" is the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Observer as those duties are defined in "**USHPA Standard Operating Procedures**"; and

    (c)    the "**bodily injury**" or "**property damage**" "**arises out of**" the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Observer as those duties are defined in "**USHPA Standard Operating Procedures**"; or

**(iv)**    under the active and direct examination by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" who is performing as a "**USHPA Appointed Examiner**", but only where:

    **(a)**    the "**USHPA Ultralight Vehicle Professional**" "**Insured**" is present at the time of the "**occurrence**";

    **(b)**    the "**USHPA Authorized Activity**" being conducted by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" at the time of the "**occurrence**" is the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Examiner as those duties are defined in "**USHPA Standard Operating Procedures**"; and

    **(c)**    the "**bodily injury**" or "**property damage**" "**arises out of**" the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Examiner as those duties are defined in "**USHPA Standard Operating Procedures**"; or

**(v)**    at the time of the "**occurrence**", being tow launched utilizing a tow system operated by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" who is performing as a "**USHPA Certified TECH**", but only where:

    (a)    the "**USHPA Ultralight Vehicle Professional**" "**Insured**" is present at the time of the "**occurrence**";

    (b)    the "**USHPA Authorized Activity**" being conducted by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" at the time of the "**occurrence**" is the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of a TECH as those duties are defined in "**USHPA Standard Operating Procedures**"; and

    (c)    the "**bodily injury**" or "**property damage**" "**arises out of**" the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of a TECH as those duties are defined in "**USHPA Standard Operating Procedures**"; or

**(vi)**    at the time of the "**occurrence**", being instructed by, apprenticing with, or being evaluated by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" who is performing as a "**USHPA Appointed Administrator**", but only where:

    (a)    the "**USHPA Ultralight Vehicle Professional**" "**Insured**" is present at the time of the "**occurrence**";

    (b)    the "**USHPA Authorized Activity**" being conducted by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" at the time of the "**occurrence**" is the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Administrator as those duties are defined in "**USHPA Standard Operating Procedures**"; and

    (c)    the "**bodily injury**" or "**property damage**" "**arises out of**" the performance by the "**USHPA Ultralight Vehicle Professional**" "**Insured**" of the duties of an Administrator as those duties are defined in "**USHPA Standard Operating Procedures**"; and

**(6)**    The "**USHPA Ultralight Vehicle Professional**" "**Insured**" is a "**For Hire Professional**"; and

**(7)**    In the case of "**bodily injury**", prior to the time of the "**occurrence**", the injured "**USHPA Member**" had signed (or, in the cases where the "**USHPA Member**" is under the age of 18 years,

the "**USHPA Member**'s" parent or legal guardian had signed) the form of pre-injury release, waiver and assumption of risk approved by "**Your risk retention group**" for use by the "**First Named Insured**" in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

(8) In the case of "**property damage**", prior to the time of the "**occurrence**", the owner and the person in possession of the damaged property had both signed (or, in cases where either of them is under the age of 18 years, the "**minor's**" parent or legal guardian had signed) the form of pre-injury release, waiver and assumption of risk approved by "**Your risk retention group**" for use by the "**First Named Insured**" in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

(9) Prior to the "**policy period**", no "**Insured**" listed under Paragraph 2. of **Section V - Who Is An Insured** and no "**employee**" authorized by "**You**" to give or receive notice of an "**occurrence**" or "**claim**", knew that the "**bodily injury**" or "**property damage**" had occurred, in whole or in part. If such a listed "**Insured**" or authorized "**employee**" knew, prior to the "**policy period**", that the "**bodily injury**" or "**property damage**" occurred, then any continuation, change or resumption of such "**bodily injury**" or "**property damage**" during or after the "**policy period**" will be deemed to have been known prior to the "**policy period**"; and

(10) The "**bodily injury**" or "**property damage**" "**arises out of**" the "**covered activities**" of the "**USHPA Ultralight Vehicle Professional**" "**Insured**"; and

(11) Any applicable "**self-insured retention**" has been timely paid.

e.  "**Bodily injury**" or "**property damage**" which occurs during the "**policy period**" and was not, prior to the "**policy period**", known to have occurred by any "**Insured**" listed under Paragraph 2 of **Section V - Who Is An "Insured**" or any "**employee**" authorized by "**You**" or any "**USHPA Ultralight Vehicle Professional**" "**Insured**" to give or receive notice of an "**occurrence**" or "**claim**", includes any continuation, change or resumption of that "**bodily injury**" or "**property damage**" after the end of the "**policy period**".

f.  "**Bodily injury**" or "**property damage**" will be deemed to have been known to have occurred at the earliest time when any "**Insured**" listed under Paragraph 2. of **Section V - Who Is An Insured** or any "**employee**" authorized by "**You**" or any "**USHPA Ultralight Vehicle Professional**" "**Insured**" to give or receive notice of an "**occurrence**" or "**claim**":

(1) Reports all, or any part, of the "**bodily injury**" or "**property damage**" to "**Us**" or any other insurer;

(2) Receives a written or verbal demand or "**claim**" for "**damages**" because of the "**bodily injury**" or "**property damage**"; or

(3) Becomes aware by any other means that "**bodily injury**" or "**property damage**" has occurred or has begun to occur.

g.  "**Damages**" because of "**bodily injury**" include "**damages**" claimed by any person or organization for care, loss of services or death resulting at any time from the "**bodily injury**".

**3.  COVERAGE C - ASSOCIATION PROFESSIONAL LIABILITY**

a.  "**We**" will pay those sums in excess of any applicable "**self-insured retention**" that the "**First Named Insured**" becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to which this insurance applies.

b.  "**We**" will have the right and duty to defend the "**First Named Insured**" against any "**suit**" seeking "**damages**" because of "**bodily injury**" or "**property damage**" to which this insurance applies. However, "**We**" will have no duty to defend the "**First Named Insured**" against any "**suit**" seeking "**damages**" for "**bodily injury**" or "**property damage**" to which this insurance does not apply. "**We**" may, at "**Our**" discretion, investigate any "**occurrence**" and settle any "**claim**" or "**suit**" that may result. "**We**" have the right, but not the duty, to settle any covered "**claim**" or "**suit**" where the proposed settlement amount to be paid as "**damages**" does not exceed the applicable limits as described in **Section IV - Limits Of Insurance**. Any such settlement will be binding on the "**Insured**" and will not require the "**Insured's**" consent or ratification. But:

(1) The amount "**We**" pay for "**defense costs**", **SUPPLEMENTARY PAYMENTS**, and/or "**damages**" is limited as describe in **Section IV – Limits Of Insurance**; and

(2) "**Our**" right and duty to defend end when:

(i) "**We**" have used up the applicable limit of insurance in the payment of "**defense costs**",

SUPPLEMENTARY PAYMENTS, judgments and/or settlements under "**Coverage**" **A, B or C**; or

**(ii)** "**We**" discover that "**First Named Insured's**" "**application**" form(s), and documentation submitted by the "**First Named Insured**" to obtain this insurance contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements.  It does not matter whether the misrepresentation originated from the "**First Named Insured**", the "**First Named Insured's**" broker, the "**First Named Insured's**" agent, or any other "**Insured**".  It further does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

**(iii)** "**We**" discover that the request (including any documentation submitted in support of that request) for adding the "**USHPA Ultralight Vehicle Professional**" "**Insured**", for whose acts or omissions the "**First Named Insured**" is legally responsible, contains material misrepresentations, mistakes, omissions, inaccuracies, errors of fact, or false statements.  It does not matter whether the misrepresentation originated from such "**USHPA Ultralight Vehicle Professional**" "**Insured**", the "**First Named Insured**", any "**Insured's**" broker, any "**Insured's**" agent, or any other "**Insured**".  It further does not matter whether the misrepresentation was a result of an error of omission, an error of commission, a mistake, negligence, fraud or criminal conduct; or

**(iv)** The "**First Named Insured**" fails or refuses to fulfill the "**First Named Insured's**" obligation under any applicable "**self-insured retention**" in a timely manner; or

**(v)** "**You**" or any other "**Insured**" violate some other condition of coverage that is set out in "**This Insurance Policy**".

"**We**" have the exclusive right to designate and appoint legal counsel to represent the "**Insureds**" and to control the defense.

**c.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION I – INSURING AGREEMENTS, SUPPLEMENTARY PAYMENTS – COVERAGES A, B and C.**

**d.** This insurance under **Coverage C** applies to "**bodily injury**" and "**property damage**" only if:

**(1)** The "**bodily injury**" or "**property damage**" is caused by a "**Hang Gliding and/or Paragliding Professional Incident**" that takes place in the "**coverage territory**";

**(2)** The "**bodily injury**" or "**property damage**" occurs during the "**policy period**";

**(3)** The "**bodily injury**" or "**property damage**" "**arises out of**" a "**USHPA Ultralight Vehicle Professional**" "**Insured's**" performance of his or her "**USHPA Authorized Activities**" as a "**USHPA Certified Instructor**", "**USHPA Appointed Mentor**", "**USHPA Appointed Observer**", "**USHPA Appointed Examiner**", "**USHPA Certified TECH**", or "**USHPA Appointed Administrator**";

**(4)** The "**bodily injury**" or "**property damage**" is to a "**USHPA Member**" who is:

**(i)** under active and direct instruction of a "**USHPA Certified Instructor**" as a "**Student**" of the "**USHPA Certified Instructor**", but only where:

**(a)** the "**USHPA Certified Instructor**" is **present** at the time of the "**occurrence**";

**(b)** the "**USHPA Authorized Activity**" being conducted at the time of the "**occurrence**" is the instruction by the "**USHPA Certified Instructor**" in the art of "**Hang Gliding**" and/or "**Paragliding**"; and

**(c)** the "**bodily injury**" or "**property damage**" "**arises out of**" the instruction by the "**USHPA Certified Instructor**" in the art of "**Hang Gliding**" and/or "**Paragliding**"; or

**(ii)** under the active and direct mentoring of a "**USHPA Appointed Mentor**", but only where:

**(a)** the "**USHPA Appointed Mentor**" is present at the time of the "**occurrence**";

**(b)** the "**USHPA Authorized Activity**" being conducted at the time of the "**occurrence**" is the performance of the duties of a Mentor as those duties are defined in "**USHPA Standard Operating Procedures**"; and

**(c)** the "**bodily injury**" or "**property damage**" "**arises out of**" the performance of the duties of a Mentor as those duties are defined in "**USHPA Standard Operating Procedures**"; or

(iii) under the active and direct observation of a **"USHPA Appointed Observer"**, but only where:

    (a) the **"USHPA Appointed Observer"** is present at the time of the **"occurrence"**;

    (b) the **"USHPA Authorized Activity"** being conducted at the time of the **"occurrence"** is the performance of the duties of an Observer as those duties are defined in **"USHPA Standard Operating Procedures"**; and

    (c) the **"bodily injury"** or **"property damage"** **"arises out of"** the performance of the duties of an Observer as those duties are defined in **"USHPA Standard Operating Procedures"**; or

**(iv)** under the active and direct examination by a **"USHPA Appointed Examiner"**, but only where:

    (a) the **"USHPA Appointed Examiner"** is present at the time of the **"occurrence"**;

    (b) the **"USHPA Authorized Activity"** being conducted at the time of the **"occurrence"** is the performance of the duties of an Examiner as those duties are defined in **"USHPA Standard Operating Procedures"**; and

    (c) the **"bodily injury"** or **"property damage"** **"arises out of"** the performance of the duties of an Examiner as those duties are defined in **"USHPA Standard Operating Procedures"**; or

**(v)** at the time of the **"occurrence"**, being tow launched utilizing a tow system operated by a **"USHPA Certified TECH"**, but only where:

    (a) the **"USHPA Certified TECH"** is present at the time of the **"occurrence"**;

    (b) the **"USHPA Authorized Activity"** being conducted at the time of the **"occurrence"** is the performance of the duties of a TECH as those duties are defined in **"USHPA Standard Operating Procedures"**; and

    (c) the **"bodily injury"** or **"property damage"** **"arises out of"** the performance of the duties of a TECH as those duties are defined in **"USHPA Standard Operating Procedures"**; or

**(vi)** at the time of the **"occurrence"**, being instructed by, apprenticing with, or being evaluated by a **"USHPA Appointed Administrator"**, but only where:

    (a) the **"USHPA Appointed Administrator"** is present at the time of the **"occurrence"**;

    (b) the **"USHPA Authorized Activity"** being conducted at the time of the **"occurrence"** is the performance of the duties of an Administrator as those duties are defined in **"USHPA Standard Operating Procedures"**; and

    (c) the **"bodily injury"** or **"property damage"** **"arises out of"** the performance of the duties of an Administrator as those duties are defined in **"USHPA Standard Operating Procedures"**;

**(5)** The **"bodily injury"** or **"property damage"** is caused by a **"USHPA Certified Instructor"**, **"USHPA Appointed Mentor"**, **"USHPA Appointed Observer"**, **"USHPA Appointed Examiner"**, **"USHPA Certified TECH"** or **"USHPA Appointed Administrator"**, for whose acts or omissions the **"First Named Insured"** is legally responsible;

**(6)** In the case of **"bodily injury"**, prior to the time of the **"occurrence"**, the injured **"USHPA Member"** had signed (or, in the cases where the **"USHPA Member"** is under the age of 18 years, the **"USHPA Member's"** parent or legal guardian had signed) the form of pre-injury release, waiver and assumption of risk approved by **"Your risk retention group"** for use by the **"First Named Insured"** in connection with the **"covered activities"** and the same was still in effect at the time of the **"occurrence"**;

**(7)** In the case of **"property damage"**, prior to the time of the **"occurrence"**, the owner and the person in possession of the damaged property had both signed (or, in cases where either of them is under the age of 18 years, the **"minor's"** parent or legal guardian had signed) the form of pre-injury release, waiver and assumption of risk approved by **"Your risk retention group"** for use by the **"First Named Insured"** in connection with the **"covered activities"** and the same was still in effect at the time of the **"occurrence"**;

**(8)** Prior to the **"policy period"**, no **"Insured"** listed under Paragraph 3. of **Section V - Who Is An Insured** and no **"employee"** authorized by **"You"** to give or receive notice of an **"occurrence"** or

"**claim**", knew that the "**bodily injury**" or "**property damage**" had occurred, in whole or in part. If such a listed "**Insured**" or authorized "**employee**" knew, prior to the "**policy period**", that the "**bodily injury**" or "**property damage**" occurred, then any continuation, change or resumption of such "**bodily injury**" or "**property damage**" during or after the "**policy period**" will be deemed to have been known prior to the "**policy period**";

   **(9)**   The "**bodily injury**" or "**property damage**" "**arises out of**" the "**covered activities**" of the "**Insured**"; and

   **(10)**  Any applicable "**self-insured retention**" has been timely paid.

**e.**   "**Bodily injury**" or "**property damage**" which occurs during the "**policy period**" and was not, prior to the "**policy period**", known to have occurred by any "**Insured**" listed under Paragraph 3 of **Section V - Who Is An "Insured**" or any "**employee**" authorized by "**You**" or any "**USHPA Ultralight Vehicle Professional**" "**Insured**" to give or receive notice of an "**occurrence**" or "**claim**", includes any continuation, change or resumption of that "**bodily injury**" or "**property damage**" after the end of the "**policy period**".

**f.**   "**Bodily injury**" or "**property damage**" will be deemed to have been known to have occurred at the earliest time when any "**Insured**" listed under Paragraph 3. of **Section V - Who Is An Insured** or any "**employee**" authorized by "**You**" or any "**USHPA Ultralight Vehicle Professional**" "**Insured**" to give or receive notice of an "**occurrence**" or "**claim**":

   **(1)**   Reports all, or any part, of the "**bodily injury**" or "**property damage**" to "**Us**" or any other insurer;

   **(2)**   Receives a written or verbal demand or "**claim**" for "**damages**" because of the "**bodily injury**" or "**property damage**"; or

   **(3)**   Becomes aware by any other means that "**bodily injury**" or "**property damage**" has occurred or has begun to occur.

**g.**   "**Damages**" because of "**bodily injury**" include "**damages**" claimed by any person or organization for care, loss of services or death resulting at any time from the "**bodily injury**".

## 4.   EXCLUSIONS

This insurance does not apply to, and "**We**" have no obligation to defend any "**Insured**" against or pay "**damages**" on behalf of any "**Insured**" under **Coverages A, B or C** for any of the following:

**a.**   **Expected Or Intended Injury**

"**Bodily injury**" or "**property damage**" expected or intended from the standpoint of the "**Insured**". This exclusion does not apply to "**bodily injury**" resulting from the use of reasonable force to protect persons or property.  This exclusion does apply to "**Bodily injury**" or "**property damage**" which a reasonable person would conclude or should conclude is highly probable to result from the **Insured**'s intentional act, even if the act was not done with the intention of causing any harm.

**b.**   **Contractual Liability**

"**Bodily injury**" or "**property damage**" for which the "**Insured**" is obligated to pay "**damages**" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "**damages**":

   **(1)**   That the "**Insured**" would have in the absence of the contract or agreement; or

   **(2)**   Assumed in a contract or agreement that is an "**insured contract**", provided the "**bodily injury**" or "**property damage**" occurs subsequent to the execution of the contract or agreement and is not otherwise excluded under any other applicable exclusion. Solely for the purposes of liability assumed in an "**insured contract**", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "**Insured**" are deemed to be "**damages**" because of "**bodily injury**" or "**property damage**", provided:

      **(i)**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "**insured contract**"; and

      **(ii)**  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which "**damages**" to which this insurance applies are alleged.

**c.**   **Liquor Liability**

"**Bodily injury**" or "**property damage**" for which any "**Insured**" may be held liable by reason of:

   **(1)**   Causing or contributing to the intoxication of any person by alcohol; or

   **(2)**   The furnishing of alcoholic beverages to a person under the legal drinking age or under the

influence of alcohol; or

**(3)**   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages; or

**(4)**   The use of alcohol by anyone, including, but not limited to any **Insured**.

**d.**   **Marijuana, "Controlled Substance", or "Over-the-Counter Medication" Liability**

"**Bodily injury**" or "**property damage**" for which any **Insured** may be held liable by reason of:

**(1)**   Causing or contributing to the intoxication of any person by Marijuana, a "**Controlled Substance**" or an "**Over-the-Counter Medication**"; or

**(2)**   The furnishing of Marijuana, a "**Controlled Substance**" or an "**Over-the-Counter Medication**" to persons under the legal age of consumption or under the influence of such Marijuana, "**Controlled Substance**" or "**Over-the-Counter Medication**"; or

**(3)**   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of Marijuana, "**Controlled Substance**" or "**Over-the-Counter Medication**".

**(4)**   The use of Marijuana, any "**Controlled Substance**" or any "**Over-the-Counter Medication**" by anyone, including, but not limited to, any **Insured**.

**e.**   **Workers' Compensation and Similar Laws**

Any obligation of any "**Insured**" under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

This exclusion applies:

**(1)**   Whether the "**Insured**" may be liable as an employer or in any other capacity; and

**(2)**   To any obligation to share damages with or repay someone else who must pay an obligation under a workers' compensation, disability benefits or unemployment compensation law or any similar law, including damages awarded for contribution or indemnity; and

**(3)**   To liability assumed by any "**Insured**" under an "**insured contract**" for the payment of any obligation under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**f.**   **Employer's Liability**

"**Bodily injury**" to:

**(1)**   An "**employee**" of any **Insured** "**arising out of**" and in the course of:

  **(i)**   Employment by the **Insured**; or

  **(ii)**   Performing duties related to the conduct of the **Insured**'s business; or

**(2)**   A "**volunteer worker**" of any **Insured** "**arising out of**" or in the course of rendering or performing services of any kind or nature whatsoever by such "**volunteer worker**" for which any **Insured** may become liable in any capacity; or

**(3)**   The spouse, domestic partner, child, parent, brother, sister or other relative of any "**employee**" of any **Insured** or of any "**volunteer worker**" as a consequence of injury to any person as set forth in paragraphs (1) or (2) of this exclusion.

This exclusion applies:

**(A)**   Whether the **Insured** may be liable as an employer or in any other capacity; and

**(B)**   To any obligation to share damages with or repay someone else who must pay damages because of the injury, including damages awarded for contribution or indemnity; and

**(C)**   To liability assumed by the **Insured** under an "**insured contract**".

**g.**   **Pollution**

**(1)**   "**Bodily injury**" or "**property damage**" which would not have occurred in whole or part but for the actual, alleged or threatened, handling, storage, disposal, processing, treatment, exposure to discharge, dispersal, seepage, migration, release or escape of "**pollutants**" at any time.

**(2)**   Any loss, cost or expense "**arising out of**" any:

  **(i)**   Request, demand or order that any "**Insured**" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "**pollutants**"; or

  **(ii)**   Claim or suit by or on behalf of a governmental authority for damages because of

testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in anyway responding to, or assessing the effects of "**pollutants**".

"**Pollutant**" clean up costs incurred by any "**Insured**" do not constitute "property damages".

**h.**     **Aircraft, Auto Or Watercraft**

"**Bodily injury**" or "**property damage**" "**arising out of**" the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any "**aircraft**", "**auto**" or watercraft.

This exclusion applies even if the "**claims**" against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the "**occurrence**" which caused the "**bodily injury**" or "**property damage**" involved the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any "**aircraft**", "**auto**" or watercraft.

This exclusion does not apply to:

**(1)**     An unpowered "**ultralight vehicle**", provided that:

**(i)**     At the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**", the unpowered "**ultralight vehicle**" was being operated in compliance with the Daylight Operations restriction set forth in Federal Aviation Regulations, Part 103, Section 103.11, or under an exemption to such Daylight Operations restriction granted to "**USHPA**" by the Federal Aviation Administration; and

**(ii)**     At the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**", the unpowered "**ultralight vehicle**" was being operated in compliance with the airspace restrictions set forth in Federal Aviation Regulations, Part 103, Section 103.15, Section 103.17, 103.19, 103.20, 103.21, and 103.23, or under an exemption to such airspace restrictions granted to "**USHPA**" by the Federal Aviation Administration; and

**(iii)**     If at the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**", the flight was conducted pursuant to one or more exemptions granted to "**USHPA**" by the Federal Aviation Administration:

**(A)**     the flight was conducted in full compliance with all requirements of the exemption; and

**(B)**     the flight was conducted in full compliance with all requirements of "**USHPA**" for the operation of flights made by authorization of "**USHPA**" under its exemption; and

**(C)**     any flight conducted under an exemption to Part 103, Section 1.03.1(a) (the single occupant restriction) is conducted on a "**tandem paraglider**" or a "**hang glider**"; and

**(iv)**     At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the unpowered "**ultralight vehicle**" was not utilizing a "**Propulsion Device**".; and

**(v)**     At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the "**ultralight vehicle**" Vehicle was not engaged in any "**aerobatic maneuver**"; and

**(vi)**     At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the unpowered "**ultralight vehicle**" was operating an unpowered "**ultralight vehicle**" designated by the manufacturer of that "**ultralight vehicle**" to be suitable for operation by a pilot with the skill level equal to that required for the Flight Proficiency Rating possessed by the Pilot; and

**(vii)**     At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the unpowered "**ultralight vehicle**" was not operating at a location designated by the location's managing "**USHPA**" Chapter and/or landowner as requiring a minimum pilot Flight Proficiency Rating greater than the one possessed by the pilot in command, unless the pilot in command is conducting operations under the direct and continuous supervision of an instructor certified by "**USHPA**" for the wing type, special skill, and manner of flight (i.e. solo/tandem) and the managing "**USHPA**" Chapter and/or landowner has authorized such supervised operations; and

**(viii)**     At the time of the "**occurrence**" giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the unpowered "**ultralight vehicle**":

**(A)**   Is a current member of "**USHPA**" who:

**1)**   does not possess any current, unexpired, un-revoked, un-suspended Flight Proficiency Rating issued by "**USHPA**" for the wing type being operated ("**full size paraglider**", "**mini wing**", "**speed wing**" or "**hang glider**"); and

**2)**   is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Basic Instructor or Advanced Instructor Rating in the wing type being taught ("**full size paraglider**", "**mini wing**", "**speed wing**" or "**hang glider**") and any required special skill endorsement(s) issued by "**USHPA**", which rating has been issued or renewed within 36 months of the "**occurrence**"; and

**3)**   is operating within the operational limitations for unrated student pilots and for the instruction of such pilots, as established by "**USHPA**"; or

**(B)**   Is a current member of "**USHPA**" who:

**1)**   Either:

**a)**   if operating a "**full size paraglider**", possesses a current, unexpired, un-revoked, un-suspended P1, M1 or S1 Flight Proficiency Rating issued by "**USHPA**"; or

**b)**   if operating a "**mini wing**",

**i)**   operates the "**mini wing**" with a "**wing loading**" of less than 4.99; and

**ii)**   possesses a current, unexpired, un-revoked, un-suspended M1 or S1 Flight Proficiency Rating issued by "**USHPA**"; or

**d)**   if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H1  Flight Proficiency Rating issued by "**USHPA**"; and

**2)**   is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Basic Instructor or Advanced Instructor Rating in the wing type being taught ("**full size paraglider**", "**mini wing**", "**speed wing**" or "**hang glider**") and any required special skill endorsement(s) issued by "**USHPA**", which rating has been issued or renewed within 36 months of the "**occurrence**"; and

**3)**   is operating within the recommended operational limitations applicable to the flight proficiency rating and special skill endorsement(s) of the pilot and for the instruction of such pilots, as established by "**USHPA**"; or

**(C)**   Is a current member of "**USHPA**" who:

**1)**   Either:

**a)**   if operating a "**full size paraglider**", possesses a current, unexpired, un-revoked, un-suspended P2, M2 or S2 Flight Proficiency Rating issued by "**USHPA**"; or

**b)**   if operating a "**mini wing**",

**i)**   operates the "**mini wing**" with a "**wing loading**" of less 6.80; and

**ii)**   possesses a current, unexpired, un-revoked, un-suspended M2 or S2 Flight Proficiency Rating issued by "**USHPA**"; or

**c)**   if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H2 Flight Proficiency Rating issued by "**USHPA**"; and

**2)** Either:

    **a)**

        **i)** is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Basic Instructor or Advanced Instructor Rating in the wing type being taught ("**full size paraglider**", "**mini wing**", "**speed wing**" or "**hang glider**") and any required special skill endorsement(s) issued by "**USHPA**", which rating has been issued or renewed within 36 months of the "**occurrence**"; and

        **ii)** is operating within the recommended operational limitations applicable to such training flights conducted under the direct supervision of an instructor, as established by "**USHPA**"; OR

    **b)** is operating within the recommended operational limitations applicable to the flight proficiency rating and special skill endorsement(s) of the pilot, as established by "**USHPA**"; or

**(D)** Is a current member of "**USHPA**" who:

    **1)** Either:

        **a)** if operating a "**full size paraglider**", possesses a current, unexpired, un-revoked, un-suspended P3, P4, P5, S3, or S4 Flight Proficiency Rating issued by "**USHPA**"; or

        **b)** if operating a "**speed wing**", possesses a current, unexpired, un-revoked, un-suspended S3 or S4 Flight Proficiency Rating issued by "**USHPA**"; or

        **c)** if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H3, H4, or H5 Flight Proficiency Rating issued by "**USHPA**"; and

    **2)** Either:

        **a)**

            **i)** is operating under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Advanced Instructor Rating in the wing type being taught ("**full size paraglider**", "**speed wing**" or "**hang glider**") and any required special skill endorsement(s) issued by "**USHPA**", which rating has been issued or renewed within 36 months of the "**occurrence**"; and

            **ii)** is operating within the recommended operational limitations applicable to such training flights conducted under the direct supervision of an instructor, as established by "USHPA"; OR

        **b)** is operating within the recommended operational limitations applicable to the flight proficiency rating and special skill endorsement(s) of the pilot, as established by "**USHPA**"; or

**(E)** Is a current member of "**USHPA**" who:

    **1)** Either:

        **a)** if operating a "**tandem paraglider**", possesses a current, unexpired, un-revoked, un-suspended P4, or P5 Flight Proficiency Rating issued by "**USHPA**"; or

        **b)** if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H4, or H5 Flight Proficiency Rating issued by "**USHPA**"; and

    **2)** is operating as tandem pilot in training in the capacity of pilot in

command of a two place (tandem) flight under the direct and continuous presence and supervision of an instructor who has a current, unexpired, un-revoked, un-suspended Tandem Administrator appointment issued by "**USHPA**" in the wing type being taught ("**full size paraglider**", or "**hang glider**") and for the launch type (Foot Launch, Platform Launch, Surface Tow Launch, or Aerotow Launch) being utilized, and for the landing method (Foot Landings, and/or Landing Gear) being utilized, which appointment has been issued or renewed within 36 months of the "**occurrence**"; and

**3)**  is operating within the recommended operational limitations applicable to such training flights conducted under the direct supervision of a Tandem Administrator, as established by "**USHPA**"; and

**4)**  is utilizing tandem equipment that complies with the recommended tandem equipment requirements as established by "**USHPA**"; or

**(F)**  Is a current member of "**USHPA**" who:

**1)**  Either:

  **a)**  if operating a "**tandem paraglider**", possesses a current, unexpired, un-revoked, un-suspended P4, or P5 Flight Proficiency Rating issued by "**USHPA**"; or

  **b)**  if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H4, or H5 Flight Proficiency Rating issued by "**USHPA**"; and

**2)**  possess a current, unexpired, un-revoked, un-suspended Tandem 1 (T1) Rating issued by "**USHPA**" for the wing type being piloted ("**tandem paraglider**", or "**hang glider**") and for the launch type (Foot Launch, Platform Launch, Surface Tow Launch, or Aerotow Launch) being utilized, and for the landing method (Foot Landings, and/or Landing Gear) being utilized;

**3)**  is operating as tandem pilot in training in the capacity of pilot in command of a two place (tandem) flight with a tandem passenger who has a current, unexpired, un-revoked, un-suspended Flight Proficiency Rating of H2, H3, H4, or H5 (if piloting a "**hang glider**") or M2, S3, S4, P2, P3, P4, or P5 (if piloting a "**full size paraglider**") issued by "**USHPA**";

**4)**  is operating within the recommended operational limitations applicable to such Tandem 1 (T1) pilots for training flights conducted outside of the direct supervision of a Tandem Administrator, as established by "**USHPA**"; and

**5)**  is utilizing tandem equipment that complies with the recommended tandem equipment requirements as established by "**USHPA**"; or

**(G)**  Is a current member of "**USHPA**" who:

**1)**  Either:

  **a)**  if operating a "**tandem paraglider**", possesses a current, unexpired, un-revoked, un-suspended P4, or P5 Flight Proficiency Rating issued by "**USHPA**"; or

  **b)**  if operating a "**hang glider**" possesses a current, unexpired, un-revoked, un-suspended H4, or H5 Flight Proficiency Rating issued by "**USHPA**"; and

**2)**  possess a current, unexpired, un-revoked, un-suspended Tandem Instructor Rating issued by "**USHPA**" for the wing type being piloted ("**full size paraglider**", or "**hang glider**") and for the launch type (Foot Launch, Platform Launch, Surface Tow Launch, or Aerotow Launch) being utilized, and for the landing method (Foot Landings, and/or Landing Gear) being utilized;

**3)**  is operating as Tandem Instructor in the capacity of pilot in command of a two place (tandem) flight with a tandem student passenger who has a current, unexpired, un-revoked, un-suspended Flight Proficiency

Rating of H0, H1, H2, H3, H4, or H5 (if piloting a "**hang glider**") or P0, P1, P2, P3, P4, P5, M1, M2, S1, S2, S3 or S4 (if piloting a "tandem **paraglider**") issued by "**USHPA**"; and

    **4)**    is operating within the recommended operational restrictions and limitations applicable to Tandem Instructors in conducting tandem flights, as established by "**USHPA**"; and

    **5)**    is utilizing tandem equipment that complies with the recommended tandem equipment requirements as established by "**USHPA**";

This Exclusion h. of **Exclusions** shall continue to apply to all unpowered "**ultralight vehicles**" in all other circumstances.

**(2)**    A "**Scheduled Powered Ultralight Vehicle**", owned or used by or rented to any "**Insured**", but only:

    **(i)**    during the limited time that it is being used to tow launch an unpowered "**ultralight vehicle**", exempted from exclusion under the conditions set forth in paragraph (1) above, and pursuant to specific authorization granted by the United States Hang Gliding and Paragliding Association, Inc. to the pilot of the powered "**ultralight vehicle**" under a current and valid exemption granted to the United States Hang Gliding and Paragliding Association, Inc. by the Federal Aviation Administration allowing the towing of unpowered "**ultralight vehicles**" by powered "**ultralight vehicles**"; and

    **(ii)**    during the limited time that it is operated in in full compliance with all requirements of the United States Hang Gliding and Paragliding Association, Inc. for the operation of flights made by authorization of the United States Hang Gliding and Paragliding Association, Inc. under its exemption; and

    **(iii)**    so long as the powered "**ultralight vehicle**"'s flight is made for the sole and exclusive purpose of launching an unpowered "**ultralight vehicle**" and the flight does not extend beyond that purpose.

This Exclusion h. of **Exclusions** shall continue to apply to all powered "**ultralight vehicles**" that are not Scheduled.

This Exclusion h. of **Exclusions** shall continue to apply to all powered "**ultralight vehicles**", whether or not Scheduled, in all other circumstances.

**(3)**    A "**Scheduled Light-Sport Aircraft**", owned or used by or rented to any "**Insured**", but only:

    **(i)**    during the limited time that it is being used to tow launch an unpowered "**ultralight vehicle**", exempted from exclusion under the conditions set forth in paragraph (1) above; and

    **(ii)**    during the limited time that it is operated in in full compliance with all requirements of the United States Hang Gliding and Paragliding Association, Inc. related to tow launch of unpowered "**ultralight vehicles**" utilizing Light-Sport Aircraft; and

    **(iii)**    so long as the Light-Sport Aircraft's flight is made for the sole and exclusive purpose of launching an unpowered "**ultralight vehicle**" and the flight does not extend beyond that purpose.

This Exclusion h. of **Exclusions** shall continue to apply to all Light-Sport Aircraft that are not Scheduled.

This Exclusion h. of **Exclusions** shall continue to apply to all Light-Sport Aircraft, whether or not Scheduled, in all other circumstances.

**(4)**    A watercraft while ashore on premises **You** own or rent;

**(5)**    A "**Scheduled Watercraft**", owned or used by or rented to any "**Insured**", on which a "**Scheduled Tow Device**" is mounted, but only:

    **(i)**    during the limited time that the watercraft is being used, with its mounted tow device, to tow launch an unpowered "**ultralight vehicle**", exempted from exclusion under the conditions set forth in paragraph (1) above; and

    **(ii)**    during the limited time that the watercraft and mounted tow device are operated in full compliance with all requirements of the United States Hang Gliding and Paragliding Association, Inc. related to tow launch of unpowered "**ultralight vehicles**" utilizing tow devices mounted on watercraft; and

      **(iii)**    so long as the watercraft's voyage is made for the sole and exclusive purpose of launching an unpowered "**ultralight vehicle**" and the voyage does not extend beyond that purpose; and

      **(iv)**    so long as there is other valid and collectible liability insurance issued and outstanding under which the Watercraft is insured as primary insurance with limits of at least $100,000 Per Person Per Occurrence.

This Exclusion h. of **Exclusions** shall continue to apply to all watercraft that are not Scheduled.

This Exclusion h. of **Exclusions** shall continue to apply to all watercraft, whether or not Scheduled, in all other circumstances.

**(6)**    A "**Scheduled Auto**", owned or used by or rented to any "**Insured**", on which a "**Schedule Tow Device**" is mounted, but only:

      **(i)**    during the limited time that the "**auto**" is being used, with its mounted tow device, to tow launch an unpowered "**ultralight vehicle**", exempted from exclusion under the conditions set forth in paragraph (1) above; and

      **(ii)**    during the limited time that the "**auto**" and mounted tow device are operated in full compliance with all requirements of the United States Hang Gliding and Paragliding Association, Inc. related to tow launch of unpowered "**ultralight vehicles**" utilizing tow devices mounted on "**auto**s"; and

      **(iii)**    so long as the "**auto**'s" trip is made for the sole and exclusive purpose of launching an unpowered "**ultralight vehicle**" and the trip does not extend beyond that purpose; and

      **(iv)**    so long as there is other valid and collectible liability insurance issued and outstanding under which the "**auto**" is insured as primary insurance with limits of at least $100,000 Per Person Per Occurrence.

This Exclusion h. of **Exclusions** shall continue to apply to all "**auto**s" that are not Scheduled.

This Exclusion h. of **Exclusions** shall continue to apply to all "**auto**s", whether or not Scheduled, in all other circumstances.

**(7)**    Parking an "**auto**" on, or on the ways next to, premises that the "**First Named Insured**" owns or rents, provided the "**auto**" is not owned by or rented or loaned to the "**First Named Insured**" or any other **Insured**;

**i.**    **Mobile Equipment**

"**Bodily injury**" or "**property damage**" "**arising out of**" the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", or entrustment to others of any "**mobile equipment**".

**j.**    **War**

"**Bodily injury**" or "**property damage**", however caused, "**arising out of**", happening through or in consequence of:

**(1)**    War, including undeclared or civil war, hostilities (whether war be declared or not);

**(2)**    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)**    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)**    Invasion, or acts of foreign enemies; or

**(5)**    Confiscation or nationalConfiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority or government de jure or defacto; or

**(6)**    Martial law; or

**(7)**    Riots, strikes, or civil commotion.

**k.**    **Damage to Property**

"**Property damage**" to:

**(1)**    Property "**You**" or any other "**Insured**" owns, rents or occupies, including any costs or expenses incurred by "**You**", any other "**Insured**", or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason,

including prevention of injury to a person or damage to another's property.

**(2)** Premises **"You"** or any other **"Insured"** sell, give away or abandon, if the **"property damage"** **"arises out of"** any part of those premises;

**(3)** Property loaned to **"You"** or any other **"Insured"**;

**(4)** Personal property in the care, custody or control of any **"Insured"**;

**(5)** That particular part of real property on which **"You"** or any other **"Insured"** or any of their respective contractors or subcontractors working directly or indirectly on their respective behalf are performing operations, if the **"property damage"** **"arises out of"** those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "**your work**" was incorrectly performed on it.

**l.** **Damage To Your Product**

"**Property damage**" to "**your product**" **"arising out of"** it or any part of it.

**m.** **Damage To Your Work**

"**Property damage**" to "**your work**" **"arising out of"** it or any part of it and included in the "**products-completed operations hazard**".

**n.** **Damage To Impaired Property Or Property Not Physically Injured**

"**Property damage**" to "**impaired property**" or property that has not been physically injured, "**arising out of**":

**(1)** A defect deficiency, inadequacy or dangerous condition in "**your product**" or "**your work**"; or

**(2)** A delay or failure by any "**Insured**" or anyone acting on the "**Insured's**" behalf to perform a contract or agreement in accordance with its terms.

**o.** **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by **"You"**, any other **"Insured"** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "**Your product**",

**(2)** "**Your work**"; or

**(3)** "**Impaired property**"; or

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p.** **Personal And Advertising Injury**

Any and all injuries that constitute "**personal and advertising injury**".

**q.** **Data**

"**Damages**" **"arising out of"** the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate data.

As used in this exclusion, "**Data**" means:

**(1)** Information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, or hard or floppy disks, Compact Discs, Digital Video Discs, tapes, drives, solid state devices, cell phones, biological cells, data processing devices or any other media which are used with electronically controlled equipment; and

**(2)** Information, facts or programs stored as or on, created or used on, or transmitted to or from any non-electronic means, including, but not limited to, handwritten or printed data on paper.

**r.** **Bodily Injury To Insured And Family Members**

"**Bodily injury**" to:

**(1)** Any "**Insured**"; or

**(2)** The spouse, domestic partner, child, parent, brother, sister or other relative of any "**Insured**" as a consequence of any "**bodily injury**" to that "**Insured**"; or

**(3)** Any "**Family Member of a "USHPA Ultralight Vehicle Professional**" "**Insured**", "**arising out of**" the "**USHPA Authorized Activity**" of that "**USHPA Ultralight Vehicle Professional**" "**Insured**"; or

**(4)** The spouse, domestic partner, child, parent, brother, sister or other relative of any "**Family Member of a "USHPA Ultralight Vehicle Professional"** "**Insured**" as a consequence of any "**bodily injury**" to that "**Family Member of a "USHPA Ultralight Vehicle Professional"** "**Insured**".

This exclusion applies:

**(A)** Whether an "**Insured**" may be liable as an employer or in any other capacity; and

**(B)** To any obligation to share damages with or repay someone else who must pay damages because of the injury, including damages awarded for contribution or indemnity.

As used in this exclusion, the term "**Family Member of a "USHPA Ultralight Vehicle Professional"** "**Insured**" means the spouse, domestic partner, child, parent, brother, sister or other relative of the "**USHPA Ultralight Vehicle Professional**" "**Insured**".

**s.    Firearms, Fireworks And Other Pyrotechnic Devices**

**(1)** "**bodily injury**" or "**property damage**":

**(i)** "**Arising out of**" the ownership, maintenance, handling, igniting, operation, sponsorship, existence, storage, set-up or take-down or other use of:

**(A)** Firearms, including handguns, revolvers, pistols, rifles, shotguns, air guns, semi-automatic weapons and similar devices by any "**Insured**" or by any person for which any "**Insured**" may be held liable in any capacity; or

**(B)** Fireworks, including firecrackers, Roman Candles, flash powder, explosive compositions or combustible substances, pinwheels, skyrockets, ground displays, flares, smoke bombs, and similar devices that produce, when ignited or activated, sound, smoke, motion or a combination of these by any "**Insured**" or by any person for which any "**Insured**" may be held liable in any capacity; or

**(C)** Any material constituting an explosive, or intended for use as an explosive, or which has known explosive properties by any person for which any "**Insured**" may be held liable in any capacity.

**(2)** Any obligation of any "**Insured**" to indemnify, defend or contribute jointly or severally with another because of "**bodily injury**" or "**property damage**" "**arising out of**" any of the activities specified in (1) (i) of this exclusion.

**t.    Mechanical Device Or Equipment**

"**Bodily injury**" or "**property damage**" "**arising out of**" the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision or entrustment to others of any type of mechanical device or equipment whether or not a person or persons ride upon such device or equipment, are suspended from such device or equipment or are attached in any way to such device or equipment.

This exclusion applies even if the "**claims**" against any "**Insured**" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "**Insured**", if the "**occurrence**" which caused the "**bodily injury**" or "**property damage**" involved the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision or entrustment to others of any type of mechanical device or equipment.

This exclusion does not apply to:

**(1)** "**Scheduled Tow Devices**" while mounted on a "**Scheduled Auto**" or "**Scheduled Watercraft**" and being operated in payout mode; or

**(2)** "**Scheduled Tow Devices**" while stationary and being operated in pay-in mode.

**u.    Products-Completed Operations Hazard**

"**Bodily injury**" or "**property damage**" included with the "**products-completed operations hazard**".

**v.    Punitive or Exemplary Damages**

Any and all "**punitive or exemplary damages**", whether at common law or by statute, awarded against the "**First Named Insured**", any "**USHPA Ultralight Vehicle Professional**" "**Insured**", or any other "**Insured**", regardless of whether they are demanded or awarded based upon the conduct of any "**Insured**" or upon the conduct of others for whose conduct the "**Insured**" may be deemed to be vicariously liable. However, if a "**suit**" is brought against an "**Insured**" "**arising out of**" a "**claim**" which alleges both compensatory and "**punitive or exemplary damages**", "**We**" will defend the entire "**suit**" with the understanding that "**We**" pay only the compensatory "**damages**".

**w.    Fungi Or Bacteria**

**(1)**   "**Bodily injury**" or "**property damage**" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "**fungi**" or bacteria on or within a building or structure, including its contents, regardless or whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)**   Any loss, cost or expenses "**arising out of**" the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "**fungi**" or bacteria, by an "**Insured**" or by any other person or entity.

**x.    Employment Practices**

"**Bodily Injury**" to:

**(1)**   A person "**arising out of**" any:

**(i)**     Refusal to employ that person; or

**(ii)**    Termination of that person's employment; or

**(iii)**   Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(iv)**   Employment benefit laws affecting an "**Insured**"; or

**(v)**    Employment of any person by an "**Insured**" in violation of the applicable law limiting the age of employment, or if there is no such law limiting employment age, the employment of any person under the age of 14 by an "**Insured**".

**(2)**   The spouse, domestic partner, child, parent, brother, sister or other relative, by blood or marriage, of that person as a consequence of "**bodily injury**" to that person at whom any of the employment related practices described in paragraphs (1)(i), (1)(ii), (1)(iii), (1)(iv), or (1)(v) of this exclusion is directed.

This exclusion applies:

**(A)**   Whether the injury-causing event described in Paragraphs (1)(i), (1)(ii), (1)(iii), (1)(iv), or (1)(v) of this exclusion occurs before employment, during employment or after employment of that person;

**(B)**   Whether the "**Insured**" may be liable as an employer or in any other capacity; and

**(C)**   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**y.    Infringement, Misappropriation, Interference With Privacy And Unfair Competition**

"**Bodily injury**" or "**property damage**" "**arising out of**":

**(1)**   Any infringement upon or dilution of copyright, trademark, patent, title, slogan, service mark, service name, trade name, trade dress, trade secret, or other intellectual property rights;

**(2)**   Any invasion or infringement of or interference with the right of privacy or publicity including, but not limited to, intrusion, public disclosure or private facts, unwarranted or wrongful publicity, false light or the use of name or likeness for profit;

**(3)**   Plagiarism or misappropriation of information, trade secrets, ideas or style of doing business;

**(4)**   "Unfair competition" as defined by statute or common law, both state and federal, whether or not pertaining to and alleged in conjunction with a claim of plagiarism, misappropriation of information or ideas, piracy, infringement or dilution of copyright, title, slogan, trademark, trade name, trade dress, trade secret, patent, service mark, service name, or other intellectual property rights;

**(5)**   Any acts of the "**Insured**" pertaining to the Internet, web site(s), social media, apps, domain name(s), metatag(s), linking, framing, chatrooms, bulletin boards, forums, blogs, that the "**Insured**" hosts, owns or contributes to, or over which the "**Insured**" exercises any control, or through which the "**Insured**" performs any marketing.

**z.    Abuse Or Molestation Exclusion**

"**Bodily injury**", or "**property damage**", or any other injury "**arising out of**":

**(1)**   The actual, alleged, or threatened abuse or molestation or harassment or licentious, immoral

or sexual behavior whether or not intended to lead to, or culminating in any sexual act, of any person, whether caused by, or at the instigation of, or at the direction of, or omission by, any **"Insured"**, its **"employees"**, volunteers, agents, patrons, patients, guests or any other person; or

(2) The actual or alleged transmission of any communicable disease; or

(3) Charges or allegations of negligent hiring, entrustment, employment, certification, appointment, placement, training, investigation, supervision, reporting to the proper authorities, or failure to so report, failure to provide adequate security, or retention of a person for whom any **"Insured"** is or ever was legally responsible and whose conduct would be excluded by paragraph (1) of this exclusion; or

(4) Charges of intentional, negligent or reckless conduct which facilitated or permitted the sexual activity to occur.

This exclusion applies whether or not the "**bodily injury**", "**property damage**", or any other injury sustained by any person as a result of such activity was expected or intended by the person who engaged in the activity.

Abuse includes, but is not limited to, negligent or intentional infliction of physical, emotional or psychological injury/harm.

**aa.    Willful Violation Of Penal Statute**

"**bodily injury**" or "**property damage**" "**arising out of**" the willful violation of a penal statute or ordinance by any **"Insured"**.

**bb.    Conduct Out Of Course And Scope Of Duties**

(1) "**bodily injury**" or "**property damage**" "**arising out of**" the acts of an **"Insured's"** "**employees**" where those acts are outside the course and scope of employment; and

(2) "**bodily injury**" or "**property damage**" "**arising out of**" the acts of an **"Insured's"** "**volunteer workers**" or agents where those acts are outside the scope of the duties of the "**volunteer workers**" or agents; and

(3) "**bodily injury**" or "**property damage**" "**arising out of**" the acts of a **"USHPA Ultralight Vehicle Professional"** "**Insured**" where any of those acts are outside of the scope of the duties of that **"USHPA Ultralight Vehicle Professional"** "**Insured**" as set forth in **"USHPA Standard Operating Procedures"** applicable to the certification and/or appointment(s) held by the **"USHPA Ultralight Vehicle Professional"** "**Insured**".

**cc.    Assault and Battery**

**Bodily injury**", or "**property damage**" or any other injury "**arising out of**":

(1) The actual, alleged, or threatened assault and/or battery, whether caused by, or at the instigation of, or at the direction of, or omission by, any **"Insured"**, its **"employees"**, volunteers, agents, patrons, patients, guests or any other person; or

(2) Charges or allegations of negligent hiring, entrustment, employment, certification, appointment, placement, training, investigation, supervision, reporting to the proper authorities, or failure to so report, failure to provide adequate security, appointment, certification, or retention of a person for whom any **"Insured"** is or ever was legally responsible and whose conduct would be excluded by paragraph (1) of this exclusion.

This exclusion applies whether or not the "**bodily injury**", "**property damage**" or any other injury sustained by any person as a result of such activity was expected or intended by the person who engaged in the activity.

**dd.    Liability arising out of ownership of land**

"**Bodily injury**" or "**property damage**" for which the **"Insured"** may be held liable solely due to the "**Insured's**" interest as an owner, lessor, lessee, licensee, landlord and/or tenant in real property (including the **"Insured's"** status as an owner, proprietor, administrator, "**employee**," "**leased worker**," "**temporary worker**," "**volunteer worker**," manager, supervisor, agent, member, managing member, partner, officer, stockholder, or member of the board of directors, trustees or governors of any school, store, shop, business, association, joint venture or other enterprises whose liability is premised on the condition of real property for which it is an owner, lessor, lessee, licensee, landlord and/or tenant.)

**ee.    Liability arising out of the sale of food or beverage**

"**Bodily injury**" or "**property damage**" "**arising out of**" or in any way related to the sale of any food or

beverage, whether in a cafeteria, or otherwise.

**ff.    Liability for Acts of Others**

**(1)**    Under Coverages A and B, "**Bodily injury**" or "**property damage**" "**arising out of**" the acts or omissions of someone other than a "**USHPA Ultralight Vehicle Professional**" "**Insured**" and for whose acts or omissions a "**USHPA Ultralight Vehicle Professional**" "**Insured**" may be held legally responsible due to the "**USHPA Ultralight Vehicle Professional**" "**Insured's**" status as an owner, proprietor, administrator, "**employee**," "**leased worker**," "**temporary worker**," "**volunteer worker**," manager, supervisor, agent, member, partner, officer, stockholder, board member, or managing member of any person, business, school, store, shop, association, joint venture, non-profit enterprise, or other enterprise; or

**(2)**    Under Coverage C, "**Bodily injury**" or "**property damage**" "**arising out of**" the acts or omissions of someone other than a "**USHPA Ultralight Vehicle Professional**" "**Insured**" and for whose acts or omissions the "**First Named Insured**" may be held legally responsible.

**gg.    Liability arising out of Communicable Disease**

"**Bodily injury**", or "**property damage**" "**arising out of**" the transmission of or alleged transmission of any communicable disease.

**hh.    Liability arising out of Mold, Bacteria, Virus or other Organic Pathogen**

"**Bodily injury**", or "**property damage**" "**arising out of**" actual, alleged or threatened existence, exposure to, discharge, dispersal, release or escape of "**organic pathogens**", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

This exclusion applies also:

**(1)**    to any alleged damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space;

**(2)**    to any loss, cost or expense, including but not limited to fines, penalties and attorney fees, "**arising out of**" any governmental direction or request, or any private party or citizen action, that an "**Insured**" test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens", or

**(3)**    to any litigation or administration procedure in which an "**Insured**" may be involved as a party.

In addition, this insurance does not apply to any "**Bodily injury**", or "**property damage**", loss, cost or expense including but not limited to fines, penalties and attorney fees, "**arising out of**" or related to any form of "**organic pathogens**", whether or not such actual, alleged or threatened existence, exposure to, discharge, dispersal, release or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any "**Insured**" is alleged to be direct or vicarious. This exclusion also applies whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of any "**Insured**".

**ii.    Liability for Injuries to Certain Minors**

**(1)**    "**Bodily Injury**" to a "**Minor**" as a consequence of "**bodily injury**" to that "**Minor**" as a result of an "**Occurrence**" while the "**Minor**" was "**participating in the sports of hang gliding or paragliding**", where the "**Minor**" did not, prior to "**participating in the sports of hang gliding or paragliding**", have sufficient knowledge and maturity to both:

**(i)**    Assess the dangers involved in "**participating in the sports of hang gliding or paragliding**"**;** and

**(ii)**    Make a decision to assume personal responsibility for the "**Minor's**" own safety when "**participating in the sports of hang gliding or paragliding**".

**(2)**    "**Bodily Injury**" to a "**Minor**" as a consequence of "**bodily injury**" to that "**Minor**" as a result of an "**Occurrence**" while the "**Minor**" was "**participating in the sports of hang gliding or paragliding**", where the "**Minor**" did not, prior to "**participating in the sports of hang gliding or paragliding**" both:

**(i)**    Assess the dangers involved in "**participating in the sports of hang gliding or paragliding**"; and

**(ii)**    Assume personal responsibility for the "**Minor's**" own safety when "**participating in the sports of hang gliding or paragliding**".

**(3)**    "**Bodily injury**" to the spouse, domestic partner, child, parent, brother, sister or other relative,

by blood or marriage", or a "**Minor**", as a consequence of "**Bodily injury**" to that "**Minor**" as a result of an "**Occurrence**" while the "**Minor**" was "**participating in the sports of hang gliding or paragliding**", where the "**Minor**" did not, prior to "**participating in the sports of hang gliding or paragliding**" both:

    **(i)**    Assess the dangers involved in "**participating in the sports of hang gliding or paragliding**"; and

    **(ii)**    Assume personal responsibility for the "**Minor's**" own safety when "**participating in the sports of hang gliding or paragliding**".

**jj.**    **Injury arising from Willful or Wanton Misconduct of any Insured**

"**Bodily injury**" or "**property damage**" that "**arises out of**" conduct by any "**Insured**" that constitutes willful or wanton misconduct.  Willful or wanton misconduct means conduct by a person who may have no intent to cause harm, but who intentionally performs an act so unreasonable and dangerous that he or she knows or should know it is highly probable that harm will result.

This exclusion applies:

**(1)**    Whether an "**Insured**" may be liable as an employer or in any other capacity; and

**(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury, including damages awarded for contribution or indemnity; and

**(3)**    To the liability of any "**Insured**" based upon the willful or wanton misconduct of others for whose conduct the "**Insured**" may be deemed to be vicariously liable; and

**(4)**    To liability assumed by the "**Insured**" under an "**insured contract**".

**kk.**    **Injury arising from Gross Negligence of any Insured**

"**Bodily injury**" or "**property damage**" that "**arises out of**" conduct by any "**Insured**" that constitutes gross negligence.

This exclusion applies:

**(1)**    Whether an "**Insured**" may be liable as an employer or in any other capacity; and

**(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury, including damages awarded for contribution or indemnity; and

**(3)**    To the liability of the "**Insured**" based upon the grossly negligent conduct of others for whose conduct the "**Insured**" may be deemed to be vicariously liable; and

**(4)**    To liability assumed by the "**Insured**" under an "**insured contract**".

**ll.**    **Injury arising from Reckless conduct of any Insured**

"**Bodily injury**" or "**property damage**" that "**arises out of**" conduct by any "**Insured**" that constitutes recklessness, whether or not the conduct is so reckless as to be totally outside the range of the ordinary activity involved in the sports of "**hang gliding**" and "**paragliding**".

This exclusion applies:

**(1)**    Whether an "**Insured**" may be liable as an employer or in any other capacity; and

**(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury, including damages awarded for contribution or indemnity; and

**(3)**    To the liability of the "**Insured**" based upon the reckless conduct of others for whose conduct the "**Insured**" may be deemed to be vicariously liable; and

**(4)**    To liability assumed by the "**Insured**" under an "**insured contract**".

**5.**    **SUPPLEMENTARY PAYMENTS – COVERAGES A, B, and C**

**a.**    "**We**" will pay as **SUPPLEMENTARY PAYMENTS**, with respect to any "**claim**" "**We**" investigate or settle, or any "**suit**" against an "**Insured**" "**We**" defend:

**(1)**    All expenses "**We**" incur, except for "**defense costs**".

**(2)**    The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  "**We**" do not have to furnish these bonds.

**(3)**    All reasonable expenses incurred by the "**Insured**" at "**Our**" request to assist "**Us**" in the investigation or defense of the "**claim**" or "**suit**", including actual loss of earnings up to $250 a day because of time off from work.

**(4)** All costs taxed against the "**Insured**" in the "**suit**", except for interest.

**(5)** Prejudgment interest awarded against the "**Insured**" on that part of the judgment for "**damages**" that "**We**" pay. If "**We**" make an offer to pay the applicable limit of insurance, "**We**" will not pay any prejudgment interest based on that period of time after the offer.

**(6)** All interest on the full amount awarded for "**damages**" in any judgment that accrues after entry of the judgment and before "**We**" have paid, offered to pay, or deposited in court the part of the judgment for "**damages**" that is within the applicable limit of insurance.

These **SUPPLEMENTARY PAYMENTS** are included within both the Each Occurrence and General Aggregate Limits of Insurance (and any of their applicable sub-limits) and will reduce both the Each Occurrence and the General Aggregate Limits of Insurance (and any of their applicable sub-limits). "**Defense costs**" are likewise included within both the Each Occurrence and General Aggregate Limits of Insurance (and any of their applicable sub-limits) and will reduce both the Each Occurrence and the General Aggregate Limits of Insurance (and any of their applicable sub-limits).

**b.** If "**We**" defend an "**Insured**" against a "**suit**" and an indemnitee of the "**Insured**" is also named as a party to the "**suit**", "**We**" will defend that indemnitee if all of the following conditions are met:

**(1)** The "**suit**" against the indemnitee seeks "**damages**" for which the "**Insured**" has assumed the liability of the indemnitee in a contract or agreement that is an "**insured contract**";

**(2)** This insurance applies to such liability assumed by the "**Insured**";

**(3)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the "**Insured**" in the same "**insured contract**";

**(4)** The allegations in the "**suit**" and the information "**We**" know about the "**occurrence**" are such that no conflict appears to exist between the interests of the "**Insured**" and the interests of the indemnitee; and

**(5)** The indemnitee and the "**Insured**" ask "**Us**" to conduct and control the defense of that indemnitee against such "**suit**" and agree that "**We**" can assign the same counsel to defend the "**Insured**" and the indemnitee; and

**(6)** The indemnitee:

**(i)** Agrees in writing to:

**(A)** Cooperate with "**Us**" in the investigation, settlement or defense of the "**suit**";

**(B)** Immediately send "**Us**" copies of any demands, notices, summonses or legal papers received in connection with the "**suit**";

**(C)** Notify any other insurer whose coverage is available to the indemnitee; and

**(D)** Cooperate with "**Us**" with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides "**Us**" with written authorization to:

**(A)** Obtain records and other information related to the "**suit**"; and

**(B)** Conduct and control the defense of the indemnitees in such "**suit**".

**c.** So long as the above conditions (**Section I – INSURING AGREEMENTS**, **Paragraph 5. SUPPLEMENTARY PAYMENTS – COVERAGES A, B, and C, Paragraph b., and all subparagraphs**) are met, attorneys' fees incurred by "**Us**" in the defense of that indemnitee, necessary litigation expenses incurred by "**Us**" and necessary litigation expenses incurred by the indemnitee at "**Our**" request will be paid pursuant to the applicable Limits of Insurance, and said payments shall reduce the applicable Limits of Insurance. Notwithstanding the provisions of **Section I – INSURING AGREEMENTS**, **Paragraph 4 - EXCLUSIONS, Subparagraph b. Contractual Liability (2)**, such payments will not be deemed to be "**damages**" for "**bodily injury**" and "**property damage**"

**d.** "**Our**" obligation to defend an "**Insured's**" indemnitee and to pay for attorney's fees and necessary litigation expenses as Supplementary Payments ends when:

**(1)** "**We**" have used up the applicable limit of insurance in the payment of "**defense costs**", **SUPPLEMENTARY PAYMENTS**, judgments or settlements; or

**(2)** The conditions set forth in **Section I – INSURING AGREEMENTS**, **Paragraph 5. SUPPLEMENTARY PAYMENTS – COVERAGES A, B, and C, Paragraphs b.** and **c.** above are no longer met; or

**(3)** The terms of the agreement described in **Section I – INSURING AGREEMENTS**, **Paragraph 5. SUPPLEMENTARY PAYMENTS – COVERAGES A, B, and C**, Paragraph **b.**, Subparagraph **(6)(i)**

above, are no longer met.

## SECTION II – DEFINITIONS

1.  **"Accident"** means an incident, event, or circumstance which is unexpected and unintended from the standpoint of any **"Insured"**.

2.  **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about **Your** or any "USHPA **Members'**" goods, products or services for the purpose of attracting customers, members or supporters.

    a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b.  Regarding web-sites, only that part of a web-site that is about **Your** or any "**USHPA Members'**" goods, products or services for the purpose of attracting customers, members or supporters is considered an "**advertisement**".

3.  **"Aerobatic Maneuver"** means an intentional maneuver involving an abrupt change in an aircraft's attitude, an abnormal attitude, or abnormal acceleration, not necessary for normal flight.  Maneuvers intentionally performed by the pilot that involve bank angles in excess of 60 degrees or pitch angles in excess of 30 degrees are always abnormal attitudes. Maneuvers intentionally performed by the pilot that involve abrupt changes of direction, angles of bank, angles of pitch, or speed always constitute Aerobatic Maneuvers.  Aerobatic Maneuvers also include, but are not limited to intentionally initiated: Symmetric deflation, Asymmetric deflation, Stall, Spin, Cravatte, B-line Stall, Nose down or Aggressive Spiral, Nose down or Aggressive Wing-overs, Loop, Roll, Barrel roll, D-bagging, a steep dive and pullout, an accelerated pass close to the ground, and any maneuvers defined in the Fédération Aéronautique Internationale (FAI) Sporting Code Section 7B as an aerobatic maneuver.

4.  **"Aircraft"** means a device that is used or intended to be used for flight in the air.

5.  **"Application"** means the application for insurance coverage form, any related supplemental application form(s), any request form(s) for the addition of any person and/or entity as an additional insured, including any information provided in those form(s), and documents, photos, videos and other materials provided pursuant to the directions in those form(s) by or for or on behalf of the **"First Named Insured"** requesting the insurance coverage or the additional insured **"endorsement"**(s) from **"Your risk retention group"**, or by or for or on behalf of any **Additional Insured** referenced in the request(s) for coverage or **"endorsement"**(s).

6.  "**Arises out of**" means arises

    a.      in whole or in part; and

    b.      directly or indirectly; and

    c.      if in part, in concurrence or in any sequence

    out of.

7.  "**Arising out of**" means arising

    a.      in whole or in part; and

    b.      directly or indirectly; and

    c.      if in part, in concurrence or in any sequence

    out of.

8.  **"Auto"** means

    a.  A land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment; or

    b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

    However, "**auto**" does not include "**mobile equipment**".

9.  **"Automobile Liability Hazard"** includes all "**bodily injury**" and "**property damage**" that "**arises out of**" the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any automobile that is not a "**Scheduled Auto**".

10. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

11. **"Claim"** means any demand for compensation made against an **"Insured"** for monetary **"damages"** the **"Insured"** is or may reasonably become legally obligated to pay as a result of any one **"occurrence"**, including such

demands made by way of a writing, a civil lawsuit, an arbitration proceeding, or any agreed upon alternative dispute resolution proceeding.

    **a.**    A "**claim**" does not include demands for:

        **(1)**    fines;

        **(2)**    penalties;

        **(3)**    sanctions;

        **(4)**    treble damages;

        **(5)**    punitive damages;

        **(6)**    exemplary damages;

        **(7)**    damages arrived at by some multiple of a portion of compensatory damages;

        **(8)**    restitution or return of property;

        **(9)**    restitution or return of legal fees;

        **(10)**    restitution or return of expenses;

        **(11)**    injunctive relief of any kind; or

        **(12)**    criminal fines or penalties of any kind.

    **b.**    A "**claim**" does not include:

        **(1)**    Criminal investigations, proceedings or prosecutions;

        **(2)**    Administrative investigations, proceedings or prosecutions;

        **(3)**    Regulatory investigations, proceedings or prosecutions; **or**

        **(4)**    Investigations, proceedings or prosecutions conducted by "**USHPA**" or any other organizations with whom any **Insured** holds, or has ever held, a membership, or from whom any **Insured** has ever received a pilot proficiency rating, a certification, an appointment, an official position, or other designation.

**12.**    "**Conducted For Compensation**", "**For Hire**", "**For Compensation**", or "**For Any Other Compensation**".

    **a.**    Any operation, activity or service provided or conducted by a "**For Hire Professional**" is one provided or conducted "**For Hire**", "**For Compensation**", or "**For Any Other Compensation**", or is one "**Conducted For Compensation**";

    **b.**    An operation, activity or service is one provided or conducted "**For Hire**", "**For Compensation**", or "**For Any Other Compensation**", or is one "**Conducted For Compensation**" whenever an individual or entity:

        **(1)**    receives or attempts to receive money, electronic currencies, donations, gratuities, tips, or gifts; or

        **(2)**    amortizes or attempts to amortize equipment; or

        **(3)**    barters or attempts to barter for meals, beverage, lodgings, or any other goods or services; or

        **(4)**    conducts the operation or activity for "free" when the customer compensates or has compensated the individual or entity for some other operation, activity, goods or services; or

        **(5)**    conducts the operation for "free" upon the expiration or other invalidity of a gift certificate, rain check or other evidence of right to receive services; or

        **(6)**    otherwise bundles the operation or activity with other operations, activities, goods or services for which the customer provides money, electronic currencies, donations, gratuities, gifts, or barter.

    **c.**    The operations of profit making organizations and organizations seeking to make a profit are automatically classified as being "**Conducted For Compensation**", "**For Hire**", "**For Compensation**", or "**For Any Other Compensation**", even if that part of their activity or operation is not profit-making or the business as a whole is not profitable.

    **d.**    The non-profit status of a group or organization does not determine whether its activities or operations are "**Conducted For Compensation**", "**For Hire**", "**For Compensation**", or "**For Any Other Compensation**".

    **e.**    Where any individual or group, including a non-profit group or organization, solicits or accepts donations in connection with its activities or operations, those activities and operations are considered to be "**Conducted For Compensation**", "**For Hire**", "**For Compensation**", or "**For Any Other Compensation**".

13.     "Controlled Substance" means any substance listed on Schedules I through V of 21 CFR Section 1308, as may be revised from time to time by publication in the Federal Register.

14.     **"Coverage territory"** means;

     **a.**     The United States of America (including its territories and possessions), Puerto Rico and Canada;

     **b.**     International waters or airspace, provided the injury or damage occurs in the course of travel or transportation to or from any places included in a. above; or

     **c.**     All parts of the world if the injury or damage "**arises out of**" the activities of an "**Insured**" "**USHPA Ultralight Vehicle Professional**" whose home is in the territory described in a. above, but is away from the territory described in a. above:

         **(1)**     For a short time, no longer than 10 consecutive days, on "**USHPA**" business; or

         **(2)**     On the business of a "**PASA Certified Flight School**"

         Provided the "**Insured's**" responsibility to pay "**damages**" is determined in a "**suit**" on the merits, in the territory described in a. above or in a settlement "**We**" agree to;

     However, "**Coverage territory**" does not include **(i)** any "**Excluded Location**"; nor **(ii)** any location listed by the United State's State Department as *Travel Advisory Level 4 - Do Not Travel To* as of the date of the "**occurrence**".

15.     "**Covered activities**" means the "**USHPA Authorized Activities**" performed by "**USHPA Ultralight Vehicle Professional**" "**Insureds**".

16.     "**Damages**" means monetary compensation that an "**Insured**" is or may reasonably become legally obligated to pay as a result of an "**occurrence**" to which this insurance applies.  "**Damages**" do not include any non-monetary compensation nor do "**damages**" include any of the following:

     **a.**     fines;

     **b.**     penalties;

     **c.**     sanctions;

     **d.**     treble damages;

     **e.**     punitive damages;

     **f.**     exemplary damages;

     **g.**     damages arrived at by some multiple of a portion of compensatory damages;

     **h.**     restitution or return of property;

     **i.**     restitution or return of legal fees;

     **j.**     restitution or return of expenses;

     **k.**     injunctive relief of any kind; or

     **l.**     criminal fines or penalties of any kind.

17.     "**Defense costs**" means all costs and expenses incurred by "**Us**", or at "**Our**" direction, in connection with the investigation of any "**occurrence**", the adjustment of any "**claim**", or the defense and appeal of any "**suit**", including all attorneys' fees and third-party expenses.  "**Defense costs**" shall include "**Our**" own internal costs, fees and expenses, such as personnel expense and general overhead as reasonably determined by "**Us**".

18.     "**Employee**" includes a "**leased worker**".  "**Employee**" does not include a "**temporary worker**".

19.     "**Endorsement**" means any schedule, statement of additional coverage, or statement of additional limitations of coverage that is contained in any attachment, appendix or addendum to "**This Insurance Policy**".  Each "**endorsement**" is an integral part of "**This Insurance Policy**" and must be read and interpreted taking full consideration of each and every "**endorsement**".  In the event of a conflict between the language of the instant insurance policy form and any "**endorsement**", the terms of the "**endorsement**" prevail.

20.     "**Excluded Individual**" means any individual that "**Your risk retention group**" determines is ineligible to be covered and issues an "**endorsement**" to "**This Insurance Policy**" excluding such individual and/or the activities of such individual from the coverages of "**This Insurance Policy**".  "**Your risk retention group**" may, at any time during the term of "**This Insurance Policy**" issue such an "**endorsement**", excluding an individual and/or the activities of such individual from coverage(s) on "**This Insurance Policy**" for occurrences that take place after the issuance of such "**endorsement**".

     Under **Coverage A - PROFESSIONAL LIABILITY FOR "RECREATIONAL PROFESSIONALS"**, "**Excluded Individual**" also means any individual that **USHPA** has not, during the "**Policy Period**" and before the "**occurrence**", both:

a.    Designated that individual as a certified non-commercial **USHPA** Rogallo Member and;

b.    Communicated that designation to **Us** by way of a writing received by **Us** before the "**occurrence**".

21.    "**Excluded Location**" means any location for which "**Your risk retention group**" determines that "**hang gliding**" and/or "**paragliding**" operations at that location are ineligible to be covered and issues an "**endorsement**" to "**This Insurance Policy**" excluding operations at such location from the coverages of "**This Insurance Policy**". "**Your risk retention group**" may, at any time during the term of "**This Insurance Policy**" issue such an "**endorsement**", excluding operations at a particular location from coverage(s) on "**This Insurance Policy**" for occurrences that take place after the issuance of such "**endorsement**".

22.    "**Executive officer**" means a person holding any of the officer positions created by the charter, constitution, bylaws, membership agreement or any other similar governing document of an entity.  Each manager of a limited liability company is an "**executive officer**".

23.    "**Federal Aviation Administration**" means the federal aviation administration of the United States of America.

24.    "**Federal Aviation Regulations**" means Title 14 of the Code of Federal Regulations of the United States of America.

25.    "**For Hire Professional**".

a.    Any individual is a "**For Hire Professional**" where:

(1)    that individual (or any person or entity for whom the individual works, whether as an "**employee**", "**temporary worker**", "**leased worker**", "**volunteer worker**", or other agent), in connection with any "**Professional Services**" relating to "**hang gliding**" and/or "**paragliding**":

(i)    receives or attempts to receive money, electronic currencies, donations, gratuities, tips, or gifts for the individual or anyone else; or

(ii)    amortizes or attempts to amortize equipment; or

(iii)    barters or attempts to barter for meals, beverage, lodgings, or any other goods or services; or

(iv)    conducts any operation or activity for free when the customer compensates or has compensated anyone for some other operation, activity, goods, or services (for example, and not by way of limitation, where 'free' instruction is provided to customers who purchase equipment, or where 'lifetime' instruction is provided to customers who purchase a beginner instruction package); or

(v)    conducts any operation for free upon the expiration or other invalidity of a gift certificate, rain check or other evidence of right to receive services; or

(vi)    otherwise bundles any operation or activity with other operations, activities, goods or services for which the customer provides money, electronic currencies, donations, gratuities, gifts, or barter.

(2)    that individual (or any person or entity for whom the individual works, whether as an "**employee**", "**temporary worker**", "**leased worker**", "**volunteer worker**", or other agent), is engaged in performance of "**Professional Services**" relating to "**hang gliding**" and/or "**paragliding**" for any profit making individual, group, or organization, or of any individual, group, or organization seeking to make a profit, even if some part of their activity or operation is not profit-making or the business as a whole is not profitable; or

(3)    that individual (or any person or entity for whom the individual works, whether as an "**employee**", "**temporary worker**", "**leased worker**", "**volunteer worker**", or other agent), is engaged in performance of "**Professional Services**" relating to "**hang gliding**" and/or "**paragliding**" for any individual, group, or organization that solicits or accepts donations in connection with its activities or operations, including any non-profit group or organization; or

(4)    that individual (or any person or entity for whom the individual works, whether as an "**employee**", "**temporary worker**", "**leased worker**", "**volunteer worker**", or other agent), is engaged in performance of "**Professional Services**" relating to "**hang gliding**" and/or "**paragliding**" for any individual, group, or organization that charges a fee for "**Professional Services**", but offers free services as an Instructor, Observer, Mentor, Examiner, Site Introduction, Guiding, or TECH.

b.    An individual who, at the time of an "**Occurrence**" does not fall within the definition of "**For Hire Professional**" under subparagraph a. of this definition, but has engaged in activities which caused the individual to fall withing the definition of "**For Hire Professional**" under subparagraph a. of this definition at any time within the twelve (12) months preceding the "**Occurrence**", is a "**For Hire**

Professional" at the time of the "**Occurrence**".

c.    An individual who, at the time of an "**Occurrence**" does not fall within the definition of "**For Hire Professional**" under subparagraph a. of this definition, but is under an obligation to engage in activities which would cause the individual to fall within the definition of "**For Hire Professional**" under subparagraph a. of this definition at any time in the future under an arrangement made in the past, is a "**For Hire Professional**" as of the date of the "**Occurrence**" even if it has been more than twelve (12) months since that arrangement was made.

26.    "**Full size paraglider**" means a "**paraglider**" with traditional "**paraglider**" characteristics not labeled by its manufacturer as a "**mini wing**" or "**speed wing**" while being operated with a "**wing loading**" of less than 4.99.

27.    "**Fungi**" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by products produced or released by fungi.

28.    "**Hang glider**" means an unpowered "**ultralight vehicle**" capable of being carried, foot launched and landed solely by the use of the pilot's legs, having a rigid primary structure.

29.    "**Hang gliding**" means any and all facets of engaging in flight utilizing a "**hang glider**".

30.    "**Hang gliding and paragliding professional liability hazard**" means "**bodily injury**", or "**property damage**" that "**arises out of**" the rendering of or failure to render advice, instruction, direction, rating, appointment, certification, or tow services in connection with any "**hang gliding**" or "**paragliding**" training, instructing, mentoring, examining, observing, tow technician, or administration activities.

31.    "**Hang Gliding and/or Paragliding Professional Incident**" means an "**occurrence**" that "**arises out of**":

a.    the rendering of or failure to render advice, instruction or direction; or

b.    the evaluation, award, refusal to award, withholding or revocation of any rating, appointment or certification; or

c.    the operation of a tow system,

in connection with "**hang gliding**" and/or "**paragliding**" by one or more of the following USHPA certified or appointed "**Insureds**" while acting in the following capacities:

1.    A "**USHPA Certified Instructor**" or "**USHPA Appointed Administrator**" while engaged **in** training or instructional activities; or

2.    A "**USHPA Appointed Mentor**" while engaged in mentoring activities; or

3.    A "**USHPA Appointed Examiner**" while engaged in examining activities; or

4.    A "**USHPA Appointed Observer**" while engaged in observing activities; or

5.    A "**USHPA Certified TECH**" while engaged in the operation of any facet of a tow system.

32.    "**Impaired property**" means tangible property, other than "**your product**" or "**your work**", that cannot be used or is less useful because:

a.    It incorporates "**your product**" or "**your work**" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    "**You**" or any "**Insured**" has failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.    The repair, replacement, adjustment or removal of "**your product**" or "**your work**"; or

b.    "**You**" or any "**Insured**" fulfilling the terms of the contract or agreement.

33.    "**Insured contract**" means a contract or agreement specifically approved by "**Us**" by "**endorsement**" to "**This Insurance Policy**", identifying the contract as an "**insured contract**".

34.    "**Leased worker**" means a person leased to the "**Insured**" by a labor firm under an agreement between the "**Insured**" and the labor leasing firm, to perform duties related to the conduct of the "**Insured's**" business. "**Leased worker**" does not include a "**temporary worker**".

35.    "**Light-sport aircraft**" means a certificated aircraft (as the term certificated aircraft is used in the "**Federal Aviation Regulations**") meeting the definition of light-sport aircraft in "**Federal Aviation Regulation**" 1.1.

36.    "**Loading or unloading**" means the handling of property:

a.    After it is moved from the place where it is accepted for movement into or onto an "**aircraft**", watercraft or "**auto**";

b.    While it is in or on an "**aircraft**", watercraft or "**auto**"; or

c.    While it is being moved from an "**aircraft**", watercraft or "**auto**" to the place where it is finally

delivered, but "**loading or unloading**" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the "**aircraft**", watercraft or "**auto**".

37. "**Mini Wing**" means a "**Paraglider**" that is generally smaller than a "**full size paraglider**", but generally larger than a "**speed wing**" having the ability to achieve soaring flight yet also to fly in stronger winds than a "**full size paraglider**", and labeled by manufacturers as mini wing, miniwing, mini-wing, mini-paraglider, or similar terms. Any "**paraglider**" while being operated with a "**wing loading**" of any amount equal to or greater than 4.99 and less than 6.80 is a "**Mini Wing**" regardless of manufacturer labeling.

38. "**Minor**" means a person who is, at the time of the "**occurrence**" that gives rise to any claimed "**Bodily Injury**", under 18 years of age.

39. "**Mobile equipment**" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts, all terrain vehicles (ATV), golf carts, dirt bikes, and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises "**You**" or any "**Insured**" owns or rents;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "**mobile equipment**" but will be considered "**autos**":

        **(1)** Equipment designed primarily for:

            **(i)** Snow Removal;

            **(ii)** Road maintenance, but not construction or resurfacing; or

            **(iii)** Street cleaning

        **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    However, "**mobile equipment**" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicles insurance law are considered "**autos**".

40. "**Occurrence**" means an "**accident**", including continuous or repeated exposure to substantially the same general harmful conditions.

41. "**Organic pathogen**" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, or biogenic aerosol.

42. "**Over-the-Counter Medication**" means any substance that is available without a prescription, that can adversely effect alertness, judgment, coordination, or cognitive function.

43. "**Paraglider**" means an unpowered "**ultralight vehicle**" capable of being carried, foot launched and landed solely by the use of the pilot's legs, having no rigid primary structure.

44. "**Paragliding**" means any and all facets of engaging in flight utilizing a "**paraglider**".

45. "**Participant**" means any person while that person is actively "**participating in the sports of hang gliding or paragliding**".

46.   "**Participating in the sports of hang gliding or paragliding**" means attempted and/or successful acts of launching (or assisting another in launching), flying (whether as pilot in command or otherwise) or landing (including, but not limited to, crashing) a "**hang glider**", or "**paraglider**", including all steps connected to such acts, such as assembly, rigging, inspection, and disassembly of the glider, kiting and other ground handling of the glider, as well as the practicing of and honing of the skills utilized in such acts.

47.   "**PASA**" means the Professional Air Sports Association, Inc.

48.   "**PASA Certified Flight School**" means a "**hang gliding**" and/or "**paragliding**" flight school that is a current, valid, un-revoked, unsuspended, active and unexpired member of "**PASA**" and holds a current, valid, un-revoked, unsuspended, active and unexpired, certification from "**PASA**" as a certified flight school.

49.   "**Per Occurrence**" and "**Each Occurrence**" are interchangeable terms meaning the same thing.

50.   "**Personal and advertising injury**" means injury, including consequential "**bodily injury**", "**arising out of**" one or more of the following offenses:

   **a.**   False arrest, detention or imprisonment;

   **b.**   Malicious prosecution;

   **c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.**   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.**   Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.**   The use of another's advertising idea in an "**Insured's**" "**advertisement**"; or

   **g.**   Infringing upon another's copyright, trade dress or slogan in an "**Insured's**" "**advertisement**".

51.   "**Policy Period**" means the Policy Period indicated on the **Declarations Page** of **This Insurance Policy.**

52.   "**Pollutants**" mean any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid alkalis, chemicals, nuclear materials, radioactive materials, toxic materials, explosive materials, and waste, including any by-products thereof. Waste includes material to be recycled, reconditioned or reclaimed.

53.   "**Products-completed operations hazard**":

   **a.**   Includes all "**bodily injury**" and "**property damage**" that "**arises out of**" "**your products**" if the "**bodily injury**" or "**property damage**" occurs after the "**Insured**" has relinquished possession of those products.

   **b.**   Includes all "**bodily injury**" and "**property damage**" that "**arises out of**" "**your work**" if the "**bodily injury**" or "**property damage**" occurs after the "**Insured**" has completed or abandoned "**your work**".

      **(1)**   "**Your work**" will be deemed completed at the earliest of the following times:

         **(i)**   When all of the work called for in the contract for the work has been completed.

         **(ii)**   When all of the work to be done at the job site has been completed if the contract calls for work at more than one job site.

         **(iii)**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

54.   "**Professional Services**" means any act or service requiring specialized knowledge, experience, labor, skill, or training, all actions taken in the course of providing such act or service, and all actions taken incidental to the provision of such act or service.  For example, and not by way of limitation, "**Professional Services**" includes:

   **a.**   Training of pilots, instructors, administrators, mentors, examiners, observers, tow technicians, and others in connection with the sport of "**hang gliding**" and/or "**paragliding**"; and

   **b.**   Evaluation of the knowledge, experience, skills, judgment, and proficiency of pilots, instructors, administrators, mentors, examiners, observers, tow technicians and others with respect to the sport of "**hang gliding**" and/or "**paragliding**"; and

   **c.**   Provision of information, suggestions, recommendations, and advice to pilots and others in connection with the sport of "**hang gliding**" and/or "**paragliding**"; and

   **d.**   Provision of or arranging for the provision of "**hang gliders**" and/or "**paragliders**" and related equipment

to pilots and others in connection with the sport of "**hang gliding**" and/or "**paragliding**"; and

**e.**     Provision of or arranging for the provision of "**hang gliding**" and/or "**paragliding**" tow services; and

**f.**     Acts and services that comprise the "**Hang gliding and paragliding professional liability hazard**".

**55.**     "**Property damage**" means:

**a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "**occurrence**" that caused it

For the purposes of this insurance, data is not tangible property.

As used in this definition, "data" means:

**(1)**     Information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, Compact Discs, Digital Video Discs, tapes, drives, solid state devices, cell phones, biological cells, data processing devices or any other media which are used with electronically controlled equipment; and

**(2)**     Information, facts or programs stored as or on, created or used on, or transmitted to or from any non-electronic means, including, but not limited to, handwritten or printed data on paper.

**56.**     "**Propulsion Device**" means a self-contained device that attaches to either a non-motorized "**ultralight vehicle**" or to the pilot of such vehicle in order to provide propulsion of the vehicle through the air.

**57.**     "**Punitive or exemplary damages**" means damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any other purpose other than as compensatory damages for "**bodily injury**" or "**property damage**". "Punitive or exemplary damages" include fines, statutory penalties, sanctions, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award of damages, as well as the return or restitution of legal fees, costs, and expenses.

**58.**     "**Recreational Professional**" means an individual who provides "**Professional Services**" relating to "**hang gliding**" and/or "**paragliding**" and who is not at the time of an "**Occurrence**" a "**For Hire Professional**", and has not, in the twelve (12) months preceding the "**Occurrence**", performed any of the activities that would cause the individual to be a "**For Hire Professional**" as defined in these **Definitions**.   An individual who is under an obligation to provide "**Professional Services**" relating to "**hang gliding**" and/or "**paragliding**" in the future under a "**For Hire**" arrangement made in the past, is not a "**Recreational Professional**" even if it has been more than twelve (12) months since that "**For Hire**" arrangement was made.

**59.**     "**Scheduled Auto**" means an "**auto**" that is, as of the time of the "**occurrence**" giving rise to the"**bodily injury**" or "**property damage**":

**a.**     scheduled on a liability insurance policy issued by **Recreation Risk Retention Group** to the "**First Named Insured**" or to a "**PASA Certified Flight School**" for usage in tow launching "**hang gliders**" and/or "**paragliders**"; and

**b.**     being operated by a person authorized to operate the "**auto**" under such schedule; and

**c.**     being operated within all of the restrictions on its operation under such schedule.

**60.**     "**Scheduled Light-Sport Aircraft**" means a "**Light-Sport Aircraft**" that is, as of the time of the "**occurrence**" giving rise to the"**bodily injury**" or "**property damage**":

**a.**     scheduled on a liability insurance policy issued by **Recreation Risk Retention Group** to the "**First Named Insured**" or to a "**PASA Certified Flight School**" for usage in tow launching "**hang gliders**" and/or "**paragliders**"; and

**b.**     being operated by a person authorized to operate the "**Light-Sport Aircraft**" under such schedule; and

**c.**     being operated within all of the restrictions on its operation under such schedule.

**61.**     "**Scheduled Powered Ultralight Vehicle**" means a powered "**ultralight vehicle**"  that is, as of the time of the "**occurrence**" giving rise to the"**bodily injury**" or "**property damage**":

**a.**     scheduled on a liability insurance policy issued by **Recreation Risk Retention Group** to the "**First Named Insured**" or to a "**PASA Certified Flight School**" for usage in tow launching "**hang gliders**" and/or "**paragliders**"; and

**b.**     being operated by a person authorized to operate the powered "**ultralight vehicle**" under such schedule; and

**c.**    being operated within all of the restrictions on its operation under such schedule.

**62.**    "**Scheduled Tow Device**" means a device utilized to tow launch a "**hang glider**" and/or "**paraglider**" that is, as of the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**":

**a.**    scheduled on a liability insurance policy issued by **Recreation Risk Retention Group** to the "**First Named Insured**" or to a "**PASA Certified Flight School**" for usage in tow launching "**hang gliders**" and/or "**paragliders**"; and

**b.**    being operated by a person authorized to operate the tow device under such schedule; and

**c.**    being operated within all of the restrictions on its operation under such schedule.

**63.**    "**Scheduled Watercraft**" means a watercraft that is, as of the time of the "**occurrence**" giving rise to the "**bodily injury**" or "**property damage**":

**a.**    scheduled on a liability insurance policy issued by **Recreation Risk Retention Group** to the "**First Named Insured**" or to a "**PASA Certified Flight School**" for usage in tow launching "**hang gliders**" and/or "**paragliders**"; and

**b.**    being operated by a person authorized to operate the watercraft under such schedule; and

**c.**    being operated within all of the restrictions on its operation under such schedule.

**64.**    "**Self-insured retention**" means the amount set forth in the "**Declarations**" that the "**Insured**" is required to pay with respect to each and every "**occurrence**" as "**damages**" and/or "**defense costs**" that would otherwise be covered under "**This Insurance Policy**".  "**Your risk retention group**'s" obligation to pay any portion of "**damages**" and/or "**defense costs**" does not arise, and no payment by "**Us**" is due, unless and until the "**Insured**" pays 100% of the "**self-insured retention**".

**65.**    "**Speed wing**" means a small, high performance "**paraglider**", specifically designed to fly fast hill descents, labeled by the manufacturer as suitable for speed flying, speed gliding, ski gliding, speed riding or similar terms.  Any "**paraglider**" while being operated with a "**wing loading**" of any amount equal to or greater than 6.80 is a "**speed wing**" regardless of manufacturer labeling.

**66.**    "**Student**" means a person who has enrolled with either

**a.**    the "**USHPA Ultralight Vehicle Professional**"; or

**b.**    a "**hang gliding**" and/or "**paragliding**" flight school for whom the "**USHPA Ultralight Vehicle Professional**" works (whether as an "**employee**", "**temporary worker**", "**leased worker**", "**volunteer worker**", or other agent),

to take a pre-defined course of instruction in sport of "**hang gliding**" and/or "**paragliding**" and has, at the time of the "**occurrence**" giving rise to a "**claim**", begun receiving instruction from the "**USHPA Ultralight Vehicle Professional**".

**67.**    "**Suit**" means a civil proceeding in which "**damages**" because of "**bodily injury**" or "**property damage**" to which this insurance applies are alleged.

**a.**    "**Suit**" includes:

**(1)**    An arbitration proceeding in which such "**damages**" are claimed and to which the "**Insured**" must submit or does submit with "**Our**" consent; or

**(2)**    Any other alternative dispute resolution proceeding in which such "**damages**" are claimed and to which the "**Insured**" submits with "**Our**" consent.

**b.**    "**Suit**" does not include:

**(1)**    Criminal investigations, proceedings or prosecutions;

**(2)**    Regulatory investigations, proceedings or prosecutions;

**(3)**    Administrative investigations, proceedings or prosecutions; or

**(4)**    Investigations, proceedings or prosecutions conducted by "**USHPA**" or any other organizations with whom any **Insured** holds, or has ever held, a membership, or from whom any **Insured** has ever received a pilot proficiency rating, a certification, an appointment, an official position, or other designation.

**68.**    "**Tandem Paraglider**" means a "**paraglider**" with traditional paragliding characteristics, labeled by its manufacturer as suitable for tandem operations, while being operated with a "**wing loading**" of less than 5.5. "**Tandem Paraglider**" does not include any "**paraglider**" labeled by its manufacturer as a mini wing, miniwing, mini-wing, mini-paraglider, or similar terms, or labeled by its manufacturer as suitable for speed flying, speed gliding, ski gliding, speed riding or similar terms.

**69.**    "**Temporary worker**" means a person who is furnished to an "**Insured**" to substitute for a permanent

"**employee**" of the "**Insured**" on leave or to meet seasonal or short-term workload conditions.

70.     "**Ultralight Vehicle**" means ultralight vehicle as the term ultralight vehicle is defined by Federal Aviation Regulations, Part 103, Section 103.1 or a vehicle that is exempted from compliance from one or more of subsections (a), (b), (c), or (d) of Section 103.1 by one or more exemptions granted to "**USPHA**" by the Federal Aviation Administration.

71.     "**USHPA**" means the United States Hang Gliding and Paragliding Association, Inc.

72.     "**USHPA Appointed Administrator**" means an individual who is qualified to be appointed and has been validly appointed by "**USHPA**" under the "**USHPA Standard Operating Procedures**" to the position of an Instructor Administrator, and/or Tandem Administrator under "**USHPA's**" Pilot Proficiency Program, and whose appointment(s) is current, valid, un-revoked, unsuspended, active and unexpired.

For purposes of this definition:

a.      An individual is not qualified to be appointed unless and until that individual has actually completed all prerequisites for that appointment as listed in the "**USHPA Standard Operating Procedures**" and any other regulations of **USHPA**, including, but not limited to, requirements that the individual attend training clinics, hold particular **USHPA** Flight Proficiency Ratings, have taken and passed written and/oral tests, have prepared and submitted to **USHPA** the curriculum and/or syllabus that is actually utilized by the individual, successfully demonstrate skills, successfully demonstrate knowledge, be current and have proof of currency, etc...

b.      An individual is not validly appointed unless and until the person administering that appointment has completed all steps required to make the appointment.

c.      Fraud by the individual to be appointed or by the person administering the appointment makes any such appointment invalid, even if **USHPA** has not discovered the fraud, or having knowledge of the fraud has taken no action against the individual or the person administering the appointment.

73.     "**USHPA Appointed Examiner**" means an individual who is qualified to be appointed and has been validly appointed by "**USHPA**" under the "**USHPA Standard Operating Procedures**" to the position of an Examiner and/or Towing Examiner under "**USHPA's**" Pilot Proficiency Program, and whose appointment is current, valid, un-revoked, unsuspended, active and unexpired.

For purposes of this definition:

a.      An individual is not qualified to be appointed unless and until that individual has actually completed all prerequisites for that appointment as listed in the "**USHPA Standard Operating Procedures**" and any other regulations of **USHPA**, including, but not limited to, requirements that the individual attend training clinics, hold particular **USHPA** Flight Proficiency Ratings, have taken and passed written and/oral tests, have prepared and submitted to **USHPA** the curriculum and/or syllabus that is actually utilized by the individual, successfully demonstrate skills, successfully demonstrate knowledge, be current and have proof of currency, etc...

b.      An individual is not validly appointed unless and until the person administering that appointment has completed all steps required to make the appointment.

c.      Fraud by the individual to be appointed or by the person administering the appointment makes any such appointment invalid, even if **USHPA** has not discovered the fraud, or having knowledge of the fraud has taken no action against the individual or the person administering the appointment.

74.     "**USHPA Appointed Mentor**" means an individual who is qualified to be appointed and has been validly appointed by "**USHPA**" under the "**USHPA Standard Operating Procedures**" to the position of a **Mentor** under "**USHPA's**" Pilot Proficiency Program, and whose appointment is current, valid, un-revoked, unsuspended, active and unexpired.

For purposes of this definition:

a.      An individual is not qualified to be appointed unless and until that individual has actually completed all prerequisites for that appointment as listed in the "**USHPA Standard Operating Procedures**" and any other regulations of **USHPA**, including, but not limited to, requirements that the individual attend training clinics, hold particular **USHPA** Flight Proficiency Ratings, have taken and passed written and/oral tests, have prepared and submitted to **USHPA** the curriculum and/or syllabus that is actually utilized by the individual, successfully demonstrate skills, successfully demonstrate knowledge, be current and have proof of currency, etc...

b.      An individual is not validly appointed unless and until the person administering that appointment has completed all steps required to make the appointment.

c.      Fraud by the individual to be appointed or by the person administering the appointment makes any such appointment invalid, even if **USHPA** has not discovered the fraud, or having knowledge of the

fraud has taken no action against the individual or the person administering the appointment.

**75.** "**USHPA Appointed Observer**" means an individual who is qualified to be appointed and has been validly appointed by the "**USHPA**" under the "**USHPA Standard Operating Procedures**" to the position of an Observer and/or Towing Observer under "**USHPA'**'s Pilot Proficiency Program, and whose appointment is current, valid, un-revoked, unsuspended, active and unexpired.

For purposes of this definition:

**a.** An individual is not qualified to be appointed unless and until that individual has actually completed all prerequisites for that appointment as listed in the "**USHPA Standard Operating Procedures**" and any other regulations of **USHPA**, including, but not limited to, requirements that the individual attend training clinics, hold particular **USHPA** Flight Proficiency Ratings, have taken and passed written and/or oral tests, have prepared and submitted to **USHPA** the curriculum and/or syllabus that is actually utilized by the individual, successfully demonstrate skills, successfully demonstrate knowledge, be current and have proof of currency, etc...

**b.** An individual is not validly appointed unless and until the person administering that appointment has completed all steps required to make the appointment.

**c.** Fraud by the individual to be appointed or by the person administering the appointment makes any such appointment invalid, even if **USHPA** has not discovered the fraud, or having knowledge of the fraud has taken no action against the individual or the person administering the appointment.

**76.** "**USHPA Authorized Activity**" means:

**a.** For a "**USHPA Appointed Administrator**", the duties of that Administrator as set forth in the "**USHPA Standard Operating Procedures**";

**b.** For a "**USHPA Appointed Examiner**", the duties of that Examiner as set forth in the "**USHPA Standard Operating Procedures**";

**c.** For a "**USHPA Appointed Mentor**", the duties of that Mentor as set forth in the "**USHPA Standard Operating Procedures**";

**d.** For a "**USHPA Appointed Observer**", the duties of that Observer as set forth in the "**USHPA Standard Operating Procedures**";

**e.** For a "**USHPA Certified TECH**", the duties of that TECH as set forth in the "**USHPA Standard Operating Procedures**";

**f.** For a "**USHPA Certified Instructor**", the duties of that Instructor as set forth in the "**USHPA Standard Operating Procedures**";

**77.** "**USHPA Certified Instructor**" means an individual who is qualified to be certified and has been validly certified by "**USHPA**" under the "**USHPA Standard Operating Procedures**" as a Basic Instructor, Advanced Instructor, Mini-Wing Instructor, Speed Fly Instructor and/or Tandem Instructor, and whose certification is current, valid, un-revoked, unsuspended, active and unexpired.

For purposes of this definition:

**a.** An individual is not qualified to be certified unless and until that individual has actually completed all prerequisites for that certification as listed in the "**USHPA Standard Operating Procedures**" and any other regulations of **USHPA**, including, but not limited to, requirements that the individual attend training clinics, hold particular **USHPA** Flight Proficiency Ratings, have taken and passed written and/or oral tests, have prepared and submitted to **USHPA** the curriculum and/or syllabus that is actually utilized by the individual, successfully demonstrate skills, successfully demonstrate knowledge, be current and have proof of currency, etc...

**b.** An individual is not validly certified unless and until the person administering that certification has completed all steps required to make the certification.

**c.** Fraud by the individual to be certified or by the person administering the certification makes any such certification invalid, even if **USHPA** has not discovered the fraud, or having knowledge of the fraud has taken no action against the individual or the person administering the certification.

**78.** "**USHPA Certified TECH**" means an individual who is qualified to be certified and has been validly certified by "**USHPA**" under the "**USHPA Standard Operating Procedures**" as a TECH, and whose certification is current, valid, un-revoked, unsuspended, active and unexpired.

For purposes of this definition:

**a.** An individual is not qualified to be certified unless and until that individual has actually completed all prerequisites for that certification as listed in the "**USHPA Standard Operating Procedures**" and any

other regulations of **USHPA**, including, but not limited to, requirements that the individual attend training clinics, hold particular **USHPA** Flight Proficiency Ratings, have taken and passed written and/oral tests, have prepared and submitted to **USHPA** the curriculum and/or syllabus that is actually utilized by the individual, successfully demonstrate skills, successfully demonstrate knowledge, be current and have proof of currency, etc...

 **b.** An individual is not validly certified unless and until the person administering that certification has completed all steps required to make the certification.

 **c.** Fraud by the individual to be certified or by the person administering the certification makes any such certification invalid, even if **USHPA** has not discovered the fraud, or having knowledge of the fraud has taken no action against the individual or the person administering the certification.

**79.** "**USHPA Member**" means Pilot Members, Rogallo Members, Limited Life Members, and Temporary Affiliate/Student Members of the United States Hang Gliding and Paragliding Association, Inc., as those terms are defined in the bylaws of the United States Hang Gliding and Paragliding Association, Inc., in effect as of the date of inception of "**This Insurance Policy**".

**80.** "**USHPA Standard Operating Procedures**" means the standard operating procedures adopted and published by "**USHPA**".

**81.** "**USHPA Ultralight Vehicle Professional**" means an individual who:

 **a.** is a Rogallo Member (as that term is defined in the bylaws of the United States Hang Gliding and Paragliding Association, Inc., in effect as of the date of inception of "**This Insurance Policy**") in good standing of the "**First Named Insured**"; and

 **b.** holds a current, valid, un-revoked, unsuspended, active, unexpired certification or appointment as a "**USHPA Certified Instructor**", a "**USHPA Appointed Administrator**", a "**USHPA Appointed Mentor**", a "**USHPA Appointed Examiner**", "**USHPA Certified TECH**", or a "**USHPA Appointed Observer**" issued by the "**First Named Insured**"; and

 **c.** is conducting "**USHPA Authorized Activities**" within the scope of the individual's authorized duties as a "**USHPA Certified Instructor**", a "**USHPA Appointed Administrator**", a "**USHPA Appointed Mentor**", a "**USHPA Appointed Examiner**",  "**USHPA Certified TECH**", or a "**USHPA Appointed Observer**", and the "**occurrence**" "**arises out of**" such activities; and

 **d.** is not an "**Excluded Individual**".

For purposes of this definition, an individual's Appointment or Certification by **USHPA** is not valid where:

 **(A)** the individual is not qualified to be appointed or certified.  An individual is not qualified to be appointed or certified unless and until that individual has actually completed all prerequisites for that appointment or certification as listed in the "**USHPA Standard Operating Procedures**" and any other regulations of **USHPA**, including, but not limited to, requirements that the individual attend training clinics, hold particular **USHPA** Flight Proficiency Ratings, have taken and passed written and/oral tests, have prepared and submitted to **USHPA** the curriculum and/or syllabus that is actually utilized by the individual, successfully demonstrate skills, successfully demonstrate knowledge, be current and have proof of currency, etc... ; or

 **(B)** the appointment or certification was not performed properly.  An individual is not validly appointed or certified unless and until the person administering that appointment or certification has completed all steps required to make the appointment or certification; or

 **(C)** there was fraud in connection with the appointment or certification.  Fraud by the individual to be appointed or certified, or fraud by the person administering the appointment or certification makes any such appointment or certification invalid, even if **USHPA** has not discovered the fraud, or having knowledge of the fraud has taken no action against the individual or the person administering the appointment or certification.

**82.** "**Volunteer worker**" means a person who is not any "**Insureds**'" "**employee**", and who donates his or her work and acts at the direction of and within the scope of duties determined by any "**Insured**", and is not paid a fee, salary or other compensation by any "**Insured**" or anyone else for their work performed for the "**Insured**".

**83.** "**Watercraft Liability Hazard**" includes all "**bodily injury**" and "**property damage**" that "**arises out of**" the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any watercraft that is not a "**Scheduled Watercraft**".

**84.** "**Wing loading**" for a "**paraglider**" means the in-flight weight of the occupant(s) (including their clothing, harness, reserve, gear, ballast, and anything else connected to the occupant(s)), and anything else connected to the "**paraglider**" (measured in kilograms) divided by the Flat Area of the "**paraglider**" (measured in square meters).

**85.** **"Your product"**

    **a.**    means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(i)**    Any "**Insured**";

            **(ii)**    Others trading under any **Insureds'** name, or

            **(iii)**    A person or organization whose business or assets any "**Insured**" has acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such good or products.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "**your product**"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**86.** **"Your work"**

    **a.**    Means:

        **(1)**    Work or operations performed by any "**Insured**" or on any **Insureds'** behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "**your work**"; and

        **(2)**    The providing of or failure to provide warnings or instructions; and

        **(3)**    claims of faulty, incomplete or deficient workmanship, regardless of whether such damage occurs or is discovered after that work has been completed.

## SECTION III - SELF-INSURED RETENTION

**1.**    "**This Insurance Policy**" has a "**self-insured retention**".  The amount of the "**self-insured retention**" is different under each different Coverage Part A, B and C.  The "**self-insured retention**" amounts for each Coverage Part are as stated in the "**Declarations**".

**2.**    The "**self-insured retention**" under each Coverage Part applies only once for each "**occurrence**" under that Coverage Part, no matter how many "**claims**" might be made under that Coverage Part for injuries "**arising out of**" that one "**occurrence**".

**4.**    The "**self-insured retention**" under each separate Coverage Part applies separately, and must be paid separately, to claims made under each separate Coverage Part, even if those claims "**arise out of**" the same "**occurrence**".  The payment of any amount of the "**self-insured retention**" under one Coverage Part does not reduce the amount of the "**self-insured retention**" which must be paid under a different Coverage Part.

**5.**    The "**Insured**"(s) under each separate Coverage Part must pay "**defense costs**", **SUPPLEMENTARY PAYMENTS** and/or "**damages**" in an amount equal to 100% of the "**self-insured retention**" applicable to that Coverage Part before "**We**" have any duty to pay any "**defense costs**", **SUPPLEMENTARY PAYMENTS** and/or "**damages**" under that Coverage Part.

**6.**    "**We**" have the absolute right, but not the duty, to assume the investigation, negotiation, defense, and/or settlement of any "**occurrence**", "**claim**", or "**suit**" under any of the Coverage Parts even before the "**self-insured retention**" has been paid under that Coverage Part.   "**Our**" assumption of the investigation, negotiation, defense and/or settlement under a Coverage Part does not relieve the "**Insured**" under that Coverage Part of the obligation to timely pay the "**self-insured retention**" applicable to that Coverage Part.

**7.**    "**We**" have the absolute right, in "**Our**" sole and exclusive discretion, and without the consent of any "**Insured**", to agree to pay all or a portion of "**defense costs**" and/or "**damages**", under any Coverage Part by payment of the "**self-insured retention**" applicable to that Coverage Part in whole or in part by the "**Insured**" against whom the claim has been brought.

**8.**    "**We**" have the absolute right, in "**Our**" sole and exclusive discretion, and without the consent of any "**Insured**", to agree to settle a "**claim**" or "**suit**" by payment of any amount within the policy limits of any Coverage Part

applicable to the "**claim**" or "**suit**". All **Insureds** are bound by such a settlement whether or not they consent to such settlement.

    **a.**    "**We**" may withdraw from and cancel such a settlement agreement if the "**Insured(s)**", for any reason, fail to timely pay the "**self-insured retention**".

    **b.**    If such a settlement is not concluded because the "**Insured(s)**" failed, for whatever reason, to pay the "**self-insured retention**" in a timely manner, then the total amount "**We**" are liable to pay in "**defense costs**" and "**damages**" in connection with such a "**claim**" or "**suit**" under any and all Coverage Parts from that point forward is the amount of the failed settlement, less the amount of the "**self-insured retention**" that the "**Insured(s)**" failed to pay.

**9.**    "**We**" have the absolute right to select the investigators, defense counsel, experts, and all other personnel and service providers to be retained to investigate any "**occurrence**", adjust any "**claim**" made against an "**Insured**", and defend (including the appeal) of any "**suit**" against an "**Insured**" (the "**defense personnel**"). The "**Insured(s)**" subject to the "**claim**" and/or "**suit**" will pay the fees and billings of the "**defense personnel**" that "**We**" select in satisfaction of the "**self-insured retention**". Unless and until the "**Insured**" actually pays the "**self-insured retention**" amount to "**Us**" or directly to "**Our**" selected "**defense personnel**", "**We**" have no duty to continue the investigation, negotiation, defense, and/or settlement of the "**occurrence**", "**claim**", or "**suit**" nor to incur or pay any "**defense costs**" and/or "**damages**".

    **a.**    "**We**" may, but are not required, to advance the payment of costs and fees of "**Our**" selected "**defense personnel**" on behalf of the "**Insured(s)**" subject to the "**claim**" and/or "**suit**" to the extent of the "**self-insured retention**". If "**We**" choose to make such an advance, the "**Insured(s)**" subject to the "**claim**" and/or "**suit**" will reimburse "**Our**" advance payment within 15 calendar days of "**Our**" written request for reimbursement, and the reimbursement, when received by "**Us**", shall constitute a payment by the "**Insured(s)**" of the portion of the "**self-insured retention**" in the amount of the reimbursement received by "**Us**". Unless and until the "**Insured(s)**" subject to the "**claim**" and/or "**suit**" fully reimburses "**Us**" for the advance, "**We**" have no duty to continue the investigation, negotiation, defense, and/or settlement of the "**occurrence**", "**claim**", or "**suit**" nor to pay for "**defense costs**" and/or "**damages**".

    **b.**    In the event that the "**Insured(s)**" subject to the "**claim**" and/or "**suit**" fails to reimburse "**Us**" for the advanced payment of costs and fees of "**Our**" selected "**defense personnel**" within the required 15 days, "**We**" may recover from the "**Insured(s)**" subject to the "**claim**" and/or "**suit**", not only the amount of the advance payment, but also "**Our**" collection costs, reasonable attorneys fees, court costs and interest at the legal rate applicable to judgments in the jurisdiction where the "**Insured(s)**" subject to the "**claim**" and/or "**suit**" has his/her principal residence, to the fullest extent allowed by law.

**10.**    The failure of the "**Insured(s)**" subject to the "**claim**" and/or "**suit**" to timely pay any "**self-insured retention**" in whole or in part, shall be treated the same as a failure to pay any policy premium when due and "**We**" will have the same remedies as "**We**" would have in the event of a failure to pay premium when due, including cancellation of the insurance policy. "**We**" also have the right to amend the "**Excluded Individuals**" "**endorsement**" to include the defaulting "**USHPA Ultralight Vehicle Professional**" "**Insured**" effective as of the date that the "**USHPA Ultralight Vehicle Professional**" "**Insured**" defaulted on payment of the "**self-insured retention**".

**11.**    Any cancellation of the insurance policy shall not relieve the "**Insured(s)**" subject to the "**claim**" and/or "**suit**" of its duty and obligation to pay the "**self-insured retention**" amount. Any endorsement of the "**USHPA Ultralight Vehicle Professional**" "**Insured**" as an "**Excluded Individual**" on the insurance policy shall not relieve the "**Insured(s)**" subject to the "**claim**" and/or "**suit**" of its duty and obligation to pay the "**self-insured retention**" amount.

**12.**    This insurance shall not apply to any liability against any "**Insured**" "**arising out of**" an "**occurrence**" that takes place while such "**Insured is**" in default on its obligation to pay "**self-insured retention**".

13.    The unreimbursed advance payment by "**Us**" of "**defense costs**", **SUPPLEMENTARY PAYMENTS**, and/or "**damages**" that are subject to any "**self-insured retention**" reduces all of the applicable limits of insurance. "**We**" have no obligation to advance the payment of "**defense costs**", **SUPPLEMENTARY PAYMENTS**, and/or "**damages**" that are subject to any "**self-insured retention.**"

## SECTION IV – LIMITS OF INSURANCE

**1.**    The categories of Limits of Insurance shown in the "**Declarations**" are:

    a.    **General Aggregate Limit;**

    b.    **Each Occurrence Aggregate Limit;**

    c.    **Recreational Professional Liability Occurrence Limit;**

    **d.**    **For Hire Professional Liability Occurrence Limit; and**

    **e.**    **Association Professional Liability Occurrence Limit.**

**2.**    The Limits of Insurance shown in the **"Declarations"** and the rules below fix the most **"We"** will pay regardless of the number of:

    **a.**    Insureds;

    **b.**    **"Claims"** made or "**suits**" brought; or

    **c.**    Persons or organizations making "**claims**" or bringing "**suits**".

**3.**    **As stated above, "defense costs" and SUPPLEMENTARY PAYMENTS both reduce the Limits of Insurance shown in the Declarations**.  We will not pay any further "**defense costs**" or SUPPLEMENTARY PAYMENTS once:

    a.    the applicable Limit of Insurance (as reduced by the payment of "**defense costs**" and SUPPLEMENTARY **PAYMENTS**) has been been paid under the rules fixed below; or

    b.    the applicable Limit of Insurance has been reduced to Zero ($0) by the payment of "defense costs" and/or SUPPLEMENTARY PAYMENTS.

**4.**    The **General Aggregate Limit** is the most **"We"** will pay for the sum of:

    **a.**    "**Damages**" under **Coverage A**; and

    **b.**    "**Damages**" under **Coverage B; and**

    **c.**    "**Damages**" under **Coverage C**.

**5.**    Subject to 4. above, the **Each Occurrence Aggregate Limit** is the most **"We"** will pay for the sum of:

    **a.**    "**Damages**" under **Coverage A; and**

    **b.**    "**Damages**" under **Coverage B**; and

    **c.**    "**Damages**" under **Coverage C**,

because of all "**bodily injury**" and "**property damage**" "**arising out of**" any one "**occurrence**".

The **Each Occurrence Aggregate Limit** is a part of and not in addition to the **General Aggregate Limit**.

**6.**    Subject to 4. and 5. above, the **Recreational Professional Liability Occurrence Limit** is the most **"We"** will pay for "**Damages**" for any one "**occurrence**" under Coverage **A**.

The **Recreational Professional Liability Occurrence Limit** is a part of and not in addition to the **Each Occurrence Aggregate Limit**.

The **Recreational Professional Liability Occurrence Limit** is a part of and not in addition to the **General Aggregate Limit**.

**7.**    Subject to 4**. and 5.** above, the **For Hire Professional Liability Occurrence Limit** is the most **"We"** will pay for "**Damages**" for any one "**occurrence**" under Coverage **B**.

The **For Hire Professional Liability Occurrence Limit** is a part of and not in addition to the **Each Occurrence Aggregate Limit**.

The **For Hire Professional Liability Occurrence Limit** is a part of and not in addition to the **General Aggregate Limit**.

**8.**    Subject to 4**.** and 5**.** above, the **Association Professional Liability Occurrence Limit** is the most **"We"** will pay for "**Damages**" for any one "**occurrence**" under Coverage **C**.

The **Association Professional Liability Limit** is a part of and not in addition to the **Each Occurrence Aggregate Limit**.

The **Association Professional Liability Limit** is a part of and not in addition to the **General Aggregate Limit**.

**9.**    The Limits of Insurance apply separately to each consecutive annual period falling within the term of the "**policy period**" and to any remaining period of less than 12 months, starting with the beginning of the "**policy period**" shown in the **Declarations**, unless the "**policy period**" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**10.**    "**Our**" liability to provide payments of "**defense costs**", "**damages**" and/or SUPPLEMENTARY PAYMENTS under **Coverage A, Coverage B, or Coverage C** for any "**claim**" or "**suit**" under the respective **Coverage Part**, arises only after an "**Insured**" has first paid "**defense costs**", "**damages**" and/or SUPPLEMENTARY PAYMENTS in a total amount equal to the "**self-insured retention**" listed on the "**Declarations**" for the respective **Coverage Part** for all "**claims**" and "**suits**" related to the "**occurrence**" giving rise to the "**claim**" or "**suit**".

**SECTION V – WHO IS AN INSURED**

1.  Under **COVERAGE A – PROFESSIONAL LIABILITY FOR "RECREATIONAL PROFESSIONALS"** each **"USHPA Ultralight Vehicle Professional"** is an **"Insured"**, but only where:

    a.  the **"USHPA Ultralight Vehicle Professional"** is a **"Recreational Professional"**.

2.  Under **COVERAGE B – PROFESSIONAL LIABILITY FOR "FOR HIRE PROFESSIONALS"** each **"USHPA Ultralight Vehicle Professional"** is an **"Insured"**, but only where:

    a.  the **"USHPA Ultralight Vehicle Professional"** is a **"For Hire Professional"**; and

    b.  the **"USHPA Ultralight Vehicle Professional"** is engaged in a "**covered activity**" as an "**employee**", "**temporary worker**", "**leased worker**", "**volunteer worker**", or other agent, of a **"PASA Certified Flight School"**; and

    c.  the **"USHPA Ultralight Vehicle Professional's"** participation in the "**covered activity**" is as designated and authorized by the **"PASA Certified Flight School"** for which the **"USHPA Ultralight Vehicle Professional"** is working (whether as an "employee", "temporary worker", "leased worker", "volunteer worker", or other agent), in providing a particular pre-defined service to a customer of that **"PASA Certified Flight School"**.

3.  Under **COVERAGE C – ASSOCIATION PROFESSIONAL LIABILITY** the **"First Named Insured"** is an **"Insured"**. In addition to the **"First Named Insured"**, the following are also Insureds under Coverage Part C:

    a.  the **"First Named Insured's"**:

    (1)  "**Executive officers**" and directors, but only with respect to their duties as the **"First Named Insured's"** officers or directors; and

    (2)  "**Employees**", other than the **"First Named Insured's"** "**executive officers**", but only for acts within the scope of their employment by the **"First Named Insured"** ;

    However, none of these "**executive officers**", directors or "**employees**" (collectively referred to as "USHPA Representatives", each referred to as a "**USHPA Representative**") is an **"Insured"** for:

    (A)  "**Bodily injury**":

    (i)  To any **"Insured";** or

    (ii)  To any of the **USHPA Representatives** while that **USHPA Representative** is either in the course of his or her employment with the **"First Named Insured"** or performing duties related to the conduct of the **"First Named Insured's"** business;  or

    (iii)  To the spouse, domestic partner, child, parent, brother, sister or other relative of any **USHPA Representative** as a consequence of an injury specified in Paragraphs 3. a. (A) (i) or (ii) above; or

    (iv)  For which there is any obligation to share **"damages"** with or repay someone else who must pay **"damages"** because of the injury descried in Paragraphs 3. a. (A) (i), (ii) or (iii) above; or

    (v)  "**Arising out of**" his or her providing or failing to provide professional health care services.

    (B)  "**Property damage**" to property:

    (i)  Owned, occupied or used by,

    (ii)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    the **"First Named Insured"**, any of the **USHPA Representatives**, or any other **"Insured"**.

4.  Notwithstanding paragraphs 1, 2, and 3 of this **SECTION V**, no **"Excluded Individual"** is an Insured under **Coverage A, Coverage B, or Coverage C** of **This Insurance Policy.**

**SECTION VI – CONDITIONS**

1.  **Bankruptcy or Insolvency**

    Bankruptcy or insolvency of the **"Insured"** or of the **"Insured's"** estate will not relieve **"Us"** of **"Our"** obligations under **"This Insurance Policy"**.

2.  **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a.  As a condition precedent to coverage under **"This Insurance Policy"**, the **"Insured"** must see to it that **"We"** are notified in writing as soon as practicable of an **"occurrence"** or an offense which may result in a "**claim**" against the **"Insured"**. To the extent possible, notice should include:

    **(1)**    How, when and where the "**occurrence**" or offense took place;

    **(2)**    The names and addresses of any injured persons and witnesses; and

    **(3)**    The nature and location of any injury or damage "**arising out of**" the "**occurrence**" or offense.

**b.**    If a "**claim**" is made or "**suit**" is brought against any "**Insured**", as a condition precedent to coverage under "**This Insurance Policy**" the "**Insured**" must:

    **(1)**    Immediately record the specifics of the "**claim**" or "**suit**" and the date received; and

    **(2)**    Notify "**Us**" in writing as soon as practicable within ten (10) days of being made aware of the "**claim**" or "**suit**".

The "**Insured**" must see to it that "**We**" receive written notice of the "**claim**" or "**suit**" as soon as practicable.

**c.**    Any involved "**Insured**" must:

    **(1)**    Immediately send "**Us**" copies of any demands, notices, summonses or legal papers received in connection with the "**claim**" or "**suit**";

    **(2)**    Authorize "**Us**" to obtain records and other information;

    **(3)**    Cooperate with "**Us**" in all aspects of "**Our**" investigation, defense and settlement of any "**claim**" or "**suit**", submit to examination or questioning, provide written statements regarding the "**claim**", provide sworn statements regarding the "**claim**", attend hearings, depositions and trial, provide documents and information, provide sworn responses to discovery, and assist in obtaining evidence and the attendance of witnesses. If any involved "**Insured**" does not cooperate with "**Us**", "**We**" will have no obligation to indemnify the involved "**Insured**" for any "**damages**" awarded; and

    **(4)**    Assist "**Us**", upon "**Our**" request, in the enforcement of any right against any person or organization which may be liable to the "**Insured**" because of injury or damage to which this insurance may also apply.

**d.**    No "**Insured**" will, except at that "**Insured's**" own cost:

    **(1)**    voluntarily make a payment,

    **(2)**    assume any obligation,

    **(3)**    incur any expense, other than for first aid, or

    **(4)**    enter into an agreement take any action described in **SECTION VI – CONDITIONS, 2. d. (1), (2), or (3)** above

without "**Our**" consent in excess of the applicable "**self-insured retention**" without first obtaining "**Our**" written consent.

**e.**    Notifications under this clause shall be made as follows:

    **(1)**    An oral notice may be made within minutes of the "**occurrence**" by contacting "**Us**" at "**Our**" Incident Hotline: 802-383-1541;

    **(2)**    Written notice **MUST** be delivered by personal deliver, US Mail, Overnight Carrier, or email to:

    Recreation Risk Retention Group, Inc.
    Attn: Incident And Claims Dept.
    27 Main Street, First Floor
    Burlington, VT  05401
    Phone: 802-383-1541
    Email: incidentreports@recreationrrg.com

**NOTE: Because the notice is a condition precedent to coverage, failure to provide notices as set forth above will be considered a failure of a condition to coverage and may at "Our" option render "This Insurance Policy" null and void in relationship to any "accident" or "occurrence" not properly and promptly set forth in notices as called for herein.**

**3.**    **Legal Action Against Us**

**a.**    No person or organization has a right under "**This Insurance Policy**" to:

    **1)**    Join **Recreation Risk Retention Group, Inc.** as a party or otherwise bring it into a "**suit**" seeking "**damages**" from an "**Insured**"; or

    **2)**    Sue **Recreation Risk Retention Group, Inc.**  All disputes, claims or controversies involving **Recreation Risk Retention Group, Inc.** shall be resolved by binding arbitration, pursuant to

the arbitration clause found at **SECTION VI - CONDITIONS, 4. Arbitration Clause,** of "This Insurance Policy".

b.  **Recreation Risk Retention Group, Inc.** shall not be liable for the defense or payment of any amounts (whether or not included in "**defense costs**", "**damages**" or **SUPPLEMENTARY PAYMENTS**) that are not payable under the terms and conditions of **"This Insurance Policy"**.

c.  **Recreation Risk Retention Group, Inc.** shall not be liable for the defense or payment of any amounts (whether or not included in "**defense costs**", "**damages**" or **SUPPLEMENTARY PAYMENTS**) that are in excess of the applicable Limits of Liability available to the **"Insured"** under **"This Insurance Policy"**.

d.  **Recreation Risk Retention Group, Inc.** shall not be liable for the defense or payment of any amount (whether or not included in "**defense costs**", "**damages**" or **SUPPLEMENTARY PAYMENTS**) that the Insured is not required by law to pay to the claimant.  For example, and not by way of limitation, if the Insured and a Claimant have entered into an agreement not to execute against the non-insurance assets of the Insured, Recreation Risk Retention Group, Inc., shall likewise not be subject to payment of any amount.

e.  As conditions precedent to any liability of **Recreation Risk Retention Group, Inc.** for the payment of any "**damages**":

    **1)**   There shall have been full compliance with all of the provisions of **This Insurance Policy**; and

    **2)**   Either:

        **a)**   the amount of the **Insured's** obligation to pay shall have been finally determined by final judgment against the **Insured** after an actual contested arbitration or trial (and only after the exhaustion of all appeals taken) on the merits; or

        **b)**   the amount of the **Insured's** obligation to pay shall have been finally determined by written agreement of the **Insured**, the claimant, and **Recreation Risk Retention Group, Inc.**; or

        **c)**   the amount to be paid on behalf of the **Insured** under **This Insurance Policy** shall have been finally determined by written agreement of the claimant, and **Recreation Risk Retention Group, Inc.**

**4.**    **Arbitration Clause.**

a.  **All Disputes, Claims and Controversies Involving Us Must Be Arbitrated.**

    **(1)**   Any and all disputes, claims or controversies involving **Recreation Risk Retention Group, Inc.** shall be resolved by binding arbitration, whether such disputes, claims or controversies arise between the parties to **This Insurance Policy**, or between **Recreation Risk Retention Group, Inc.** and any person or entity who is not a party to **This Insurance Policy** but is claiming right either under **This Insurance Policy** or against **Recreation Risk Retention Group, Inc.**  This Arbitration Clause is made pursuant to the authority of the Liability Risk Retention Act of 1986 (15 USC 3901 et. seq.) which exempts risk retention groups from most State laws, rules, regulations or orders that would attempt to make unlawful or regulate, directly or indirectly, the operation of a risk retention group.

    **(2)**   The scope of this Arbitration Clause is  intended to, and shall, encompass the widest possible scope of disputes or claims, including any issues

        **(i)**   with respect to any of the terms or provisions of this Policy, or

        **(ii)**   with respect to the performance of any of the parties to the Policy, or

        **(iii)**   with respect to any other issue or matter, whether in contract or tort, or in law or equity.

    **(3)**   All procedures, methods, and rights with respect to the right to compel arbitration pursuant to this Article shall be governed by the Federal Arbitration Act.

    **(4)**   Any person or entity asserting such dispute or claim (the **"Claimant"**) must submit the matter to binding arbitration with JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules, by a single arbitrator in good standing.  In the event of a conflict between the JAMS rules and this Arbitration Clause, the provisions of this Arbitration Clause shall prevail and govern.

    **(5)**   If the **"Claimant"** refuses to arbitrate, then any other party may, by notice as herein provided, require that the dispute be submitted to arbitration within fifteen (15) days.

    **(6)**   Neither the **"Claimant"** nor any other party shall have the right to participate as a member of

any class of claimants, and there shall be no authority for any dispute to be decided on a class action basis.  In addition, an arbitrator can only decide a dispute between the **"Claimant"** and the Company, and may not consolidate or join the claims of other persons who have similar claims.

**(7)**     All procedures, methods, and rights with respect to the right to compel arbitration pursuant to this Article shall be governed by the Federal Arbitration Act.

**(8)**     The arbitration shall be held in Burlington, Vermont.

**(9)**     The laws of the State of Vermont shall apply to any substantive, evidentiary or discovery issues.

**(10)**    Any questions as to arbitrability of any dispute or claim shall be decided by the arbitrator.

**(11)**    If any party seeks a court order compelling arbitration under this provision, the prevailing party in such motion, petition or other proceeding to compel arbitration shall recover all reasonable legal fees and costs incurred thereby and in any subsequent appeal, and in any action to collect the fees and costs.

**(12)**    A judgment shall be entered upon the arbitration award in the U.S. District Court, District of Vermont, or if that court lacks jurisdiction, then in the Superior Court of Vermont, County of Chittenden.

**5.** **Other Insurance**

If other valid and collectible insurance is available to the **"Insured"** for a loss **"We"** cover under **Coverages A, B or C** of **"This Insurance Policy"**, **"Our"** obligations are limited as follows:

**a.** **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, **"Our"** obligations are not affected unless any of the other insurance is also primary. Then, **"We"** will share with all that other insurance by the method described in c. below.

**b.** **Excess insurance**

This insurance is excess over:

**(1)**     Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)**      That is insurance not issued by **"Us"**, and covers liability **"arising out of"** the ownership, maintenance, use or entrustment to others of any **aircraft**, **"auto"** or watercraft; or

**(ii)**     That is insurance, whether or not issued by **"Us"**, covering any "USHPA **Ultralight Vehicle Professional**" for acts or omissions **"arising out of"** the "**Hang gliding and paragliding professional liability hazard**"; or

**(iii)**    That is insurance not issued by **"Us"**, and covers liability **"arising out of"** any of the "**covered activities**".

**(2)**     Any other primary insurance available to any **"Insured"** covering liability for **"damages"** **"arising out of"** the "**Hang gliding and paragliding professional liability hazard**", for which the **"Insured"** has been added as an additional insured by attachment of an **"endorsement"**.

When this insurance is excess, **"We"** will have no duty under **Coverages A, B or C** to defend the **"Insured"** against any "**suit**". If no other insurer defends, **"We"** will undertake to do so, but **"We"** will be entitled to the **"Insured's"** rights against all those other insurers.

When this insurance is excess over other insurance, **"We"** will pay only **"Our"** share of the amount of the loss, if any, that exceeds the sum of:

**(1)**     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)**     The total of all deductible and self-insured amounts under all that other insurance.

**"We"** will share the remaining loss, if any, with any other valid and collectible insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the **"Declarations"** of **"This Insurance Policy"**.

**c.** **Method Of Sharing**

**(1)**     If all of the other valid and collectible insurance permits contribution by equal shares, **"We"** will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. Once any insurer has contributed its limit of insurance, the contribution shall be adjusted to be

equal shares of the remaining insurers.

**(2)**     If any of the other valid and collectible insurance does not permit contribution by equal shares, **"We"** will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of valid and collectible insurance of all insurers.

**d.     Pyramiding of Limits**

**(1)     Non-Pyramiding of Limits**

Except as specifically set forth in subsections (2) and (3) below, in the event that **"This Insurance Policy"** and any other insurance policy(ies) issued by **Recreation Risk Retention Group, Inc.** apply to the same **"occurrence"**, the total applicable Limit of Liability shall never exceed the single largest Limit of Liability under any one of those insurance policies.  Any **self-insured retention** and any **Deductible** for each applicable insurance policy issued by **Recreation Risk Retention Group, Inc.** shall be applied to the portion of any **"claim"** or **"suit"** **"arising out of"** the same **"occurrence"** that is allocated to the respective **"Insured"**.

**(2)     Exception Rule: Pyramiding of Limits with Flight School Policy to Maximum of $500,000**

Where both **"This Insurance Policy"** and a Flight School Policy issued by **Recreation Risk Retention Group, Inc.** to a Flight School ("**Flight School Policy**") apply to **"claims"** or **"suits"** against one or more of the same **"USHPA Ultralight Vehicle Professional(s)"** as a result of the same **"occurrence"**:

**(i)**     This insurance is excess and the **Flight School Policy** is primary but only insofar as the **"claims"** or **"suits"** are against the **"USHPA Ultralight Vehicle Professional(s)"**;

**(ii)**     The maximum Limit of Liability of **"This Insurance Policy"** for all **"claims"** or **"suits"** against the same **"USHPA Ultralight Vehicle Professional(s)"** as a result of the same **"occurrence"** will be as follows:

**(A)**     ZERO ($0), if the Limit of Liability applicable to the **"claim"** or **"suit"** under **the Flight School Policy** is greater than or equal to $500,000; or

**(B)**     The lesser of:

**1)**     the Limit of Liability under **"This Insurance Policy"** as set forth in **SECTION IV – LIMITS OF INSURANCE**; or

**2)**     The difference between $500,000 and the Limit of Liability applicable to the **"claim"** or **"suit"** under the **Flight School Policy**.

**(iii)**     The **"self-insured retention"** designated in the **"Declarations"** of **"This Insurance Policy"** must be met before **"We"** have any duty to defend or indemnify under **"This Insurance Policy"** as the excess policy.  Additionally, any self-insured retention designated in the **"Declarations"** of the **Flight School Policy** must be separately met before **"We"** have any duty to defend or indemnify under the **Flight School Policy** as the primary policy.

**6.     Premium and Premium Audit**

**a.**     **"We"** will compute all premiums for **"This Insurance Policy"** in accordance with **"Our"** rules and rates in effect at the time **"This Insurance Policy"** is issued to **"You"**.

**b.**     The **"First Named Insured"** shown in the **"Declarations"**:

**(1)**     Is responsible for the payment of all premiums; and

**(2)**     Will be the payee for any return premiums **"We"** pay.

**c.**     Premium shown in **"This Insurance Policy"** as advance premium is a deposit premium only. At the close of each audit period **"We"** will compute the earned premium for that period and send notice to the **"First Named Insured"**.

The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the **"policy period"** is greater than the earned premium, **"We"** will return the excess to the **"First Named Insured"**.

**d.**     The **"First Named Insured"** and each **"USHPA Ultralight Vehicle Professional"** must keep accurate records of the information **"We"** need for premium computation, and send **"Us"** copies at such times as **"We"** may request.

**e.**     **"We"** may examine and audit each **Insureds'** books and records as they relate to this policy at any time during the **"policy period"** and up to three years afterward.  If, as a result of the physical examination

and audit of any **Insureds**' books and records, the audit premium computation is increased more than 5% from the premium computed based upon **Your** "**application(s)**" and/or the records "**You**" sent to "**Us**", "**You**" will pay for "**Our**" costs incurred in connection with the audit in addition to the recomputed audit premium.

**f.**    "**You**", and each "**USHPA Ultralight Vehicle Professional**" grant permission for "**Us**" to obtain from the United States Hang Gliding and Paragliding Association, Inc. and the Professional Air Sports Association, Inc., any and all information they have and maintain about **Your** operations and the operations of each "**USHPA Ultralight Vehicle Professional**", for "**Our**" use in setting **Your** advance premium, auditing **Your** premium and calculating **Your** earned premium.

**g.**    Should "**You**" fail to fulfill any of **Your** obligation under this paragraph (**6. Premium and Premium Audit**) to pay premium, provide information and documentation, allow access to records for audit purposes, or pay any audit premium or recomputed audit premium, and "**We**" incur costs, expenses, attorneys fees, or arbitration/arbitrator fees to enforce those obligations, the "**First Named Insured**" will pay "**Our**" costs of enforcement, including, but not limited to arbitration fees, arbitrator fees, reasonable attorneys fees, and all other costs and expenses.

**h.**    Upon the happening of any "**claim**" or the filing of any "**suit**" to which "**This Insurance Policy**" applies, the Minimum Earned Premium shall be 100% of the Net Advance Premium plus all audit premiums, calculated as of the date of the happening of the "**claim**" or the filing of the "**suit**", and will not be subject to any pro-rata or short-rate adjustment.

**7.**    **Inspections, Briefings and Surveys**

**a.**    "**We**" have the right to:

**(1)**    Make inspections and surveys at any time;

**(2)**    Give "**You**" reports on the conditions "**We**" find;

**(3)**    Provide informational safety briefings related to the sports of "**hang gliding**" and "**paragliding**" and the operations of the "**First Named Insured**" and any "**USHPA Ultralight Vehicle Professional**";

**(4)**    Survey the customers, clients and vendors of the "**First Named Insured**" and any "**USHPA Ultralight Vehicle Professional**";

**(5)**    Review any pre-injury releases in use by the "**First Named Insured**" and any "**USHPA Ultralight Vehicle Professional**" at their respective operations; and

**(3)**    Recommend changes.

**b.**    "**We**" are not obligated to make any inspections, surveys, briefing, reports or recommendations and any such actions "**We**" do undertake relate only to insurability and the premiums to be charged. "**We**" do not make safety inspections. "**We**" do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And "**We**" do not warrant that conditions:

**(1)**    Are safe or healthful; or

**(2)**    Comply with laws, regulations, codes or standards.

**c.**    Paragraphs a. and b. of this condition apply not only to "**Us**", but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**8.**    **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any right or duties specifically assigned in "**This Insurance Policy**" to the "**First Named Insured**", this insurance applies:

**a.**    As if each **Named Insured** were the only **Named Insured**; and

**b.**    Separately to each "**Insured**" against which "**claim**" is made or "**suit**" is brought.

**9.**    **Transfer Of Rights Of Recovery Against Others To Us**

If the "**Insured**" has rights to recover all or part of any payment "**We**" have made under "**This Insurance Policy**", those rights are transferred to "**Us**". The "**Insured**" must do nothing after loss to impair them. At "**Our**" request, the "**Insured**" will bring suit or transfer those rights to "**Us**" and help "**Us**" enforce them. **We** reserve the right to make counter-claims and to bring suit against persons making frivolous claims against any **Insured**.  The "**First Named Insured**" hereby grants that right to **Us** and acknowledges that any award resulting from such counter-claim or suit shall be the property of **Recreation Risk Retention Group, Inc.**

**10.** **Insurance Policy Not Subject To Renewal.**

    **a.** "**We**" have no obligation to renew "**This Insurance Policy**".

    **b.** "**We**" have no obligation to offer the "**First Named Insured**" or any "**USHPA Ultralight Vehicle Professional**" insurance coverage in the future.

    **c.** "**We**" have no obligation to provide the "**First Named Insured**", or any "**USHPA Ultralight Vehicle Professional**" any notice of the expiration of "**This Insurance Policy**".

    **d.** Upon the expiration of "**This Insurance Policy**", "**We**" may at "**Our**" option, but are not obligated to, offer "**You**" terms for a new subsequent insurance policy.

**11.** **Cancellation**

    **a.** **Cancellation by The First Named Insured.**

        **(1)** The "**First Named Insured**" shown in the "**Declarations**" may cancel "**This Insurance Policy**" at any time by mailing to "**Us**" by first class mail or personally delivering to "**Us**" at the business address listed on "**This Insurance Policy**", or listed on any after issued "**endorsement**", advance written notice of cancellation.

        **(2)** The only "**Insured**" that may cancel "**This Insurance Policy**" is the "**First Named Insured**" shown in the "**Declarations**". No other **Insureds** may cancel "**This Insurance Policy**".

        However, if the "**First Named Insured**" finances the payment of its premium, the premium finance company shall have the authority, acting on behalf of the "**First Named Insured**", to cancel "**This Insurance Policy**" upon the default of the "**First Named Insured**" on its obligations under the premium finance contract with the premium finance company.

    **b.** **Cancellation by Us.**

        **(1)** "**We**" may cancel **This Insurance Policy,** an "**endorsement**" issued in connection with **This Insurance Policy**, or any coverage provided under **This Insurance Policy** for one or more of the following reasons:

            **(i)** The failure of the "**First Named Insured**" to pay when due any insurance premium or portion thereof;

            **(ii)** The failure of the involved "**Insured(s)**" to pay when due any "**self-insurance retention**" or any portion thereof;

            **(iii)** The failure of the "**First Named Insured**" to pay when due any reimbursement of advances of "**self-insured retention**" amounts as required by "**This Insurance Policy**", or any portion of the reimbursement thereof;

            **(iv)** The failure of the "**First Named Insured**" to pay when due the purchase price for its shares of "**Your risk retention group**", or any portion of the purchase price thereof;

            **(v)** The material breach by the "**First Named Insured**" of any agreement or contract between the "**First Named Insured**" and "**Your risk retention group**";

            **(vi)** The determination by the Board of Directors of **Your risk retention group** that information contained in any:

                **(A)** "**application**"; or

                **(B)** request(s) for adding of additional insured(s); or

                **(C)** any documentation submitted in support of those "**applications**" or requests; or

                **(D)** representations made by the "**First Named Insured**" in connection with its purchase of shares in **Your risk retention group;**

            was false or misleading;

            **(vii)** The determination by the Board of Directors of **Your risk retention group** that the management of risk with respect to:

                **(A)** the "**First Named Insured**"; or

                **(B)** any "**USHPA Ultralight Vehicle Professional**"; or

                **(C)** any other Insured; or

                **(D)** any Operation; or

                **(E)** any Location

            is likely to adversely affect the business or operations of **Your risk retention group**,

were "**This Insurance Policy**", an "**endorsement**" issued in connection with "**This Insurance Policy**", or one or more coverage(s) provided under "**This Insurance Policy**" not be cancelled;

    **(viii)** The failure of the "**First Named Insured**" to pay, in whole or in part, any other amount owed to "**Us**" when due;

    **(ix)** The failure of the "**First Named Insured**" to continue to meet any subscriber eligibility requirement as set by the Board of Directors of "**Your risk retention group**";

    **(x)** The determination by the Board of Directors of "**Your risk retention group**" that continuation of **Your** membership in the risk retention group would adversely affect the business or operations of "**Your risk retention group**".

**(2)** "**We**" may cancel "**This Insurance Policy**" by personally delivering to the "**First Named Insured**" or by mailing by first class mail to the "**First Named Insured**" written notice of cancellation at least:

    **(i)** Ten (10) days before the effective date of cancellation if "**We**" cancel for any of the reasons set forth in sub-paragraphs b. (1) (i), (ii), (iii), (v vi), or (vii) of this paragraph (**11. Cancellation**);

    **(ii)** Twenty (20) days before the effective date of cancellation if "**We**" cancel for any of the reasons set forth in sub-paragraph b. (1) (iv) of this paragraph (**11. Cancellation**); or

    **(ii)** Thirty (30) days before the effective date of cancellation if "**We**" cancel for any other reason.

**(3)** If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

**(4)** "**We**" will mail or deliver "**Our**" notice to the "**First Named Insured's**" last mailing addresses known to "**Us**".

**c.**   **Effective Date Of Cancellation Notice.**

A Notice of cancellation will state the effective date of the cancellation. The "**policy period**" will end at 12:01 AM Standard Time in the time zone of the "**First Named Insured**" as shown on the **Declarations** on that date.

**d.**   **Premium Refunds.**

**(1)** If this policy is cancelled, "**We**" will send the "**First Named Insured**" any premium refund due.

**(2)** **Minimum Earned Premium on Cancellation**

    **(i)** Upon cancellation by either the "**First Named Insured**" or by "**Us**", the minimum earned premium due to "**Us**" by the "**First Named Insured**" shall be as follows:

        **(A)** If, at any time prior to the deposit in the mail or personal delivery of the notice of cancellation, any "**claim**" has been made on the Insurance Policy, the minimum earned premium shall be 100% of the annual premium;

        **(B)** Otherwise, if no "**claims**" have been made prior to the time that the cancellation notice is deposited in the mail or personally delivery, the minimum earned premium shall be the greater of:

            **1)** The Initial Minimum Earned Premium shown in the "**Declarations**"; or

            **2)** The minimum premium calculated pursuant to any Accelerated Minimum Earned Premium Endorsement that may be attached and made a part of "**This Insurance Policy**";

**e.**   Payment or tender of any unearned premium by "**Us**" shall not be a condition precedent to the effectiveness of any Cancellation but such payment shall be made as soon as practicable.

**f.**   If notice is mailed by first class mail, proof of mailing will be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

**12.**   **Changes**

"**This Insurance Policy**" contains all the agreements between "**You**" and "**Us**" concerning the insurance afforded. "**This Insurance Policy**'s" terms can be amended or waived only by "**endorsement**" issued by "**Us**" and made a part of "**This Insurance Policy**". "**This Insurance Policy**" cannot be amended or waived by any broker or agent. Any "**endorsement**" adding additional insureds, adding or modifying any coverages, or making

any other material change to "**This Insurance Policy**" will require the payment of a premium at "**Our**" then current rates applicable to "**You**".    There is no guarantee of any rates that might apply upon the future "**endorsement**" of "**This Insurance Policy**" in any manner.

**13.    Transfer Of Rights And Duties Under This Policy**

a.    "**This Insurance Policy**" is issued to the "**First Named Insured**" with the ownership and management disclosed in **Your** "**application**".  "**This Insurance Policy**" does not transfer, and is deemed cancelled by the "**First Named Insured**", upon a change in ownership of the "**First Named Insured**", unless "**We**" provide "**Our**" prior written agreement to such transfer.  "**We**" have the absolute right, in "**Our**" sole and exclusive discretion, to refuse to agree to any such transfer.

b.    No **Insured's** interest, coverage, rights, and/or duties under this policy (whether "**arising out of**" contract or tort, and whether in law or in equity) may be transferred or assigned to anyone without **Our** prior written consent, which **We** can refuse in **Our** sole and exclusive discretion.

**14.    Representations**

By accepting this policy, the "**First Named Insured**" agrees, represents and warrants that:

a.    The statements in the "**Declarations**" are accurate and complete;

b.    Each and every representation and all information contained in **Your** "**application**" for "**This Insurance Policy**" and contained all supplemental information and documents provided in conjunction with **Your** "**application**" were when made and are today true, complete and accurate, that there have been no omissions, suppressions or misstatements of facts, and that **Your** "**application**" is not misleading in any way;

b.    "**You**" understand that "**We**" have relied upon the information, documents and answers "**You**" supplied in **Your** "**application**" in deciding to issue "**This Insurance Policy**" to "**You**" and that **Your** "**application**" and all information and documents supplied by "**You**" in connection with that "**application**" form a part of "**This Insurance Policy**";

c.    "**You**" understand and agree that if any of the representations made by "**You**" are false, or if "**You**" have omitted or suppressed or misstated facts in **Your** "**application**", all coverages under "**This Insurance Policy**" shall be considered VOID from the starting effective date as if it were never issued at all, however "**You**" will still be obligated to pay the minimum earned premium;

d.    "**You**" understand that "**This Insurance Policy**" is not a standard form policy and that "**You**" have had an opportunity to consult with legal counsel of **Your** own choosing in deciding to purchase "**This Insurance Policy**" from "**Your risk retention group**";

e.    "**You**" understand that "This policy is issued by "**Your risk retention group**". "**Your risk retention group**" may not be subject to all of the insurance laws and regulations of **Your** state. State insurance insolvency guaranty funds are not available for "**Your risk retention group**"."; and

f.    "**You**" understand that under the Liability Risk Retention Act of 1986 (15 USC 3901 et. seq.), only members of **Recreation Risk Retention Group, Inc.** may be policy holders of insurance policies issued by **Recreation Risk Retention Group, Inc.** and all Named Insureds of policies issued by **Recreation Risk Retention Group, Inc.** must be shareholders of **Recreation Risk Retention Group, Inc.**

**15.    Obligation and Covenant to Adhere to Mandatory Requirements**

As a condition precedent to coverage under "**This Insurance Policy**", "**You**" must adhere to each of the mandatory requirements for both obtaining and maintaining insurance coverage as set forth and initialed by "**You**" in **Your** "**application**", a copy of which is made a part of "**This Insurance Policy**".

**Your** willful failure to adhere to each and every one of the mandatory requirements with respect to ALL of **Your** operations will VOID coverage of any and all of **Your** operations under "**This Insurance Policy**" from the date of such willful failure, and will be treated as a request by "**You**" for cancellation of the policy effective as of the moment just prior to the first such willful failure.

**16.    False or Fraudulent Claims Void Policy**

Any person that knowingly and with intent to defraud any insurance company or other person files a claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, may be guilty of a crime and may be subject to civil penalties, fines, and/or imprisonment.

If the "**First Named Insured**" under "**This Insurance Policy**" knowingly and with intent to defraud files a "**claim**" or submits information to "**Us**" in connection with a "**claim**" that contains any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, "**This Insurance Policy**" shall become VOID and all coverages under this policy shall be forfeited from the starting effective date

as if it were never issued at all, however "**You**" will still be obligated to pay the minimum earned premium;

If any "**USHPA Ultralight Vehicle Professional**" under "**This Insurance Policy**" knowingly and with intent to defraud files a "**claim**" or submits information to "**Us**" in connection with a "**claim**" that contains any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, the "**USHPA Ultralight Vehicle Professional**" shall immediately become an "**Excluded Individual**" and all coverages under this policy as to that "**USHPA Ultralight Vehicle Professional**" shall be forfeited from the starting effective date as if the "**USHPA Ultralight Vehicle Professional**" had always been an "**Excluded Individual**".

**17.    Reimbursement for Costs of Defending Uncovered Claims**

Should **Recreation Risk Retention Group, Inc.** provide any "**Insured**" with a defense under "**This Insurance Policy**", and should it be determined at any time that one or more "**claims**" defended against were not covered under "**This Insurance Policy**", **Recreation Risk Retention Group, Inc.** reserves its rights, to the full extent allowed by law, to seek and obtain reimbursement of the "**defense costs**", including attorneys fees, paid by **Recreation Risk Retention Group, Inc.**, solely for the defense of the uncovered "**claims**".

**18.    Validity and Severability**

The invalidity or unenforceability of any provision of "**This Insurance Policy**" shall in no way affect the validity or enforceability of any other provision.  Moreover, if any provision of "**This Insurance Policy**" is deemed to be invalid or unenforceable or prohibited by applicable law, then such provision shall be deemed severable from the balance of "**This Insurance Policy**" and the validity of the remaining provisions shall be enforced to the fullest extent allowed by law.

Policy Number: MAPL00001002-R7

Named Insured:  United States Hang Gliding and
Paragliding Association, Inc.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUDED INDIVIDUAL ENDORSEMENT

Notwithstanding any other provision of **This Insurance Policy**, the following individuals are "**Excluded Individuals**" under this **This Insurance Policy**:

**Excluded Individuals**:

- Under **Coverage A - PROFESSIONAL LIABILITY FOR "RECREATIONAL PROFESSIONALS"**, "**Excluded Individual**" also means any individual that **USHPA** has not, during the "**Policy Period**" and before the "**occurrence**", both:
  **a.** Designated that individual as a certified non-commercial **USHPA** Rogallo Member and;
  **b.** Communicated that designation to **Us** by way of a writing received by **Us** before the "**occurrence**".

- Any other person listed on any other Form RRRG 8205 that comprises a part of **This Insurance Policy**

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy Number: MAPL00001002-R7

Named Insured:  United States Hang Gliding and
Paragliding Association, Inc.

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUDED LOCATIONS ENDORSEMENT

Notwithstanding any other provision of **This Insurance Policy**, "**Covered Activities**," whenever and wherever defined in this **This Insurance Policy**, do not include, and **This Insurance Policy** does not apply to, any "**bodily injury**", or "**property damage**" occurring as a result of an "**occurrence**" at any of the following "**Excluded Locations**":

**1.**  The single parcel of land immediately adjacent to the east of the flying site commonly known as Soboba, including the air space above such land as well as the entirety of any "**hang gliding**" or "**paragliding**" flight originating from or ending at such land:

- THE LAND LOCATED IN THE STATE OF CALIFORNIA, RIVERSIDE COUNTY, HAVING NO SITE ADDRESS AND ASSIGNED ASSESSOR PARCEL NUMBER 430-030-020.

**2.**  The flying site commonly known as Horseshoe Bend Flight Park, which site includes the following parcels of land, including the air space above such land as well as the entirety of any "**hang gliding**" or "**paragliding**" flight originating from or ending at such land:

- ALL LAUNCHES AND LANDING ZONES WITHIN THE HORSESHOE BEND FLIGHT PARK AND SURROUNDING AREA, INCLUDING, BUT NOT LIMITED TO:

  THE LAND LOCATED IN THE STATE OF IDAHO, HAVING A SITE ADDRESS OF 235 OLD EMMETT RD, HORSESHOE BEND, ID 83629, INCLUDING ANY AND ALL LANDS OWED OF RECORD BY JESSE LLC IN AND AROUND SAID SITE ADDRESS AS OF THE EFFECTIVE DATE OF THIS ENDORSEMENT.

**3.**  The flying site commonly known as Blue Mountain Ski Area, which site includes the following parcels of land, including the air space above such land as well as the entirety of any "**hang gliding**" or "**paragliding**" flight originating from or ending at such land:

- A LAUNCH LOCATION AT OR ABOUT 40.811501, -75.522581; AND

- THE LAND LOCATED IN THE STATE OF PENNSYLVANIA, CARBON COUNTY, HAVING A SITE ADDRESS OF 1660 BLUE MOUNTAIN DR, PALMERTON, PA 18071, INCLUDING, BUT NOT LIMITED TO ALL LANDS OWNED OF RECORD BY TUTHILL CORP IN AND AROUND SAID SITE ADDRESS AS OF THE EFFECTIVE DATE OF THIS ENDORSEMENT.

**4.**  The flying site commonly known as JustFly-SVS Henson Gap Flight Park, including all of the lands and the air space above such lands used by the JustFly-SVS Henson Gap Flight Park for any of its flight park operations and activities as well as for any other operations and activities that take place at the JustFly-SVS Henson Gap Flight Park (including, but not limited to the operations and activities of Flying Camp, LLC).  The excluded location includes the entirety of any activities that constitute "**Participating in the sports of hang gliding, paragliding or powered paragliding**" where such participation originates from or ends at the JustFly-SVS Henson Gap Flight Park. The excluded location includes, but is not limited to the following parcels of land:

- A LAUNCH LOCATION AT OR ABOUT 35.348602, -85.332489 Dunlap TN;

- THE LAND LOCATED IN THE STATE OF TENNESSEE, SEQUATCHIE COUNTY, ASSIGNED ASSESSOR PARCEL NUMBER 056 002.05;

- THE LAND LOCATED IN THE STATE OF TENNESSEE, SEQUATCHIE COUNTY, ASSIGNED ASSESSOR PARCEL NUMBER 056 002.06;

- THE LAND LOCATED IN THE STATE OF TENNESSEE, SEQUATCHIE COUNTY, ASSIGNED ASSESSOR PARCEL NUMBER 056 002.27

Policy Number: MAPL00001002-R7

Named Insured:  United States Hang Gliding and Paragliding Association, Inc.

For purposes of this "**Endorsement**", lands owned by the Tennessee Tree Toppers, Inc. are not a part of the JustFly-SVS Henson Gap Flight Park.

For purposes of this "**Endorsement**", the following Tennessee Tree Toppers, Inc. chapter locations are not part of the JustFly-SVS Henson Gap Flight Park:

| | | | |
|---|---|---|---|
| Henson Gap - LZ | 35.36481600000000, -85.34471500000000 | Dunlap | TN |
| Henson Gap - Approach Fly Over - Manuel Montes | 35.36414100000000, -85.34135700000000 | Dunlap | TN |
| Henson Gap - Emergency LZ A - Austin | 35.35826500000000, -85.34779400000000 | Dunlap | TN |
| Henson Gap - Emergency LZ B - Austin | 35.35527400000000, -85.34639400000000 | Dunlap | TN |
| Henson Gap - Emergency LZ C - Austin | 35.35870800000000, -85.35115200000000 | Dunlap | TN |
| Henson Gap - Bail-out LZ - Woerner | 35.36375200000000, -85.34546200000000 | Dunlap | TN |
| Henson Gap - Emergency LZ - Woerner | 35.36313200000000, -85.34313100000000 | Dunlap | TN |
| Henson Gap Burnside Launch | 35.34934600000000, -85.33154992104590 | Dunlap | TN |
| Henson Gap Clubhouse | 35.34882029257063, -85.33220087849969 | Dunlap | TN |
| Henson Gap - North Ramp Launch | 35.34905233214719, -85.33211143667040 | Dunlap | TN |
| Henson Gap XC - Galloway LZ | 35.33997300000000, -85.41705100000000 | Dunlap | TN |

**5.**  The flying site commonly known as JustFly-SVS Whitwell Flight Park, including all of the lands and the air space above such lands used by the JustFly-SVS Whitwell Flight Park for any of its flight park operations and activities as well as for any other operations and activities that take place at the JustFly-SVS Whitwell Flight Park (including, but not limited to the operations and activities of Flying Camp, LLC).  The excluded location includes the entirety of any activities that constitute "**Participating in the sports of hang gliding, paragliding or powered paragliding**" where such participation originates from or ends at the JustFly-SVS Whitwell Flight Park. The excluded location includes, but is not limited to the following parcels of land:

- A LAUNCH LOCATION AT OR ABOUT 35.205449, -85.540556 Whitwell TN;
- THE LAND LOCATED IN THE STATE OF TENNESSEE, MARION COUNTY, ASSIGNED ASSESSOR PARCEL NUMBER 049 029.04;
- THE LAND LOCATED IN THE STATE OF TENNESSEE, MARION COUNTY, ASSIGNED ASSESSOR PARCEL NUMBER 049 029.06;

For purposes of this "**Endorsement**", lands owned by the Tennessee Tree Toppers, Inc. are not a part of the JustFly-SVS Whitwell Flight Park.

For purposes of this "**Endorsement**", the following Tennessee Tree Toppers, Inc. chapter locations are not part of the JustFly-SVS Whitwell Flight Park:

| | | | |
|---|---|---|---|
| Whitwell - Castle LZ | 35.18937200000000, -85.52586500000000 | Whitwell | TN |
| Whitwell - Walker - Charles LZ | 35.19232100000000, -85.53003300000000 | Whitwell | TN |
| Whitwell - Church LZ | 35.21450900000000, -85.51085400000000 | Whitwell | TN |
| Whitwell - Hudson LZ | 35.18881600000000, -85.52889000000000 | Whitwell | TN |
| Whitwell - North Cliff Launch | 35.20742200000000, -85.53963200000000 | Whitwell | TN |
| Whitwell - Setup Overflow - Basham | 35.20779600000000, -85.54032000000000 | Whitwell | TN |

Policy Number: MAPL00001002-R7

Named Insured:  United States Hang Gliding and
Paragliding Association, Inc.

**6.**  The real property located at 17 Whitney Lane, Plymouth, MA 02360 (the Plymouth Property) and within a 30 foot wide border all around the perimeter of that property (the Plymouth Border Zone), including all of the air space above the Plymouth Property and the Plymouth Border Zone.  The excluded location includes the entirety of any activities that constitute "**Participating in the sports of hang gliding, paragliding or powered paragliding**" where such participation involves any entry by the participant or any portion of their ultralight vehicle into the airspace above the Plymouth Property or the Plymouth Border Zone.

And any other "**Excluded Locations**" listed on any other Form 8206 that comprises a part of **This Insurance Policy**.


## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: MAPL00001002-R7

Named Insured:   United States Hang Gliding and
                 Paragliding Association, Inc.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION – ASBESTOS, LEAD OR SILICA

The insurance policy is hereby amended to include the following additional exclusion:

**ASBESTOS, LEAD OR SILICA EXCLUSION**

This insurance does not apply to any liability arising out of:

a.     The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of :

    (1)     asbestos, as bestos fibers, any other form  of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos ;

    (2)     lead , or any products or materials containing lead; or

    (3)     silica, silica dust, or any products or materials containing silica or silica dust,

regardless of whether any other cause, event, material or product contributed concurrently or in any

sequence to any injury or damage;

b.     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of:

    (1)     asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

    (2)     lead, or any products or materials containing lead; or

    (3)     silica, silica dust, or any products or materials containing silica or silica dust, by any insured or by any other person or entity;

c.     Any supervision, instructions, recommendations, warnings, or advice  given or which should  have been given in connection with a. and b. above;

d.     Any obligation to share damages with or repay someone else who must pay damages because of:

    (1)     asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

    (2)     lead, or any products or materials containing lead; or

    (3)     silica, silica dust, or any products or materials containing silica or silica dust;

e.     Any injury or damage arising out of the loss of use of, or other unavailability of, any product or material actually, potentially, or allegedly containing asbestos, asbestos fibers, any other form of asbestos, lead , silica or silica dust; or

f.     Any injury or damage arising out of the loss of use of, or other unavailability of, "your product" or "your work", arising out of the loss of use of, or other unavailability of, any product or material actually, potentially, or allegedly containing asbestos, asbestos fibers, any other form  of asbestos, lead, silica or silica dust.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: MAPL00001002-R7

Named Insured: United States Hang Gliding and Paragliding Association, Inc.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION – BIOLOGICAL OR CHEMICAL MATERIALS

The insurance policy is hereby amended to include the following additional exclusion:

**BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION**

This insurance does not apply to any liability arising out of:

The actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: MAPL00001002-R7

Named Insured: United States Hang Gliding and Paragliding Association, Inc.

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION – TERRORISM

The insurance policy is hereby amended to include the following additional exclusion:

**TERRORISM EXCLUSION**

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or governments(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If your risk retention group alleges that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: MAPL00001002-R7

Named Insured: United States Hang Gliding and Paragliding Association, Inc.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### POLICY CHANGE CANCELLATION ENDORSEMENT

The insurance policy is hereby amended to include the following condition:

All policy changes will be cancelled flat, automatically, if payment is not received by the due date listed on the invoice related to the policy change.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: MAPL00001002-R7                    Named Insured: United States Hang Gliding and
                                              Paragliding Association, Inc.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION AND LIMITATION CLAUSE – EXPOSURE TO SANCTIONS

The insurance policy is hereby amended to include the following additional exclusion:

**EXPOSURE TO SANCTIONS EXCLUSION**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Policy No: MAPL00001002-R7

Named Insured:    United States Hang Gliding and
Paragliding Association, Inc.

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION CLAUSE – NUCLEAR INCIDENT LIABILITY

The insurance policy is hereby amended to include the following additional exclusion:

**NUCLEAR INCIDENT LIABILITY EXCLUSION**

This insurance does not apply:

A.  Under any Liability Coverage, to injury, sickness, disease, death or destruction:

    i.    with respect to which an Insured under This Insurance Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    ii.    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or(2) the Insured is, or had **This Insurance Policy** not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

    i.    the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

    ii.    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    iii.    the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

D.  As used in this endorsement:

    "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material, "special nuclear material", and "by-product material" have the

Policy No: MAPL00001002-R7                    Named Insured:    United States Hang Gliding and
                                                                 Paragliding Association, Inc.

meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (i) or (ii) thereof; "nuclear facility" means:

i.      any nuclear reactor,

ii.     any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

iii.    any equipment or device used for the processing, fabrication or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

iv.     any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of **This Insurance Policy** to which it is attached.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: MAPL00001002-R7                    Named Insured:    United States Hang Gliding and
                                                                Paragliding Association, Inc.

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION CLAUSE – COMMUNICABLE DISEASE

The insurance policy is hereby amended to include the following additional exclusion:

**COMMUNICABLE DISEASE EXCLUSION**

Notwithstanding any provision to the contrary within **This Insurance Policy**, **This insurance Policy** excludes, and **We** will not pay, any actual or alleged loss, liability, damage, compensation, injury, sickness, disease, death, medical payment, defense cost, cost, expense or any other amount

      a.      incurred by or accruing to any **Insured**, directly or indirectly; or

      b.      for which any **Insured** is or becomes legally obligated to pay; or

      c.      which is or would otherwise be payable to anyone as a medical expense,

and regardless of any other cause contributing concurrently or in any sequence, originating from, caused by, arising out of, contributed to by, resulting from, or otherwise in connection with a Communicable Disease or the fear or threat (whether actual or perceived) of a Communicable Disease.

For the limited purpose of this **Endorsement**, as used in this **Endorsement**, a Communicable Disease means any disease which can be transmitted by means of any substance or agent from any organism to another organism where:

      a.      the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not, and

      b.      the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between organisms, and

      c.      the disease, substance or agent can cause or threaten bodily injury, illness, emotional distress or damage to human health, human welfare or property damage.

# ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: MAPL00001002-R7                     Named Insured:   United States Hang Gliding and
                                                                Paragliding Association, Inc.

# THIS POLICYHOLDER NOTICE DOES NOT MODIFY THE POLICY

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

Foreign agents;

Front organizations;

Terrorists;

Terrorist organizations; and

Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

Policy No: MAPL00001002-R7                    Named Insured:    United States Hang Gliding and
                                                               Paragliding Association, Inc.

## THIS POLICYHOLDER NOTICE DOES NOT MODIFY THE POLICY

### U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
### NOT PURCHASED CLAUSE

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

PETER R. MIFFLIN – 12595
**ROBERT J. DEBRY & ASSOCIATES**
35 West Broadway Suite 300
Salt Lake City, Utah 84101
Telephone: (801) 262-8915
Facsimile: (801) 562-4561
pmifflin@robertdebry.com
*Attorneys for Plaintiff*

IN THE THIRD DISTRICT COURT
IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JARED POTTER, an individual<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN WHITE, an individual; WHITE CLOUD ADVENTURES LLC, a Utah Limited Liability Company<br>Defendants. | **COMPLAINT**<br><br>Civil No.<br><br>Judge: |

Plaintiff by and through counsel Peter R. Mifflin of the law firm of Robert J. DeBry & Associates hereby complaints against defendants and each of them as follows:

1. Plaintiff Jared Potter at all relevant times was and is a citizen of Utah.

2. Defendant Benjamin White at all relevant times is a citizen of Utah

3. Defendant White Cloud Adventures LLC is a Utah based Limited Liability Company, organized in the State of Utah and doing business in the State of Utah.

4. Jurisdiction and venue are appropriate in this forum because the events giving rise to this lawsuit occurred in Salt Lake County.

5. Prior to October 5, 2023 Plaintiff Jared Potter hired Benjamin White and White Cloud Adventures LLC to introduce him to paragliding.

6. On October 5, 2023, Plaintiff Jared Potter slammed into a hill in Salt Lake County near Point of the Mountain. He sustained permanently life altering and permanently disabling injuries, involving a multi-level lumbar fusion and a fractured femur. Plaintiff sustained a T12-L1 spinal cord injury which resulted in permanent disability of legs, bowel, bladder, sexual function and neuropathic pain.

7. Plaintiff has incurred at least $580,174.33 in reasonable and necessary medical expenses in order to treat and address his injuries.

8. Despite incurring $580,174.33 in medical expenses, Jared Potter has not regained meaningful use of his lower extremities and remains to this day a paraplegic.

9. Defendant Benjamin White was Plaintiff's instructor.

10. Plaintiff was Benjamin White and his company's student.

11. Plaintiff became a temporary member of a professional paragliding organization in 2021, but did not renew that membership after its expiration and took exactly one tandem flight in 2021.

12. Plaintiff began instruction with Mr. White in approximately 2023, but did not sign any new waivers or acknowledgments of risk in connection with the training.

13. There was not a fixed agreed upon price for flying lessons, but Plaintiff sent Defendants funds without a precise agreement.

14. Plaintiff's training did not consist of any classroom work, physical materials, digital materials nor involved written demonstration of knowledge or minimal competency prior to flying in a non-tandem fashion.

15. From July 2023 through October 5, 2023, Plaintiff participated in approximately 20 flights on the south side of point of the mountain. Plaintiff participated in one tandem flight on the north side of the mountain in 2021. Plaintiff had never flown solo previously, let alone on the north side of the mountain solo.

16. Communication with Ben White was via radio in Plaintiff's front pocket.

17. On the day of the crash, there were multiple flyers in the air.

18. At Ben White's invitation, Plaintiff tried to "bench up."

19. Prior to flying, there was no prior discussion regarding benching up.

20. Plaintiff did not have barometer or tracker on his person.

21. Plaintiff turned right to be parallel to the ridge.

22. This occurred at approximately 5:50-5:54 PM.

23. At that moment, Plaintiff began being pushed back behind the very top of the ridge of the north side.

24. Measured wind speeds were above 20 miles per hour.

25. As Plaintiff began to be pushed backward, Ben White instructed Plaintiff to use the speed bar.

26. Up to that point, Plaintiff had not been instructed on the use of the speed bar and lacked requisite knowledge of how to use the speed bar as a flight control.

27. While being pushed behind the ridge, Plaintiff was approximately 10-20 feet above the ground.

28. Plaintiff was pointed out toward Salt Lake City at this point in time.

29. Plaintiff pushed the speed bar initially at 40-50%.

30. Even with the use of the speed bar, Plaintiff did not move forward and began to lose elevation.

31. At this point in time, Ben White instructed Plaintiff to turn quickly and to pull the A lines on the paraglider.

32. Plaintiff turned 180 degrees and attempted to comply with instructions.

33. Plaintiff had no training or instructions regarding the operation of the A lines.

34. Moments later, Plaintiff crashed perpendicular into the slope feet forward, snapping his left femur. Plaintiff's L1 vertebrae was dislodged and forced towards his back, smashing his spinal cord causing immediate paralysis.

35. Plaintiff radioed in and reported the crash.

36. Other speed flyers came down and attended to Plaintiff.

37. EMTs hiked 1000 feet up to get to Plaintiff.

38. Plaintiff was life-flighted to IMC.

39. Approximately six days after the crash, Ben White approached Plaintiff with new paperwork including a waiver and asked him to back date the waiver to before the crash.

40. Ben White did not hold any classroom sessions, nor present Plaintiff with any physical materials or whiteboarding sessions to teach Plaintiff how to paraglide.

41. Ben White did not teach basic principles such as depression zone, lift bands, how strength of wind or angle of the wind can affect and does affect flying conditions.

42. Specifically Ben White did not present Plaintiff with any P1 or P2 materials prior to flying.

4

## FIRST CAUSE OF ACTION- NEGLIGENCE[1]

43. Defendants owed the Plaintiff a duty of care arising out of affirmative conduct and a special legal relationship arising out of a teacher-student relationship.  In this particular teacher student legal relationship, Plaintiff was dependent on Defendants due to the inequalities of education, knowledge and experience with regard to paragliding.  In undertaking such a relationship, Defendants voluntarily assumed responsibility for the safety and well-being of Plaintiff.    Defendants also owe the plaintiff a duty of care due to affirmative creation of risk.  By placing a largely untrained novice into a paraglider without any classroom instruction, written materials, Defendants created additional risks above and beyond the ordinary attendant risks associated with paragliding.

44. Defendants breached these duties of care by among other things:

   a.  Failing to train Plaintiff with even basic fundamental principles of paragliding, aerodynamics, rules of the "road"/air or safety procedures.

   b.  Failing to train Plaintiff regarding the use of the speed bar.

   c.  Directing Plaintiff to fly towards the north side of the mountain, which is not an area for inexperienced pilots.

   d.  Failing to train Plaintiff in any degree regarding the management of paragliders in normal or austere weather conditions

   e.  Allowing inexperienced flyers to fly in wind conditions above 20 miles per hour.

---

[1] This cause of action is being pled in the alternative in the event that this court concludes that the waiver executed involving one tandem flight in 2021 expired by its terms.

     f.   Inappropriately matching flyer to glider load weight range in light of the existing wind conditions.

     g.   Inadequate communication via radio, which are known by defendants to malfunction and be an unreliable form of communication.

45. As a direct and proximate result of Defendants' breach of duty, Plaintiff sustained catastrophic personal injury, disability, loss of bodily function and damages.

## SECOND CAUSE OF ACTION- GROSS NEGLIGENCE

46. Plaintiff restates all prior paragraphs.

47. The breaches of duty identified under "Negligence" when viewed objectively from the defendants' standpoint at the time of occurrence, involves an extreme degree of risk, considering the probability and magnitude of potential harm to others including Plaintiff.

48. Defendants had actual, subjective awareness of the risk involved, but nevertheless made a series of conscious decisions which indicate disregard of the substantial and unjustifiable risks of harm to Plaintiff.  Those risks to which defendants were aware including risks of personal injury, bodily injury and death.

49. Defendants' conduct significantly elevated the risk of injury to Plaintiff and shows a careless, utter indifference to the substantial and unjustifiable nature of the risks augmented.

50. Defendants failed to exercise even basic slight care, specifically by not providing any formal training to Plaintiff at all, before having him fly solo, and "bench up" in austere weather conditions, near physical land features known to be problematic and beyond a novice skill level.

51. As a direct and proximate result of Defendants' gross negligence, Plaintiff sustained catastrophic personal injury, disability, loss of bodily function and damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

    a. For general damages, including pain, suffering, loss of enjoyment of life, loss of function, and loss of mobility.

    b. For past and future economic damages including medical expenses, life care expenses in an amount to be proven at trial.

    c. For punitive damages;

    d. For consequential damages

    e. For any other relief deemed judicially proper.

    f. For purposes of Utah R. Civ. P. 26, this case is designated a Tier III case.

DATED this 31th of October, 2024

ROBERT J. DEBRY & ASSOCIATES

/s/PETER R. MIFFLIN

Attorney for Plaintiff

# EXHIBIT D

# THE UNITED STATES HANG GLIDING & PARAGLIDING ASSOCIATION, INC.

## 30 DAY STUDENT/AFFILIATE MEMBERSHIP APPLICATION



# ATTENTION: USHPA RELEASE (ON BACK SIDE) MUST BE SIGNED.

This Student/Affiliate Membership in the USHPA provides the named member with coverage under the Association's liability insurance policy for a period of 30 days from the date of issue. Membership is valid ONLY upon signing of the USHPA Release, Waiver and Assumption of Risk Agreement on reverse.

Please review the FAA Pilot's Handbook and the FAA Powered Parachute Handbook. The information in these handbooks relevant to Hang Gliding and Paragliding is part of your training program with a USHPA Certified Instructor.

30 DAY MEMBERSHIP FOR *(Please check one)*

| | | OFFICIAL USE ONLY | Temporary Membership #: |
|---|---|---|---|
| ☒ Student/Participant | ☐ Affiliate (Visiting Pilot) | | 624594 |

## EVERY APPLICANT MUST COMPLETE THIS SECTION

**EVERYONE**

The Federal Aviation Administration rules that allow hang gliding and paragliding are premised upon each participant assessing the dangers involved and assuming all responsibility for their personal safety.

☒ YES ☐ NO Have you assessed the dangers involved in hang gliding and/or paragliding?

☒ YES ☐ NO Have you assumed all responsibility for your personal safety while hang gliding or paragliding?

## TANDEM STUDENTS MUST COMPLETE THIS SECTION

**TANDEM STUDENTS**

☒ YES ☐ NO Do you understand the basic process of launching, flying and landing hang gliders and paragliders?

☒ YES ☐ NO Do you understand that a hang glider is controlled through weight shift and a paraglider is controlled through the use of brakes and risers and that you will hamper control by holding any part of the craft other than where your instructor tells you?

☒ YES ☐ NO If you are going to foot launch tandem, do you understand that you and the instructor must run efficiently together to produce airspeed to launch?

☒ YES ☐ NO Do you understand that you must pay attention to the instructor's commands at all times AND be capable of carrying out those instructions?

☒ YES ☐ NO Have you been advised that tandem (dual or tow place) flights in hang gliders/paragliders are only conducted under an exemption granted by the Federal Aviation Administration (FAA) and that the glider is not certified for tandem flights by the FAA although it MAY be certified by the Hang Glider Manufacturer's Assn (HGMA), AFNOR, CEN or LTF?

☒ YES ☐ NO Do you understand the possible reasons for, and techniques used in, the deployment of a backup parachute?

Name: Jared Potter                         Phone: 801-574-7900

Address: 11087 s Sandy Creek Drive

City: Sandy                    State: Utah         Zip: 84094

Country: USA                Email: JaredPotter10@gmail.com

I have read, understand and agree to the Release, Waiver and Assumption of Risk Agreement on the reverse.

_Signature_                                    10/1/2021

Student/Participant/Pilot's Signature          Date

As a certified USHPA Instructor or authorized USHPA membership designee, I hereby affirm that the above named student/participant/pilot has satisfactorily demonstrated to me all the requirements for membership in USHPA.

_Signature_              96054              10/1/21

USHPA Instructor or Designee's Signature    USHPA #        Date of Issue

Ben White                        White Cloud

USHPA Instructor or Designee Name        School, Chapter, or Event Name

## THIS APPLICATION MUST BE SENT TO USHPA WITHIN 30 DAYS OF DATE OF ISSUE

**UNITED STATES HANG GLIDING & PARAGLIDING ASSOCIATION, INC.**
**1685 W Uintah**
**Colorado Springs CO 80904**
**(719) 632-8300**
**www.ushpa.aero / www.ushpa.org**

624594                    Rev 02/2019

# EXHIBIT E

RELEASE, WAIVER, AND ASSUMPTION OF RISK AGREEMENT

**RELEASE, WAIVER, AND ASSUMPTION OF RISK AGREEMENT**

In consideration of the benefits of membership in *USHPA*, and in consideration of the benefits of the mutual agreement by other *USHPA* members to substantially similar agreements under which *Pilot* and persons owned, managed or controlled by *Pilot* are *RELEASED PARTIES*, *Pilot* (and the parent or legal guardian of *Pilot* if *Pilot* is a minor), for themselves, their personal representatives, heirs, executors, next of kin, spouses, minor children, assigns, and for any *RELEASED PARTIES* owned, managed or controlled by them, agrees as follows:

**A.** *Pilot* has read the Federal Aviation Administration rules that grant *Pilot* permission to fly hang gliders and paragliders (Part 103 of the FAA Regulations and FAA Advisory Circular 103-7) and *Pilot* understands that FAA authorization for *Pilot's* participation in hang gliding or paragliding flight is premised upon *Pilot* assessing the dangers involved and *Pilot's* assumption of all responsibility for *Pilot's* personal safety.

**B.** *Pilot* represents that *Pilot* has fulfilled Pilot's obligation under the law - that *Pilot* has personally assessed the dangers involved in hang gliding and/or paragliding, and *Pilot* assumes all responsibility for *Pilot's* personal safety.

**C.** **DEFINITIONS -** The following definitions apply to terms used in this *Agreement*:

1. "*PARTICIPATION IN THE SPORT*" means launching/kiting (and/or assisting another in launching/kiting), flying (whether as pilot in command or otherwise) and/or landing (including, but not limited to, crashing) a hang glider or paraglider. A speed wing or mini wing is a form of paraglider.

2. "*SPORTS INJURIES*" means **personal injury, bodily injury, death, property damage** and/or **any other personal or financial injury** sustained by a participant as a result of participant's *PARTICIPATION IN THE SPORT* and/or as a result of the administration of any USHPA programs (for example: the Pilot Proficiency System), and, If a participant is under 18 years of age, "*SPORTS INJURIES*" also includes the **personal injury, bodily injury, death, property damage** and/or **any other personal or financial injury** sustained by the participant's parents and legal guardians, as a result of the participant's *PARTICIPATION IN THE SPORT* and/or as a result of the administration of any USHPA programs.

3. "*RELEASED PARTIES*" means the following, including their owners, officers, directors, managers, agents, spouses, employees, officials (elected or otherwise), members, independent contractors, sub-contractors, lessors and lessees:

   a) The United States Hang Gliding and Paragliding Association, a California Non-profit Corporation (*USHPA*);

   b) Each *USHPA* Certified Instructor, Mentor, Observer, Examiner, TECH or Administrator that has ever been involved in *Pilot's* flying activities;

   c) Each of the person(s) sponsoring and/or participating in the administration of *Pilot's* proficiency rating(s);

   d) Each of the hang gliding and/or paragliding organizations that are chapters of *USHPA*;

   e) The United States Of America and each of the city(ies), town(s), county(ies), State(s) and/or other political subdivisions or governmental agencies within whose jurisdictions *Pilot* launches, flies and/or lands;

   f) Each of the property owners on or over whose property *Pilot* may launch, fly and/or land; and

   g) All persons involved, in any manner, in the sports of hang gliding and/or paragliding at the location(s) where *Pilot PARTICIPATES IN THE SPORT*, except for hang glider pilots and paraglider pilots who are not members of *USHPA*. "All persons involved" includes, but is not limited to, spectators, hang glider pilots, paraglider pilots, powered ultralight pilots, assistants, drivers, tow equipment operators and owners, instructors, schools, observers, examiners, mentors, administrators, owners of hang gliding equipment, and owners of paragliding equipment.

**D.** *PILOT* FOREVER RELEASES AND DISCHARGES THE *RELEASED PARTIES* FROM ANY AND ALL LIABILITIES, CLAIMS, DEMANDS, OR CAUSES OF ACTION THAT *PILOT* MAY HEREAFTER HAVE FOR *PILOT'S* *SPORTS INJURIES*, HOWEVER CAUSED, EVEN IF CAUSED IN WHOLE OR IN PART BY THE ACTION, INACTION OR NEGLIGENCE (WHETHER ACTIVE OR PASSIVE) OF ANY OF THE *RELEASED PARTIES*, TO THE FULLEST EXTENT ALLOWED BY LAW.

**E.** *PILOT* WILL NOT SUE OR MAKE A CLAIM against any of the *RELEASED PARTIES* for loss or damage on account of *Pilot's SPORTS INJURIES*. If *Pilot* violates this *Agreement* by filing such a suit or making such a claim, *Pilot* will pay all attorneys' fees and costs of the *RELEASED PARTIES*.

**F.** *Pilot* agrees that this *Agreement* shall be governed by and construed in accordance with the laws of the State of California. All disputes and matters whatsoever concerning any *SPORTS INJURIES* or otherwise arising under, in connection with or incident to this *Agreement* shall be litigated, if at all, in and before a Court located in the State of California, U.S.A. to the exclusion of the Courts of any other State or Country, and *Pilot* consents to the Personal Jurisdiction of Courts located in the State of California, U.S.A. in connection with all such disputes and matters.

**G.** Any lawsuit or other proceeding, concerning any *SPORTS INJURIES* or otherwise arising under, in connection with or incident to this *Agreement* must be filed, if at all, either 1) within twelve (12) months of the accrual of such cause of action, or 2) within the shortest limit of time permitted by law.

**H.** Each of the *RELEASED PARTIES*, whether or not parties to this *Agreement*, are intended beneficiaries of this *Agreement* and each of them may enforce each and every provision of this *Agreement* as though they were parties to this *Agreement*.

**I.** If any part, article, paragraph, sentence or clause of this *Agreement* is not enforceable, the affected provision shall be curtailed and limited only to the limited extent necessary to bring it within the requirements of the law, and the remainder of the *Agreement* shall continue in full force and effect.

**J.** This *Agreement* shall apply to any and all *SPORTS INJURIES* to *Pilot* occurring at any time after the execution of this *Agreement* by *Pilot*. This *Agreement* is in addition to and is not intended to replace any other agreements related to liability for *SPORTS INJURIES* to *Pilot* that *Pilot* (or *Pilot's* parents or legal guardians) may have signed, either in the past or in the future. To the extent that there is any conflict between any part, article, paragraph, sentence or clause of such agreements, *Pilot* (and *Pilot's* parents or legal guardians) intends to be subject to the parts, articles, paragraphs, sentences, and clauses of each agreement that provide the most expansive release of claims and assumption of risk allowed by law.

**K.** The undersigned represents that *Pilot* is at least 18 years of age, or, that the undersigned is the parent or legal guardian of *Pilot* and is making this *Agreement* on behalf of the undersigned and *Pilot*. If the undersigned is the parent or legal guardian of *Pilot*, the undersigned AGREES TO INDEMNIFY AND REIMBURSE the *RELEASED PARTIES* for their defense and indemnity from any claim or liability in the event that *Pilot* suffers *SPORTS INJURIES* as a result of *Pilot's PARTICIPATION IN THE SPORT*, even if caused in whole or in part by the action, inaction or negligence (whether active or passive) of any of the *RELEASED PARTIES*, to the fullest extent allowed by law.

**L.** *PILOT* VOLUNTARILY ASSUMES ALL RISKS, KNOWN AND UNKNOWN, OF *SPORTS INJURIES* TO *PILOT*, HOWEVER CAUSED, EVEN IF CAUSED IN WHOLE OR IN PART BY THE ACTION, INACTION, OR NEGLIGENCE (WHETHER PASSIVE OR ACTIVE) OF THE *RELEASED PARTIES*, TO THE FULLEST EXTENT ALLOWED BY LAW.

I ACKNOWLEDGE THAT I HAVE READ THIS AGREEMENT, FULLY UNDERSTAND THE POTENTIAL DANGERS OF ENGAGING IN HANG GLIDING AND/OR PARAGLIDING AND THAT ACTION, INACTION OR NEGLIGENCE OF OTHERS CAN INCREASE THOSE DANGERS. I UNDERSTAND AND AGREE THAT THIS DOCUMENT IS LEGALLY BINDING AND WILL PREVENT ME FROM RECOVERING MONETARY DAMAGES FROM THE ABOVE LISTED ENTITIES AND/OR INDIVIDUALS, WHETHER SPECIFICALLY NAMED OR NOT, FOR PERSONAL INJURY, BODILY INJURY, PROPERTY DAMAGE, WRONGFUL DEATH, OR ANY OTHER PERSONAL OR FINANCIAL INJURY SUSTAINED BY PILOT IN CONNECTION WITH HANG GLIDING/PARAGLIDING.

**WARNING: BY SIGNING, YOU ARE WAIVING SIGNIFICANT LEGAL RIGHTS. DO NOT SIGN WITHOUT READING!**

Pilot's Signature _____ Date 10/1/2021

Signature of Pilot's Parent or Legal Guardian _____ Date _____
if Pilot under 18 years of age

RRRG8130-A-30 (0318003)

# EXHIBIT F



Recreation Risk Retention Group, Inc.

27 Main Street
First Floor
Burlington, VT
https://recreationrrg.com
(802) 383-1537

October 31, 2023

Mr. Ben White
White Cloud Adventures, LLC.
15263 S. Steep Mountain Drive
Draper, UT 84020

Sent by Email to benwhiteskis@gmail.com

RE: first Named Insured:        White Cloud Adventures, LLC
    Policy No:                  CMFS000350001-R4
    Policy Period:              July 4, 2023 to July 4, 2024
    Claimant:                   Jared Potter
    Incident Date:              October 5, 2023
    Recreation RRG Incident:    R0001103

**RESERVATION OF RIGHTS**
**BY RECREATION RISK RETENTION GROUP, INC.**

Dear Mr. White:

On behalf of Recreation RRG, Inc. (Recreation), this will acknowledge receipt of the above-referenced matter. The undersigned will be handling this matter on behalf of Recreation. Accordingly, please direct all future correspondence regarding this matter to my attention.

On behalf of Recreation this Reservation of Rights letter is sent to advise you and White Cloud Adventures, LLC (White Cloud) of a possibility Recreation may have no coverage for defense or indemnity of any claim by or behalf of Jared Potter under the above policy of insurance issued by Recreation to White Cloud.

This matter arises from a paragliding incident on October 5, 2023 at Point of the Mountain, North Side, during an instructional session by White Cloud with its student Mr. Jared Potter (Potter). As I understand the facts, Potter was airborne and in radio contact with you, his instructor, when he flew to the back side of a hill, lost contact with you, and impacted the ground. It is suggested he became caught up in a rotational downward wind force which caused him to lose altitude until he hit the ground. EMS was contacted and removed Potter from the hill and transported him to a hospital. Potter has now had one

Mr. Ben White
White Cloud Adventures, LLC
October 31, 2023
Page 2

or more surgeries for spinal injuries.  The preliminary prognosis is Potter may be a paraplegic unable to walk.  Potter is about 30 years old, and you relate he works in the computer software industry.  As no complaint has been filed by Potter, it is not yet certain what claims might be made against any insureds under the White Cloud.  However, it is expected such claims would include negligence on White Cloud's part in either or both the training of Potter up to the date of the accident, or failure to observe and monitor at the time of the accident.

## Immediate Actions

Potter has retained the law firm of Robert J. DeBry & Associates, and specifically Attorney Peter Mifflin of that firm, to represent him. Recreation has been in contact with Mr. Mifflin, and on Friday October 22 Mifflin sent a timed demand for the $250,000 policy limits of the Recreation policy issued to White Cloud Adventures, LLC.  The demand expires this Friday, November 3.

## Reservation of Rights

You first reported this matter on Thursday October 12, one week after the incident.  During our first discussion that evening, I requested you complete the Recreation Claim Report document, and forward a copy of any waiver/release or USHPA Membership Form.  You advised you had a USHPA 30 day temporary Membership Form containing standard language issued in October 2021, when you provided Potter with a tandem paraglide flight.   You indicated at the time you believed you had a new School or USHPA waiver/release form signed by Mr. Potter from when solo lessons began in 2023, but you could not locate it at the moment.

By email dated Monday October 23, you provided a copy of the USHPA 30 day temporary membership and waiver form signed by Mr. Potter on October 1, 2021 , as well as the completed Claim Form.  When we spoke on Friday October 27, you indicated you had not located a more current waiver form.  You advised, and Mr. Mifflin is aware, you had taken a current waiver form with you to Mr. Potter in the hospital and attempted to have him execute and back date the form. I had advised you to not attempt that again.

Recreation makes a good faith effort to advise its insureds as to policy terms and conditions which, if Potter's allegations are established as true, could limit or negate coverage under the Recreation Policy.  In doing so, Recreation expresses no opinion as to the truthfulness or validity of the allegations. Recreation, based on the information received, and again noting no formal claim has yet been made, by this letter advises White Cloud Adventures the following policy provisions may negate coverage under the Recreation policy for the Potter claim.

Mr. Ben White
White Cloud Adventures, LLC
October 31, 2023
Page 3

The policy insuring White Cloud is a Recreation Flight School/Park Commercial General Liability and Professional Liability policy. The policy aggregate limit is in the amount of $250,000, with a $5000 deductible. The policy provides coverage for several exposures. Without waiving any coverage issues, or being held to be estopped from raising such coverage issues under other Coverages of the policy, Recreation believes the Coverage Sections relevant to the Potter matter are Coverages **D - HANG GLIDING, PARAGLIDING, OR POWERED PARAGLIDING PARTICIPANT INJURY LIABILITY** and **E - PROFESSIONAL LIABILITY OF NAMED INSURED**. The Insuring Agreement of section D states:

1.    **Insuring Agreement Under Coverage D**

    **a.**    **We** will pay those sums in excess of any applicable "**self-insured retention**" that the **Insured** becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to any "**participant**" to which this insurance applies.

. . .

    **d.**    This insurance under **Coverage D** applies to "**bodily injury**" and "**property damage**" only if:

        **(1)**    The "**bodily injury**" or "**property damage**" is caused by an "**occurrence**" that takes place in the "**coverage territory**"; and

        **(2)**    The "**bodily injury**" or "**property damage**" occurs during the "**policy period**"; and

        . . .

        **(4)**    The "**bodily injury**" or "**property damage**" arises out of the "**covered activities**" of the **Insured**; and

        **(5)**    The "**bodily injury**" or "**property damage**" is to a "**participant**"; and

        **(6)**    In the case that the "**bodily injury**" or "**property damage**" results from an "**occurrence**" while the "**participant**" is "**participating in the sports of hang gliding, or paragliding**":

            **(i)**    In the case that the "**participant**" is a "student":

                **(A)**    In the case of "**bodily injury**", prior to the time of the "**occurrence**", the injured "**participant**" had signed (and, in the cases where the "**participant**" is under the age of 18 years, the "**participant's**" parent or legal guardian had also signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

                . . .

. . .

Mr. Ben White
White Cloud Adventures, LLC
October 31, 2023
Page 4

Any applicable "self-insured retention" has been timely paid.

The terms
The Insuring Agreement of Section E states:

.    **Insuring Agreement Under Coverage E**

**a.**    **We** will pay those sums in excess of any applicable "**self-insured retention**" that the **Insured** becomes legally obligated to pay as "**damages**" because of "**bodily injury**" or "**property damage**" to any "**student**" of the first **Named Insured** to which this insurance applies.

. . .

**d.**    This insurance under **Coverage E** applies to "**bodily injury**" and "**property damage**" only if:

    **(1)**    The "**bodily injury**" or "**property damage**" is caused by an "**occurrence**" that takes place in the "**coverage territory**"; and

    **(2)**    The "**bodily injury**" or "**property damage**" occurs during the "**policy period**"; and

    **(3)**    Prior to the "**policy period**", no **Insured** listed under Paragraph 1. of **Section V - Who Is An Insured** and no "**employee**" authorized by **You** to give or receive notice of an "**occurrence**" or "**claim**", knew that the "**bodily injury**" or "**property damage**" had occurred, in whole or in part. If such a listed **Insured** or authorized "**employee**" knew, prior to the "**policy period**", that the "**bodily injury**" or "**property damage**" occurred, then any continuation, change or resumption of such "**bodily injury**" or "**property damage**" during or after the "**policy period**" will be deemed to have been known prior to the "**policy period**"; and

    **(4)**    The "**bodily injury**" or "**property damage**" arises out of the "**covered activities**" of the **Insured**; and

    **(5)**    The "**bodily injury**" or "**property damage**" is to a "**student**" of the first **Named Insured**; and

    **(6)**    The "**bodily injury**" or "**property damage**" results from an "**occurrence**" while the "**student**" is "**participating in the sports of hang gliding, paragliding, or powered paragliding**"; and

    **(7)**    The "**bodily injury**" or "**property damage**" arises out of the "**hang gliding, paragliding, or powered paragliding professional liability hazard**"; and

    **(8)**    In the case of "**bodily injury**", prior to the time of the "**occurrence**", the injured "**student**" had signed (and, in the cases where the "**student**" is under the age of 18 years, the "**student's**" parent or legal guardian had also signed) the form of pre-injury release, waiver and assumption of risk approved by **Your risk retention group** for use by the first **Named Insured** in connection with the "**covered activities**" and the same was still in effect at the time of the "**occurrence**"; and

    . . .

Mr. Ben White
White Cloud Adventures, LLC
October 31, 2023
Page 5

    **(10)**    Any applicable "**self-insured retention**" has been timely paid.

Under both Coverage D and Coverage E, the terms

Under both Coverage D and Coverage E, the terms "Student", "Participant" and "Participating in the sports of hang lgiding or paragliding" are defined as follows:

**38.**    "**Participant**" means any person while that person is actively "**participating in the sports of hang gliding, paragliding, or powered paragliding**".

**39.**    "**Participating in the sports of hang gliding or paragliding**" means attempted and/or successful acts of launching (or assisting another in launching), flying (whether as pilot in command or otherwise) or landing (including, but not limited to, crashing) a "**hang glider**", or "**paraglider**", including all steps connected to such acts, such as assembly, rigging, inspection, and disassembly of the glider, as well as kiting and other ground handling of the glider.

**62.**    "**Student**" means a person who has enrolled with the first **Named Insured** to take a pre-defined course of instruction in sport of "**hang gliding**", "**paragliding**", and/or "**powered paragliding**" and has, at the time of the "**occurrence**" giving rise to a "**claim**", begun receiving instruction from one of the "**Named Insured's authorized instructors**".

**32.**    "**Named Insured's authorized instructor**" means an "**employee**", "**temporary worker**", "**volunteer worker**", or independent contractor of the first **Named Insured**, designated and authorized by the first **Named Insured** to provide a particular pre-defined course of instruction in the sport of "**hang gliding**", "**paragliding**", and/or "**powered paragliding**" to the first **Named Insured**'s "**students**", and who:

    **a.**    In the case of "**hang gliding**" or "**paragliding**" instruction, either:

        **(1)**    holds a current, valid, unsuspended, unrevoked, active, unexpired instructor rating issued by "**USHPA**" for the wing type(s), launch method(s), and skill(s) to be taught in the pre-defined course of instruction, which rating has been issued or renewed within 36 months of the "**occurrence**"; or

    . . .

The first Named Insured is shown in the policy declarations as:

    White Cloud Adventures, LLC.

In addition, the Exclusion sections of both Coverage D and Coverage E include exclusions carried over from Insuring Agreement Coverage A.  Coverage D provides:

**2.**    **Exclusions Under Coverage D**

    This insurance does not apply to, and **We** have no obligation to defend any **Insured** against or pay "**damages**" on behalf of any **Insured** under **Coverage D** for any of the following:

Mr. Ben White
White Cloud Adventures, LLC
October 31, 2023
Page 6

...

**b.**    **Selected Coverage A Exclusions**

"**Bodily injury**" or "**property damage**" that is excluded under any of the following **Coverage A Exclusions**:

. . .

**(8)**    j.    Aircraft, Auto Or Watercraft;


Coverage E provides:


**2.**    **Exclusions Under Coverage E**

This insurance does not apply to, and **We** have no obligation to defend any **Insured** against or pay "**damages**" on  behalf of any **Insured** under Coverage E for any of the following:

a.    **Selected Coverage A Exclusions**

"**Bodily injury**" or "**property damage**" that is excluded under any of the following **Coverage A Exclusions**:

. . .

**(8)**    j.    Aircraft, Auto Or Watercraft;


The Coverage A Exclusion j. Aircraft, Auto Or Watercraft that is incorporated as an exclusion to both Coverage D and Coverage E reads in relevant part as follows:

**j.**    **Aircraft, Auto Or Watercraft**

"**Bodily injury**" or "**property damage**" "**arising out of**" the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any "**aircraft**", "**auto**" or watercraft.

This exclusion applies even if the "**claims**" against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the "**occurrence**" which caused the "**bodily injury**" or "**property damage**" involved the ownership, rental, chartering, service, maintenance, use, decision to use, operation, "**loading or unloading**", supervision, or entrustment to others of any "**aircraft**", "**auto**" or watercraft.

This exclusion does not apply to:

**(1)**    An unpowered Ultralight Vehicle (as defined by Federal Aviation Regulations, Part 103, Section 103.1(a)-(d) or exempted from compliance from one or more of subsections (a), (b), (c), or (d) of Section 103.1 by one or more exemptions granted to "**USHPA**" by the Federal Aviation Administration), provided that:

. . .

Mr. Ben White
White Cloud Adventures, LLC
October 31, 2023
Page 7

    **(viii)**   At the time of the **"occurrence"** giving rise to "**bodily injury**" or "**property damage**", the pilot in command of the unpowered Ultralight Vehicle:

        **(A)**    Is a current member of "**USHPA**" who:

            . . .; or

        **(B)**    Is a current member of "**USHPA**" who:

            . . .; or

        **(C)**    Is a current member of "**USHPA**" who:

            . . . ; or

        **(D)**    Is a current member of "**USHPA**" who:

            . . .; or

        **(E)**    Is a current member of "**USHPA**" who:

            . . .; or

        **(F)**    Is a current member of "**USHPA**" who:

            . . .; or

        **(G)**    Is a current member of "**USHPA**" who:

            . . .;

    This Exclusion j. of **Exclusions Under Coverage A** shall continue to apply to all unpowered Ultralight Vehicles in all other circumstances.

Under Coverage D, the coverage applies to injuries to a "student" only where "the injured 'participant' had signed . . . the form of pre-injury release, waiver and assumption of risk approved by Your risk retention group for use by the first Named Insured in connection with the 'covered activities' and the same was still in effect at the time of the 'occurrence.'" Coverage E contains a like requirement, applying to "'bodily injury' . . . to a 'student' of the first Named Insured; and" then only where "the injured 'student' had signed the form of pre-injury release, waiver and assumption of risk approved by Your risk retention group for use by the first Named Insured in connection with the 'covered activities' and the same was still in effect at the time of the 'occurrence'."

The policy provided by policy forms RRRG 8530, RRRG 8530-A-UV and RRRG 8530-B-UV the approved pre-injury release, waiver and assumption or risk forms required to be used. It is our understanding that these required forms were not used and that Mr. Potter has never signed such required forms.

Furthermore, under Exclusion j, coverage under both Coverage D and Coverage E of the Recreation policy is predicated upon the student being a current member of USHPA at the time of the occurrence. The USHPA Membership application from 2021 was a 30 Day Membership, and expired of its own terms 30 days after execution, or on October 31,

Mr. Ben White
White Cloud Adventures, LLC
October 31, 2023
Page 8

2021. On October 5, 2023, Potter was not a member of USHPA. Under the Insuring Agreement and according to Exclusion j, there does not appear to be coverage for this matter under the Recreation policy.

It is not the intention of Recreation, at this time, to inform the Insured that there is no coverage for the Potter matter, nor to alter or abridge any of the rights and duties available under the Recreation Policy. A purpose of this letter, however, is to alert White Cloud to the possible future application of the Recreation Policy conditions and exclusions, including but not limited to those set forth above, once a claim has been properly presented and a full investigation has been completed. Please note that Recreation expressly reserves its right to further reserve rights based on other conditions and provisions of the Recreation White Cloud Policy, including Coverages other than Coverages D or E, not set out above should evidence or facts become known which support such additional reservation of rights.

This letter is to inform White Cloud that Recreation intends to, and hereby does, fully reserve all of its rights under the Recreation Policy issued to White Cloud to complete a full investigation of all of the facts and circumstances surrounding the claims and allegations which have been made against White Cloud by Potter, to participate in the defense of these claims and/or to negotiate the claims without waiver or estoppel of any of Recreation's rights under the Recreation Policy. Neither this letter nor any other action of Recreation is intended, nor should be construed, as a waiver or creating an estoppel as to any term or condition of the Recreation Policy under which this Incident is being investigated and/or defended. Recreation fully reserves all of its rights under the Recreation Policy, including but not limited to the right to deny or withdraw from the defense and/or to deny indemnity on behalf of any Insured.

If permitted by law, Recreation reserves the right to seek reimbursement for the costs and expenses of defending any claim or allegation by Potter which is not covered by the Recreation Policy. Such costs and expenses may include, without limitation, attorney fees, witness fees, deposition fees, and document production expenses.

After considering the contents of this letter, White Cloud may wish to obtain the services of its own attorney, at its expense, to protect its interests to the extent that the claims asserted against White Cloud may be uninsured because of lack of coverage.

If I may provide any further information to you at this time, or if you would like clarification of any portion of this letter, or if you have any additional information you feel is relevant to either the Potter matter or coverage issues, please contact me immediately.

Mr. Ben White
White Cloud Adventures, LLC
October 31, 2023
Page 9

In closing, Recreation wishes to reiterate that it does not mean to imply that any of the allegations by Potter are true or correct. Rather, such allegations have been referenced for the sole purpose of making initial coverage determinations under the Recreation Policy.

Please contact me if you have any questions.

Sincerely,

*Timothy F. Sullivan*

Timothy F. Sullivan, RPLU

Chief Claims Officer

# Return of Electronic Notification

**Recipients**

**ALAN BRADSHAW** - Notification received on 2025-02-19 11:24:57.167.

## ****** IMPORTANT NOTICE - READ THIS INFORMATION *****
## NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:**    250901420

**Case Title:**    WHITE, BENJAMIN, et al. vs. RECREATION RISK RETENTION, et al.

**Judge:**    RICHARD PEHRSON

**Commissioner:**

**Official File Stamp:**    02-19-2025 11:24:23

**Court:**    3RD DISTRICT COURT - SALT LAKE District

SaltLake County District Court

**Document(s) Submitted:**    Complaint and Demand for a Jury Trial

Other Exhibits A-F to Complaint

**Filed by or in behalf of:**    ALAN BRADSHAW

This notice was automatically generated by the courts auto-notification system.

–

**The following people were served electronically:**

ALAN BRADSHAW for BENJAMIN WHITE et al

**The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means:**

JARED POTTER

RECREATION RISK RETENTION

**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**
Alan C. Bradshaw (#4801)
Carson M. Fuller (#17571)
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678
abradshaw@mc2b.com
cfuller@mc2b.com

*Coverage Attorneys for White Cloud Adventures LLC and Benjamin White*

IN THE THIRD DISTRICT COURT

IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| BENJAMIN WHITE, an individual; and WHITE CLOUD ADVENTURES LLC, at Utah Limited Liability Company,<br><br>      Plaintiffs,<br><br>v.<br><br>RECREATION RISK RETENTION GROUP, INC., a Vermont Corporation; and JARED POTTER, an individual,<br><br>      Defendants. | **ACCEPTANCE OF SERVICE OF SUMMONS AND COMPLAINT**<br><br>Civil No 250901420<br><br>Judge Richard Pehrson |

The undersigned counsel, who is fully authorized to do so, accepts service of the

Summons and Complaint and Demand for Jury Trial ("Complaint") in this action on behalf of

Defendant Jared Potter ("Defendant") pursuant to Rule 4(d)(3)(C) of the Utah Rules of Civil

Procedure, which acceptance has the same force and effect as if the Summons and Complaint

had been personally served upon Defendant as of the date of execution of this document.

Defendant does not waive any defenses or objections in this case, except for the adequacy of

service of Plaintiffs' Complaint.

DATED this 19th day of February, 2025.

**ROBERT J. DEBRY & ASSOCIATES**

/s/ Peter Mifflin (*signed with permission*)
Peter Mifflin
*Attorneys for Defendant. Jared Potter*

4921-8615-8347, v. 1

# Return of Electronic Notification

| Recipients |
| --- |
| **ALAN BRADSHAW**  - Notification received on 2025-02-19 13:02:57.833. |

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

| | |
|---|---|
| **A filing has been submitted to the court RE:** | 250901420 |
| **Case Title:** | WHITE, BENJAMIN, et al. vs. RECREATION RISK RETENTION, et al. |
| **Judge:** | RICHARD PEHRSON |
| **Commissioner:** | |
| **Official File Stamp:** | 02-19-2025 13:02:31 |
| **Court:** | 3RD DISTRICT COURT - SALT LAKE District SaltLake County District Court |
| **Document(s) Submitted:** | Acceptance of Service of Summons and Complaint |
| **Filed by or in behalf of:** | ALAN BRADSHAW |

This notice was automatically generated by the courts auto-notification system.

–

**The following people were served electronically:**

ALAN BRADSHAW for BENJAMIN WHITE et al

**The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means:**

JARED POTTER

RECREATION RISK RETENTION

**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**
Alan C. Bradshaw (#4801)
Carson M. Fuller (#17571)
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678
abradshaw@mc2b.com
cfuller@mc2b.com

*Coverage Attorneys for White Cloud Adventures LLC and Benjamin White*

IN THE THIRD DISTRICT COURT

IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| BENJAMIN WHITE, an individual; and WHITE CLOUD ADVENTURES LLC, at Utah Limited Liability Company, | **ACCEPTANCE OF SERVICE OF SUMMONS AND COMPLAINT** |
| Plaintiffs, | |
| v. | Civil No 250901420 |
| RECREATION RISK RETENTION GROUP, INC., a Vermont Corporation; and JARED POTTER, an individual, | Judge Richard Pehrson |
| Defendants. | |

The undersigned counsel, who is fully authorized to do so, accepts service of the Summons and Complaint and Demand for Jury Trial ("Complaint") in this action on behalf of Defendant Recreation Risk Retention Group, Inc. ("Defendant") pursuant to Rule 4(d)(3)(C) of the Utah Rules of Civil Procedure, which acceptance has the same force and effect as if the Summons and Complaint had been personally served upon Defendant as of the date of execution of this document. Defendant does not waive any defenses or objections in this case, except for the adequacy of service of Plaintiffs' Complaint.

DATED this 20th day of February, 2025.

**McAngus Goudelock &Courie LLC**

/s/ Alexander Henlin
Alexander Henlin (Vermont Bar No. 6269, not
barred in Utah)
(signed with permission received Feb. 20, 2025)
*Attorneys for Defendant Reservation Risk Retention
Group*

4910-2582-7357, v. 1

# Return of Electronic Notification

| Recipients |
| --- |
| **ALAN BRADSHAW**  - Notification received on 2025-02-20 12:14:19.237. |

## ****** IMPORTANT NOTICE - READ THIS INFORMATION *****
## NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:**    250901420

**Case Title:**    WHITE, BENJAMIN, et al. vs. RECREATION RISK RETENTION, et al.

**Judge:**    RICHARD PEHRSON

**Commissioner:**

**Official File Stamp:**    02-20-2025 12:13:54

**Court:**    3RD DISTRICT COURT - SALT LAKE District

SaltLake County District Court

**Document(s) Submitted:**    Acceptance of Service of Summons and Complaint

**Filed by or in behalf of:**    ALAN BRADSHAW

This notice was automatically generated by the courts auto-notification system.

–

**The following people were served electronically:**

ALAN BRADSHAW for BENJAMIN WHITE et al

**The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means:**

JARED POTTER

RECREATION RISK RETENTION

PETER R. MIFFLIN – 12595
**ROBERT J. DEBRY & ASSOCIATES**
35 West Broadway Suite
300 Salt Lake City, Utah 84101
Telephone: (801) 262-8915
Facsimile: (801) 562-4561
pmifflin@robertdebry.com
*Attorneys for Plaintiff*

IN THE THIRD DISTRICT COURT
IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JARED POTTER, an individual<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN WHITE, an individual; WHITE CLOUD ADVENTURES LLC, a Utah Limited Liability Company<br>Defendants. | **DEFENDANT JARED POTTER'S ANSWER**<br><br>Civil No. 250901420<br><br>Judge: Richard Pehrson |

Defendant Jared Potter hereby answers the Complaint as follows:

1. With regard to paragraphs 1-8 Defendant Jared Potter admits.

2. With regard to paragraphs 9-28 Defendant Jared Potter admits.

3. With regard to paragraphs 29-39 Defendant Jared Potter admits the insurance policies contains those terms but reserves the right to object to enforceability of those terms.

4. With regard to paragraph 40 Defendant Jared Potter admits that the policies contains those terms but reserves the right to object to the enforceability of those terms.

5. With regard to paragraphs 41-47 Defendant Jared Potter admits.

6. With regard to paragraphs 48 Defendant Jared Potter denies for lack of knowledge.

7. With regard to paragraphs 49-54 Defendant Jared Potter denies for lack of knowledge.

8. With regard to paragraphs 55-58 Defendant Jared Potter admits.

9. With regard to paragraphs 59-71 Defendant Jared Potter admits.

10. With regard to paragraphs 72-80 Defendant Jared Potter admits.

11. With regard to paragraphs 81-87 Defendant Jared Potter admits.

12. With regard to paragraphs 88-94 Defendant Jared Potter admits.

13. With regard to paragraph 95 Defendant Jared Potter denies to lack of knowledge.

14. With regard to paragraphs 96-108 Defendant Jared Potter admits.

## AFFIRMATIVE DEFENSES

1. The releases and waivers in question are unenforceable under various equitable doctrines such as violation of public policy and unconscionability.

2. The insurance policies at issue contain provisions that render them illusory and as such should be disregarded.

3. Defendant RRG have implicitly waived defenses to coverage

4. Defendant RRG should be estopped from asserting certain defenses to coverage as it has asserted sole control over the defense and forever deprived its insured from resolving the underlying dispute under favorable terms.

5. Defendant RRG's defenses may be barred by the doctrines of issue preclusion, claim preclusion, waiver or estoppel.

6. Claims against Plaintiff for gross negligence are unwaivable as a matter of law.

7. Defendant Jared Potter reserves the right to assert additional affirmative defenses as more facts are discovered.

8. Defendant Jared Potter claims that certain specific factual and legal issues may be more appropriately addressed in a different forum.

9. There is no actual causes of action pled against Defendant Jared Potter for damages.

## PRAYER FOR RELIEF

Wherefore Defendant Jared Potter respectfully requests the following relief:

1. That coverage be adjudicated in favor of Plaintiff

2. That Plaintiff be awarded his damages against Defendant RRG as may be just and proper.

3. That Defendant Jared Potter be awarded his costs and reasonable attorney's fees as permitted by law.

DATED this 20th of March 2025.


ROBERT J. DEBRY & ASSOCIATES

/s/PETER R. MIFFLIN
Attorney for Jared Potter

# Return of Electronic Notification

| Recipients |
| --- |
| **ALAN BRADSHAW** - Notification received on 2025-03-20 11:31:41.37. |
| **PETER MIFFLIN** - Notification received on 2025-03-20 11:31:41.37. |

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

| | |
|---|---|
| **A filing has been submitted to the court RE:** | 250901420 |
| **Case Title:** | WHITE, BENJAMIN, et al. vs. RECREATION RISK RETENTION, et al. |
| **Judge:** | RICHARD PEHRSON |
| **Commissioner:** | |
| **Official File Stamp:** | 03-20-2025 11:31:13 |
| **Court:** | 3RD DISTRICT COURT - SALT LAKE District |
| | SaltLake County District Court |
| **Document(s) Submitted:** | Answer Defendant Jared Potter's Answer |
| **Filed by or in behalf of:** | PETER MIFFLIN |

This notice was automatically generated by the courts auto-notification system.

–

**The following people were served electronically:**

PETER MIFFLIN for JARED POTTER

ALAN BRADSHAW for BENJAMIN WHITE et al

**The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means:**

RECREATION RISK RETENTION

THIRD JUDICIAL DISTRICT - SALT LAKE COUNTY DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH

| | | |
|---|---|---|
| BENJAMIN WHITE, | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | NOTICE OF EVENT DUE DATES |
| | : | |
| RECREATION RISK RETENTION, | : | Case No: 250901420 CN |
| Defendant | : | Discovery Tier: 3 |
| | : | Judge: RICHARD PEHRSON |

To Counsel and Parties:

The district court case management system has automatically generated this notice, calculating the dates set forth below under Utah Rule of Civil Procedure 26. These dates will constitute the schedule for disclosures, fact discovery, expert discovery, ADR and readiness for trial. This schedule does not govern extraordinary discovery.

Based on the date the answer was filed, the following event due dates apply in this case. If any date is a Saturday, Sunday or legal holiday, the due date is the following business day.

| | | |
|---|---|---|
| Date Answer filed: | 20-Mar-25 | |
| * Moving party's initial disclosures due: | 03-Apr-25 | (Date answer filed plus 14 days) |
| * Responding party's initial disclosures due: | 01-May-25 | (Date answer filed plus 14 or 42 days, depending on discovery tier) |
| * Fact discovery completed: | 27-Nov-25 | (Date responding party's disclosures due plus 90, 120, 180, or 210 days, depending on the discovery tier) |
| * Expert discovery completed: | 25-Jun-26 | (Date fact discovery completed plus 210 days) |
| * ADR completed (unless exempt): | 25-Jun-26 | (Date expert discovery completed) |
| * Certificate of Readiness for Trial due: | 25-Jun-26 | (Date expert discovery completed) |

The parties shall promptly notify the Court of any settlements or stipulations. Self Help Resources are available at www.utcourts.gov.

CERTIFICATE OF NOTIFICATION

I certify that a copy of the attached document was sent to the following people for case 250901420 by the method and on the date specified.

EMAIL:  PETER MIFFLIN

EMAIL:  ALAN BRADSHAW

EMAIL:  ALAN BRADSHAW

MAIL:  RECREATION RISK RETENTION UNKNOWN

Date:  March 20, 2025                                    /s/ JENNIFER JONES

Clerk/Clerk of Court

RICHARD A. VAZQUEZ (9128)
SPENCER FANE LLP
10 Exchange Place, Ste. 1100
Salt Lake City, Utah 84111-2824
Telephone: (801) 322-9216
rvazquez@spencerfane.com

*Attorneys for Defendant Recreation Risk Retention Group, Inc.*

---

IN THE THIRD JUDICIAL DISTRICT COURT OF SALT LAKE COUNTY

STATE OF UTAH

---

| | |
|---|---|
| BENJAMIN WHITE, an individual; and WHITE CLOUD ADVENTURES LLC, at Utah Limited Liability Company, | **ANSWER OF DEFENDANT RECREATION RISK RETENTION GROUP, INC.** |
| Plaintiff, | Civ. No. 250901420 |
| vs. | Judge Richard Pehrson |
| RECREATION RISK RETENTION GROUP, INC., a Vermont Corporation; and JARED POTTER, an individual, | |
| Defendants. | |

---

Defendant Risk Retention Group, Inc. ("Recreation") answers the Complaint of plaintiffs

Benjamin White and White Cloud Adventures LLC ("White Cloud") as follows:

**FIRST DEFENSE**

The Complaint fails to state a claim upon which relief may be granted.

**SECOND DEFENSE**

Recreation responds to the numbered allegations of the Complaint as follows:

1.      Recreation admits the allegations of the following paragraphs: 1, 2, 3, 5, 59, 60,

64, 70, 82, 89, 98.

2.      Recreation denies the allegations of the following paragraphs based upon lack of knowledge, information, or belief; or because they contain legal arguments which, unlike factual allegations, cannot be admitted: 45, 46, 48, 49, 50, 51, 52, 53, 54, 84, 91, 95, 102, 103,

3.      Defendant denies the allegations in the following paragraphs: 6, 7, 8, 33, 34, 35, 39, 47, 61 , 62, 66, 67, 68, 69, 71, 75, 76, 77, 78, 79, 80, 81, 86, 87, 88, 90, 92, 93, 94, 96, 97, 99, 100, 101, 104, 105, 106, 107, 108.

4.      With respect to paragraphs 4, 9 admit that Recreation is a Vermont corporation organized as a risk retention group under Vermont law and the provisions of the Liability Risk Retention Act, 15 U.S.C. §3901 et seq.; Admit that White Cloud is a Recreation Risk member and a Recreation Risk policyholder; Admit that Mr. White is a Recreation Risk additional insured; Admit that Recreation provides insurance to, and is in the business of selling insurance to, its members such as White Cloud which is domiciled in Utah; Deny the remainder of the allegations.

5.      With respect to paragraphs 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 36, 37, 38, 40, 83, 85,  affirmatively aver that the referred-to policies were issued, and that certified copies of the White Cloud Policy and Professional Policy must both be read as a whole and speak for themselves; Affirmatively aver that any undefined term in either policy is unambiguous, and deny any characterization inferring otherwise.  Deny any characterization of either policy or its terms; Deny any arguments regarding either policy or their terms; And deny the remainder of the allegations to the extent they are inconsistent with the terms of certified copies of either policy and their status and / or effect under applicable law.

6.      With respect to paragraphs 41, 42, 43, 44, 45, 46, 55, 56, 57, 58,  Recreation admits that the referenced complaint and lawsuit was filed, but affirmatively avers that the

referenced complaint and lawsuit speaks for itself; denies any characterizations of the allegations therein and any conclusions regarding the allegations therein; denies the truth of any of the allegations therein asserted due to lack of knowledge, information, or belief; and denies to the extent that the allegations are inconsistent with the contents of the complaint / lawsuit itself.

7.     With respect to paragraph 65, Recreation affirmatively avers that it, in good faith, offered $100,000 to settle a claim under which no coverage exists under any subject Recreation policy.  Deny the remainder of the allegations and characterizations.

8.     With respect to paragraph 72, 73, 74, admit that Recreation filed a JAMS arbitration pursuant to the binding arbitration provisions in its policies with White Cloud and / or its sole member, Mr. White, to which White Cloud and its sole member, Mr. White, agreed. Deny the remaining allegations and any characterizations therein.

9.     Recreation denies any and all allegations and claims in the Complaint not specifically identified and admitted herein.

### THIRD DEFENSE

The Complaint is barred, in whole or in part, by the doctrines of consent, waiver, estoppel, acquiescence, ratification, release, unclean hands, and laches, and by the terms of any written agreements to which the Plaintiffs are a party.

### FOURTH DEFENSE

The Plaintiffs' damages, if any, were the result of the Plaintiffs' own actions or failures to act.

**FIFTH DEFENSE**

The Plaintiffs are under a duty to use reasonable efforts to mitigate their damages. To the extent that they have failed to do so, or fail to do so in the future, their recovery in this matter is barred.

**SIXTH DEFENSE**

The Plaintiffs must prove their damages, and to the extent they fail to do so, those damages must be barred.

**SEVENTH DEFENSE**

Plaintiffs' claims are preempted by the federal Liability Risk Retention Act, 15 U.S.C. §§ 3901 *et seq.*

**EIGHTH DEFENSE**

The Complaint fails because coverage is barred by the terms of the policies at issue.

**NINTH DEFENSE**

Recreation has breached no fiduciary duty to the Plaintiffs as it has defended and continues to defend the Plaintiffs under a reservation of rights in the underlying action and is seeking declaratory relief as permitted by applicable law.

**TENTH DEFENSE**

No reasonable jury could conclude that Recreation's actions breached either any implied covenant of good faith and fair dealing, or any fiduciary duty under applicable law.

**ELEVENTH DEFENSE**

The Complaint is barred in whole or in part pursuant to the terms and conditions, and any breach or failure of compliance thereof by Plaintiffs, of the insurance policy at issue.

**TWELFTH DEFENSE**

The Complaint fails to state a claim upon which exemplary and/or punitive damages may be awarded.

**THIRTEENTH DEFENSE**

Exemplary and/or punitive damages in this case may be prohibited by at least the following provisions of the United States and Utah Constitutions, and / or comparable provisions of the Vermont Constitution:

a.      The due process clauses (including substantive and procedural due process) of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, § 7 of the Utah Constitution;

b.      The taking clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, § 22 of the Utah Constitution;

c.      The equal protection clauses of the Fourteenth Amendment to the United States Constitution, and Article I, § 24 of the Utah Constitution;

d.      The prohibitions against excessive fines and punishments contained in the Eighth Amendment to the United States Constitution and Article I, § 9 of the Utah Constitution;

e.      The rights given accused by the Fifth and Sixth amendments to the United States Constitution and Article I, §§ 12, 13 of the Utah Constitution;

f.      The prohibition of ex post facto laws contained in Article I, § 18 of the Utah Constitution; and

g.      The open courts provision, Article I, § 11 of the Utah Constitution.

Among the reasons an award of punitive damages in this case may violate these and other provisions of the United States, Utah, and Vermont Constitutions are the following:

h.     The standards of conduct and standards for awarding punitive damages are vague and ambiguous;

i.     Defendant will be treated differently based upon wealth or corporate status;

j.     Defendant may be repeatedly punished for the same alleged conduct;

k.     Defendant has not been given the same protections and guarantees as criminal defendants, such as protection from self-incrimination, jury trial in the location of the alleged wrongful conduct, charge upon adequately detailed information, proof beyond a reasonable doubt, etc.

## FOURTEENTH DEFENSE

Pursuant to Utah Code Ann. § 76-3-302, the maximum amount recoverable from a corporation in the State of Utah for the purpose of punishing it is $20,000.

## FIFTEENTH DEFENSE

Any and all of Defendant's decisions and conclusions regarding The Plaintiffs' notices and demands, if any, were reasonable and any and all of Plaintiffs' claims and demands for coverage were fairly debatable.

## SIXTEENTH DEFENSE

The Plaintiffs were at fault, and their fault was equal to or greater than the fault, if any, of Recreation.  Defendant requests special verdict forms reflecting a determination of the proportion of fault attributable to the Plaintiffs and other parties, and limitation of liability, pursuant to Utah Code Ann. § 78B-5-818 *et seq*.

### SEVENTEENTH DEFENSE

Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, and breach of duties and obligations, are not actionable as pled.

### EIGHTEENTH DEFENSE

Any damages suffered by the Plaintiffs were solely caused by the culpable conduct of persons or entities other than Recreation, including but not limited to Plaintiffs and / or Mr. Potter.

### NINETEENTH DEFENSE

The Complaint is barred by the doctrine of comparative bad faith.

### TWENTIETH DEFENSE

The Complaint is a result of impermissible forum-shopping.

### TWENTY-FIRST DEFENSE

The Complaint attempts to avoid an attempt to compel arbitration, in contravention of the arbitration provisions of the policies at issue.  As such, Recreation seeks an award of reasonable attorneys' fees incurred in defending the Complaint the provisions of the policies at issue.

### TWENTY-SECOND DEFENSE

All or some of Plaintiffs' claims are subject to arbitration pursuant to the arbitration provisions of the policies at issue, and arbitration of those claims must be compelled.

### TWENTY-THIRD DEFENSE

Under the federal Liability Risk Retention Act, 15 U.S.C. §§ 3901 et seq., Recreation as a Vermont-chartered-and-domiciled risk retention group is free to operate in Utah subject to limited regulation by the State of Vermont, and free from the specific restrictions of Utah law raised by Mr. White and White Cloud.

## TWENTY-FOURTH DEFENSE

Plaintiffs' claims are subject to stay or dismissal pending resolution of a competing arbitration proceeding and a first-filed federal petition to compel that arbitration proceeding, styled *Recreation Risk Retention Group, Inc. v. White Cloud Adventures LLC, et al*, No. 2:25-cv-00197 (D. Vermont).

## TWENTY-FIFTH DEFENSE

Plaintiffs have not pled that Recreation acted with malice, and are therefore barred from recovering punitive damages

## TWENTY-SIXTH DEFENSE

Vermont recognizes the right of insurers to require arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 *et. seq.*

## TWENTY-SEVENTH DEFENSE

Arbitration may only be compelled by a court within the jurisdiction in which the parties agreed to arbitrate. In this matter, that jurisdiction is Burlington, Vermont.  Therefore, Plaintiffs' claims are subject to dismissal or stay.

WHEREFORE, Recreation prays that the Complaint be dismissed with prejudice and that the Plaintiffs take nothing thereby, that Recreation be awarded its costs and reasonable attorneys' fees herein incurred, along with such other relief as the Court deems just.

DATED this 20th day of March, 2025.

SPENCER FANE LLP


*/s/ Richard A. Vazquez*
Richard A. Vazquez
*Attorneys for Defendant Recreation Risk Retention Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of March, 2025, the foregoing was electronically filed with the Court through its Greenfiling system, which will send electronic notice to all counsel who are registered participants, including the following:

Alan C. Bradshaw
Michael E. Harmond
MANNING CURTIS BRADSHAW & BEDNAR PLLC
215 South State Street, Suite 350
Salt Lake City, Utah 84111
abradshaw@mc2b.com
mharmond@mc2b.com
*Attorneys for Defendants David Rowan Luke, Robert Luke and Michele Luke*

*/s/ Annette Gamero*

# Return of Electronic Notification

| Recipients |
| --- |
| **RICHARD VAZQUEZ** - Notification received on 2025-03-20 15:12:11.39. |
| **ALAN BRADSHAW** - Notification received on 2025-03-20 15:11:51.21. |
| **PETER MIFFLIN** - Notification received on 2025-03-20 15:12:01.187. |

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:**   250901420

**Case Title:**   WHITE, BENJAMIN, et al. vs. RECREATION RISK RETENTION, et al.

**Judge:**   RICHARD PEHRSON

**Commissioner:**

**Official File Stamp:**   03-20-2025 15:11:08

**Court:**   3RD DISTRICT COURT - SALT LAKE

District

SaltLake County District Court

**Document(s) Submitted:**   Answer

**Filed by or in behalf of:**   RICHARD VAZQUEZ

This notice was automatically generated by the courts auto-notification system.

–

**The following people were served electronically:**

PETER MIFFLIN for JARED POTTER

ALAN BRADSHAW for BENJAMIN WHITE et al

RICHARD VAZQUEZ for RECREATION RISK RETENTION

**The following people have not been served electronically by the Court. Therefore, if service is required, they must be served by traditional means:**