IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BENJAMIN WHITE, an individual; and WHITE CLOUD ADVENTURES LLC, a Utah limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>RECREATION RISK RETENTION GROUP, INC., a Vermont corporation; and JARED POTTER, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO REMAND**<br><br>Case No. 2:25-cv-00215<br><br>Judge Tena Campbell |

This action was removed to the United States District Court for the District of Utah on March 20, 2025.  (See Not. Removal, ECF No. 2.)  Plaintiffs Benjamin White and White Cloud Adventures LLC (White Cloud) filed a motion to remand the action to Utah's Third District Court on April 21, 2025.  (ECF No. 8.)  The Plaintiffs argue that this court lacks diversity jurisdiction under 28 U.S.C. § 1332 because the Plaintiffs and Defendant Jared Potter are all citizens of Utah.  The Plaintiffs further maintain that there is no basis for this court to exercise federal question jurisdiction under 28 U.S.C. § 1331.  Defendant Recreation Risk Retention Group, Inc. (Recreation) asserts that Mr. Potter was fraudulently joined as a Defendant and that the court should therefore disregard his citizenship or realign the parties, thereby allowing the court to properly exercise diversity jurisdiction.  Recreation also maintains that federal question jurisdiction exists.

1

For the following reasons, the court agrees with the Plaintiffs that it lacks jurisdiction to hear this matter.  Accordingly, the court remands the action.

## BACKGROUND

This case arises from a paragliding crash that occurred on October 5, 2023.  (Compl., ECF No. 2-1 at ¶ 57.)  Mr. Potter alleges that he hired Mr. White and White Cloud to introduce him to paragliding.  (Id. ¶ 42.)  Mr. Potter participated in one tandem flight in 2021 on the north side of Point of the Mountain, near Draper, Utah, as well as approximately 20 flights on the south side of the mountain from July 2023 until the day of the accident.  (Id. ¶ 56.)  On the day of the crash, Mr. Potter was conducting a solo flight with radio communication and instruction from Mr. White.  (Id. ¶ 57.)  He crashed into a hill, suffering severe injury and permanent disability.  (Id.)  Mr. Potter alleges that his injuries were caused by the negligence or gross negligence of Mr. White and White Cloud.  (Id. ¶ 58.)  On October 31, 2024, Mr. Potter filed suit against Mr. White and White Cloud in Utah's Third District Court.  (Id. ¶ 41); see Potter v. White, Civil No. 240908832 (Utah 3d Dist. Ct.).

At the time of the accident, White Cloud was insured under a policy issued by Recreation (the White Cloud Policy).  (Id. ¶ 10.)  The White Cloud Policy provided coverage for "bodily injury" or "property damage" that occurred while covered participants were "participating in the sports of hang gliding, or paragliding[.]"  (Id. ¶ 12.)  The White Cloud Policy also provided professional liability coverage for any named insureds who became legally obligated to pay damages for "bodily injury" or "property damage" to any "student" of the named insured, as long as the injured student had signed a "pre-injury release, waiver and assumption of risk …."  (Id. ¶ 17.)  The White Cloud Policy contained an exclusion that applied to certain aircraft, but not to an "unpowered Ultralight Vehicle" provided that, at the time of the incident, the pilot was a

2

current member of the United States Hang Gliding and Paragliding Association, Inc. (USHPA). (Id. ¶¶ 25–26.)

Recreation also provided insurance to third-party USHPA through a separate policy (the Professional Policy). The Professional Policy provided professional liability coverage of up to $250,000 in excess of the $250,000 limits of the White Cloud Policy. (Id. ¶ 30.) Mr. White and White Cloud assert that they were "Insureds" under the Professional Policy. (Id. ¶ 35.) But the Professional Policy only provided coverage where an injured "USHPA Member" had signed a pre-injury release, waiver, and assumption of risk. (Id. ¶ 40.)

Mr. White and White Cloud assert that Mr. Potter became a temporary member of USHPA in 2021, at which time he signed a "30 Day Student/Affiliate Membership Application." (Id. ¶ 45.) The Plaintiffs further allege that Mr. Potter signed a "Release, Waiver and Assumption of Risk Agreement" (the Release) on October 1, 2021. (Id. ¶ 46.) The Plaintiffs claim that the Release "forever released and discharged" them from any damages for Mr. Potter's injuries. (Id. ¶¶ 49–50, 53–54.)

Mr. Potter disputes some of these assertions in the case he filed against Mr. White and White Cloud in Utah state court. Specifically, Mr. Potter alleges that he became a temporary member of "a professional paragliding organization in 2021, but did not renew that membership after its expiration and took exactly one tandem flight in 2021." (Compl. in Potter v. White, Civil No. 240908832, Ex. A to Def.'s Opp'n Mem., ECF No. 11-1 at ¶ 11.) He further maintains that he "did not sign any new waivers or acknowledgements of risk" in connection with the training that he began with Mr. White in 2023. (Id. ¶ 12.) Finally, Mr. Potter asserts that, "[a]pproximately six days after the crash, Ben White approached Plaintiff with new paperwork including a waiver and asked him to back date the waiver to before the crash." (Id. ¶ 39.)

3

Mr. White reported the accident and the lawsuit to Recreation.  (Compl. ¶ 59.) Recreation agreed to defend Mr. White and White Cloud against Mr. Potter's claims.  (Id. ¶ 60.) But Recreation took the position that the Release was not effective on the date of the accident, thereby defeating any coverage under the White Cloud Policy.[1]  (Id. ¶ 61.)  Recreation also maintained that no coverage existed because Mr. Potter was not a current member of the USHPA at the time of the accident.  (Id. ¶ 70.)

On January 7, 2025, Recreation sent a demand letter for formal arbitration to counsel for Mr. White, White Cloud, and Mr. Potter.  (Id. ¶ 72; Aff. Timothy Sullivan, Ex. B to Not. Removal, ECF No. 2-2 at ¶ 13.)  The demand letter sought declarations that Recreation did not owe coverage to either Mr. White or White Cloud and did not owe any insurance benefits to Mr. Potter.  (Sullivan Aff. ¶ 13.)  Mr. White, White Cloud, and Mr. Potter objected to Recreation's arbitration demand.  (Id. ¶ 14.)  On February 13, 2025, Recreation filed a petition in the United States District Court for the District of Vermont seeking to compel Mr. White, White Cloud, and Mr. Potter to participate in arbitration.  See Recreation Risk Retention Grp., Inc. v. White Cloud Adventures LLC, No. 2:25-cv-00197 (D. Vermont).

A week later, on February 20, 2025, Mr. White and White Cloud filed suit in Utah state court against Recreation and Mr. Potter, alleging claims for breach of contract, declaratory judgment, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary

---

[1] Recreation maintains that it "subsequently advised Mr. White that there likely was no coverage available under the [Professional] Policy, either."  (Suppl. Decl. Timothy Sullivan, Ex. B to Def.'s Opp'n Mem., ECF No. 11-2 at ¶ 7.)  Mr. White and White Cloud allege that Recreation failed to disclose the existence of the second policy during settlement communications and did not mention that policy in its original letter agreeing to defend Mr. White and White Cloud subject to a reservation of rights.  (See Compl. ¶¶ 60, 69.)

duty.[2]  (Compl. ¶¶ 81–108.)  Recreation removed that action on March 20, 2025.  (See ECF No. 2.)  And on April 21, 2025, Mr. White and White Cloud filed the motion to remand that is now pending before the court.  (ECF No. 8.)

Meanwhile, the court in Vermont has stayed proceedings while the parties conduct an arbitration that is scheduled for April 1, 2026.  (See Order Granting Mot. Stay & Second Status Report, ECF Nos. 27 & 33 in Recreation Risk Retention Grp., Inc., No. 2:25-cv-00197 (D. Vermont).)  Discovery is ongoing in the Utah state court case.  (See Case Dkt. in Potter, Civil No. 240908832 (Utah 3d Dist. Ct.).)

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  Pueblo of Jemez v. United States, 790 F.3d 1143, 1151 (10th Cir. 2015) (citation modified).  Subject matter jurisdiction in federal court takes two forms: federal question jurisdiction and diversity jurisdiction.  Rywelski v. Biden, No. 23-5099, 2024 WL 1905670, at *1 (10th Cir. May 1, 2024), cert. denied, 145 S. Ct. 444 (2024) (citing Home Depot U.S.A., Inc. v. Jackson, 587 U.S. 435, 437–38 (2019)).  The court may exercise federal question jurisdiction for "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "[F]or a plaintiff to invoke federal-question jurisdiction, the 'cause of action must either be (1) created by federal law, or (2) if it is a state-created cause of action, its resolution must necessarily turn on a substantial question of federal law.'"  McCollum v. McCollum, No. 21-3231, 2022 WL 1151135, at *2 (10th Cir. Apr. 19, 2022) (quoting Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1235 (10th Cir. 2003)).

---

[2] Recreation asserts that Mr. White and White Cloud filed this action to avoid arbitration in Vermont.  (ECF No. 2 at 4.)

5

The court may exercise diversity jurisdiction where the claim is between citizens of different states and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332.  "When jurisdiction is premised on diversity of citizenship …, each plaintiff must be diverse from each defendant to have what is known as complete diversity."  Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs., 651 F.3d 1219, 1223 (10th Cir. 2011) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 & n.1 (1989)).

If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."  Bd. of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc., 25 F.4th 1238, 1250 (10th Cir. 2022) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)).  Removal statutes should be strictly construed, and all doubts are to be resolved in favor of remand.  See Fajen v. Found. Reserve Ins. Co., Inc., 683 F.2d 331, 333 (10th Cir. 1982).  The Tenth Circuit has held that "there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005) (citation omitted), abrogated on other grounds by, Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81 (2014).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).  The removing party must satisfy its burden by a preponderance of the evidence.  McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008).

For federal question cases, the plaintiff's well-pleaded complaint usually determines whether a federal question exists.  Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S.

Cal., 463 U.S. 1, 9–10 (1983).  Presenting a federal question as a defense, such as federal preemption, "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).  But Congress may "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  Id. at 63–64.  When this happens, the state-law cause of action becomes "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of" the federal law.  Id. (quoting Franchise Tax Bd., 463 U.S. at 23).

For diversity cases, removal is not authorized where the parties are not completely diverse or where "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  But "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy.  Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  Brazell v. Waite, 525 F. App'x 878, 881 (10th Cir. 2013) (citation omitted).  When determining whether diversity jurisdiction exists, courts are not bound "by the party alignment set forth in the pleadings.  Rather, the Supreme Court has stated that a court should look beyond these formalities and attempt to determine the parties' actual interests.  Only when the parties are aligned to match their actual interests can the court determine whether § 1332 is satisfied."  Symes v. Harris, 472 F.3d 754, 761 (10th Cir. 2006) (citing City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69–70 (1941)).

"[F]raudulent joinder is an exception to the complete diversity requirement when there is no cause of action stated against a resident defendant or when no cause of action exists.  Fraudulent joinder may also be found when the resident defendant serves only to frustrate federal

7

jurisdiction." Long v. Halliday, 768 F. App'x 811, 813–14 (10th Cir. 2019) (citation modified). But "[t]he defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013) (citation omitted).

## ANALYSIS

### I.   Diversity Jurisdiction

It is undisputed that Mr. Potter, who is named as a Defendant in this action, is a citizen of Utah. It is also undisputed that Mr. White is a citizen of Utah and that White Cloud is a limited liability company whose sole member is Mr. White, thereby making White Cloud a citizen of Utah for diversity purposes. (See ECF No. 2 at 5.) On the face of the Complaint, then, the parties are not diverse, and the court must remand the case for lack of jurisdiction.

But Recreation asserts that Mr. Potter has been fraudulently joined to the lawsuit and that the court should therefore disregard his citizenship for purposes of diversity jurisdiction. Recreation notes that three of the four causes of action in this matter (for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty) are alleged only against Recreation. As for the remaining cause of action for declaratory judgment, Recreation asserts that Mr. Potter's interest is aligned with the interests of Mr. White and White Cloud because all three parties seek a declaration that Recreation must tender the limits of coverage provided by both the White Cloud Policy and the Professional Policy.

The court is not persuaded by Recreation's position. As outlined in Recreation's letter to Mr. White and White Cloud in which Recreation expressly reserved its rights, Recreation maintains that neither policy provides coverage for Mr. Potter's accident because: 1) the Release signed on October 1, 2021, was not effective on the date of the accident; and 2) Mr. Potter was

not a current member of the USHPA. The court agrees that Mr. Potter's interests are aligned with the interests of Mr. White and White Cloud on the second issue, as these parties all assert that Mr. Potter was a current member of the USHPA. But Mr. Potter's interest is not aligned with the interests of Mr. White and White Cloud on the effectiveness of the Release. The position taken by Mr. White and White Cloud is unequivocal: they argue that the Release was effective at the time of the accident. In contrast, Mr. Potter's position on the Release is unclear: while an effective release could bar him from pursuing damages against Mr. White and White Cloud, an ineffective release could bar him from collecting any insurance proceeds under the policies issued by Recreation.

The effectiveness of the Release is at issue in Mr. Potter's case against Mr. White and White Cloud in state court. In that litigation, Mr. Potter alleges that he never signed any new waivers or acknowledgements of risk in connection with the training he began with Mr. White in 2023, that he only took one tandem flight in 2021 (at the time when Mr. White and White Cloud allege that Mr. Potter signed the Release), and that Mr. White attempted to have Mr. Potter backdate a new waiver after the crash occurred. In the action pending in this court, Mr. White and White Cloud seek a declaratory judgment that would determine, among other things, whether the Release was effective. Because Mr. White and White Cloud are not aligned with Mr. Potter on that issue, the court cannot say that Mr. Potter has been fraudulently joined as a defendant.

The court's holding is supported by cases from the Supreme Court and the Tenth Circuit. The leading case on realignment is City of Indianapolis v. Chase National Bank, 314 U.S. 63 (1941). In that case, a citizen of New York brought suit against three citizens of Indiana, but the Supreme Court held that the court lacked diversity jurisdiction because one of the defendants

9

should have been aligned as a plaintiff.  Id. at 74–75.  The facts were complex, and courts did not apply the Court's holding uniformly in subsequent cases.  The Tenth Circuit summarized the disagreement among courts as follows:

> The federal courts of appeals are divided on how to interpret City of Indianapolis, some applying the "primary-purpose test" and others the "substantial-conflict test" (or its cousin, the "collision of interests" test) to determine when a party must be realigned.  See 15 James W. Moore et al., Moore's Federal Practice §§ 102.20[3]-[5] (3d ed. 1997).  Under the primary-purpose test, "the parties must be realigned if there is no adversity with regard to the primary issue in dispute." Id. at 102–49; cf. City of Indianapolis, 314 U.S. at 69 (alignment "must be ascertained from the principal purpose of the suit" (internal quotation marks omitted)).  Under the substantial-conflict test, a party need not be realigned so long as it has an "actual and substantial conflict" with a party on the other side. Moore et al., supra, § 102.20[4]; cf. City of Indianapolis, 314 U.S. at 69 ("To sustain diversity jurisdiction there must exist an actual, substantial, controversy between citizens of different states" (citations and internal quotation marks omitted)).

Price v. Wolford, 608 F.3d 698, 704–05 (10th Cir. 2010).

The Tenth Circuit has adopted the substantial conflict test.  See id. at 705 (citing Farmers All. Mut. Ins. Co. v. Jones, 570 F.2d 1384 (10th Cir. 1978)).  As a result, the court must determine whether Mr. White and White Cloud, on the one hand, and Mr. Potter, on the other, have substantial adverse interests.  The court finds that they do, not least because Mr. Potter is suing Mr. White and White Cloud in state court and has alleged that his injuries occurred as a result of the negligence of these parties.  As the court has noted, these adverse interests extend to the subject matter of this lawsuit: any declaratory judgment that this court issues about whether Recreation must provide coverage under the terms of either the White Cloud Policy or the Professional Policy necessarily implicates questions about whether the Release signed by Mr. Potter remained effective on the date of the accident—a factual determination on which Mr. White, White Cloud, and Mr. Potter are not aligned.  While the primary purpose of this lawsuit is to determine whether Recreation must pay either Mr. White, White Cloud, or Mr. Potter under

10

the terms of one or both policies, that general alignment among these three parties masks a substantial conflict between them. Accordingly, given the heavy burden that Recreation faces to establish fraudulent joinder, as well as the Tenth Circuit's admonition that this court should not exercise diversity jurisdiction where jurisdiction is doubtful, the court agrees with Mr. White and White Cloud that the case should be remanded.

## II.    Federal Question Jurisdiction

Recreation asserts that, even if the court declines its invitation to realign the parties in this matter, the court may nevertheless exercise federal question jurisdiction. In support, Recreation points to the Liability Risk Retention Act, 15 U.S.C. §§ 3901, et seq. Recreation maintains that, because it is a risk retention group as defined under that statute, the federal statute preempts the application of Utah law to any claims against Recreation and instead requires the application of Vermont law, where Recreation is chartered. Recreation cites a case from the Seventh Circuit, in which the court determined that the district court possessed federal question jurisdiction to consider claims that a risk retention group brought for injunctive and declaratory relief. See Restoration Risk Retention Grp., Inc. v. Gutierrez, 880 F.3d 339, 345–46 (7th Cir. 2018).

But the risk retention group was a plaintiff in that matter, and the court viewed its invocation of the Liability Risk Retention Act as something entirely different than the assertion of a federal preemption defense:

> Rather than attempting to assert a federal preemption defense, [the risk retention group] is simply asserting a federal right to operate within Wisconsin free from the restrictions of state regulation, a right that it asserts is grounded in federal law. It seeks an order from the district court requiring state officials to permit it to operate unimpeded from state regulation specifically forbidden by the federal regulatory scheme. Such a claim is premised on a federal right and fully cognizable in the district court.

11

Id. (citation omitted).  Here, Recreation is a defendant and invokes the Liability Risk Retention Act in support of its argument about which state law should apply to Mr. White and White Cloud's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.  But these claims (including the additional claim for declaratory judgment about what the insurance policies require) do not arise under federal law—they arise under state law.  While Recreation asserts a federal preemption defense that affects which state law should apply, that defense does not appear on the face of the Plaintiffs' well-pleaded Complaint and is insufficient to clothe the court with federal question jurisdiction. Likewise, the court finds Recreation's reference to the Federal Arbitration Act (FAA) unavailing, as the FAA does not provide the source of the Plaintiffs' causes of action.  See Vaden v. Discover Bank, 556 U.S. 49, 59 (2009) (holding that the FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute" (citation modified)).

Accordingly, the court finds that it lacks both federal question and diversity jurisdiction and must remand the case to state court.  In any event, the court notes that this action (the last of three separate actions to be filed) will likely be stayed due to the ongoing arbitration in Vermont. But that is a decision for the state court to make, as this court lacks jurisdiction to make any procedural rulings in this matter.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1.      The court GRANTS the Plaintiffs' Motion to Remand.  (ECF No. 8.)

2.      The court directs the Clerk of Court to remand the action to Utah's Third District Court.

DATED this 23rd day of March, 2026.

BY THE COURT:

Tena Campbell
United States District Judge